pursuing asylum claims in "good faith." This responds to concerns by commenters that aliens could lose such authorization during a period between the Asylum Officer's denial of an asylum claim and the alien's ability to renew the claim before an Immigration Judge. (It should be noted that many of the changes which have been made in the final rule are purely technical in nature, *e.g.*, the "Office of Policy Development" has been substituted for the "Office of Legal Policy." Such changes are not specifically noted in the following analysis.)

## II. Analysis and Discussion of Comments

(1) *8 CFR 208.1—General.* The final rule creates the position of Asylum Officer within the Office of Refugees, Asylum, and Parole ("CORAP") in INS; requires that such officers receive specialized training in the relevant fields of international relations and international law under the co-direction of the Assistant Commissioner, CORAP, and the Director of the Asylum Policy and Review Unit of the Department of Justice ("APRU"); and reflects the role of the Deputy Attorney General and APRU in providing those officers with current information as an ongoing component of their training. In addition, under § 208.1, the new standards and procedures established in the final rule will apply only to applications for asylum or withholding of deportation filed on or after the date the rule becomes effective, unless a motion to reopen or reconsider under the new rule is granted. In addition, it is provided that a documentation center shall be maintained for the collection and dissemination of information on human rights conditions. The creation of a documentation center is an addition to the rule. It was felt that this would be a very positive development in aiding Asylum Officers to maintain current knowledge of country conditions around the world. It also reflects recent developments in the methods used to aid in the adjudication of asylum cases in other countries, such as Canada.

Many comments on the previously published rules have raised the objection that the adjudication of asylum cases will remain within INS, since the Service is also responsible for enforcement functions. This regulation creates an asylum adjudications function which is separate from INS enforcement functions. The Asylum Officers will be directed and supervised by CORAP and will deal only with asylum cases.

(2) *8 CFR 208.2—Jurisdiction.* Under the final rule, affirmative applications

for asylum or withholding of deportation are to be referred in the first instance to an Asylum Officer and adjudicated in a nonadversarial setting. At the same time, the final rule provides for continued adversarial adjudications of asylum and withholding of deportation applications by Immigration Judges for those applicants who are in exclusion or deportation proceedings. Paragraph (b) provides that the "Immigration Judge shall make a determination on such claims *de novo* regardless of whether or not a previous application was filed and adjudicated by an Asylum Officer prior to the initiation of exclusion or deportation proceedings." Thus the final rule maintains a system of adjudication parallel to that established in the 1980 interim rule with the exception that Asylum Officers reporting directly to CORAP will now assume the jurisdiction formerly exercised by District Directors.

(3) *8 CFR 208.3—Form of application.* This section of the final rule prescribes the proper form for applications for asylum and withholding of deportation and is self-explanatory. Several commenters objected to the current Form I-589. While this rule does not change the content of the Form, its revision is planned in the future.

(4) *8 CFR 208.4—Filing the application.* This section establishes the procedures and locations for filing initial applications. With respect to applications filed after the institution of exclusion or deportation proceedings, the final rule necessarily incorporates significant procedural modifications to the August 28, 1987 proposed rule, as published and explained in the April 6, 1988 revised proposed rule. This modification drew serious objection from practitioners during the public comment period, many expressing the concern that the requirements for motions to reopen proceedings in order to file an initial asylum application would cause difficulty to applicants who may not have known of their right to apply for asylum previously. They thus urged a return to the standard contemplated in the August 28, 1987 rule.

However, under the August 28, 1987 rule, Immigration Judges were to be removed from the asylum adjudication process. The final rule retains the jurisdiction of Immigration Judges existing under the 1980 interim rule, including the adjudication of asylum claims raised in the context of reopening deportation or exclusion proceedings based either on the filing of an initial application under § 208.4 of the final rule or on the request to reopen or

reconsider a previously denied claim under § 208.19 of the final rule. In either instance, consistent with the requirements governing all proceedings, a formal motion to reopen, reconsider, or remand, as appropriate, is necessary.

Therefore, the revised rule incorporates, without substantive change, the requirements for the reopening of exclusion or deportation proceedings that existed under the 1980 interim rule and continue to exist elsewhere in title 8. In the asylum context they are considered necessary to deter late filings intended merely to delay deportation. The authority of the government to establish such requirements was upheld by the Supreme Court in *INS* v. *Abudu,* 485 U.S. 94 (1988).

(5) *8 CFR 208.5—Special duties toward aliens in custody of the service.* This section requires the Service to make asylum application forms avaiable to aliens in custody who request asylum, or express a fear of persecution, and provide, where available, a list of persons/groups who can assist the alien in preparing the application. Aliens detained under 8 CFR 235 or 242 are to be given expedited consideration where possible.

(6) *8 CFR 208.6—Disclosure to third parties.* This section is intended to protect the confidentiality of asylum and withholding of deportation applicants. Applications shall not be disclosed without the written consent of the individual, unless under the exceptions stated in this section. Exceptions are given to U.S. government officials or contractors with the need to know, any federal, state, or local court proceeding in which the application is a part, and any other official when the Attorney General deems it appropriate. Specific mention of the United Nations High Commission for Refugees ("UNHCR") is eliminated in this section. This is not meant to limit disclosure of information to UNHCR, or to increase the discretion of the Attorney General in revealing information. Rather it was felt that it is inappropriate to specify a non-governmental agency to which the Attorney General, after consultation with the Secretary of State, may reveal information.

(7) *8 CFR 208.7—Interim employment authorization.* This section mandates a grant of employment authorization for a period not to exceed one year for applicants who are not in detention and who file asylum applications which the Asylum Officer determines not to be frivolous. "Frivolous" is defined as "manifestly unfounded or abusive." The

applicant shall be able to renew his or her employment authorization in increments of up to one year, for the period of time necessary to complete administrative and judicial review of the applicant's asylum claim, so long as the applicant pursues the asylum claim through the appropriate administrative and judicial procedures.

Under this section, the alien's employment authorization will remain valid until the expiration of the alien's employment authorization document, or until sixty days after the Asylum Officer's decision denying asylum, whichever period is longer. Thus, the alien's employment authorization will continue for at least sixty days after the Asylum Officer's denial. A denial of asylum by the immigration judge or by the Board of Immigration Appeals ("BIA") will not terminate the alien's employment authorization. Rather, the employment authorization will continue in effect until the expiration of the alien's employment authorization document.

In order to obtain a renewal of employment authorization, the alien need only file a new Application for Employment Authorization (Form I-765) and show that the alien is pursuing the asylum claim through appropriate administrative or judicial review. In addition to the Form I-765, an alien who has been placed into deportation or exclusion proceedings after the Asylum Officer denied asylum need only present a copy of the Asylum Officer's denial of asylum and of the order to show cause or the notice to applicant for admission detained for hearing before an immigration judge placing the alien into proceedings. Thus, the alien will not have to wait until the Office of the Immigration Judge sets the case for hearing before applying for renewal of employment authorization. Whether the alien's claim is frivolous will not be addressed again in conjunction with an application for a renewal of employment authorization.

Nine commenters on the April 6, 1988, proposed regulations and five commenters on the August 23, 1987, proposed regulations identified the "gap" which can result from a delay between the Asylum Officer's denial of an asylum claim and the alien's ability to renew the claim before an immigration judge as a matter of serious concern. This "gap" can also result when the alien's employment authorization is not renewed in a timely fashion. New § 208.7 attempts to alleviate this problem in several ways. As noted above, new § 208.7 provides that the alien's employment

authorization will continue for at least sixty days after the Asylum Officer's denial of the claim. The requirements for obtaining an extension are not burdensome. Any alien who is pursuing his claim in good faith shall have no difficulty in meeting this requirement. Furthermore, new § 208.7(c) provides that employment authorization will be renewed before it expires, if the Service receives the application for renewal at least sixty days before the date on which the current employment authorization document will expire.

In some districts, high caseload or limited resources, or both, may prevent the Service from adjudicating applications for renewal of employment authorization in less than sixty days. Failure to submit an application for renewal of employment authorization at least sixty days before expiration of the current employment authorization will not be grounds to deny the renewal application. There may, however, be a gap between the expiration of the current employment authorization and the grant of a renewal, if the alien presents his renewal application less than sixty days in advance. An alien who files his application for renewal timely should not have this problem.

(8) 8 CFR 208.8—Limitations on travel outside the United States. This section creates the presumption that an applicant (under advance parole) who returns to the country of claimed persecution has abandoned his asylum application, unless he can establish compelling reasons for assuming the risk of persecution by returning. Several comments expressed the belief that the presumption of abandonment of an application was unduly restrictive. While it remains the responsibility of the applicant to demonstrate a legitimate need to return to his country of claimed persecution, the term "extraordinary and urgent reasons," as used previously, has been changed to the less restrictive "compelling reasons."

(9) 8 CFR 208.9—Interview and procedure. This section establishes the proper procedures for conducting an interview by an Asylum Officer. At the request of the applicant, the interview is to be conducted separate and apart from the general public. The applicant may have counsel or a representative and submit affidavits of witnesses. After the Asylum Officer administers the oaths, presents and receives evidence, and questions the applicant and any witnesses, the interview is completed. The applicant or representative shall then be allowed to make a statement or comment on the evidence, the length of

which may be limited by the Asylum Officer, who may also require such a statement to be submitted in writing. The applicant may then be given up to 30 days to submit supporting evidence (longer if the Asylum Officer believes it necessary). The requirement, as stated in the April 6, 1988 revised rule, that the interview be conducted "out of hearing and view of" the general public has been modified to read "and, at the request of the applicant, separate and apart from" the general public. This change preserves the right to privacy of the applicant.

The asylum record shall consist of the application, all supporting material provided by the applicant, any comments by the Bureau of Human Rights and Humanitarian Affairs (BHRHA) of the State Department and the Asylum Policy and Review Unit (APRU) of the Justice Department, or by the INS, and any other information considered by the Asylum Officer.

(10) 8 CFR 208.10—Failure to appear. This section provides that an unexcused failure to appear for a scheduled interview may be presumed to be an abandonment of the application.

(11) 8 CFR 208.11—Comments from the Bureau of Human Rights and Humanitarian Affairs. This section allows BHRHA, at its option, to comment on applications received from INS. Such comment may include: Assessment of country conditions and experiences asserted, likely treatment of applicant, persecution of persons similarly situated to applicant, 208.14 grounds for denial, and other relevant information. BHRHA must respond within 45 days. Response may either be comments, request for additional time (another 30 days can be allowed), or declining to comment. If 60 days have elapsed, the Asylum Officer or Immigration Judge may decide the claim without the response.

Comments are to be made part of the asylum record; the applicant shall also be given a copy (unless it is classified) and the opportunity to respond to the comments, before an adverse decision is issued.

(12) 8 CFR 208.12—Reliance on information compiled by other sources. This section provides that the Asylum Officer may rely on material provided by BHRHA, APRU, the Office of Refugees, Asylum, and Parole of INS, the District Director with jurisdiction over the applicant's residence/port of entry, and other credible sources, such as international organizations, private voluntary agencies, or academic institutions. If the Asylum Officer relies on such material for an adverse

AR469

decision, it must be shown to the applicant for inspection (unless it is classified) in order to explain or rebut it. However, this provision does not create an entitlement of discovery toward INS, Justice, or State records, officers, agents, or employees.

(13) *8 CFR 208.13—Establishing refugee status; burden of proof.* This section discusses the requirements for an alien to establish that he is a refugee. Section 101(a)(42) of the INA defines "refugee;" the burden of proof is on the applicant to establish that he meets this definition. If the applicant's testimony is credible in light of general conditions in the applicant's country, his testimony may be sufficient to sustain the burden of proof without corroboration. There are two methods of establishing oneself as a refugee: Actual past persecution and a well-founded fear of (future) persecution. Regarding past persecution, the applicant must first establish that persecution was actually suffered; the reason for such persecution must be one or more of the following: Race, religion, nationality, social group, or political opinion. The applicant also must be unwilling or unable to avail himself of that country's protection. If the applicant establishes past persecution, the burden is then on the government to show (by a preponderance of evidence) that conditions have changed so substantially that the applicant would not have a well-founded fear if he were to return. The applicant can then in turn assume the burden of demonstrating that he has compelling reasons not to return, owing to the severity of the persecution. This is consistent with the intent of the Act because it allows past persecution as grounds for establishing refugee status while at the same time recognizing that asylum can be denied on account of changed conditions.

For an applicant to be a refugee on the basis of a "well-founded fear" (as opposed to "past persecution"), he must establish that there is a fear based on race, religion, nationality, membership in a particular social group, or political opinion; that there is a reasonable possibility of suffering such persecution; that he is unable or unwilling to seek the protection of that country because of such fear. It is not necessary to prove he would be singled out if he can establish that there is a pattern or practice of persecuting the group of persons similarly situated, and that he can establish inclusion in/identification with such group. The Asylum Officer or Immigration Judge must also take into account whether applicant's country persecutes those persons who leave without permission or seek asylum elsewhere. Persons who have persecuted others shall not qualify as refugees.

(14) *8 CFR 208.14—Approval or denial of application.* This section sets forth the grounds for mandatory denial. Asylum shall be denied if the alien has been convicted in the U.S. of a particularly serious crime (and thus constitutes a danger to the community), has been firmly resettled, or is a danger to the security of the U.S. The alien has the burden of proving that such grounds do not apply. Many comments were received objecting to any mandatory denials. The Department believes, however, that there should be grounds for mandatory denials. This issue was discussed extensively in the "Supplementary Information" section of the April 6, 1988 revised rule.

(15) *8 CFR 208.15—Definition of "firm resettlement".* This section states that a person who enters another nation and receives before entry or therein an offer of permanent residence, citizenship, or other permanent resettlement is deemed "firmly resettled", with two exceptions. The first is that his entry into that country was a necessary consequence of flight, that he remained there only long enough to arrange onward travel, and did not establish significant ties. The second is that his conditions of residence were substantially restricted; the Asylum Officer or Immigration Judge shall examine factors such as housing and employment permitted, education, travel documentation, and other rights ordinarily available to other residents.

(16) *8 CFR 208.16—Entitlement to withholding of deportation.* This section deals with the requirements for proving eligibility for withholding of deportation. The applicant must show that his life or freedom would be threatened; testimony without corroboration may be sufficient. If the applicant has suffered past persecution, it shall be presumed he is eligible unless conditions have greatly changed. If the applicant can demonstrate that there is a pattern or practice of persecution of persons similarly situated to himself and can show his inclusion in that group, he need not demonstrate that he would be singled out. If a government threatens the life and freedom of persons who leave without authorization or seek asylum elsewhere, the Asylum Officer or Immigration Judge should give this due consideration. Pursuant to the requirements of the Act, withholding of deportation shall be denied if the applicant participated or assisted in the persecution of others, was convicted of a particularly serious crime, committed a serious non-political crime outside the U.S., or is a danger to the security of the U.S.

If an applicant is denied asylum in the exercise of discretion but granted withholding, thus precluding admission of following-to-join spouse or children, the asylum decision shall be reconsidered, as well as other reasonable alternatives for family reunification.

(17) *8 CFR 208.17—Decision.* This section requires that the Asylum Officer's decision be communicated in writing to the applicant, the District Director, the Assistant Commissioner of Refugees, Asylum, and Parole and the Director of APRU. Adverse decisions must state reasons for denial and assess the applicant's credibility.

(18) *8 CFR 208.18—Review of decisions and appeal.* This section grants review authority to the Assistant Commissioner of Refugees, Asylum, and Parole, and the Deputy Attorney General, assisted by APRU, to review decisions of Asylum Officers in designated cases. There is, however, no right of appeal to any of these offices, nor shall parties have any right to appear before these offices. An applicant may nonetheless renew an asylum or withholding application before an Immigration Judge in exclusion or deportation proceedings and, if such proceedings do not commence within 30 days of an Asylum Officer's denial, the applicant may request the District Director, in writing, that such proceedings commence, which shall be done promptly by the District Director absent exceptional circumstances.

(19) *8 CFR 208.19—Motion to reopen or reconsider.* This section states that a motion to reopen or reconsider, for proper cause, may be filed with the District Director or Office of Immigration Judge, whichever had jurisdiction for the prior determination.

(20) *8 CFR 208.20—Approval and employment authorization.* This section states that a grant of asylum is for an indefinite period. Employment authorization is automatically given or extended upon a grant of asylum. In the case of withholding, authorization is given unless the alien is detained pending removal to a third country. INS must give the alien documentation of his employment authorization.

(21) *8 CFR 208.21—Admission of asylee's spouse and children.* This section permits granting of asylum to the principal's spouse or child, unless they persecuted others, were convicted of a particularly serious crime in the U.S., or are, on reasonable grounds, a danger to the security of the U.S. If the spouse or

child in the U.S. was not included in the original application, or they are outside the U.S., the principal may request asylum for them by filing an I-730 with the District Director. The status shall be for an indefinite period, unless the principal's status is revoked. The burden of proof is on the alien to establish eligibility of the spouse or child; there is no appeal from a denial. By error, in the April 6, 1988 revised rule, the 'serious non-political crime outside the United States' section was included as a ground for mandatory denial. This was inadvertent, since such ground had been specifically removed for asylees. This error has been corrected.

(22) *8 CFR 208.22—Effect on deportation proceedings.* This section states that an alien granted asylum may not be excluded or deported unless his status is revoked. If his status is revoked, he shall be placed in exclusion or deportation proceedings.

(23) *8 CFR 208.23—Restoration of status.* This section states that an alien denied asylum or withholding who was maintaining nonimmigrant status at the time of his filing may continue or be restored to that status.

(24) *8 CFR 208.24—Revocation of asylum or withholding of deportation.* This section sets forth standards and procedures for revocations. Asylum or withholding may be revoked upon motion of the Assistant Commissioner for changed country conditions, fraud, or commission of an act which is grounds for denial under 208.14(c), after a hearing before an Asylum Officer. The alien shall be given 30 days notice before the hearing, and given the opportunity to present evidence; a decision to revoke shall be given the alien in writing. Revocation shall not preclude the alien from reasserting his claim in a deportation hearing. The Deputy Attorney General, assisted by APRU, shall have authority to review these revocations before they become effective; this does not, however, create a right of appeal to, or of appearance by parties before, the Deputy or APRU. An Immigration Judge or the BIA may re-open a case and revoke for the reasons stated above.

Some commenters raised the issue of a perceived lack of due process rights in the procedure of revocation by an Asylum Officer. However, the Department believes that those rights are adequately protected by the final rule. Current procedures under the interim rule give the power to revoke to the District Director in § 208.15, with only an opportunity to present written evidence; there is no hearing. An Asylum Officer hearing as detailed in this section of the final rule provides

more rights to the alien than existing practice. Additionally, the Office of the Deputy Attorney General, assisted by APRU, has authority to conduct a neutral review, independent of INS. Finally, the applicant can reassert an asylum or withholding claim in any subsequent deportation hearing.

(25) *8 CFR 236.3—Applications for asylum or withholding of deportation.* This section deals with exclusion hearings in instances where the alien expresses fear of persecution or harm upon return. In such instances, the Immigration Judge shall advise the alien regarding asylum and withholding, and make the appropriate forms available. The Immigration Judge is to follow the requirements and standards set out in part 208, after an evidentiary hearing on material factual issues. If there is a mandatory denial pursuant to § 208.14 or § 208.16, such a hearing need not be held. The decision shall be communicated to the applicant and Trial Attorney for the Government; an adverse decision must state grounds for denial. Many comments objected to the provision stating that an evidentiary hearing is not necessary if there is a mandatory denial. This issue was discussed extensively in the "Supplementary Information" section of the April 6, 1988 revised rule. The Department continues to maintain, as stated at that time that:

If it is apparent upon the record developed during a proceeding that the alien is clearly ineligible for asylum or withholding of deportation, the Immigration Judge will be permitted to forego a further evidentiary hearing on questions extraneous to the decision, thus avoiding unnecessary and time consuming factual hearings on nondispositive issues.

(26) *8 CFR 242.17—Ancillary matters, applications.* This section deals with deportation hearings in instances where the alien expresses fear of persecution or harm upon return. In such instances, the Immigration Judge shall advise the alien regarding asylum and withholding, and make the appropriate forms available. The Immigration Judge is to follow the requirements and standards set out in part 208, after an evidentiary hearing on material factual issues. If there is a mandatory denial pursuant to § 208.14 or § 208.16, such a hearing need not be held. The decision shall be communicated to the applicant and Trial Attorney for the Government; an adverse decision must state grounds for denial. As stated in section 25 above, the Department continues to believe that the provision stating that an evidentiary hearing is not necessary in instances where there is a mandatory denial, should remain in order to avoid

unnecessary and time consuming factual hearings on nondispositive issues.

(27) *8 CFR 253.1—Parole.* This section deals with crewmen, stowaways, or those excluded under section 235(c), who allege persecution. Any of the above are eligible to apply for asylum or withholding. The alien must be given 10 days to file with the District Director having jurisdiction over the port of entry. Pending the decision, the alien shall be removed from the conveyance and may be either detained by INS, paroled into the custody of the ship's agent, or otherwise paroled in accordance with § 212.5; he shall not be excluded or deported before the Asylum Officer renders a decision on his application. Alien crewmen and stowaways denied asylum may appeal to the Board of Immigration Appeals.

The Department believes that promulgation of this final rule will facilitate the adjudication of claims for asylum and withholding of deportation in a manner consistent with the Refugee Act of 1980.

In accordance with 5 U.S.C. 605(b), the Attorney General certifies that the rule will not have a significant economic impact on a substantial number of small entities. This rule is not a major rule within the meaning of E.O. 12291. The information collections in this rule have been approved under the Paperwork Reduction Act under OMB Control No. 1115–0086.

## List of Subjects

### *8 CFR Part 3*

Administrative practice and procedure, Immigration, Organization and functions (Government agencies).

### *8 CFR Part 103*

Administrative practice and procedure, Authority delegations (Government agencies), Freedom of information, Privacy, Reporting and recordkeeping requirements, Surety bonds.

### *8 CFR Part 208*

Administrative practice and procedure, Aliens, Asylum, Immigration, Jurisdiction, Reporting and recordkeeping requirements.

### *8 CFR Part 236*

Administrative practice and procedure, Aliens, Immigration.

### *8 CFR Part 242*

Administrative practice and procedure, Aliens, Detention, Deportation.

*8 CFR Part 253*

Air carriers, Airmen, Aliens, Asylum, Crewmen, Maritime carriers, Parole, Reporting and recordkeeping requirements, Seamen.

Accordingly, chapter I of title 8 of the Code of Federal Regulations is amended as follows:

## PART 3—[AMENDED]

1. The authority citation for part 3 continues to read as follows:

Authority: 8 U.S.C. 1103, 1362; 28 U.S.C. 509, 510, 1746; 5 U.S.C. 301; Sec. 2, Reorg. Plan No. 2 of 1950.

2. Section 3.1 is amended by adding paragraph (b)(9) to read as follows:

### § 3.1  General authorities.

* * * * *

(b) * * *

(9) Decisions of Asylum Officers of the Service on applications for asylum or withholding of deportation filed by alien crewman or stowaways, as provided in § 253.1(f)(4) of this chapter.

* * * * *

### § 3.22  [Amended]

3. Section 3.22 is amended by revising the second sentence of paragraph (b)(1) to read as follows: "Such motions shall comply with applicable provisions of 8 CFR 208.4, 208.19, and 242.22.".

## PART 103—[AMENDED]

4. The authority citation for part 103 continues to read as follows:

Authority: 5 U.S.C. 552, 522(a); 8 U.S.C. 1101, 1103, 1201, 1304; 31 U.S.C. 9701; E.O. 12356; 3 CFR, 1982 Comp., p. 166; 8 CFR part 2.

5. Section 103.1 is amended as follows:
a. The third sentence of § 103.1(n)(1) is revised;

b. Section 103.1(q) is amended by adding the words "asylum officer" after the words "Legalization Assistant," and before the words "or senior or supervisory officer";

c. And by adding a new paragraph (v) to read as follows:

### § 103.1  Delegations of authority.

* * * * *

(n)(1) *District Directors.* * * * District directors are delegated the authority and responsibility to grant or deny any application or petition submitted to the Service, except for matters delegated to asylum officers pursuant to part 208 and § 253.1(f) of this chapter, to initiate any authorized proceeding in their respective districts, and to exercise the authorities under §§ 242.1(a), 242.2(a)

and 242.7 of this chapter without regard to geographical limitations. * * *

* * * * *

(v) *Asylum Officers.* Asylum officers serve under the general supervision and direction of the Assistant Commissioner for Refugees, Asylum and Parole, and shall be especially trained as required in § 208.1(b) of this chapter. Asylum officers are delegated the authority to hear and adjudicate applications for asylum and for withholding of deportation, as provided under part 208 and § 253.1(f) of this chapter.

6. Part 208 is revised to read as follows:

## PART 208—PROCEDURES FOR ASYLUM AND WITHHOLDING OF DEPORTATION

Sec.
208.1   General.
208.2   Jurisdiction.
208.3   Form of application.
208.4   Filing the application.
208.5   Special duties toward aliens in custody of the Service.
208.6   Disclosure to third parties.
208.7   Interim employment authorization.
208.8   Limitations on travel outside the United States.
208.9   Interview and procedure.
208.10  Failure to appear.
208.11  Comments from the Bureau of Human Rights and Humanitarian Affairs.
208.12  Reliance on information compiled by other sources.
208.13  Establishing refugee status; burden of proof.
208.14  Approval or denial of application.
208.15  Definition of "firm resettlement."
208.16  Entitlement to withholding of deportation.
208.17  Decision.
208.18  Review of decisions and appeal.
208.19  Motion to reopen or reconsider.
208.20  Approval and employment authorization.
208.21  Admission of asylee's spouse and children.
208.22  Effect on deportation proceedings.
208.23  Restoration of status.
208.24  Revocation of asylum or withholding of deportation.

Authority: 8 U.S.C. 1103, 1158, 1226, 1252, 1253, and 1283.

### § 208.1  General.

(a) This part shall apply to all applications for asylum or withholding of deportation that are filed on or after October 1, 1990. No application for asylum or withholding of deportation that has been filed with a District Director or Immigration Judge prior to October 1, 1990, may be reopened or otherwise reconsidered under the provisions of this part except by motion granted in the exercise of discretion by the Board of Immigration Appeals, an Immigration Judge or an Asylum Officer for proper cause shown. Motions to

reopen or reconsider must meet the requirements of 8 CFR 3.2, 3.8, 3.22, 103.5, and 242.22 where applicable. The provisions of this part shall not affect the finality or validity of any decision made by District Directors, Immigration Judges, or the Board of Immigration Appeals in any asylum or withholding of deportation case prior to October 1, 1990.

(b) There shall be attached to the Office of Refugees, Asylum, and Parole such number of employees as the Commissioner, upon recommendation from the Assistant Commissioner, shall direct. These shall include a corps of professional Asylum Officers who are to receive special training in international relations and international law under the joint direction of the Assistant Commissioner, Office of Refugees, Asylum, and Parole and the Director of the Asylum Policy and Review Unit of the Office of Policy Development of the Department of Justice. The Assistant Commissioner shall be further responsible for general supervision and direction in the conduct of the asylum program, including evaluation of the performance of the employees attached to the Office.

(c) As an ongoing component of the training required by paragraph (b) of this section, the Assistant Commissioner, Office of Refugees, Asylum and Parole, shall assist the Deputy Attorney General and the Director of the Asylum Policy and Review Unit, in coordination with the Department of State, and in cooperation with other appropriate sources, to compile and disseminate to Asylum Officers information concerning the persecution of persons in other countries on account of race, religion, nationality, membership in a particular social group, or political opinion, as well as other information relevant to asylum determinations, and shall maintain a documentation center with information on human rights conditions.

### § 208.2  Jurisdiction.

(a) Except as provided in paragraph (b) of this section, the Office of Refugees, Asylum, and Parole shall have initial jurisdiction over applications for asylum and withholding of deportation filed by an alien physically present in the United States or seeking admission at a port of entry. All such applications shall be decided in the first instance by Asylum Officers under this part.

(b) Immigration Judges shall have exclusive jurisdiction over asylum applications filed by an alien who has been served notice of referral to exclusion proceedings under part 236 of

this chapter, or served an order to show cause under part 242 of this chapter, after a copy of the charging document has been filed with the Office of the Immigration Judge. The Immigration Judge shall make a determination on such claims *de novo* regardless of whether or not a previous application was filed and adjudicated by an Asylum Officer prior to the initiation of exclusion or deportation proceedings. Any previously filed but unadjudicated asylum application must be resubmitted by the alien to the Immigration Judge.

### § 208.3   Form of application.

(a) An application for asylum or withholding of deportation shall be made in quadruplicate on Form I-589 (Request for Asylum in the United States). The applicant's spouse and children as defined in section 101 of the Act may be included on the application if they are in the United States. An application shall be accompanied by one completed Form G-325A (Biographical Information) and one completed Form FD-258 (Fingerprint Card) for every individual included on the application who is fourteen years of age or older; additional supporting material may also accompany the application and, if so, must be provided in quadruplicate. Forms I-589, G-325A, and FD-258 shall be available from the Office of Refugees, Asylum, and Parole, each District Director, and the Offices of Immigration Judges.

(b) An application for asylum shall be deemed to constitute at the same time an application for withholding of deportation, pursuant to §§ 208.16, 236.3, and 242.17 of this chapter.

### § 208.4   Filing the application.

If no prior application for asylum or withholding of deportation has been filed, an applicant shall file any initial application according to the following procedures:

(a) *With the District Director.* Except as provided in paragraph (b) of this section, applications for asylum or withholding of deportation shall be filed with the District Director having jurisdiction over the place of the applicant's residence or over the port of entry from which the applicant seeks admission to the United States. The District Director shall immediately forward the application to an Asylum Officer with jurisdiction in his district. The Asylum Officer shall notify the Asylum Policy and Review Unit of the Department of Justice and shall forward a copy of the completed application, including any supporting material subsequently received pursuant to § 208.9(e), to the Office of Refugees,

Asylum and Parole and the Bureau of Human Rights and Humanitarian Affairs of the Department of State.

(b) *With the Immigration Judge.* Initial applications for asylum or withholding of deportation are to be filed with the Office of the Immigration Judge in the following circumstances (and shall be treated as provided in part 236 or 242 of this chapter):

(1) *During exclusion or deportation proceedings.* If exclusion or deportation proceedings have been commenced against an alien pursuant to part 236 or 242 of this chapter, an initial application for asylum or withholding of deportation from that alien shall be filed thereafter with the Office of the Immigration Judge.

(2) *After completion of exclusion or deportation proceedings.* If exclusion or deportation proceedings have been completed, an initial application for asylum or withholding of deportation shall be filed with the Office of the Immigration Judge having jurisdiction over the prior proceeding in conjunction with a motion to reopen pursuant to 8 CFR 3.8, 3.22 and 242.22 where applicable.

(3) *Pursuant to appeal to the Board of Immigration Appeals.* If jurisdiction over the proceedings is vested in the Board of Immigration Appeals under part 3 of this chapter, an initial application for asylum or withholding of deportation shall be filed with the Office of the Immigration Judge having jurisdiction over the prior proceeding in conjunction with a motion to remand or reopen pursuant to 8 CFR 3.2 and 3.8 where applicable.

(4) Any motion to reopen or remand accompanied by an initial application for asylum filed under paragraph (b) of this section must reasonably explain the failure to request asylum prior to the completion of the exclusion or deportation proceeding.

### § 208.5   Special duties toward aliens in custody of the Service.

(a) When an alien in the custody of the Service requests asylum or withholding of deportation or expresses fear of persecution or harm upon return to his country of origin or to agents thereof, the Service shall make available the appropriate application forms for asylum and withholding of deportation and shall provide the applicant with a list, if available, of persons or private agencies that can assist in preparation of the application.

(b) Where possible, expedited consideration shall be given to applications of aliens detained under 8 CFR part 235 or 242. Except as provided in paragraph (c) of this section, such alien shall not be deported or excluded before a decision is rendered on his

initial asylum or withholding of deportation application.

(c) A motion to reopen or an order to remand accompanied by an application for asylum or withholding of deportation pursuant to § 208.4(b) shall not stay execution of a final order of exclusion or deportation unless such a stay is specifically granted by the Board or the Immigration Judge having jurisdiction over the motion.

### § 208.6   Disclosure to third parties.

(a) An application for asylum or withholding of deportation shall not be disclosed, except as permitted by this section, or at the discretion of the Attorney General, without the written consent of the applicant. Names and other identifying details shall be deleted from copies of asylum or withholding of deportation decisions maintained in public reading rooms under § 103.9 of this chapter.

(b) The confidentiality of other records kept by the Service (including G-325A forms) that indicate that a specific alien has applied for asylum or withholding of deportation shall also be protected from disclosure. The Service will coordinate with the Department of State to ensure that the confidentiality of these records is maintained when they are transmitted to State Department offices in other countries.

(c) This section shall not apply to any disclosure to:

(1) Any United States Government official or contractor having a need to examine information in connection with:

(i) Adjudication of asylum or withholding of deportation applications;

(ii) The defense of any legal action arising from the adjudication of or failure to adjudicate the asylum or withholding of deportation application;

(iii) The defense of any legal action of which the asylum or withholding of deportation application is a part; or

(iv) Any United States Government investigation concerning any criminal or civil matter; or

(2) Any Federal, state, or local court in the United States considering any legal action:

(i) Arising from the adjudication of or failure to adjudicate the asylum or withholding of deportation application; or

(ii) Arising from the proceedings of which the asylum or withholding of deportation application is a part.

### § 208.7   Interim employment authorization.

(a) The Asylum Officer to whom an initial application for employment authorization (Form I-765) accompanying an application for asylum or withholding of deportation is referred shall authorize employment for a period

not to exceed one year to aliens who are not in detention and whose applications for asylum or withholding of deportation the Asylum Officer determines are not frivolous. "Frivolous" is defined as manifestly unfounded or abusive.

(b) Employment authorization shall be renewable, in increments not to exceed one year, for the continuous period of time necessary for the Asylum Officer or Immigration Judge to decide the asylum application and, if necessary, for final adjudication of any administrative or judicial review.

(1) If the asylum application is denied by the Asylum Officer, the employment authorization shall terminate at the expiration of the employment authorization document or sixty days after the denial of asylum, whichever is longer.

(2) If the application is denied by the Immigration Judge, the Board of Immigration Appeals, or upon judicial review of the asylum denial, the employment authorization terminates upon the expiration of the employment authorization document.

(c) In order for employment authorization to be renewed under this section, the alien must provide the Asylum Officer, or District Director where appropriate, with a Form I–765 and proof that he has continued to pursue his application for asylum before an Immigration Judge or sought administrative or judicial review. Pursuit of an application for asylum, for purposes of employment authorization is established by presenting to the Asylum Officer one of the following, depending on the stage of the alien's immigration proceedings:

(1) If the alien's case is pending before the Immigration Judge, and the alien wishes to pursue an application for asylum, a copy of the asylum denial and the Order to Show Cause (Form I–221/I–221S) or Notice to Applicant for Admission Detained for Hearing before Immigration Judge (Form I–122) placing the alien in proceedings after asylum has been denied;

(2) If the immigration judge has denied asylum a copy of the Notice of Appeal (EOIR–26) date stamped by the Office of the Immigration Judge to show that a timely appeal has been filed from a denial of the asylum application by the Immigration Judge; or

(3) If the Board has dismissed the alien's appeal of the denial of asylum, a copy of the petition for judicial review or for habeas corpus pursuant to section 106 of the Immigration and Nationality Act, date stamped by the appropriate court.

(d) In order for employment authorization to be renewed before its expiration, applications for renewal must be received by the Service sixty days prior to expiration of the employment authorization.

(e) Upon the denied applicant's request, the District Director, in his discretion, may grant further employment authorization pursuant to 8 CFR 274a.12(c)(12).

**§ 208.8   Limitations on travel outside the United States.**

An applicant who leaves the United States pursuant to advance parole granted under 8 CFR 212.5(e) shall be presumed to have abandoned his application under this section if he returns to the country of claimed persecution unless he is able to establish compelling reasons for having assumed the risk of persecution in so returning.

**§ 208.9   Interview and procedure.**

(a) For each application for asylum or withholding of deportation within the jurisdiction of an Asylum Officer, an interview shall be conducted by that Officer, either at the time of application or at a later date to be determined by the Officer in consultation with the applicant. Applications within the jurisdiction of an Immigration Judge are to be adjudicated under the rules of procedure established by the Executive Office for Immigration Review in parts 3, 236, and 242 of this chapter.

(b) The Asylum Officer shall conduct the interview in a nonadversarial manner and, at the request of the applicant, separate and apart from the general public. The purpose of the interview shall be to elicit all relevant and useful information bearing on the applicant's eligibility for the form of relief sought. The applicant may have counsel or a representative present and may submit affidavits of witnesses.

(c) The Asylum Officer shall have authority to administer oaths, present and receive evidence, and question the applicant and any witnesses, if necessary.

(d) Upon completion of the interview, the applicant or his representative shall have an opportunity to make a statement or comment on the evidence presented. The Asylum Officer, in his discretion, may limit the length of such comments or statement and may require their submission in writing.

(e) Following the interview the applicant may be given a period not to exceed 30 days to submit evidence in support of his application, unless, in the discretion of the Asylum Officer, a longer period is required.

(f) The application, all supporting information provided by the applicant,

any comments submitted by the Bureau of Human Rights and Humanitarian Affairs of the Department of State, the Asylum Policy and Review Unit of the Department of Justice, or by the Service, and any other information considered by the Asylum Officer shall comprise the record.

**§ 208.10   Failure to appear.**

The unexcused failure of an applicant to appear for a scheduled interview may be presumed an abandonment of the application. Failure to appear shall be excused if the notice of the interview was not mailed to the applicant's current address and such address had been provided to the Office of Refugees, Asylum, and Parole by the applicant prior to the date of mailing in accordance with section 265 of the Act and regulations promulgated thereunder, unless the Asylum Officer determines that the applicant received reasonable notice of the interview. Such failure to appear may be excused for other serious reasons in the discretion of the Asylum Officer.

**§ 208.11   Comments from the Bureau of Human Rights and Humanitarian Affairs.**

(a) At its option, the Bureau of Human Rights and Humanitarian Affairs (BHRHA) of the Department of State may comment on an application it receives pursuant to §§ 208.4(a), 236.3 or 242.17 of this chapter by providing:

(1) An assessment of the accuracy of the applicant's assertions about conditions in his country of nationality or habitual residence and his own experiences;

(2) An assessment of his likely treatment were he to return to his country of nationality or habitual residence;

(3) Information about whether persons who are similarly-situated to the applicant are persecuted in his country of nationality or habitual residence and the frequency of such persecution;

(4) Information about whether one of the grounds for denial specified in § 208.14 may apply; or

(5) Such other information or views as it deems relevant to deciding whether to grant or deny the application.

(b) In all cases, BHRHA shall respond within 45 days of receiving a completed application by either providing comments, requesting additional time in which to comment, or indicating that it does not wish to comment. If BHRHA requests additional time in which to provide comments, the Asylum Officer or Immigration Judge may grant BHRHA up to 30 additional days when necessary to gather information pertinent to the

application or may proceed without BHRHA's comments. Failure to receive BHRHA's response shall not preclude final decision by the Asylum Officer or Immigration Judge if at least 60 days have elapsed since mailing the completed application to BHRHA. If the Deputy Attorney General determines that an expedited decision is necessary or appropriate, BHRHA shall provide its comments immediately.

(c) Any Department of State comments provided under this section shall be made a part of the asylum record. Unless the comments are classified under E.O. 12356 (3 CFR, 1982 Comp., p. 166), the applicant shall be given a copy of such comments and be provided an opportunity to respond prior to the issuance of an adverse decision.

### § 208.13  Reliance on information compiled by other sources.

(a) In deciding applications for asylum or withholding of deportation, the Asylum Officer may rely on material provided by the Department of State, the Asylum Policy and Review Unit, the Office of Refugees, Asylum, and Parole, the District Director having jurisdiction over the place of the applicant's residence or the port of entry from which the applicant seeks admission to the United States, or other credible sources, such as international organizations, private voluntary agencies, or academic institutions. Prior to the issuance of an adverse decision made in reliance upon such material, that material must be identified and the applicant must be provided with an opportunity to inspect, explain, and rebut the material, unless the material is classified under E.O. 12356.

(b) Nothing in this part shall be construed to entitle the applicant to conduct discovery directed toward the records, officers, agents, or employees of the Service, the Department of Justice, or the Department of State.

### § 208.13  Establishing refugee status; burden of proof.

(a) The burden of proof is on the applicant for asylum to establish that he is a refugee as defined in section 101(a)(42) of the Act. The testimony of the applicant, if credible in light of general conditions in the applicant's country of nationality or last habitual residence, may be sufficient to sustain the burden of proof without corroboration.

(b) The applicant may qualify as a refugee either because he has suffered actual past persecution or because he has a well-founded fear of future persecution.

(1) *Past persecution.* An applicant shall be found to be a refugee on the basis of past persecution if he can establish that he has suffered persecution in the past in his country of nationality or last habitual residence on account of race, religion, nationality, membership in a particular social group, or political opinion, and that he is unable or unwilling to return to or avail himself of the protection of that country owing to such persecution.

(i) If it is determined that the applicant has established past persecution, he shall be presumed also to have a well-founded fear of persecution unless a preponderance of the evidence establishes that since the time the persecution occurred conditions in the applicant's country of nationality or last habitual residence have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted if he were to return.

(ii) An application for asylum shall be denied if the applicant establishes past persecution under this paragraph but is determined not also to have a well-founded fear of future persecution under paragraph (b)(2) of this section, unless it is determined that the applicant has demonstrated compelling reasons for being unwilling to return to his country of nationality or last habitual residence arising out of the severity of the past persecution. If the applicant demonstrates such compelling reasons, he may be granted asylum unless such a grant is barred by paragraph (c) of this section or § 208.14(c).

(2) *Well-founded fear of persecution.* An applicant shall be found to have a well-founded fear of persecution if he can establish first, that he has a fear of persecution in his country of nationality or last habitual residence on account of race, religion, nationality, membership in a particular social group, or political opinion, second, that there is a reasonable possibility of actually suffering such persecution if he were to return to that country, and third, that he is unable or unwilling to return to or avail himself of the protection of that country because of such fear.

(i) In evaluating whether the applicant has sustained his burden of proving that he has a well-founded fear of persecution, the Asylum Officer or Immigration Judge shall not require the applicant to provide evidence that he would be singled out individually for persecution if:

(A) He establishes that there is a pattern or practice in his country of nationality or last habitual residence of persecution of groups of persons similarly situated to the applicant on account of race, religion, nationality,

membership in a particular social group, or political opinion; and

(B) He establishes his own inclusion in and identification with such group of persons such that his fear of persecution upon return is reasonable.

(ii) The Asylum Officer or Immigration Judge shall give due consideration to evidence that the government of the applicant's country of nationality or last habitual residence persecutes its nationals or residents if they leave the country without authorization or seek asylum in another country.

(c) An applicant shall not qualify as a refugee if he ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion. If the evidence indicates that the applicant engaged in such conduct, he shall have the burden of proving by a preponderance of the evidence that he did not so act.

### § 208.14  Approval or denial of application.

(a) An Immigration Judge or Asylum Officer may grant or deny asylum in the exercise of discretion to an applicant who qualifies as a refugee under section 101(a)(42) of the Act unless otherwise prohibited by paragraph (c) of this section.

(b) If the evidence indicates that one or more of the grounds for denial of asylum enumerated in paragraph (c) of this section may apply, the applicant shall have the burden of proving by a preponderance of the evidence that such grounds do not apply.

(c) *Mandatory denials.* An application for asylum shall be denied if:

(1) The alien, having been convicted by a final judgment of a particularly serious crime in the United States, constitutes a danger to the community;

(2) The applicant has been firmly resettled within the meaning of § 208.15; or

(3) There are reasonable grounds for regarding the alien as a danger to the security of the United States.

### § 208.15  Definition of "firm resettlement."

An alien is considered to be firmly resettled if, prior to arrival in the United States, he entered into another nation with, or while in that nation received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement unless he establishes:

(a) That his entry into that nation was a necessary consequence of his flight from persecution, that he remained in that nation only as long as was necessary to arrange onward travel, and

AR475

that he did not establish significant ties in that nation; or

(b) That the conditions of his residence in that nation were so substantially and consciously restricted by the authority of the country of refuge that he was not in fact resettled. In making his determination, the Asylum Officer or Immigration Judge shall consider the conditions under which other residents of the country live, the type of housing made available to the refugee, whether permanent or temporary, the types and extent of employment available to the refugee, and the extent to which the refugee received permission to hold property and to enjoy other rights and privileges, such as travel documentation including a right of entry and/or reentry, education, public relief, or naturalization, ordinarily available to others resident in the country.

### § 208.16   Entitlement to withholding of deportation.

(a) *Consideration of application for withholding of deportation.* If the Asylum Officer denies an alien's application for asylum, he shall also decide whether the alien is entitled to withholding of deportation under section 243(h) of the Act. If the application for asylum is granted, no decision on withholding of deportation will be made unless and until the grant of asylum is later revoked or terminated and deportation proceedings at which a new request for withholding of deportation is made are commenced. In such proceedings, an Immigration Judge may adjudicate both a renewed asylum claim and a request for withholding of deportation simultaneously whether or not asylum is granted.

(b) *Eligibility for withholding of deportation; burden of proof.* The burden of proof is on the applicant for withholding of deportation to establish that his life or freedom would be threatened in the proposed country of deportation on account of race, religion, nationality, membership in a particular social group, or political opinion. The testimony of the applicant, if credible in light of general conditions in the applicant's country of nationality or last habitual residence, may be sufficient to sustain the burden of proof without corroboration. The evidence shall be evaluated as follows:

(1) The applicant's life or freedom shall be found to be threatened if it is more likely than not that he would be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion.

(2) If the applicant is determined to have suffered persecution in the past

such that his life or freedom was threatened in the proposed country of deportation on account of race, religion, nationality, membership in a particular social group, or political opinion, it shall be presumed that his life or freedom would be threatened on return to that country unless a preponderance of the evidence establishes that conditions in the country have changed to such an extent that it is no longer more likely than not that the applicant would be so persecuted there.

(3) In evaluating whether the applicant has sustained the burden of proving that his life or freedom would be threatened in a particular country on account of race, religion, nationality, membership in a particular social group, or political opinion, the Asylum Officer or Immigration Judge shall not require the applicant to provide evidence that he would be singled out individually for such persecution if:

(i) He establishes that there is a pattern or practice in the country of proposed deportation of persecution of groups of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion; and

(ii) He establishes his own inclusion in and identification with such group of persons such that it is more likely than not that his life or freedom would be threatened upon return.

(4) In addition, the Asylum Officer or Immigration Judge shall give due consideration to evidence that the life or freedom of nationals or residents of the country of claimed persecution is threatened if they leave the country without authorization or seek asylum in another country.

(c) *Approval or denial of application.* The following standards shall govern approval or denial of applications for withholding of deportation:

(1) Subject to paragraph (c)(2) of this section, an application for withholding of deportation to a country of proposed deportation shall be granted if the applicant's eligibility for withholding is established pursuant to paragraph (b) of this section.

(2) An application for withholding of deportation shall be denied if:

(i) The alien ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion;

(ii) The alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States;

(iii) There are serious reasons for considering that the alien has committed a serious nonpolitical crime outside the United States prior to arrival in the United States; or

(iv) There are reasonable grounds for regarding the alien as a danger to the security of the United States.

(3) If the evidence indicates that one or more of the grounds for denial of withholding of deportation enumerated in paragraph (c)(2) of this section apply, the applicant shall have the burden of proving by a preponderance of the evidence that such grounds do not apply.

(4) In the event that an applicant is denied asylum solely in the exercise of discretion, and the applicant is subsequently granted withholding of deportation under this section, thereby effectively precluding admission of the applicant's spouse or minor children following to join him, the denial of asylum shall be reconsidered. Factors to be so considered will include the reasons for the denial and reasonable alternatives available to the applicant such as reunification with his spouse or minor children in a third country.

### § 208.17   Decision.

The decision of an Asylum Officer to grant or deny asylum or withholding of deportation shall be communicated in writing to the applicant, the District Director having jurisdiction over the place of the applicant's residence or over the port of entry from which he sought admission to the United States, the Assistant Commissioner, Refugees, Asylum, and Parole, and the Director of the Asylum Policy and Review Unit of the Department of Justice. An adverse decision will state why asylum or withholding of deportation was denied and will contain an assessment of the applicant's credibility.

### § 208.18   Review of decisions and appeal.

(a) The Assistant Commissioner, Office of Refugees, Asylum, and Parole, shall have authority to review decisions by Asylum Officers, before they become effective, in any cases he shall designate. The Office of the Deputy Attorney General, assisted by the Asylum Policy and Review Unit, shall have authority to review decisions by Asylum Officers, before they become effective, in any cases designated pursuant to 28 CFR 0.15(f)(3). There shall be no right of appeal to the Office of Refugees, Asylum, and Parole, to the Office of the Deputy Attorney General, or to the Asylum Policy and Review Unit, and parties shall have no right to

appear before such offices in the course of such review.

(b) Except as provided in § 253.1(f) of this chapter, there shall be no appeal from a decision of an Asylum Officer. However, an application for asylum or withholding of deportation may be renewed before an Immigration Judge in exclusion or deportation proceedings. If exclusion or deportation proceedings have not been instituted against an applicant within 30 days of the Asylum Officer's final decision, the applicant may request in writing that the District Director having jurisdiction over the applicant's place of residence commence such proceedings. Absent exceptional circumstances, the District Director shall thereafter promptly institute proceedings against the applicant.

(c) A denial of asylum or withholding of deportation may only be reviewed by the Board of Immigration Appeals in conjunction with an appeal taken under 8 CFR part 3.

### § 208.19  Motion to reopen or reconsider.

(a) A proceeding in which asylum or withholding of deportation was denied may be reopened or a decision from such a proceeding reconsidered for proper cause upon motion pursuant to the requirements of 8 CFR 3.2, 3.8, 3.22, 103.5, and 242.17 where applicable.

(b) A motion to reopen or reconsider shall be filed:

(1) With the District Director having jurisdiction over the location at which the prior determination was made who shall forward the motion immediately to an Asylum Officer; or

(2) With the Office of the Immigration Judge having jurisdiction over the prior proceeding.

### § 208.20  Approval and employment authorization.

When an alien's application for asylum is granted, he is granted asylum status for an indefinite period. Employment authorization is automatically granted or continued for persons granted asylum or withholding of deportation unless the alien is detained pending removal to a third country. Appropriate documentation showing employment authorization shall be provided by the INS.

### § 208.21  Admission of asylee's spouse and children.

(a) *Eligibility.* A spouse, as defined in section 101(a)(35) of the Act, or child, as defined in section 101(b)(1) (A), (B), (C), (D), or (E) of the Act, may also be granted asylum if accompanying or following to join the principal alien, unless it is determined that:

(1) The spouse or child ordered, incited, assisted, or otherwise participated in the persecution of any persons on account of race, religion, nationality, membership in a particular social group, or political opinion;

(2) The spouse or child, having been convicted by a final judgment of a particularly serious crime in the United States, constitutes a danger to the community of the United States; or

(3) There are reasonable grounds for regarding the spouse or child a danger to the security of the United States.

(b) *Relationship.* The relationship of spouse and child as defined in section 101(b)(1) of the Act must have existed at the time the principal alien's asylum application was approved, except for children born to or legally adopted by the principal alien and spouse after approval of the principal alien's asylum application.

(c) *Spouse or child in the United States.* When a spouse or child of an alien granted asylum is in the United States but was not included in the principal alien's application, the principal alien may request asylum for the spouse or child by filing Form I–730 with the District Director having jurisdiction over his place of residence, regardless of the status of that spouse or child in the United States.

(d) *Spouse or child outside the United States.* When a spouse or child of an alien granted asylum is outside the United States, the principal alien may request asylum for the spouse or child by filing form I–730 with the District Director, setting forth the full name, relationship, date and place of birth, and current location of each such person. Upon approval of the request, the District Director shall notify the Department of State, which will send an authorization cable to the American Embassy or Consulate having jurisdiction over the area in which the asylee's spouse or child is located.

(e) *Denial.* If the spouse or child is found to be ineligible for the status accorded under section 208(c) of the Act, a written notice explaining the basis for denial shall be forwarded to the principal alien. No appeal shall lie from this decision.

(f) *Burden of proof.* To establish the claim of relationship of spouse or child as defined in section 101(b)(1) of the Act, evidence must be submitted with the request as set forth in part 204 of this chapter. Where possible this will consist of the documents specified in 8 CFR 204.2(c)(2) and (c)(3). The burden of proof is on the principal alien to establish by a preponderance of the evidence that any person on whose

behalf he is making a request under this section is an eligible spouse or child.

(g) *Duration.* The spouse or child qualifying under section 208(c) of the Act shall be granted asylum for an indefinite period unless the principal's status is revoked.

### § 208.22  Effect on deportation proceedings.

(a) An alien who has been granted asylum may not be excluded or deported unless his asylum status is revoked pursuant to § 208.24. An alien in exclusion or deportation proceedings who is granted withholding of deportation may not be deported to the country as to which his deportation is ordered withheld unless withholding of deportation is revoked pursuant to § 208.24.

(b) When an alien's asylum status or withholding of deportation is revoked under this chapter, he shall be placed in exclusion or deportation proceedings. Exclusion or deportation proceedings may be conducted concurrently with a revocation hearing scheduled under § 208.24.

### § 208.23  Restoration of status.

An alien who was maintaining his nonimmigrant status at the time of filing an application for asylum or withholding of deportation may continue or be restored to that status, if it has not expired, notwithstanding the denial of asylum or withholding of deportation.

### § 208.24  Revocation of asylum or withholding of deportation.

(a) *Revocation of asylum by the Assistant Commissioner, Office of Refugees, Asylum, and Parole.* Upon motion by the Assistant Commissioner and following a hearing before an Asylum Officer, the grant to an alien of asylum made under the jurisdiction of an Asylum Officer may be revoked if, by a preponderance of the evidence, the Service establishes that:

(1) The alien no longer has a well-founded fear of persecution upon return due to a change of conditions in the alien's country of nationality or habitual residence;

(2) There is a showing of fraud in the alien's application such that he was not eligible for asylum at the time it was granted; or

(3) The alien has committed any act that would have been grounds for denial of asylum under § 208.14(c).

(b) *Revocation of withholding of deportation by the Assistant Commissioner, Office of Refugees, Asylum, and Parole.* Upon motion by the Assistant Commissioner, and following a hearing before an Asylum Officer, the

grant to an alien of withholding of deportation made under the jurisdiction of an Asylum Officer may be revoked if, by clear and convincing evidence, the Service establishes that:

(1) The alien is no longer entitled to withholding of deportation due to a change of conditions in the country to which deportation was withheld;

(2) There is a showing of fraud in the alien's application such that he was not eligible for withholding of deportation at the time it was granted;

(3) The alien has committed any other act that would have been grounds for denial of withholding of deportation under § 208.16(c)(2).

(c) *Notice to applicant.* Upon motion by the Assistant Commissioner to revoke asylum status or withholding of deportation, the alien shall be given notice of intent to revoke, with the reason therefore, at least thirty days before the hearing by the Asylum Officer. The alien shall be provided the opportunity to present evidence tending to show that he is still eligible for asylum or withholding of deportation. If the Asylum Officer determines that the alien is no longer eligible for asylum or withholding of deportation, the alien shall be given written notice that asylum status or withholding of deportation along with employment authorization are revoked.

(d) *Revocation of derivative status.* The termination of asylum status for a person who was the principal applicant shall result in termination of the asylum status of a spouse or child whose status was based on the asylum application of the principal.

(e) *Reassertion of asylum claim.* A revocation of asylum or withholding of deportation pursuant to paragraphs (a) or (b) of this section shall not preclude an applicant from reasserting an asylum or withholding of deportation claim in any subsequent exclusion or deportation proceeding.

(f) *Review.* The Office of the Deputy Attorney General, assisted by the Asylum Policy and Review Unit, shall have authority to review decisions to revoke asylum or withholding of deportation, before they become effective, in any cases designated pursuant to 28 CFR 0.15(f)(3). There shall be no right of appeal to the Office of the Deputy Attorney General or to the Asylum Policy and Review Unit and parties shall have no right to appear before such offices in the course of such review.

(g) *Revocation of asylum or withholding of deportation by the Executive Office for Immigration Review.* An Immigration Judge or the Board of Immigration Appeals may

reopen a case pursuant to § 3.2 or § 242.22 of this chapter for the purpose of revoking a grant of asylum or withholding of deportation made under the exclusive jurisdiction of an Immigration Judge. In a case of a reopened proceeding, the Service must similarly establish by the appropriate standard of evidence one or more of the grounds set forth in paragraphs (a) or (b) of this section. Any revocation under this paragraph may occur in conjunction with an exclusion or deportation proceeding.

## PART 236—[AMENDED]

7. The authority citation for part 236 is revised to read as follows:

**Authority:** 8 U.S.C. 1103, 1182, 1224, 1225, 1226, 1362.

8. In Part 236, Exclusion of Aliens, § 236.3 is revised to read as follows:

### § 236.3   Applications for asylum or withholding of deportation.

(a) If an alien expresses fear of persecution or harm upon return to his country of origin or to a country to which he may be deported after exclusion from the United States pursuant to part 237 of this chapter, the Immigration Judge shall:

(1) Advise the alien that he may apply for asylum in the United States or withholding of deportation to that other country; and

(2) Make available the appropriate application forms.

(b) An application for asylum or withholding of deportation must be filed with the Office of the Immigration Judge, pursuant to § 208.4(b) of this chapter. Upon receipt of the application, the Office of the Immigration Judge shall forward a copy to the Bureau of Human Rights and Humanitarian Affairs of the Department of State for their comments pursuant to § 208.11 of this chapter, and shall calendar the case for hearing, which shall be deferred pending receipt of the Department of State's comments. The reply, if any, from the Department of State, unless classified under E.O. 12356 (3 CFR, 1982 Comp., p. 166), shall be given to both the applicant and to the Trial Attorney representing the government.

(c) Applications for asylum or withholding of deportation so filed will be decided by the Immigration Judge pursuant to the standards and standards established in part 208 of this chapter after an evidentiary hearing that is necessary to resolve material factual issues in dispute. An evidentiary hearing extending beyond issues related to the basis for a mandatory denial of the application pursuant to 8 CFR 208.14 or

208.16 is not necessary once the Immigration Judge has determined that such a denial is required.

(1) Evidentiary hearings on applications for asylum or withholding of deportation will be closed to the public unless the applicant expressly requests that it be open pursuant to 8 CFR 236.2.

(2) Nothing in this section is intended to limit the authority of the Immigration Judge properly to control the scope of any evidentiary hearing.

(3) During the exclusion hearing, the applicant shall be examined under oath on his application and may present evidence and witnesses on his own behalf. The applicant has the burden of establishing that he is a refugee as defined in section 101(a)(42) of the Act pursuant to the standard set forth in § 208.13 of this chapter.

(4) The Trial Attorney for the government may call witnesses and present evidence for the record, including information classified under E.O. 12356 (3 CFR, 1982 Comp., p. 166), provided the Immigration Judge or the Board has determined that such information is relevant to the hearing. When the Immigration Judge receives such classified information he shall inform the applicant. The agency that provides the classified information to the Immigration Judge may provide an unclassified summary of the information for release to the applicant whenever it determines it can do so consistently with safeguarding both the classified nature of the information and its source. The summary should be as detailed as possible, in order that the applicant may have an opportunity to offer opposing evidence. A decision based in whole or in part on such classified information shall state that such information is material to the decision.

(d) The decision of an Immigration Judge to grant or deny asylum or withholding of deportation shall be communicated to the applicant and to the Trial Attorney for the government. An adverse decision will state why asylum or withholding of deportation was denied.

## PART 242—[AMENDED]

9. The authority citation of part 242 is revised to read as follows:

**Authority:** 8 U.S.C. 1103, 1252, 1254, 1362.

10. In Part 242, Proceedings To Determine Deportability of Aliens in the United States: Apprehension, Custody, Hearing, and Appeal, § 242.17(c), is revised to read as follows:

§ 242.17(c)  Ancillary matters, applications.
* * * * *

(c) *Applications for asylum or withholding of deportation.* (1) The Immigration Judge shall notify the respondent that if he is finally ordered deported his deportation will in the first instance be directed pursuant to section 243(a) of the Act to the country designated by the respondent and shall afford him an opportunity then and there to make such designation. The Immigration Judge shall then specify and state for the record the country, or countries in the alternative, to which respondent's deportation will be directed pursuant to section 243(a) of the Act if the country of his designation will not accept him into its territory, or fails to furnish timely notice of acceptance, or if the respondent declines to designate a country.

(2) If the alien expresses fear of persecution or harm upon return to any of the countries to which he might be deported pursuant to paragraph (c)(1) of this section, the Immigration Judge shall:

(i) Advise the alien that he may apply for asylum in the United States or withholding of deportation to those countries; and

(ii) Make available the appropriate application forms.

(3) An application for asylum or withholding of deportation must be filed with the Office of the Immigration Judge, pursuant to § 208.4(b) of this chapter. Upon receipt of the application, the Office of the Immigration Judge shall forward a copy to the Bureau of Human Rights and Humanitarian Affairs of the Department of State for their comments pursuant to § 208.11 of this chapter, and shall calendar the case for hearing, which shall be deferred pending receipt of the Department of State's comments. The reply, if any, of the Department of State, unless classified under E.O. 12356 (3 CFR, 1982 Comp., p. 166), shall be given to both the applicant and to the Trial Attorney representing the government.

(4) Applications for asylum or withholding of deportation so filed will be decided by the Immigration Judge pursuant to the requirements and standards established in part 208 of this chapter after an evidentiary hearing that is necessary to resolve factual issues in dispute. An evidentiary hearing extending beyond issues related to the basis for a mandatory denial of the application pursuant to 8 CFR 208.14 or 208.16 is not necessary once the Immigration Judge has determined that such a denial is required.

(i) Evidentiary hearings on applications for asylum or withholding of deportation will be open to the public unless the applicant expressly requests that it be closed.

(ii) Nothing in this section is intended to limit the authority of the Immigration Judge properly to control the scope of any evidentiary hearing.

(iii) During the deportation hearing, the applicant shall be examined under oath on his application and may present evidence and witnesses in his own behalf. The applicant has the burden of establishing that he is a refugee as defined in section 101(a)(42) of the Act pursuant to the standard set forth in § 208.13 of this chapter.

(iv) The Trial Attorney for the government may call witnesses and present evidence for the record, including information classified under E.O. 12356 (3 CFR, 1982 Comp., p. 166), provided the Immigration Judge or the Board has determined that such information is relevant to the hearing. When the Immigration Judge receives such classified information he shall inform the applicant. The agency that provides the classified information to the Immigration Judge may provide an unclassified summary of the information for release to the applicant, whenever it determines it can do so consistently with safeguarding both the classified nature of the information and its source. The summary should be as detailed as possible, in order that the applicant may have an opportunity to offer opposing evidence. A decision based in whole or in part on such classified information shall state whether such information is material to the decision.

(5) The decision of an Immigration Judge to grant or deny asylum or withholding of deportation shall be communicated to the applicant and to the Trial Attorney for the government. An adverse decision will state why asylum or withholding of deportation was denied.

* * * * *

**PART 253—[AMENDED]**

11. The authority citation for part 253 is revised to read as follows:

Authority: 8 U.S.C. 1103, 1182, 1282, 1283, 1285.

12. In Part 253, Parole of Alien Crewman, § 253.1(f) is revised to read as follows:

§ 253.1  Parole.
* * * * *

(f) *Crewman, stowaway, or alien temporarily excluded under section 235(c) alleging persecution.* Any alien crewman, stowaway, or alien temporarily excluded under section 235(c) of the Act who alleges that he cannot return to his country of nationality or last habitual residence (if not a national of any country) because of fear of persecution in that country on account of race, religion, nationality, membership in a particular social group, or political opinion, is eligible to apply for asylum or withholding of deportation under part 208 of this chapter.

(1) If the alien is on a vessel or other conveyance and makes such fear known to an immigration inspector or other official making an examination on the conveyance, he shall be promptly removed from the conveyance. If the alien makes his fear known to an official while off such conveyance, he shall not be returned to the conveyance but shall be retained in or transferred to the custody of the Service.

(2) In either case, the alien shall be provided the appropriate application forms and such other information as is required by § 208.5 of this chapter and may then have ten (10) days within which to file an application for such relief with the District Director having jurisdiction over the port of entry from which the applicant seeks entry into the United States. The District Director, pursuant to § 208.4(a) of this chapter, shall immediately forward any such application to an Asylum Officer with jurisdiction over his district.

(3) Pending adjudication of the application by the Asylum Officer, the applicant may be detained by the Service, or paroled into the custody of the ship's agent or otherwise paroled in accordance with § 212.5 of this chapter and shall not be excluded or deported before a decision is rendered by the Asylum Officer on his asylum application.

(4) A decision denying asylum to an alien crewman or stowaway, but not an alien temporarily excluded under section 235(c) of this chapter, may be appealed directly to the Board of Immigration Appeals. Such appeal must be filed within ten (10) days of the Asylum Officer's decision by filing a notice of appeal on Form I–290A with the District Director, who shall immediately forward the notice to the Asylum Officer. The Asylum Officer shall transmit the notice of appeal, his decision, and the record on which that decision was based, to the Board of Immigration Appeals. The filing of a notice of appeal shall stay the exclusion or deportation of the applicant pending decision on the appeal by the Board.

* * * * *

Dated: July 18, 1990.

Dick Thornburgh,

*Attorney General.*

[FR Doc. 90–17453 Filed 7–26–90; 8:45 am]

BILLING CODE 4410-01-M

---

## DEPARTMENT OF AGRICULTURE

## Animal and Plant Health Inspection Service

## 9 CFR Part 166

[Docket No. 90–129]

## Swine Health Protection

**AGENCY:** Animal and Plant Health Inspection Service, USDA.

**ACTION:** Final rule.

**SUMMARY:** We are amending the Swine Health Protection regulations by (1) removing Indiana from the list of States that permit the feeding of treated garbage to swine and adding it to the list of States that prohibit garbage feeding, (2) removing Maryland from the list of States that prohibit garbage feeding and adding it to the list of States that permit the feeding of treated garbage to swine, and (3) removing Alaska from the list of States that issue garbage treating licenses under cooperative agreements with the Animal and Plant Health Inspection Service, United States Department of Agriculture. These actions reflect changes in the status of these States, and thereby facilitate the administration of the Swine Health Protection regulations.

**EFFECTIVE DATE:** August 27, 1990.

**FOR FURTHER INFORMATION CONTACT:**
Dr. William C. Stewart, Chief Staff Veterinarian, Swine Diseases Staff, VS, APHIS, USDA, Room 736, Federal Building, 6505 Belcrest Road, Hyattsville, Md 20782, 301–436–7767.

**SUPPLEMENTARY INFORMATION:**

Background

The "Swine Health Protection" regulations (contained in 9 CFR part 166 and referred to below as the regulations) were established under the Swine Health Protection Act (contained in 7 U.S.C. 3801 *et seq.,* and referred to below as the Act). The Act and the regulations contain provisions concerning the treatment of garbage to be fed to swine and the feeding of that garbage to swine. These provisions operate as safeguards against the spread of certain swine diseases in the United States.

On April 23, 1990, we published in the Federal Register (55 FR 15236–15237, Docket Number 89–122), a document proposing to (1) remove Indiana from the list of States in § 166.15(b) that permit the feeding of treated garbage to swine and add it to the list of States in § 166.15(a) that prohibit the feeding of garbage to swine; (2) remove Maryland from the list of States in § 166.15(a) that prohibit the feeding of garbage to swine and add it to the list of States in § 166.15(b) that permit the feeding of treated garbage to swine; and (3) remove Alaska from the list in § 166.15(d) of States that have cooperative agreements with APHIS. We also proposed to make nonsubstantive changes to the regulations in § 166.15(b) for the purposes of clarity.

Comments on the proposed rule were required to be received on or before June 22, 1990. We did not receive any comments. Based on the rationale set forth in the proposal and in this document, we are adopting the provisions of the proposal as a final rule without change.

Executive Order 12291 and Regulatory Flexibility Act

We are issuing this rule in conformance with Executive Order 12291, and we have determined that it is not a "major rule." Based on information compiled by the Department, we have determined that this rule will have an effect on the economy of less than $100 million; will not cause a major increase in costs or prices for consumers, individual industries, Federal, State, or local government agencies, or geographic regions; and will not cause a significant adverse effect on competition, employment, investment, productivity, innovation, or on the ability of United States-based enterprises to compete with foreign-based enterprises in domestic or export markets.

Almost all persons who operate facilities for the treatment of garbage to be fed to swine or who permit the feeding of garbage to swine are considered small entities.

Indiana has no licensed garbage feeders; therefore, prohibiting the feeding of garbage to swine in Indiana will have no economic impact there. This rule reflects changes that Indiana has already made with respect to Swine Health Protection.

Maryland has one licensed garbage feeder, and Alaska has two. Changing the status of Maryland and Alaska will have no effect on the business operations of these entities; this rule reflects changes that Maryland and Alaska have already made with respect to swine health protection. Therefore, it is not anticipated that the licensed garbage feeders operating in Maryland and Alaska will experience any economic impact as a result of this rule.

Under these circumstances, the Administrator of the Animal and Plant Health Inspection Service has determined that this rule will not have a significant economic impact on a substantial number of small entities.

Paperwork Reduction Act

This rule contains no information collection or recordkeeping requirements under the Paperwork Reduction Act of 1980 (44 U.S.C. 3501 *et seq.*).

Executive Order 12372

This program/activity is listed in the Catalog of Federal Domestic Assistance under No. 10.025 and is subject to Executive Order 12372, which requires intergovernmental consultation with State and local officials. (See 7 CFR part 3015, subpart V.)

List of Subjects in 9 CFR Part 166

African swine fever, Animal diseases, Foot-and-mouth disease, Garbage, Hog cholera, Hogs, Swine-vesicular disease, Vesicular exanthema of swine.

## PART 166—SWINE HEALTH PROTECTION

Accordingly, 9 CFR part 166 is amended as follows:

1 The authority citation for part 166 continues to read as follows:

**Authority:** 7 U.S.C. 3802, 3803, 3804, 3808, 3809, 3811; 7 CFR 2.17, 2.51, and 371.2(d).

§ 166.15 [Amended]

2. Paragraph (a) of § 166.15 is amended by adding "Indiana," immediately after "Illinois," and by removing "Maryland".

3. Paragraph (b) of § 166.15 is amended by correcting the spelling of "Main" to "Maine"; by adding "Maryland," immediately after "Maine"; and by removing "Indiana".

4. Paragraph (d) of § 166.15 is amended by removing "Alaska,".

Done in Washington, DC, this 23rd day of July 1990.

James W. Glosser,

*Administrator, Animal and Plant Health Inspection Service.*

[FR Doc. 90–17539 Filed 7–26–90; 8:45 am]

BILLING CODE 3410-34-M

AR480

Commission, 43 State Street, P.O. Box 1058, Montpelier, Vermont 05601, (802) 229–2028 (fax).

For more information contact the Compact Commission offices.

**List of Subjects in 7 CFR Parts 1301, 1304 and 1306**

Milk.

**Codification in Code of Federal Regulations**

For reasons set forth in the preamble, the Northeast Dairy Compact Commission proposes to amend 7 CFR Chapter XIII as follows:

**PART 1301—DEFINITIONS**

1. The authority citation for part 1301 continues to read as follows:

**Authority:** 7 U.S.C. 7256.

2. Section 1301.12 is revised to read as follows:

**§ 1301.12  Producer milk.**

*Producer milk* means milk that the handler has received from producers and is physically moved to a pool plant in the regulated area or is diverted pursuant to § 1301.23(c). The quantity of milk received by a handler from producers shall include any milk of a producer that was not received at any plant but which the handler or an agent of the handler has accepted, measured, sampled, and transferred from the producer's farm tank into a tank truck during the month. Such milk shall be considered as having been received at the pool plant at which other milk from the same farm of that producer is received by the handler during the month, except that in the case of a cooperative association in its capacity as a handler under § 1301.9(d), the milk shall be considered as having been received at a plant in the zone location of the pool plant, or pool plants within the same zone, to which the greatest aggregate quantity of the milk of the cooperative association in such capacity was moved during the current month or the most recent month.

3. In § 1301.23, paragraph (c) is revised to read as follows:

**§ 1301.23  Diverted milk.**

\* \* \* \* \*

(c) Milk moved, as described in paragraphs (a) and (b) of this section, from dairy farmers' farms to partially regulated plants having Class I distribution in the regulated area in excess of 35 percent in the months of September through November and 45 percent in other months, of the total quantity of producer milk received (including diversions) by the handler during the month shall not be diverted

milk. Such milk, and any other milk reported as diverted milk that fails to meet the requirements set forth in this section, shall be considered as having been moved directly from the dairy farmers' farms to the plant of physical receipt, and if that plant is a nonpool plant the milk shall be excluded from producer milk. Milk moved, as described in paragraph (a) and (b) of this section, from a dairy farmer's farm to a plant located outside of the regulated area, except a partially regulated plant having Class I disposition in the regulated area, that volume of milk shall be excluded from producer milk.

**PART 1304—CLASSIFICATION OF MILK**

1. The authority citation of part 1304 continues to read as follows:

**Authority:** 7 U.S.C. 7256.

2. Section 1304.2 is amended by adding paragraph (c) to read as follows:

**§ 1304.2  Classification of transfers and diversions.**

\* \* \* \* \*

(c) Fluid milk products (not including bulk transfers of skimmed milk and condensed milk) transferred or diverted in bulk from a pool plant to a plant located outside of the regulated area, except a partially regulated plant having Class I disposition in the regulated area, that volume shall be excluded from producer milk. The milk excluded pursuant to this paragraph shall be prorated to all sources of milk received at this plant.

**PART 1306—COMPACT OVER-ORDER PRODUCER PRICE**

1. The authority for part 1306 continues to read as follows:

**Authority:** 7 U.S.C. 7256.

2. In § 1306.3 redesignate paragraphs (d) through (f) as paragraphs (e) through (g) and add new paragraph (d) to read as follows:

**§ 1306.3  Computation of basic over-order producer price**

\* \* \* \* \*

(d) Beginning with the August 1998 pool, subtract from the total value computed pursuant to paragraph (a) of this section, an amount estimated by the Commission for the purpose of retaining a reserve for payment of obligations pursuant to § 1301.13(e) of this chapter. Surplus funds from this reserve shall be returned to the producer-settlement fund.

\* \* \* \* \*

Dated: June 5, 1998.

**Kenneth M. Becker,**

*Executive Director.*

[FR Doc. 98–15547 Filed 6–10–98; 8:45 am]

**BILLING CODE 1650–01–P**

**DEPARTMENT OF JUSTICE**

**Immigration and Naturalization Service**

**8 CFR Part 208**

**[INS Order No. 1865–97; AG Order No. 2164–98]**

**RIN 1115–AE93**

**Executive Office for Immigration Review; New Rules Regarding Procedures for Asylum and Withholding of Removal**

**AGENCY:** Immigration and Naturalization Service; Executive Office for Immigration Review, Department of Justice.

**ACTION:** Proposed rule.

**SUMMARY:** This rule proposes to amend the Department regulations that govern asylum and withholding of removal. The amendments focus on portions of the regulations that deal with cases where an applicant has established past persecution or where the applicant may be able to avoid persecution in his or her home country by relocating to another area of that country. In the current regulation, these portions set out restrictive guidelines about how the Attorney General's discretion should be exercised in cases where past persecution is established and about what kind of relevant evidence can be considered in determining whether an applicant has a well-founded fear of future persecution. This rule is intended to establish new guidelines about these issues. The rule continues to provide that, in cases where the applicant has established past persecution, the Attorney General may deny asylum in the exercise of discretion if it is established by a preponderance of the evidence that the applicant does not face a reasonable possibility of future persecution in the applicant's country of nationality or, if stateless, the applicant's country of last habitual residence. In this regard, however, the rule has been changed to make clear that the asylum officer or immigration judge may rely on any evidence relating to the likelihood of future persecution. The rule makes similar changes to regulations regarding withholding of deportation. The rule also identifies new factors that may be considered in the exercise of discretion in asylum cases where the alien has established past persecution but may not have a

well-founded fear of future persecution. The rule further provides that the asylum and withholding standards require a showing that a risk of harm exists throughout the country in question.

**DATES:** Written comments must be submitted on or before July 13, 1998.

**ADDRESSES:** Please submit written comments in triplicate to Director, Policy Directives and Instructions Branch, Immigration and Naturalization Service, 425 I Street, N.W., Room 5307, Washington, D.C. 20536. To ensure proper handling, please reference INS No. 1865–97 on your correspondence. Comments are available for public inspection at the above address by calling (202) 514–3048 to arrange for an appointment.

**FOR FURTHER INFORMATION CONTACT:** Christine Davidson, Senior Policy Analyst, Asylum Division, Immigration and Naturalization Service, 425 I Street, N.W., Washington, D.C. 20536, Attn: ULLICO Bldg., 3rd Floor, (202) 305–2663; Margaret M. Philbin, General Counsel, Executive Office for Immigration Review, Suite 2400, 5107 Leesburg Pike, Falls Church, Virginia 22041, (703) 305–0470.

**SUPPLEMENTARY INFORMATION:** Section 208 of the Immigration and Nationality Act (Act) provides that an alien may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee within the meaning of section 101(a)(42)(A) of the Act. Under this section, a refugee is defined as:

[A]ny person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion * * *

Although this provision is based on the refugee definition found in the 1951 Convention Relating to the Status of Refugees (as modified by the 1967 Protocol Relating to the Status of Refugees), it differs slightly from the international definition by providing that a person may qualify as a refugee on the basis of past persecution alone, without having a well-founded fear of future persecution. Nevertheless, the fact that a person is a refugee does not automatically entitle the person to asylum. The Attorney General must determine whether the person warrants a grant of asylum in the exercise of

discretion. *INS* v. *Cardoza-Fonseca*, 480 U.S. 421, 428 n.5 (1987); 8 CFR 208.14 (a) and (b).

Consistent with the statute, the current regulations provide that an applicant who establishes that he or she has suffered past persecution qualifies as a refugee. 8 CFR 208.13(b)(1). The regulations go on to describe how the Attorney General will exercise discretion with respect to a person who qualifies as a refugee on the basis of past persecution. The regulations first provide that such person shall be presumed to have a well-founded fear of future persecution unless a preponderance of the evidence establishes that, since the time of the persecution, conditions in the applicant's country of origin have changed to such an extent that the applicant no longer has a well-founded fear of persecution. 8 CFR 208.13(b)(1)(i). The regulations further provide that an applicant who has established past persecution, but does not have a well-founded fear of future persecution, will be denied asylum unless the applicant demonstrates compelling reasons for being unwilling to return to his or her country of origin arising out of the severity of the past persecution the applicant has suffered. 8 CFR 208.13(b)(1)(ii).

Since the promulgation of these regulations in 1990, important questions have arisen about the meaning of 8 CFR 208.13(b)(1)(i) and (ii). For example, some have questioned the relevance of paragraph (b)(1)(i) regarding the presumption of a well-founded fear of future persecution to be accorded an applicant who has suffered past persecution if such applicant already qualifies as a refugee. Others have expressed confusion about which party bears the burden of proof in showing whether the presumption identified in paragraph (b)(1)(i) has been overcome. Others have interpreted this paragraph to preclude consideration of evidence other than changes in country conditions in cases where the applicant has established past persecution. Paragraph (b)(1)(ii) also created ambiguity as to whether an applicant who has established past persecution also bears the burden of establishing a well-founded fear of future persecution in order to be granted asylum. Recent decisions by the Board of Immigration Appeals (BIA or Board) and by the Federal courts have interpreted these regulatory provisions and highlighted the need to change them.

This rule leaves intact the important principle that an applicant who has established past persecution on account of one of the five grounds is a refugee.

It also continues to provide that a person who has established past persecution on account of race, religion, nationality, membership in a particular social group, or political opinion shall be presumed to have a well-founded fear of future persecution on account of these same grounds. This presumption is relevant to whether the applicant warrants a grant of asylum in the exercise of discretion. The rule then makes clear that, in cases where the applicant has established past persecution, the application shall be referred or denied if it is established by a preponderance of the evidence that there is not a reasonable possibility of future persecution against the applicant on account of one of the five grounds, unless paragraph (b)(1)(iii) applies. This approach is consistent with longstanding principles articulated in case law. *See Matter of Chen*, 20 I&N 16 (BIA 1989).

In cases involving past persecution, we propose to maintain the use of a presumption and, for cases in immigration proceedings, the shifting to the Government of the burden of proof for rebutting the presumption. This burden-shifting fits well within the context of immigration court proceedings, with separate litigants appearing before an independent decisionmaker. Where an applicant establishes past persecution before an asylum officer during a non-adversarial asylum interview, it will be incumbent on the officer to elicit from the applicant or otherwise gather evidence bearing on future persecution and to evaluate whether a preponderance of the evidence indicates that the applicant no longer faces a reasonable possibility of persecution.

This rule also makes clear that, in determining whether there is a reasonable possibility of future persecution, the asylum officer or immigration judge may rely on any evidence relating to the possibility of future persecution against the applicant. This is an important change in light of the recent Board decision in *Matter of C–Y–Z*, Interim Decision #3319 (BIA 1997), which raises questions about how the existing regulation should be interpreted. In that decision, the Board addressed the case of an applicant who had suffered past persecution and was therefore entitled under the existing regulation to the presumption of a well-founded fear of future persecution. the Board interpreted 8 CFR 208.13(b)(1)(i) to preclude the consideration of any factors other than changed country conditions in determining whether the presumption of a well-founded fear was rebutted. In *Matter of Chen*, however,

which the existing regulatory provisions were intended to codify, the Board stated that, in cases where an applicant establishes past persecution, asylum may be denied as a matter of discretion if there is little likelihood of future persecution. To avoid any uncertainty about whether there is tension among the existing regulation, *Matter of Chen*, and *Matter of C–Y–Z*, we are changing the regulation so that it clearly allows consideration of any evidence, or lack thereof, bearing on future persecution in such cases. Administrative determinations under this rule, of course, remain subject to review by the Board of Immigration Appeals under current regulatory and statutory provisions.

We have also used the phrase "no reasonable possibility of future persecution" in lieu of the phrase "little likelihood of present persecution" used by the BIA in *Matter of Chen* in defining the standard of proof that the Government must meet to deny asylum in such cases. The "reasonable possibility" language is consistent with the Supreme Court's and the Department's regulatory interpretation of the well-founded fear standard. *See INS* v. *Cardoza-Fonseca,* 480 U.S. at 440; 8 CFR § 208.13(b)(2). We believe it is appropriate, therefore, to restate the reasonable possibility standard as the one that the Government must apply to determine whether a favorable exercise of discretion may be unwarranted in cases where applicants have established past persecution.

The rule also amends 8 CFR 208.13(b)(1)(ii) regarding discretionary grants of asylum in circumstances where a victim of past persecution no longer has a well-founded fear of persecution. The existing regulation allows that an applicant who has suffered past persecution, but who has no well-founded fear of future persecution, may be granted asylum in the exercise of discretion only if the applicant demonstrates compelling reasons for being unwilling to return to his or her country "arising out of the severity of the past persecution" for such a grant. In *Matter of H-*, Interim Decision #3276 (BIA 1996), the Board specifically addressed the exercise of discretion in cases when an applicant has established past persecution but has no well-founded fear of future persecution. The Board noted earlier decisions indicating that general humanitarian factors, unrelated to the circumstances that led to refugee status, such as age, health, or family ties, should also be considered in the exercise of discretion. One possible interpretation of this portion of the

Board's decision is that it authorizes the granting of asylum based on factors other than "compelling reasons arising out of the severity of the past persecution" to an applicant who has established past persecution but who has no well-founded fear of future persecution. In order to avoid any possible tension between this reading and the current regulation, which allows a grant of asylum only when there are compelling reasons related to the severity of the past persecution, we are amending the regulation.

The Department recognizes, however, that the existing regulation may represent an overly restrictive approach to the exercise of discretion in cases involving past persecution, but no well-founded fear of future persecution. The Department believes it is appropriate to broaden the standards for the exercise of discretion in such cases. For example, there may be cases where it is appropriate to offer protection to applicants who have suffered persecution in the past and who are at risk of future harm that is not related to a protected ground. Therefore, the rule includes, as a factor relevant to the exercise of discretion, whether the applicant may face a reasonable possibility of "other serious harm" upon return to the country of origin or last habitual residence. *See Matter of B-*, Int. Dec. #3251 (BIA 1995) (citing both the current civil strife in Afghanistan and the severity of the past persecution suffered by the applicant as grounds for a discretionary grant of asylum, despite of conclusion that the applicant no longer has a well-founded fear of persecution in that country). As with any other element of an asylum claim, the burden is on the applicant to establish that such grounds exist and warrant a humanitarian grant of asylum based on past persecution alone.

By "other serious harm," we mean harm that may not be inflicted on account of race, religion, nationality, membership in a particular social group, or political opinion, but such harm would have to be so "serious" as to equal the severity of persecution. We would not expect, for example, that mere economic disadvantage or the inability to practice one's chosen profession would qualify as "other serious harm." We believe that this emphasis on the applicant's risk of future harm is consistent with the protection function of the 1951 Convention Relating to the Status of Refugees, which governs the international legal obligations implemented through the domestic asylum and withholding laws.

The proposed rule would also amend 8 CFR 208.13(b)(2) to provide that, to meet the well-founded fear standard, the applicant must establish a reasonable possibility of harm *throughout* the applicant's country of nationality or last habitual residence. The Board and the Federal courts have long acknowledged the requirement of countrywide persecution as an integral component of the refugee definition, which cannot be met if the applicant reasonably could be expected to seek protection by relocating to another part of the country in question. *See Matter of Acosta*, 19 I&N Dec. 211,235 (BIA 1985), modified on other grounds, *Matter of Mogharrabi*, 19 I&N Dec. 439 (BIA 1987); *Etugh* v. *INS*, 921 F.2d 36, 39 (3d Cir. 1990); *Quintanilla-Ticas* v. *INS*, 783 F.2d 955,957 (9th Cir. 1986). In the context of a case involving only a fear of future persecution, it is important to note that the requirement of a reasonable possibility of harm throughout the country in question relates to the applicant's eligibility as a refugee, and is not merely a factor to be considered in the exercise of discretion.

This proposed rule emphasizes, however, that an applicant should not be denied asylum based on the fact that he or she could avoid future persecution by relocating within the country in question unless it would be reasonable to expect him or her do so. This approach is consistent with the position taken by the United Nations High Commissioner for Refugees that "[t]he fear of being persecuted need not always extend to the whole territory of the refugee's country of nationality * * *. [A] person will not be excluded from refugee status merely because he [or she] could have sought refuge in another part of the same country [] if[,] under all the circumstances, it would not have been reasonable to expect him [or her] to do so." United Nations High Commissioner for Refugees, *Handbook on Procedures and Criteria for Determining Refugee Status* ¶ 91 (1992).

The proposed rule provides that internal relocation will not be considered reasonable if there is a reasonable possibility that the applicant would face other serious harm in the place of potential relocation. We intend that this "other serious harm" standard for determining when internal relocation is not reasonable refers to the same type of "other serious harm" that may warrant a humanitarian grant of asylum to an applicant who shows past persecution but who has no well-founded fear of future persecution. In cases where the applicant has established past persecution, the Service would bear the burden of showing that

internal relocation is reasonable. In cases where the applicant has not established past persecution, it would be the applicant's burden to show that he or she is at risk of persecution in the country in question and that internal relocation is not reasonable in order to establish a well-founded fear of persecution. Regardless of who bears the burden of proof on the issue of internal relocation, such burden requires supporting such claims by documentary evidence, if available, including evidence on economic and regional conditions that would provide an objective context for the claim that relocation is, or is not, possible.

As with other aspects of the refugee definition, we expect that the Board and the federal courts, as they interpret this regulation in individual cases, will provide guidance on the question of when internal relocation is reasonable. We would expect, however, that the difficulties associated with an internal relocation option would have to be substantial to render relocation unreasonable. Underlying our approach to this issue is a recognition that the principle of internal relocation is intended to apply to cases where the applicant does not need protection abroad.

This proposed rule would also amend 8 CFR 208.16, governing entitlement to withholding of removal, to be consistent with amendments relating to asylum eligibility. First, the rule would provide that an applicant is eligible for withholding of removal only if the applicant establishes that it is more likely than not that he or she would be persecuted in the country of proposed removal and that internal relocation is not reasonable. Thus, as in the asylum context, the rule requires that the applicant must show that the threat of harm exists countrywide to be eligible for withholding, and further makes clear that a withholding applicant must seek protection through internal relocation only if it is reasonable to expect him or her to do so.

Second, as is currently the case, the rule affords the applicant a presumption of a future threat to life or freedom on account of race, religion, nationality, membership in a particular social group, or political opinion if the applicant establishes that he or she has suffered persecution in the past on account of these same grounds. This rule also provides an opportunity to rebut such a presumption if it can be established that the applicant no longer would face a threat to life or freedom. The rule makes an important change by indicating that evidence other than changed conditions in the country of proposed removal can

be taken into consideration in determining whether the applicant continues to face a threat to his or her life or freedom in that country. This is significant because, unlike asylum determinations, where the Attorney General has discretion to grant or deny asylum to a person who qualifies as a refugee, the Attorney General is required to grant withholding of removal to a person who establishes that his or her life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. The current language in 8 CFR 208.16(b)(2) appears to mandate a grant of withholding of removal where an applicant establishes that he or she has suffered persecution in the past unless there have been "changes in conditions" in the proposed country of removal. Significantly, this language appears to preclude consideration of other relevant types of evidence, including whether the applicant might safely relocate to a different part of the same country, and has been so construed by the courts. *See Singh* v. *Ilchert,* 63 F.3d 1501, 1510–11 (9th Cir. 1995). We believe that this result in *Singh* v. *Ilchert,* and in other decisions interpreting this regulatory provision, imposes unwarranted restrictions on the Attorney General's ability to consider relevant evidence. Under both domestic and international law, the requirement of a countrywide risk of persecution is an accepted element of refugee protection standards. Imposition of a regulatory restriction that precludes consideration of internal relocation options is inconsistent with a basic principle of international refugee protection: if an applicant is able to avail himself or herself of protection in any part of his or her country of origin, such applicant should not ordinarily need, or be entitled to, protection from another country. This rule changes the current regulation so that it clearly authorizes consideration of internal relocation options, as well as of any other evidence relevant to the possibility that an applicant would be at risk of future persecution, in determining whether an applicant has shown a likelihood of persecution or whether a presumption of a likelihood of persecution is rebutted.

**Regulatory Flexibility Act**

The Attorney General, in accordance with the Regulatory Flexibility Act (5 U.S.C. 605(b)), has reviewed this regulation and, by approving it, certifies that this rule will not have a significant impact on a substantial number of small entities for the following reason: this rule clarifies certain legal standards

involved in the adjudication of applications for asylum and withholding of removal; this clarification will not affect small entities.

**Unfunded Mandates Reform Act of 1995**

This rule will not result in the expenditure by State, local, and tribal governments, in the aggregate, or by the private sector, of $100 million or more in any one year, and it will not significantly or uniquely affect small governments. Therefore, no actions were deemed necessary under the provisions of the Unfunded Mandates Reform Act of 1995.

**Small Business Regulatory Enforcement Fairness Act of 1996**

This rule is not a major rule as defined by section 804 of the Small Business Regulatory Enforcement Act of 1996. This rule will not result in an annual effect on the economy of $100 million or more; a major increase in costs or prices; or significant adverse effects on competition, employment, investment, productivity, innovation, or on the ability of United States-based companies to compete with foreign-based companies in domestic and export markets.

**Executive Order 12866**

This rule is considered by the Department of Justice, Immigration and Naturalization Service, to be a "significant regulatory action" under Executive Order 12866, section 3(f), Regulatory Planning and Review. Accordingly, this regulation has been submitted to the Office of Management and Budget for review.

**Executive Order 12612**

The regulation adopted herein will not have substantial direct effects on the States, on the relationship between the National Government and the States, or on the distribution of power and responsibilities among the various levels of government. Therefore, in accordance with Executive Order 12612, it is determined that this rule does not have sufficient federalism implications to warrant the preparation of a Federalism Assessment.

**Executive Order 12988—Civil Justice Reform**

This proposed rule meets the applicable standards set forth in sections 3(a) and 3(b)(2) of Executive Order 12988.

## List of Subjects in 8 CFR Part 208

Administrative practice and procedure, Aliens, Immigration, Reporting and recordkeeping requirements

Accordingly, part 208 of chapter I of title 8 of the Code of Federal Regulations is proposed to be amended as follows:

## PART 208—PROCEDURES FOR ASYLUM AND WITHHOLDING OF REMOVAL

1. The authority citation for part 208 continues to read as follows:

**Authority:** 8 U.S.C. 1103, 1158, 1226, 1252, 1282; 8 CFR part 2.

2. In § 208.13, paragraph (b) is revised to read as follows:

### § 208.13   Establishing asylum eligibility.

*   *   *   *   *

(b) * * *

(1) *Past persecution.* An applicant shall be found to be a refugee on the basis of past persecution if the applicant can establish that he or she has suffered persecution in the past in the applicant's country of nationality or, if stateless, his or her country of last habitual residence, on account of race, religion, nationality, membership in a particular social group, or political opinion and is unable or unwilling to return to or avail himself or herself of the protection of that country owing to such persecution. An applicant who has been found to have established past persecution shall also be presumed to have a well-founded fear of persecution in the future on account of one of the five grounds mentioned above. This presumption may be rebutted if an asylum officer or immigration judge makes one of the findings described in paragraph (b)(1)(i) of this section.

(i) *Discretionary referral or denial.* Except as provided in this section, the asylum application of an alien found to be a refugee on the basis of past persecution shall be, in the exercise of discretion, referred or denied by an asylum officer or denied by an immigration judge if it is found by a preponderance of the evidence that:

(A) the applicant does not face a reasonable possibility of future persecution in the applicant's country of nationality or, if stateless, the applicant's country of last habitual residence on account of race, religion, nationality, membership in a particular social group, or political opinion; or

(B) the applicant could reasonably avoid future persecution by relocating to another part of the applicant's country of nationality or, if stateless, the

applicant's country of last habitual residence.

(ii) *Burden of proof.* In cases where an applicant has demonstrated past persecution under paragraph (b)(1) of this section before an immigration judge, the Service shall bear the burden of establishing the requirements of paragraphs (b)(1)(i) (A) or (B) of this section.

(iii) *Discretionary grant.* An applicant who has suffered past persecution and who does not face a reasonable possibility of future persecution or who could reasonably avoid future persecution by relocating within his or her country of nationality or, if stateless, his or her country of last habitual residence, may be granted asylum in the exercise of discretion if:

(A) the applicant has demonstrated compelling reasons for being unwilling or unable to return to that country arising out of the severity of the past persecution; or

(B) the applicant has established that there is a reasonable possibility that he or she may suffer other serious harm upon removal to that country, unless such a grant of asylum is barred under paragraph (c) of this section.

(2) *Well-founded fear of future persecution.*

(i) An applicant has a well-founded fear of persecution if:

(A) the applicant has a fear of persecution in his or her country of nationality or, if stateless, his or her country of last habitual residence, on account of race, religion, nationality, membership in a particular social group, or political opinion;

(B) there is a reasonable possibility of suffering such persecution if he or she were to return to that country; and

(C) he or she is unable or unwilling to return to or avail himself or herself of the protection of that country because of such fear.

(ii) An applicant does not have a well-founded fear of persecution if the applicant could reasonably avoid persecution by relocating to another part of the applicant's country of nationality or, if stateless, the applicant's country of last habitual residence.

(iii) In evaluating whether the applicant has sustained the burden of proving that he or she has a well-founded fear of persecution, the asylum officer or immigration judge shall not require the applicant to provide evidence that there is a reasonable possibility he or she would be singled out individually for persecution if:

(A) The applicant establishes that there is a pattern or practice in his or her country of nationality or, if stateless, his or her country of last habitual

residence, of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion; and

(B) The applicant establishes his or her own inclusion in and identification with such group of persons such that his or her fear of persecution upon return is reasonable.

(3) *Reasonableness of internal relocation.* For purposes of determinations under paragraphs (b)(1) (i) and (ii), and (b)(2) of this section, it would not be reasonable to expect an applicant to relocate within his or her country of nationality or, if stateless, his or her country of last habitual residence, to avoid persecution if the asylum officer or immigration judge finds that there is a reasonable possibility that the applicant would face other serious harm in the place of potential relocation. In cases where the persecutor is a national government, it shall be presumed that internal relocation would not be reasonable, unless the Service establishes that it would be reasonable for the applicant to relocate. In cases where the applicant has established past persecution before an immigration judge, the Service shall bear the burden of establishing that it would be reasonable for the applicant to relocate. In cases where the applicant has not established past persecution, the applicant shall bear the burden of establishing that it would not be reasonable for him or her to relocate.

*   *   *   *   *

3. In § 208.16, paragraphs (b)(1), (b)(2), and (b)(3) are revised to read as follows:

### § 208.16   Withholding of removal.

*   *   *   *   *

(b) * * *

(1) *Past threat to life or freedom.* (i) If the applicant is determined to have suffered past persecution in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion, it shall be presumed that the applicant's life or freedom would be threatened for the same reasons if removed to that country. This presumption may be rebutted if an asylum officer or immigration judge finds by a preponderance of the evidence that:

(A) The applicant's life or freedom would not be threatened on account of any of the five above-mentioned grounds upon the applicant's removal to that country; or

(B) The applicant could reasonably avoid a future threat to his or her life or

freedom by relocating to another part of the proposed country of removal.

(ii) In cases where the applicant has established past persecution before an immigration judge, the Service shall bear the burden of establishing the requirements of paragraphs (b)(1)(i)(A) or (B) of this section.

(2) *Future threat to life or freedom.* An applicant who has not suffered past persecution may demonstrate that his or her life or freedom would be threatened in the future in a country if he or she can establish that it is more likely than not that he or she would be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion upon removal to that country. Such an applicant cannot demonstrate that his or her life or freedom would be threatened if the asylum officer or immigration judge finds that the applicant could reasonably avoid a future threat to his or her life or freedom by relocating to another part of the proposed country of removal. In evaluating whether it is more likely than not that the applicant's life or freedom would be threatened in a particular country on account of race, religion, nationality, membership in a particular social group, or political opinion, the asylum officer or immigration judge shall not require the applicant to provide evidence that he or she would be singled out individually for persecution if:

(i) The applicant establishes that in that country there is a pattern or practice of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion; and

(ii) The applicant establishes his or her own inclusion in and identification with such group of persons such that it

is more likely than not that his or her life or freedom would be threatened upon return to that country.

(3) *Reasonableness of internal relocation.* For purposes of determinations under paragraphs (b)(1) and (b)(2) of this section, it would not be reasonable to expect an applicant to relocate within a country to avoid persecution if the asylum officer or immigration judge finds that there is a reasonable possibility that the applicant would face other serious harm in the place of potential relocation. In cases where the persecutor is a national government, it shall be presumed that internal relocation would not be reasonable, unless the Service establishes that it would be reasonable for the applicant to relocate. In cases where the applicant has established past persecution before an immigration judge, the Service shall bear the burden of establishing that it would be reasonable for the applicant to relocate. In cases where the applicant has not established past persecution, the applicant shall bear the burden of establishing that it would not be reasonable for him or her to relocate.

\*      \*      \*      \*      \*

Dated: June 5, 1998.

**Janet Reno,**

*Attorney General.*

[FR Doc. 98–15590 Filed 6–10–98; 8:45 am]

**BILLING CODE 4410–10–M**

Dated: June 4, 1998.

**Sadye E. Dunn,**

*Secretary, Consumer Product Safety Commission.*

[FR Doc. 98–15492 Filed 6–10–98; 8:45 am]

**BILLING CODE 6355–01–P**

**CONSUMER PRODUCT SAFETY COMMISSION**

**16 CFR Part 1616**

**Proposed Technical Changes; Standard for the Flammability of Children's Sleepwear: Sizes 7 Through 14; Correction**

**AGENCY:** Consumer Product Safety Commission.

**ACTION:** Proposed technical changes; correction.

**SUMMARY:** This document corrects a table in a proposed rule published in the **Federal Register** of May 21, 1998, regarding technical changes to the flammability standard for children's sleepwear. The table showing the distance from the shoulder for upper arm measurement for sizes 7 through 14 inadvertently omitted some fractions. This correction provides the complete and correct table. Due to the minor nature of this correction the Commission does not intend to extend the comment period for the proposed rule. However, if a commenter believes that additional time is necessary to comment due to the error, he/she may request an extension.

**FOR FURTHER INFORMATION CONTACT:** Margaret Neily, Project Manager, Directorate for Engineering Sciences, Consumer Product Safety Commission, Washington, D.C. 20207; telephone (301) 504–0508, extension 1293.

**Correction**

In proposed rule FR Doc. 98–13026, beginning on page 27877 in the issue of May 21, 1998, make the following correction. On page 27884, correct the table that follows Diagram 1 to read as follows:

| Distance from shoulder (G) to (H) for Upper Arm Measurement for Sizes 7 through 14 | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 11.4 cm 4½″ | 11.7 cm 4⅝″ | 11.9 cm 4¾″ | 12.5 cm 4⅞″ | 12.8 cm 5″ | 13.1cm 5⅛″ | 13.7cm 5⅜″ | 14.2cm 5⅝″ |

**DEPARTMENT OF TRANSPORTATION**

**Federal Highway Administration**

**23 CFR Part 655**

**[FHWA Docket No. FHWA–98–3644]**

**RIN 2125–AE38**

**Revision of the Manual on Uniform Traffic Control Devices; Part II—Signs**

**AGENCY:** Federal Highway Administration (FHWA), DOT.

**ACTION:** Notice of proposed amendments to the Manual on Uniform Traffic Control Devices (MUTCD); request for comments.

**SUMMARY:** The MUTCD is incorporated by reference in 23 CFR part 655, subpart F, approved by the Federal Highway Administrator, and recognized as the national standard for traffic control on all public roads. The FHWA announced its intent to rewrite and reformat the MUTCD on January 10, 1992, at 57 FR

## DEPARTMENT OF JUSTICE

### Immigration and Naturalization Service

**8 CFR Parts 3, 103, 208, 235, 238, 240, 241, 253, and 507**

**[INS No. 1976–99; AG Order No. 2207–99]**

**RIN 1115–AF39**

### Regulations Concerning the Convention Against Torture

**AGENCY:** Immigration and Naturalization Service, and Executive Office for Immigration Review, Justice.

**ACTION:** Interim rule with request for comments.

**SUMMARY:** This interim rule amends Department of Justice regulations by establishing procedures for raising a claim for protection from torture, as directed by the Foreign Affairs Reform and Restructuring Act of 1998. Section 2242 of that Act requires the heads of appropriate agencies to prescribe regulations for implementing United States obligations under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment (Convention Against Torture or Convention). Under Article 3 of the Convention Against Torture (Article 3), the United States has agreed not to "expel, return ('refouler') or extradite" a person to another state where he or she would be tortured. The interim rule establishes procedures for ensuring compliance with Article 3 with respect to removal of aliens from the United States by integrating many Convention Against Torture requests into the present scheme governing asylum and withholding determinations before the Immigration Court. For persons subject to reinstatement, administrative removal, expedited removal, or other streamlined proceedings, excluding those relating to aliens inadmissible on security and related grounds, the rule establishes a screening mechanism followed by Immigration Court review that is similar to the screening procedure currently used in determining credible fear under expedited removal. The rule also establishes "deferral of removal," a new, limited form of protection that will be accorded aliens who would be tortured in the country of removal but who are barred from withholding of removal. Finally, this interim regulation serves as notice to the public that, upon the effective date of this rule, the informal procedure currently in place for considering Convention Against Torture requests will end and those persons who have raised a claim under the

informal procedure will be given an opportunity, as prescribed by this rule, to have their cases reviewed under the new procedures.

**DATES:** *Effective date:* This interim rule is effective March 22, 1999.

*Comment date:* written comments must be submitted on or before April 20, 1999.

**ADDRESSES:** Please submit written comments in original and three copies to the Director, Policy Directives and Instructions Branch, Immigration and Naturalization Service, 425 I Street, NW, Room 5307, Washington, DC 20536. To ensure proper handling, please reference INS No. 1976–99 on your correspondence. Comments are available for public inspection at the above address by calling (202) 514–3048 to arrange for an appointment.

**FOR FURTHER INFORMATION CONTACT:** For matters relating to the Immigration and Naturalization Service: Dorothea Lay, 425 I Street, NW, Washington, DC 20536, telephone number (202) 514–2895. For matters relating to the Executive Office for Immigration Review: Margaret M. Philbin, General Counsel, Executive Office for Immigration Review, Suite 2400, 5107 Leesburg Pike, Falls Church, Virginia, 22041, telephone number (703) 305–0470.

**SUPPLEMENTARY INFORMATION:**

### Background

On October 21, 1998, the President signed into law legislation which requires that "[n]ot later than 120 days after the date of enactment of this Act, the heads of the appropriate agencies shall prescribe regulations to implement the obligations of the United States under Article 3 of the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment, subject to any reservations, understandings, declarations, and provisos contained in the United States Senate resolution of ratification of the Convention." Section 2242(b) of the Foreign Affairs Reform and Restructuring Act of 1998 (Pub. L. 105–277, Division G, Oct. 21, 1998).

Obligations under the Convention Against Torture have been in effect for the United States since November 20, 1994. Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, G.A. Res. 39/46, Annex, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/39/51 (1984) [hereinafter Convention or Convention Against Torture]. On October 21, 1994, President Clinton deposited the United States instrument of ratification of the Convention with the Secretary General

of the United Nations. Consistent with its terms, the Convention Against Torture entered into force for the United States 30 days later. Under Article 3, the United States had agreed not to "expel, return ('refouler') or extradite" a person to another state where he or she would be tortured. The Department of State is responsible for carrying out extradition requests and will promulgate regulations to ensure compliance with Article 3 in those cases. In other cases, the Attorney General is charged with expelling or returning aliens from the United States to other countries. This rule is published pursuant to this mandate to implement United States obligations under Article 3 in the context of the Attorney General's removal of aliens Article 3 provides as follows:

1. No State Party shall expel, return, ("refouler") or extradite a person to another State where there are substantial grounds for believing that he or she would be in danger of being subjected to torture.

2. For the purpose of determining whether there are such grounds, the competent authorities shall take into account all relevant considerations including, where applicable, the existence in the State concerned of a consistent pattern of gross, flagrant, or mass violations of human rights.

This Article is similar in some ways to Article 33 of the 1951 Convention relating to the Status of Refugees. The Convention relating to the Status of Refugees, July 28, 1951, 189 U.N.T.S. 137 (hereinafter Refugee Convention). Article 33 provides that "[n]o Contracting State shall expel or return ('refouler') a refugee in any manner whatsoever to the frontiers of territories where his life or freedom would be threatened on account of race, religion, nationality, membership of a particular social group or political opinion." The United States currently implements Article 33 of the Refugee Convention through the withholding of removal provision in section 241(b)(3) (formerly section 243(h)) of the Immigration and Nationality Act (INA or the Act). That provision, as interpreted by the courts, requires the Attorney General to withhold an alien's removal to a country where it is more likely than not that the alien's life or freedom would be threatened on account of one of the five grounds mentioned above. *See INS* v. *Stevic,* 467 U.S. 407, 429–30 (1984).

However, there are some important differences between withholding of removal under section 241(b)(3) of the Act and Article 3 of the Convention Against Torture. First, several categories of individuals, including persons who

AR487

assisted in Nazi persecution or engaged in genocide, persons who have persecuted others, persons who have been convicted of particularly serious crimes, persons who are believed to have committed serious non-political crimes before arriving in the United States, and persons who pose a danger to the security of the United States, are ineligible for withholding of removal. *See* INA section 241(b)(3)(B). Article 3 of the Convention Against Torture does not exclude such persons from its scope. Second, section 241(b)(3) applies only to aliens whose life or freedom would be threatened on account of race, religion, nationality, and membership in a particular social group or political opinion. Article 3 covers persons who fear torture that may not be motivated by one of those five grounds. Third, the definition of torture does not encompass all types of harm that might qualify as a threat to life or freedom. Thus, the coverage of Article 3 is different from that of section 241(b)(3): broader in some ways and narrower in others.

Until the October 21, 1998 legislation, there was no statutory provision to implement Article 3 of the Convention Against Torture in United States domestic law. When the United States Senate gave advice and consent to ratification of the Convention Against Torture, it made a declaration that Articles 1 through 16 were not self-executing. Recognizing, however, that ratification of the Convention represented a statement by the United States to the international community of its commitment to comply with the Convention's provisions to the extent permissible under the Constitution and existing federal statutes, the Department of Justice sought to conform its practices to the Convention by ensuring compliance with Article 3 in the case of aliens who are subject to removal from the United States.

In order to conform to the Convention before the enactment of implementing legislation, the Immigration and Naturalization Service (INS or Service) adopted a pre-regulatory administrative process to assess the applicability of Article 3 to individual cases in which an alien is subject to removal. Under this pre-regulatory administrative process, upon completion of deportation, exclusion, or removal proceedings and prior to execution of a final order of removal, the INS has considered whether removing an alien to a particular country is consistent with Article 3. If it is determined that the alien could not be removed to the country in question consistent with Article 3, the INS has used its existing discretionary authority to ensure that

the alien is not removed to that country for so long as he or she is likely to be tortured there. *See* INA § 103(a); 8 CFR 2.1.

In formulating its pre-regulatory administrative process to conform to Article 3 in the context of the removal of aliens, the INS has been careful not to expand upon the protections that Article 3 grants. Only execution of an order of removal to a country where an alien is more likely than not to be tortured would violate the Convention. Therefore, the INS has not addressed the question of whether Article 3 prohibits removal in an individual case until there is a final administrative order of removal to a place where an alien claims that he or she would be tortured, and until all appeals, requests for review, or other administrative or judicial challenges to execution of that order have been resolved. This approach has allowed the INS to address the applicability of Article 3 to a case only when actually necessary to comply with the Convention. It has also allowed an individual alien to exhaust all avenues for pursuing any other more extensive benefit or protection for which he or she may be eligible before seeking the minimal guarantee provided by Article 3 that he or she will not be returned to a specific country where it is likely that he or she would be tortured. At the same time, this approach has allowed the INS, the agency responsible for executing removal orders, to ensure that no order is executed under circumstances that would violate the Convention.

### Goals of Interim Rule

Pursuant to statutory mandate, the Department of Justice now publishes this rule in order to implement the United States' Article 3 obligations in the context of the removal of aliens by the Attorney General. The rule is published as an interim rule, effective 30 days after the date of publication. This rule is intended to create fair and efficient provisions to implement Article 3 within the overall regulatory framework for the issuance of removal orders and decisions about the execution of such orders.

The primary goals of this rule are to establish procedures that ensure that no alien is removed from the United States under circumstances that would violate Article 3 without unduly disrupting the issuance and execution of removal orders consistent with Article 3. To this end, we have designed a system that will allow aliens subject to the various types of removal proceedings currently afforded by the immigration laws to seek, and where eligible, to be accorded

protection under Article 3. At the same time, we have created mechanisms to quickly identify and resolve frivolous claims to protection so that the new procedures cannot be used as a delaying tactic by aliens who are not in fact at risk.

In cases subject to streamlined, expedited removal processes under current law, the rule employs screening mechanisms to quickly identify potentially meritorious claims to protection and to resolve frivolous ones with dispatch. For example, the rule allows for the screening of aliens arriving at ports of entry to determine whether they establish a credible fear of torture. This screening will be conducted in conjunction with the existing credible fear of persecution screening process, so that it will not complicate or delay the expedited removal process established by Congress for arriving aliens. If an alien passes this threshold-screening standard, his or her claim for protection under Article 3 will be further examined by an immigration judge in the context of removal proceedings under section 240 of the Act. The screening mechanism also allows for the expeditious review by an immigration judge of a negative screening determination and the quick removal of an alien with no credible claim to protection.

Furthermore, the rule establishes a new screening process to rapidly identify and assess both claims for withholding of removal under section 241(b)(3) of the Act and for protection under the Convention by either aliens subject to administrative removal for aggravated felons under section 238(b) of the Act or to reinstatement of a previous order of removal under section 241(a)(5) of the Act. Modeled on the credible fear screening mechanism, this screening process will also allow for the fair and expeditious resolution of such claims without unduly disrupting the streamlined removal processes applicable to these aliens.

The cases of alien terrorists and other aliens subject to administrative removal under section 235(c) of the Act will be handled through the administrative process in which the INS issues and executes the removal order. Cases handled under section 235(c) are only a few each year, and typically involve highly sensitive issues and adjudication based on classified information under tight controls. Thus, by retaining the ability to assess the applicability of Article 3 through the administrative removal process, the INS will both maintain a workable process and ensure U.S. compliance with Article 3 in these unusual cases. Similarly, the regulations

AR488

**8480**  **Federal Register** / Vol. 64, No. 33 / Friday, February 19, 1999 / Rules and Regulations

provide that an alien whose removal has been ordered by the Alien Terrorist Removal Court under the special procedures set forth in Title V of the Act shall not be removed to a particular country if the Attorney General determines, in consultation with the Secretary of State, that removal to that country would violate Article 3.

For aliens subject to removal proceedings under section 240 of the Act, exclusion proceedings, or deportation proceedings, a claim to protection under the Convention Against Torture will be raised and considered, along with any other applications, during removal proceedings before an immigration judge. Both the alien and the INS will have the ability to appeal decisions of the immigration judge to the Board of Immigration Appeals (the Board). This will allow the alien to seek review of this important decision, and will also allow the INS to use the review mechanism to ensure that decisions about the applicability of Article 3 are made consistently and according to the high standards of proof required by Article 3 itself. At the same time, the availability of review will not expand the process already available to aliens in proceedings under section 240, who under current law already have the opportunity to seek Board review of decisions of the immigration judge.

Nor does this rule expand the availability of judicial review for aliens who make claims to protection under the Convention Against Torture. The statute requiring regulatory implementation of obligations under Article 3 explicitly provides that it does not authorize judicial review of these regulations. Section 2242(d) of the Foreign Affairs Reform and Restructuring Act of 1998. The rule restates at § 208.18(e) the statutory mandate that the only available judicial review for Convention Against Torture claims is when such claims are heard as part of the review of a final order of removal pursuant to section 242 of the Act. Such review remains subject to the requirements and limitations of section 242. Where a court has jurisdiction to consider a Convention Against Torture claim, it may not, except as authorized by section 242, consider other claims regarding the alien's removal.

**Structure of Rule**

Generally, the rule creates two separate provisions for protection under Article 3 for aliens who would be tortured in the country of removal. The first provision establishes a new form of withholding of removal under § 208.16(c). This type of protection is only available to aliens who are not barred from eligibility for withholding of removal under section 241(b)(3)(B) of the Act. The second provision, under § 208.17(a), concerns aliens who would be tortured in the country of removal but who are subject to the bars contained in section 241(b)(3)(B) of the Act. These aliens may only be granted deferral of removal, a less permanent form of protection than withholding of removal and one that is more easily and quickly terminated if it becomes possible to remove the alien consistent with Article 3. Deferral of removal will be granted based on the withholding of removal application to an alien who is likely to be tortured in the country of removal but who is barred from withholding of removal. Section 208.17(d) sets out a special, streamlined procedure through which the INS may seek to terminate deferral of removal when appropriate.

**Withholding of Removal Under the Convention Against Torture**

Revised § 208.16(c) creates a new form of withholding of removal, which will be granted to an eligible alien in removal proceedings who establishes that he or she would be tortured in the proposed country of removal. This section references new § 208.18(a), which contains the definition of torture, and provides that this definition will be applied in all determinations about eligibility for this new form of withholding, or for deferral of removal.

An alien granted withholding under new § 208.16(c) would be treated similarly to an alien granted withholding of removal under § 208.16(b), the regulatory provision implementing section 241(b)(3) of the Act. The rule provides at § 208.16(c)(2) that, in order to be eligible for withholding of removal under Article 3, an alien must establish that it is more likely than not that he or she would be tortured in the country in question. Imposition of this burden of proof on the alien gives effect to one of the Senate understandings upon which ratification was conditioned, which provides that "the United States understands that the phrase, 'where there are substantial grounds for believing that he would be in danger of being subjected to torture,' as used in Article 3 of the Convention, to mean 'if it is more likely than not that he would be tortured.'" The ratification history makes clear that this understanding was intended to ensure that the standard of proof for Article 3 would be the same standard as that for withholding of removal under section 241(b)(3) of the Act, then section 243(h) of the Act. *See,*

*e.g.,* Convention Against Torture, *submitted to the Senate,* May 20, 1988, S. Treaty Doc. No. 100–20, at 6 (1988) (hereinafter S. Treaty Doc. No. 100–20).

Section 208.16(c)(3) also directs that all evidence relevant to the possibility of future torture should be considered when making the determination as to whether the alien is more likely than not to be tortured. It specifically provides that evidence of past torture inflicted on the applicant should be considered, because evidence of past torture may be probative as to whether future torture is likely.

Section 208.16(c)(3) also requires that, in determining whether the applicant has met his or her burden of proof, the decision-maker may consider any evidence that the alien may be able to relocate to an area of the country of removal where he or she is not likely to be tortured. Consideration of this factor is consistent with long-established precedent in the context of the adjudication of requests for asylum and withholding of removal under section 241(b)(3) of the Act, and is relevant to the likelihood that an alien would be tortured if returned to a specific country. This section also provides that, where applicable, the adjudicator will consider evidence of gross, flagrant, or mass violations of human rights committed within the country in question. This requirement is drawn directly from clause 2 of Article 3. The words "where applicable" indicate that, in each case, the adjudicator will determine whether and to what extent evidence of human rights violations in a given country is in fact a relevant factor in the case at hand. Evidence of the gross and flagrant denial of freedom of the press, without more, for example, may not tend to show that an alien would be tortured if returned to that country. *See, e.g.,* S. Treaty Doc. No. 100–20, at 20. The rule further directs that any other relevant information about country conditions in the country of removal be considered.

Applicants for withholding under § 208.16(c) will be subject to the mandatory bars to withholding contained in section 241(b)(3)(B) of the Act. Section 241(b)(3)(B) of the Act bars from withholding of removal aliens: who have assisted in Nazi persecution or engaged in genocide; who have ordered, incited, assisted or otherwise participated in the persecution of others; and who, having been convicted of a particularly serious crime, pose a danger to the community of the United States. The section 241(b)(3)(B) bar also applies when there are serious reasons to believe that the alien has committed a serious non-political crime outside the

AR489