United States before arriving in the United States or there are reasonable grounds to believe that the alien is a danger to the security of the United States. The legislation implementing Article 3 provides that "[t]o the maximum extent consistent with the obligations of the United States under the Convention, subject to any reservations, understandings, declarations, and provisos contained in the United States Senate resolution of ratification of the Convention, the regulations described in subsection (b) [mandating promulgation of regulations to implement Article 3] shall exclude from the protection of such regulations aliens described in section 241(b)(3)(B) of the Immigration and Nationality Act (8 U.S.C. 1231(b)(3)(B))." Section 2242(c) of the Foreign Affairs Reform and Restructuring Act of 1998. Thus, consistent with the statutory directive, the advantages of a grant of withholding of removal will not be available to such aliens. Rather, their protection from return to a country where they would be tortured, as required by the Convention, will be effected through a less extensive form of protection, i.e., deferral of removal, established in § 208.17(a).

**Deferral of Removal Under the Convention Against Torture**

Although aliens who are barred from withholding of removal under § 241(b)(3)(B) of the Act are not eligible for withholding under 208.16(c), the Article 3 implementing statute directs that any exclusion of these aliens from the protection of these regulations must be consistent with United States obligations under the Convention, subject to United States reservations, understandings, declarations, and provisos conditioning ratification. Section 2242(c) of the Foreign Affairs Reform and Restructuring Act of 1998. Article 3 prohibits returning any person to a country where he or she would be tortured, and contains no exceptions to this mandate. Nor do any of the United States reservations, understandings, declarations, or provisos contained in the Senate's resolution of ratification provide that the United States may exclude any person from Article 3's prohibition on return because of criminal or other activity or for any other reason. Indeed, the ratification history of the Convention Against Torture clearly indicates that the Executive Branch presented Article 3 to the Senate with the understanding that it "does not permit any discretion or provide for any exceptions * * *." Convention Against Torture: Hearing Before the Senate Comm. on Foreign Relations, 101st Cong., 18 (1990)

(statement of Mark Richard, Deputy Assistant Attorney General for the Criminal Division, DOJ).

Wherever possible, subsequent acts of Congress must be construed as consistent with treaty obligations. *See e.g.,* Cook v. *United States,* 288 U.S. 102, 120 (1933) ("[a] treaty will not be deemed to have been abrogated or modified by a later statute, unless such purpose on the part of Congress has been clearly expressed."). Here, Congress has not indicated an intent to modify the obligations imposed by Article 3. In fact, Congress has clearly expressed its intent that any exclusion of aliens described in section 241(b)(3)(B) of the Act from the protection of these regulations must be consistent with Article 3. The obligation not to return such an alien to a country where he or she would be tortured remains in effect. Thus, while this rule does not extend the advantages associated with a grant of withholding of removal to aliens barred under section 241(b)(3)(B) of the Act, it does ensure that they are not returned to a country where they would be tortured.

To this end, the rule creates a special provision under § 208.17(a) for deferral of removal when an alien described in section 241(b)(3)(B) of the Act has been ordered removed to a country where it has been determined that he or she would be tortured. The process is as follows: Before determining whether the bars described in section 241(b)(3)(B) of the Act apply to withholding removal of an alien under the Convention Against Torture, the immigration judge is required to find whether the alien is likely to be tortured in the country of removal. Only after this finding is made does the immigration judge decide, as required by § 208.16(d), whether the statutory bars to withholding of removal apply. If the bars do not apply, the immigration judge will grant withholding of removal to an alien who has been determined to be likely to be tortured in the country of removal. If the immigration judge finds that the bars apply, § 208.17(a) requires the immigration judge to defer removal of an alien to a country where the alien is likely to be tortured. The alien need not apply separately for deferral because this form of protection will be accorded automatically, based on the withholding application, to an alien who is barred from withholding but is likely to be tortured in the country of removal. While the order of deferral is in effect, the alien will not be returned to the country in question.

Section 208.17(a) is subject to the same standard of proof and definitional provisions as § 208.16(c). This will

ensure that compliance with Article 3 is complete and consistent in the cases of aliens who are barred from withholding as well as in the cases of aliens who are not barred from withholding. However, an order of deferral provides a much more limited form of protection than does a grant of withholding of removal. An order of deferral would not confer upon the alien any lawful or permanent immigration status in the United States and would be subject to streamlined and expeditious review and termination if it is determined that it is no longer likely that the alien would be tortured in the country to which he or she has been ordered removed. Further, like withholding, deferral of removal is effective only with respect to the particular country in question and does not alter the government's ability to remove the alien to another country where he or she would not be tortured. The rule requires the immigration judge to inform the alien of the limited nature of the deferral order at the time such order is entered.

In addition, an order deferring removal to a particular country will not alter INS authority to detain an alien who is otherwise subject to detention. Section 241(a)(6) of the Act provides a variety of grounds for INS in its discretion to detain beyond the removal period an alien under a final order who cannot be removed. These include, most importantly, the discretion to detain an alien granted deferral of removal under Article 3 who is removable based on security grounds, based on certain criminal offenses, or who has been determined to pose a risk to the community. This is consistent with the Article 3 implementing statute, which provides that "[n]othing in this section shall be construed as limiting the authority of the Attorney General to detain any person under any provision of law, including, but not limited to, any provision of the Immigration and Nationality Act." Section 2242(e) of the Foreign Affairs Reform and Restructuring Act of 1998. Section 208.17(c) of the interim rule provides that decisions about the detention of detainable aliens who have been granted deferral of removal will be made according to standard procedures under 8 CFR part 241.

**Termination of Deferral of Removal**

The most important distinction between withholding of removal and deferral of removal is the mode of termination. Section 208.17(d) will provide for a streamlined termination process for deferral of removal when it is no longer likely that an alien would be tortured in the country of removal.

Under existing regulations, withholding can only be terminated when the government moves to reopen the case, meets the standards for reopening, and meets its burden of proof to establish by a preponderance of the evidence that the alien is not eligible for withholding. The termination process for deferral of removal is designed to be much more accessible, so that deferral can be terminated quickly and efficiently when appropriate.

At any time while the order of deferral is in effect, the INS District Counsel for the district with jurisdiction over an alien granted deferral of removal may move the immigration court to schedule a hearing to determine whether the deferral order can be terminated. The INS motion will not be subject to the normal motion to reopen requirement that the moving party seek to offer evidence that was previously unavailable (i.e., could not have been discovered and presented at the previous hearing) and that establishes a *prima facie* case for termination. Rather, the Service's motion will be granted and a termination hearing will be scheduled on an expedited basis if the Service meets a lower threshold, which requires only that the evidence was not considered at the previous hearing and is relevant to the possibility that the alien would be tortured in the country of removal. This will allow the Service to monitor cases in which an order of deferral is in effect, and to bring such cases for termination hearings when it appears that the alien may no longer face likely torture in the country in question.

The Immigration Court will provide the alien with notice of the time, place, and date of the termination hearing, and will have the opportunity to submit evidence to supplement his or her initial application for withholding, which was the basis for the deferral order. As is the case with initial asylum and withholding applications, the original application, along with any supplemental information submitted by the alien, will be forwarded to the Department of State, which may comment on the case at its option. At the termination hearing, it will be the alien's burden to establish that it is more likely than not that he or she would be tortured in the country of removal. The immigration judge will make a *de novo* determination about the alien's likelihood of torture in the country in question. If the immigration judge determines that the alien is more likely than not to be tortured in the country to which removal has been deferred, the order of deferral shall remain in place. If the alien fails to meet

the burden of proof, the deferral order will be terminated. If the alien establishes that he or she still requires protection under the Convention Against Torture, the deferral order will remain in effect. Appeal of the immigration judge's decision shall lie to the Board.

Deferral of removal may also be terminated at the alien's written request under § 208.17(e). For termination on this basis, the rule requires that the immigration judge determine whether the alien's request is knowing and voluntary. If necessary, the immigration judge may conduct a hearing to make this determination. If it is determined that the alien's request for termination is not knowing and voluntary, deferral will not be terminated on this basis.

**Implementation of the Convention Against Torture**

Section 208.18 sets out a number of provisions governing the implementation of the Convention Against Torture provisions. This section contains the definition of torture that will apply in both the withholding and deferral contexts, rules about the applicability of the new provisions, and a section clarifying that this rule does not expand the availability of judicial review to aliens who assert claims to protection under the Convention Against Torture.

**Definition of Torture**

Section 208.18(a) provides the definition of torture and of terms within that definition. Initially, consistent with the statute, it provides that the regulatory definition of torture incorporates the definition in Article 1 of the Convention, as interpreted and modified by United States reservations, understandings, declarations and provisos. The remainder of the definition section is drawn directly from the language of the Convention, the language of the reservations, understandings and declarations contained in the Senate resolution ratifying the Convention, or from ratification history.

Section 208.18(a)(1) contains the first sentence of Article 1, providing the basic contours of the definition of torture. It does not attempt to list the types of acts that would constitute torture, but rather expresses basic elements that must be present in order for an act to be torture: It must be an act causing severe pain or suffering, whether physical or mental, intentionally inflicted on a person. Article 16, which refers to "other acts of cruel, inhuman or degrading treatment or punishment, which do not amount to

torture," confirms that, as provided in § 208.18(a)(2), torture is an extreme form of cruel and inhuman treatment. *See, e.g.,* S. Treaty Doc. No. 100–20 at 23.

Section 208.18(a)(3) provides that torture "does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions." This is drawn from the second sentence of Article 1. The Senate adopted an understanding providing that "with reference to article 1 of the Convention, the United States understands that 'sanctions' includes judicially-imposed sanctions and other enforcement actions authorized by United States law or by judicial interpretation of such law. Nonetheless, the United States understands that a State Party could not through its domestic sanctions defeat the object and purpose of the Convention to prohibit torture." 136 Cong. Rec. 36198 (1990). Therefore § 208.18(a)(3) also provides that "[l]awful sanctions include judicially imposed sanctions and other enforcement actions authorized by law, including the death penalty, but do not include sanctions that defeat the object and purpose of the Convention Against Torture to prohibit torture." This paragraph does not require that, in order to come within the exception, an action must be one that would be authorized by United States law. It must, however, be legitimate, in the sense that a State cannot defeat the purpose of the Convention to prohibit torture.

Senate understandings also provide that "the United States understands that international law does not prohibit the death penalty, and does not consider this Convention to restrict or prohibit the United States from applying the death penalty consistent with the Fifth, Eighth, and/or Fourteenth Amendments to the Constitution of the United States, including any constitutional period of confinement prior to the imposition of the death penalty." This understanding is embodied in § 208.18(a)(3)'s inclusion of the death penalty in the description of lawful sanctions that do not constitute torture. The purpose of the Senate's understanding on the death penalty is to clarify that the Convention does not prohibit the United States from applying the death penalty consistent with United States constitutional standards. This concept will likely have limited application in the context of Article 3 implementation. It means simply that the constitutionally sufficient imposition of the death penalty in the United States is not torture. The understanding does not mean, however, that any imposition of the death penalty by a foreign state that fails to satisfy United States

constitutional requirements constitutes torture. Any analysis of whether the death penalty is torture in a specific case would be subject to all requirements of the Convention's definition, the Senate's reservations, understandings, and declarations, and the regulatory definitions. Thus, even if imposition of the death penalty would be inconsistent with United States constitutional standards, it would not be torture if it were imposed in a legitimate manner to punish violations of law. Similarly, it would not be torture if it failed to meet any other element of the definition of torture.

The definition of torture can, in limited circumstances, include severe mental pain and suffering. Section 208.18(a)(4) provides a detailed and restrictive definition of the type of severe mental harm that can constitute torture. This language is drawn directly from the Senate's understandings. *See* 136 Cong. Rec. 36198.

Section 208.18(a)(5) requires that, in order to qualify as torture, an act must be specifically intended to inflict severe pain or suffering, a requirement clearly imposed by United States understandings. *Id*. Thus, an act that results in unanticipated or unintended severity of pain and suffering is not torture. *See, e.g.*, S. Treaty Doc. No. 100–20, at 19.

Section 208.18(a)(6) provides that, for an act to constitute torture, the victim of the act must be in the custody or physical control of the perpetrator. Thus, harm, even severe pain and suffering, inflicted on a person who is not within the perpetrator's custody or physical control, would not qualify as torture. Again, the language of this regulatory provision is taken directly from the Senate understandings. *See* 136 Cong. Rec. 36198.

Article 1 of the Convention Against Torture requires that torture must be inflicted "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." Senate understandings provide that "the term 'acquiescence' requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his legal responsibility to intervene to prevent such activity." 136 Cong. Rec. 36198. Section 208.18(a)(7) mirrors this requirement. Thus the definition of torture includes only acts that occur in the context of governmental authority. *See, e.g.*, S. Treaty Doc. No. 100–20, at 19.

Section 208.18(a)(8) provides that noncompliance with applicable legal procedural standards does not *per se*

constitute torture. Again, this provision mirrors Senate understandings. 136 Cong. Rec. 36198.

**Applicability of New Provisions**

Section 208.18(b)(1) provides that aliens who are in exclusion, deportation, or removal proceedings as of the effective date of this rule may seek withholding under the Convention Against Torture, and if applicable be considered for deferral under the Convention, through the procedures established by this rule. Section 208.18(b)(2) also establishes special procedures to provide a reasonable opportunity to request consideration for protection under Article 3 for aliens who were either ordered removed prior to the effective date of this rule, or whose removal orders become final prior to the effective date of the rule. Such aliens will be given a 90-day window of time in which to file a motion to reopen before the immigration court or before the Board of Immigration Appeals, to apply for protection under this rule. Any motion filed by such an alien within 90 days of the effective date of this rule, March 22, 1999, will not be subject to the normal requirement that the motion must seek to present new evidence that was unavailable and could not have been presented at the previous hearing. Nor will such a motion be subject to the normal time and numerical limitations on motions to reopen under §§ 3.2 and 3.23. Such a motion will, however, be subject to the other requirements set out in the regulations for a motion to reopen. Therefore it will not be granted unless the evidence sought to be offered establishes a prima facie case that the alien's removal would violate Article 3 of the Convention Against Torture. Similarly, like other motions to reopen, such a motion will not automatically stay the alien's removal. Rather, the alien must request a stay of removal at the time of filing the motion to reopen.

**Aliens Who Requested Protection Under the Convention Through the INS Pre-regulatory Administrative Process To Ensure Compliance With Article 3**

As explained previously, the INS has, prior to the effective date of this rule, conducted a pre-regulatory administrative process to comply with Article 3 of the Convention Against Torture until implementing legislation was enacted and obligations under that Article could be implemented by this rule. Section 208.18(b)(3) of this rule provides that, after the effective date of this rule, the INS pre-regulatory administrative process for ensuring compliance with Article 3 will end.

After the effective date of this rule, except as otherwise provided, the INS will no longer stay an alien's removal based only on a request for protection under Article 3, nor will it consider the applicability of Article 3 to an individual case under its pre-regulatory administrative process.

Section 208.18(b)(4) provides that the new procedures established by this rule to provide for the consideration of claims to protection under the Convention Against Torture do not apply to cases in which the Service, prior to the effective date of this rule, has made a final administrative determination about the applicability of Article 3. This section provides that, if the Service has determined under its pre-regulatory administrative process that an alien cannot be removed to a particular country consistent with Article 3, the alien is considered to have been granted withholding of removal under § 208.16(c), unless the alien is subject to mandatory denial of withholding under § 208.16(d) (2) or (3). If such an alien is barred from withholding of removal, he or she will be considered to have been granted deferral of removal under § 208.17(a). Similarly, if an alien was determined under the pre-regulatory administrative process not to require protection under Article 3, that alien will be considered to have been finally denied withholding of removal under § 208.16(c) and deferral of removal under § 208.17(a). This paragraph applies only to cases in which the Service actually reached a final determination about the applicability of Article 3 to an individual case.

A different regime will apply to aliens who requested protection under the pre-regulatory administrative process but did not receive a final determination from the Service. The Service will provide notice about the end of the pre-regulatory administrative process to such aliens. This notice will inform the alien of the new regulatory process through which Article 3 claims will be processed. The notice will also explain that an alien who was ordered removed or whose removal order became final prior to the effective date of this rule may obtain consideration of a claim under Article 3 only through the procedures set out in this rule. An alien under a final removal order issued by EOIR may obtain consideration of the Article 3 claim by filing a motion to reopen with the immigration court or the Board of Immigration Appeals. In order to provide a reasonable opportunity to file such a motion, an alien who has a request for Article 3 protection pending with the Service on

the date this rule becomes effective will be granted a stay of removal effective until 30 days after the notice is served on the alien. Any motion filed by such an alien will not be subject to the normal procedures for motions to reopen. The immigration judge or the Board shall grant such a motion if it is accompanied by a copy of the notice provided by the Service or by other convincing evidence that the alien requested protection under Article 3 from the Service through the pre-regulatory administrative process and did not receive a final administrative determination prior to the effective date of this rule. The filing of such a motion shall extend the stay of removal pending the adjudication of the motion. This special provision ensures that those who requested protection under the INS pre-regulatory administrative process and did not get a ruling will have a full and fair opportunity to pursue their claims for protection under the new regulatory process.

For an alien under a removal order issued by the Service under section 238(b) of the Act or an alien under an exclusion, deportation, or removal order that has been reinstated by the Service, the Service will consider any claim to protection that is pending on the effective date of this rule through the process set out in section 208.31. For an alien ordered removed by the Service under section 235(c) of the Act, the Service will decide under section 235.8(b)(4) any Article 3 claim that is pending on the effective date of this rule. Such a claim will not be subject to the procedures set out for consideration of Article 3 claims by an immigration judge, the Board of Immigration Appeals, or an asylum officer.

**Cases in Which Diplomatic Assurances Are Considered**

Section 208.18(c) sets out special procedures for cases in which the Secretary of State forwards to the Attorney General assurances that the Secretary has obtained from the government of a specific country that an alien would not be tortured if returned there. In some cases, it may be possible for the United States to actually reduce the likelihood that an alien would be tortured in a particular country. The nature and reliability of such assurances, and any arrangements through which such assurances might be verified, would require careful evaluation before any decision could be reached about whether such assurances would allow an alien's removal to that country consistent with Article 3. This paragraph sets out special procedures under which the Attorney General, in

consultation with the Secretary of State, will assume responsibility for assessing the adequacy of any such assurances in appropriate cases. Cases will be handled under this provision only if such assurances are actually forwarded to the Attorney General by the Secretary of State for consideration under this special process. It is anticipated that these cases will be rare.

In cases in which the Secretary has forwarded assurances under this provision, the procedures for administrative consideration of claims under the Convention Against Torture set out elsewhere in this rule will not apply. Further, the rule provides that the Attorney General's authority to make determinations about the applicability of Article 3 in such a case may be exercised by the Deputy Attorney General or by the Commissioner, but may not be further delegated. Thus the rule ensures that cases involving the adequacy of diplomatic assurances forwarded to the Attorney General by the Secretary of State will receive consideration at senior levels within the Department of Justice, which is appropriate to the delicate nature of a diplomatic undertaking to ensure that an alien is not tortured in another country. Under § 208.17(f), these special procedures may also be invoked in appropriate cases for considering whether deferral of removal should be terminated.

**Cases Involving Aliens Ordered Removed Under Section 235(c) of the Act**

Section 208.18(d) provides, as discussed previously in the supplementary information, that an alien ordered removed pursuant to section 235(c) of the Act will not be removed under circumstances that would violate section 241(b)(3) of the Act or Article 3 of the Convention Against Torture. Any claim by an alien for protection against removal to a country where the alien claims he or she would be tortured will be considered by the Service under the standards applicable to protection under the Convention Against Torture, in light of the special circumstances of each case.

Because these determinations will be made by the Service, the procedural provisions in Part 208 for consideration or decision of an alien's claims by an immigration judge, the Board, or an asylum officer do not apply in such cases. Thus, although this rule amends 8 CFR 253.1(f) to provide that an alien removable under section 235(c) of the Act may apply for protection under the Convention Against Torture under 8 CFR Part 208, such an alien's claim

would be considered by the Service as provided in § 208.18(d), and not by an immigration judge or asylum officer.

Similarly, although § 208.2(b)(1)(C)(v) provides that an immigration judge shall have exclusive jurisdiction over any asylum application filed on or after April 1, 1997, by an alien who has been ordered removed under section 235(c) of the Act, that provision by its express terms is only applicable "[a]fter Form I–863, Notice of Referral to Immigration Judge, has been filed with the Immigration Court." When the alien is found to be removable as provided in section 235(c)(2)(B) of the Act, the Service issues a removal order without referring the case to an immigration judge. Thus this provision relating to the authority of the immigration judge will apply to an alien who is subject to removal under section 235(c) of the Act only if the Service makes a determination to refer the case to an immigration judge for consideration as provided in sections 235.8(b)(2)(ii) and (d).

**Expedited Removal and the Credible Fear Process**

The credible fear screening provisions at § 208.30 are amended to ensure that arriving aliens who are subject to the statutory provisions for expedited removal at ports of entry will, when necessary, be considered for protection under Article 3 as well as for asylum under section 208 of the Act and withholding under section 241(b)(3)(B) of the Act. Under current procedures, an alien subject to expedited removal who expresses a fear of persecution in his or her country of origin is interviewed by an asylum officer to determine whether the alien has a credible fear of persecution. Under the amended procedures, an alien who expresses such a fear will also be examined to determine whether he or she has a credible fear of torture. An alien will be found to have a credible fear of torture if the alien shows that there is a significant possibility that he or she is eligible for withholding of removal or deferral of removal under the Convention Against Torture. If the alien has a credible fear of torture, he or she will be referred to an immigration judge for removal proceedings under section 240 of the Act, just as in the current credible fear of persecution process. In these proceedings, the alien will be able to assert a claim to withholding of removal under the Convention Against Torture or under section 241(b)(3) of the Act, or to deferral of removal in the case of an alien barred from withholding, or to asylum under section 208 of the Act. Similarly, consistent with current

procedures in the expedited removal context, upon the alien's request, an asylum officer's negative credible fear of torture determination will be subject to expeditious review by an immigration judge, with no appeal of this screening review. Thus, the interim rule provides for fair resolution of claims to protection under the Convention Against Torture in the expedited removal context, without disrupting the streamlined process established by Congress to circumvent meritless claims.

**Reasonable Fear Screening Process for Aliens in Administrative Removal Proceedings for Aggravated Felons and Aliens Subject to Reinstated Orders**

Section 208.31 creates a new screening process to evaluate torture claims for aliens subject to streamlined administrative removal processes for aggravated felons under section 238(b) of the Act and for aliens subject to reinstatement of a previous removal order under section 241(a)(5) of the Act. This new screening process is modeled on the credible fear screening process, but requires the alien to meet a higher screening standard. Similar to the credible fear screening process, § 208.31 is intended to provide for the fair resolution of claims both to withholding under section 241(b)(3) of the Act, and to protection under the Convention Against Torture without unduly disrupting the operation of these special administrative removal processes.

Unlike the broad class of arriving aliens who are subject to expedited removal, these two classes of aliens are ineligible for asylum. They may, however, be entitled to withholding of removal under either section 241(b)(3) of the Act, or under the Convention Against Torture, or to deferral of removal under § 208.17(a). Because the standard for showing entitlement to these forms of protection (a probability of persecution or torture) is significantly higher than the standard for asylum (a well-founded fear of persecution), the screening standard adopted for initial consideration of withholding and deferral requests in these contexts is also higher. In fact, the "reasonable fear" screening standard is the same standard of proof used in asylum eligibility determinations. That is, the alien must show that there is a "reasonable possibility" that he or she would be persecuted or tortured in the country of removal.

Under the new screening process, aliens in these streamlined administrative removal proceedings who express a fear of persecution or torture will be interviewed by an asylum officer to determine whether they have a reasonable fear of persecution or torture. If they are determined to have such a fear, they will be referred to an immigration judge for a determination only as to their eligibility for withholding of removal under either section 241(b)(3) of the Act or under the Convention Against Torture, or for deferral of removal. Either the alien or the Service may appeal the immigration judge's decision about eligibility for withholding or deferral of removal to the Board of Immigration Appeals. The Board will have jurisdiction to review only the issue of eligibility for withholding or deferral of removal and may not review issues related to the administratively issued order of removal or to the reinstatement of the previous order of removal.

If the asylum officer determines that the alien does not have a reasonable fear of persecution or torture, the alien will be afforded the opportunity for an expeditious review of the negative screening determination by an immigration judge. A new form I–898, Record of Negative Reasonable Fear Finding and Request for Review by the Immigration Judge, will be created on which the alien may request review of a negative asylum officer screening determination. If the immigration judge upholds the negative screening determination, the alien may be removed without further review. If the immigration judge reverses the asylum officer's screening determination, however, the immigration judge will proceed to a determination only as to eligibility for withholding of removal under section 241(b)(3) of the Act or under the Convention Against Torture, or if applicable, deferral of removal. Again, either the alien or the INS may appeal the immigration judge's decision about withholding or deferral to the Board of Immigration Appeals.

This reasonable fear screening process provides a formal mechanism, previously unavailable, to make determinations under section 241(b)(3) of the Act for aliens who are subject to administrative removal as aggravated felons under section 238(b) of the Act, but who were sentenced to an aggregate term of imprisonment of less than five years, and thus are not conclusively barred from withholding under section 241(b)(3)(B) of the Act. This same mechanism will provide for consideration of applications for withholding of removal under the Convention Against Torture, and for consideration for deferral of removal when necessary, in these cases. Thus the new screening process will unify any consideration of applications for withholding of removal under section 241(b)(3) of the Act and under the Convention Against Torture in these cases.

Similarly, the new reasonable fear of persecution or torture screening process will ensure proper consideration of applications for withholding under section 241(b)(3) of the Act and under the Convention Against Torture, and of deferral of removal when appropriate, in cases subject to reinstatement of a previous removal order. Thus it replaces current regulatory provisions at § 241.8(d) for the consideration of applications for withholding of removal under section 241(b)(3) of the Act.

Form I–589 as application form for withholding of removal under the Convention Against Torture

The Form I–589, Application for Asylum and for Withholding of Removal, will serve as an application form for withholding of removal under the Convention Against Torture, as well as for withholding of removal under section 241(b)(3) of the Act. Supplemental instructions for the Form I–598 will be issued to explain how an alien may use this form to seek withholding of removal under the Convention. Under this rule, consideration for deferral of removal must be undertaken when an alien's application for withholding has been denied because of a bar to withholding. Therefore, the Form I–589 will automatically trigger deferral of removal where appropriate.

Use of the Form I–589 will avoid confusion by allowing aliens who believe they are at risk of harm to apply for asylum, as well as these other risk-based forms of protection, at the same time, using the same form. It will also help to ensure that these claims are presented at one time, thereby allowing resolution of these issues in the normal course of proceedings.

Additionally, use of the Form I–589 will obviate the need for two separate forms that, in many cases, will elicit similar information. In many cases in which the alien applies both for asylum and withholding of removal under the Act and for withholding under the Convention Against Torture, the underlying facts supporting these claims will be the same. Thus use of the I–589 will reduce the burden on the applicant while also simplifying the adjudication process for the Service and EOIR. In all cases, the same biographical background information will be necessary. Additionally, the Form I–589 already contains questions that would elicit the facts underlying an alien's fear of torture as well as his or her fear of persecution.

For example, the form specifically asks the applicant whether he or she fears torture upon return to a country, and also asks open-ended questions designed to elicit any information about past mistreatment or fear of mistreatment in the future. Thus the existing form can easily be used for the adjudication of claims to protection under the Convention Against Torture.

### Good Cause Exception

The interim rule is effective 30 days from the date of publication in the **Federal Register**, although the Department invites public comment for 60 days from the date of publication. For the following reasons, the Department finds that good cause exists under 5 U.S.C. 553(b)(B) and (d)(3) for implementing this rule as an interim rule without the prior notice and comment period ordinarily required under that provision. First, section 2242(b) of the Foreign Affairs Reform and Restructuring Act of 1998 requires that "[n]ot later than 120 days after the date of the enactment of this Act, the heads of the appropriate agencies shall prescribe regulations to implement the obligations of the United States under Article 3 of the [Convention Against Torture]." In order to comply with this statutory requirement, it was necessary to dispense with the usual period of public notice and comment; however, the Department will consider carefully all public comments submitted in the course of preparation of a final rule. Second, this rule provides a formal mechanism for requesting protection from torture, and must be implemented expeditiously in order to allow aliens who may require protection under the Convention Against Torture to seek such protection under a regulatory system. While the current informal procedure will remain in place during the next 30 days, it allows for consideration of such requests only at the end of the removal process, after all other avenues of appeal have been exhausted. The interim rule will permit most aliens to raise their claims during the course of regular removal proceedings, and thus many individuals currently in proceedings before the immigration court will have the opportunity to have their request for protection resolved more expeditiously than under the current informal procedure. Therefore, early implementation will be advantageous to those persons seeking protection under the Convention Against Torture, and it is contrary to the intent of the statute and the public interest to delay the implementation of this rule until after a notice and comment period.

### Regulatory Flexibility Act

The Attorney General, in accordance with the Regulatory Flexibility Act (5 U.S.C. 605(b)), has reviewed this regulation and, by approving it, certifies that this rule will not have a significant economic impact on a substantial number of small entities because of the following reason: This rule involves the process for adjudication of certain requests for withholding of removal. This process affects individuals and not small entities.

### Unfunded Mandates Reform Act of 1995

This rule will not result in the expenditure by State, local and tribal governments, in the aggregate, or by the private sector, of $100 million or more in any one-year, and it will not significantly or uniquely affect small governments. Therefore, no actions were deemed necessary under the Provisions of the Unfunded Mandates Reform Act of 1995.

### Small Business Regulatory Enforcement Fairness Act of 1996

This rule is not a major rule as defined by section 251 of the Small Business Regulatory Enforcement Act of 1996. 5 U.S.C. 804. This rule will not result in an annual effect on the economy of $100 million or more; a major increase in costs or prices; or significant adverse effects on competition, employment, investment, productivity, innovation, or on the ability of the United States-based companies to compete with foreign-based companies in domestic and export markets.

### Executive Order 12866

This rule is considered by the Department of Justice to be a "significant regulatory action" under Executive Order 12866, Regulatory Planning and Review. Accordingly, this regulation has been submitted to the Office of Management and Budget for review.

### Executive Order 12612

The regulation adopted herein will not have substantial direct effects on the States, on the relationship between the National Government and the States, or on the distribution of power and responsibility among the various levels of government. Therefore, in accordance with Executive Order 12612, it is determined that this rule does not have sufficient federalism implications to warrant the preparation of a Federalism Assessment.

### Executive Order 12988—Civil Justice Reform

This interim rule meets the applicable standards set forth in sections 3(a) and 3(b)(2) of Executive Order 12988.

### Paperwork Reduction Act

The information collection requirement contained in this rule has been approved for use by the Office of Management and Budget (OMB) under the Paperwork Reduction Act. The OMB control number for this collection is contained in 8 CFR part 299.5, Display of control numbers.

### List of Subjects

*8 CFR Part 3*

Administrative practice and procedure, Immigration, Organization and functions (Government agencies).

*8 CFR Part 103*

Administrative practice and procedure, Authority delegations (Government agencies), Freedom of information, Privacy, Reporting and recordkeeping requirements, Surety bonds.

*8 CFR Part 208*

Administrative practice and procedure, Aliens, Immigration, Reporting and recordkeeping requirements.

*8 CFR Part 235*

Administrative practice and procedure, Aliens, Immigration, Reporting and recordkeeping requirements.

*8 CFR Part 238*

Air Carriers, Aliens, Government contracts, Maritime carriers.

*8 CFR Part 240*

Administrative practice and procedure, Immigration.

*8 CFR Part 241*

Aliens, Immigration.

*8 CFR Part 253*

Air carriers, Airmen, Aliens, Maritime carriers, Reporting and recordkeeping requirements, Seamen.

*8 CFR Part 507*

Aliens, Terrorists.

Accordingly, chapter I of title 8 of the Code of Federal Regulations is amended as follows:

### PART 3—EXECUTIVE OFFICE FOR IMMIGRATION REVIEW

1. The authority citation for part 3 continues to read as follows:

Authority: 5 U.S.C. 301; 8 U.S.C. 1103, 1252 note, 1252b, 1324b, 1362; 28 U.S.C. 509, 510, 1746; sec. 2 Reorg. Plan No. 2 of 1950; 3 CFR, 1949–1953 Comp., p. 1002; section 203 of Pub. L. 105–100.

2. In § 3.23, revise the paragraph heading and the first sentence in paragraph (b)(4)(i) to read as follows:

### § 3.23   Reopening or Reconsideration before the Immigration Court.

\* \* \* \* \*

(b) \* \* \*

(4) \* \* \*

(i) *Asylum and withholding of removal.* The time and numerical limitations set forth in paragraph (b)(1) of this section shall not apply if the basis of the motion is to apply for asylum under section 208 of the Act or withholding of removal under section 241(b)(3) of the Act or withholding of removal under the Convention Against Torture, and is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous proceeding. \* \* \*

3. In § 3.42, revise paragraphs (d) and (f) to read as follows:

### § 3.42   Review of credible fear determination.

\* \* \* \* \*

(d) *Standard of review.* The immigration judge shall make a *de novo* determination as to whether there is a significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the immigration judge, that the alien could establish eligibility for asylum under section 208 of the Act or withholding under section 241(b)(3) of the Act or withholding under the Convention Against Torture.

\* \* \* \* \*

(f) *Decision.* If an immigration judge determines that an alien has a credible fear of persecution or torture, the immigration judge shall vacate the order entered pursuant to section 235(b)(1)(B)(iii)(I) of the Act. Subsequent to the order being vacated, the Service shall issue and file Form I–862, Notice to Appear, with the Immigration Court to commence removal proceedings. The alien shall have the opportunity to apply for asylum and withholding of removal in the course of removal proceedings pursuant to section 240 of the Act. If an immigration judge determines that an alien does not have a credible fear of persecution or torture, the immigration

judge shall affirm the asylum officer's determination and remand the case to the Service for execution of the removal order entered pursuant to section 235(b)(1)(B)(iii)(I) of the Act. No appeal shall lie from a review of an adverse credible fear determination made by an immigration judge.

\* \* \* \* \*

## PART 103—POWERS AND DUTIES OF SERVICE OFFICERS; AVAILABILITY OF SERVICE RECORDS

4. The authority citation for part 103 continues to read as follows:

Authority: 5 U.S.C. 552, 552(a); 8 U.S.C. 1101, 1103, 1201, 1252 note, 1252b, 1304, 1356; 31 U.S.C. 9701; E.O. 12356; 47 FR 14874, 15557; 3 CFR, 1982 Comp., p 166; 8 CFR part 2.

5. In § 103.12, revise paragraph (a)(5) to read as follows:

### § 103.12   Definition of the term "lawfully present" aliens for purposes of applying for Title II social security benefits under Public Law 104–193.

(a) \* \* \*

(5) Applicants for asylum under section 208(a) of the Act and applicants for withholding of removal under section 241(b)(3) of the Act or under the Convention Against Torture who have been granted employment authorization, and such applicants under the age of 14 who have had an application pending for at least 180 days.

\* \* \* \* \*

## PART 208—PROCEDURES FOR ASYLUM AND WITHHOLDING OF REMOVAL

6. The authority citation for part 208 continues to read as follows:

Authority: 8 U.S.C. 1103, 1158, 1226, 1252, 1282; 8 CFR part 2.

7. Revise § 208.1 to read as follows:

### § 208.1   General.

(a) *Applicability.* Unless otherwise provided in this chapter, this subpart shall apply to all applications for asylum under section 208 of the Act or for withholding of deportation or withholding of removal under section 241(b)(3) of the Act, or under the Convention Against Torture, whether before an asylum officer or an immigration judge, regardless of the date of filing. For purposes of this chapter, withholding of removal shall also mean withholding of deportation under section 243(h) of the Act, as it appeared prior to April 1, 1997, except as provided in § 208.16(d). Such applications are hereinafter referred to as "asylum applications." The

provisions of this part shall not affect the finality or validity of any decision made by a district director, an immigration judge, or the Board of Immigration Appeals in any such case prior to April 1, 1997. No asylum application that was filed with a district director, asylum officer, or immigration judge prior to April 1, 1997, may be reopened or otherwise reconsidered under the provisions of this part except by motion granted in the exercise of discretion by the Board of Immigration Appeals, an immigration judge, or an asylum officer for proper cause shown. Motions to reopen or reconsider must meet the requirements of sections 240(c)(5) and (c)(6) of the Act, and 8 CFR parts 3 and 103, where applicable.

(b) *Training of asylum officers.* The Director of International Affairs shall ensure that asylum officers receive special training in international human rights law, nonadversarial interview techniques, and other relevant national and international refugee laws and principles. The Director of International Affairs shall also, in cooperation with the Department of State and other appropriate sources, compile and disseminate to asylum officers information concerning the persecution of persons in other countries on account of race, religion, nationality, membership in a particular social group, or political opinion, torture of persons in other countries, and other information relevant to asylum determinations, and shall maintain a documentation center with information on human rights conditions.

8. In § 208.2, revise paragraphs (a), (b)(1)(ii), and (b)(3), to read as follows:

### § 208.2   Jurisdiction.

(a) *Office of International Affairs.* Except as provided in paragraph (b) of this section, the Office of International Affairs shall have initial jurisdiction over an asylum application filed by, or a credible fear determination pertaining to, an alien physically present in the United States or seeking admission at a port-of-entry. The Office of International Affairs shall also have initial jurisdiction to consider applications for withholding of removal under § 208.31. An application that is complete within the meaning of § 208.3(c)(3) shall either be adjudicated or referred by asylum officers under this part in accordance with § 208.14. An application that is incomplete within the meaning of § 208.3(c)(3) shall be returned to the applicant.

(b) \* \* \*

(1) \* \* \*

(ii) An alien stowaway who has been found to have a credible fear of

persecution or torture pursuant to the procedures set forth in subpart B of this part;

\* \* \* \* \*

(3) *Other aliens.* Immigration judges shall have exclusive jurisdiction over asylum applications filed by an alien who has been served Form I–221, Order to Show Cause; Form I–122, Notice to Applicant for Admission Detained for a Hearing before an Immigration Judge; or Form I–862, Notice to Appear, after a copy of the charging document has been filed with the Immigration Court. Immigration judges shall also have jurisdiction over any asylum applications filed prior to April 1, 1997, by alien crewmembers who have remained in the United States longer than authorized, by applicants for admission under the Visa Waiver Pilot Program, and by aliens who have been admitted to the United States under the Visa Waiver Pilot Program. Immigration judges shall also have the authority to review reasonable fear determinations referred to the Executive Office for Immigration Review under § 208.31.

9. In § 208.4, revise paragraph (a) introductory text and paragraph (b)(2) to read as follows:

### § 208.4   Filing the application.

\* \* \* \* \*

(a) *Prohibitions on filing.* Section 208(a)(2) of the Act prohibits certain aliens from filing for asylum on or after April 1, 1997, unless the alien can demonstrate to the satisfaction of the Attorney General that one of the exceptions in section 208(a)(2)(D) of the Act applies. Such prohibition applies only to asylum applications under section 208 of the Act and not to applications for withholding of removal under § 208.16 of this part. If an applicant submits an asylum application and it appears that one or more of the prohibitions contained in section 208(a)(2) of the Act apply, an asylum officer or an immigration judge shall review the application to determine if the application should be rejected or denied. For the purpose of making determinations under section 208(a)(2) of the Act, the following rules shall apply:

\* \* \* \* \*

(b) \* \* \*

(2) *With the asylum office.* Asylum applications shall be filed directly with the asylum office having jurisdiction over the matter in the case of an alien who has received the express consent of the Director of Asylum to do so or in the case of an alien whose case has been referred to the asylum office for purposes of conducting a reasonable

fear determination under § 208.31 of this part.

\* \* \* \* \*

10. In § 208.5, revise paragraph (b)(1) introductory text to read as follows:

### § 208.5   Special duties toward aliens in custody of the Service.

\* \* \* \* \*

(b) \* \* \*

(1) If an alien crewmember or alien stowaway on board a vessel or other conveyance alleges, claims, or otherwise makes known to an immigration inspector or other official making an examination on the conveyance that he or she is unable or unwilling to return to his or her country of nationality or last habitual residence (if not a national of any country) because of persecution or a fear of persecution in that country on account of race, religion, nationality, membership in a particular social group, or political opinion, or if the alien expresses a fear of torture upon return to that country, the alien shall be promptly removed from the conveyance. If the alien makes such fear known to an official while off such conveyance, the alien shall not be returned to the conveyance but shall be retained in or transferred to the custody of the Service.

\* \* \* \* \*

11. In § 208.11, revise paragraph (b)(2) to read as follows:

### § 208.11   Comments from the Department of State.

\* \* \* \* \*

(b) \* \* \*

(2) Information about whether persons who are similarly situated to the applicant are persecuted or tortured in his or her country of nationality or habitual residence and the frequency of such persecution or torture; or

\* \* \* \* \*

12. In § 208.12, revise paragraph (a) to read as follows:

### § 208.12   Reliance on information compiled by other sources.

(a) In deciding an asylum application, or in deciding whether the alien has a credible fear of persecution or torture pursuant to § 208.30 of this part, or a reasonable fear of persecution or torture pursuant to § 208.31, the asylum officer may rely on material provided by the Department of State, the Office of International Affairs, other Service offices, or other credible sources, such as international organizations, private voluntary agencies, news organizations, or academic institutions.

\* \* \* \* \*

13. Section 208.13 revise paragraph (c)(1) to read as follows:

### § 208.13   Establishing asylum eligibility.

\* \* \* \* \*

(c) \* \* \*

(1) *Applications filed on or after April 1, 1997.* For applications filed on or after April 1, 1997, an applicant shall not qualify for asylum if section 208(a)(2) or 208(b)(2) of the Act applies to the applicant. If the applicant is found to be ineligible for asylum under either section 208(a)(2) or 208(b)(2) of the Act, the applicant shall be considered for eligibility for withholding of removal under section 241(b)(3) of the Act. The applicant shall also be considered for eligibility for withholding of removal under the Convention Against Torture if the applicant requests such consideration or if the evidence presented by the alien indicates that the alien may be tortured in the country of removal.

14. Section 208.16 is amended as follows:

A. Revise the section heading;

B. Revise paragraph (a);

C. Revise paragraph (b) introductory test;

D. Redesignate paragraphs (c) and (d), as (d) and (e) respectively;

E. Add a new paragraph (c);

F. Revise newly redesignated paragraphs (d) and (e); and

G. Add a new paragraph (f) to read as follows:

### § 208.16   Withholding of removal under section 241(b)(3)(B) of the Act and withholding of removal under the Convention Against Torture.

(a) *Consideration of application for withholding of removal.* An asylum officer shall not decide whether the exclusion, deportation, or removal of an alien to a country where the alien's life or freedom would be threatened must be withheld, except in the case of an alien who is otherwise eligible for asylum but is precluded from being granted such status due solely to section 207(a)(5) of the Act. In exclusion, deportation, or removal proceedings, an immigration judge may adjudicate both an asylum claim and a request for withholding of removal whether or not asylum is granted.

(b) *Eligibility for withholding of removal under section 241(b)(3) of the Act; burden of proof.* The burden of proof is on the applicant for withholding of removal under section 241(b)(3) of the Act to establish that his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion. The testimony of the applicant, if credible, may be sufficient to sustain the burden

of proof without corroboration. The evidence shall be evaluated as follows:

\* \* \* \* \*

(c) *Eligibility for withholding of removal under the Convention Against Torture.*

(1) For purposes of regulations under Title II of the Act, "Convention Against Torture" shall refer to the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, subject to any reservations, understandings, declarations, and provisos contained in the United States Senate resolution of ratification of the Convention, as implemented by section 2242 of the Foreign Affairs Reform and Restructuring Act of 1998 (Pub. L. 105–277, 112 Stat. 2681, 2681–821). The definition of torture contained in § 208.18(a) of this part shall govern all decisions made under regulations under Title II of the Act about the applicability of Article 3 of the Convention Against Torture.

(2) The burden of proof is on the applicant for withholding of removal under this paragraph to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal. The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration.

(3) In assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal, all evidence relevant to the possibility of future torture shall be considered, including, but not limited to:

(i) Evidence of past torture inflicted upon the applicant;

(ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;

(iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and

(iv) Other relevant information regarding conditions in the country of removal.

(4) In considering an application for withholding of removal under the Convention Against Torture, the immigration judge shall first determine whether the alien is more likely than not to be tortured in the country of removal. If the immigration judge determines that the alien is more likely than not to be tortured in the country of removal, the alien is entitled to protection under the Convention Against Torture. Protection under the Convention Against Torture will be

granted either in the form of withholding of removal or in the form of deferral of removal. An alien entitled to such protection shall be granted withholding of removal unless the alien is subject to mandatory denial of withholding of removal under paragraphs (d)(2) or (d)(3) of this section. If an alien entitled to such protection is subject to mandatory denial of withholding of removal under paragraphs (d)(2) or (d)(3) of this section, the alien's removal shall be deferred under § 208.17(a).

(d) *Approval or denial of application.* (1) *General.* Subject to paragraphs (d)(2) and (d)(3) of this section, an application for withholding of deportation or removal to a country of proposed removal shall be granted if the applicant's eligibility for withholding is established pursuant to paragraphs (b) or (c) of this section.

(2) *Mandatory denials.* Except as provided in paragraph (d)(3) of this section, an application for withholding of removal under section 241(b)(3) of the Act or under the Convention Against Torture shall be denied if the applicant falls within section 241(b)(3)(B) of the Act or, for applications for withholding of deportation adjudicated in proceedings commenced prior to April 1, 1997, within section 243(h)(2) of the Act as it appeared prior to that date. For purposes of section 241(b)(3)(B)(ii) of the Act, or section 243(h)(2)(B) of the Act as it appeared prior to April 1, 1997, an alien who has been convicted of a particularly serious crime shall be considered to constitute a danger to the community. If the evidence indicates the applicability of one or more of the grounds for denial of withholding enumerated in the Act, the applicant shall have the burden of proving by a preponderance of the evidence that such grounds do not apply.

(3) *Exception to the prohibition on withholding of deportation in certain cases.* Section 243(h)(3) of the Act, as added by section 413 of Pub. L. 104–132 (110 Stat. 1214), shall apply only to applications adjudicated in proceedings commenced before April 1, 1997, and in which final action had not been taken before April 24, 1996. The discretion permitted by that section to override section 243(h)(2) of the Act shall be exercised only in the case of an applicant convicted of an aggravated felony (or felonies) where he or she was sentenced to an aggregate term of imprisonment of less than 5 years and the immigration judge determines on an individual basis that the crime (or crimes) of which the applicant was convicted does not constitute a particularly serious crime. Nevertheless,

it shall be presumed that an alien convicted of an aggravated felony has been convicted of a particularly serious crime. Except in the cases specified in this paragraph, the grounds for denial of withholding of deportation in section 243(h)(2) of the Act as it appeared prior to April 1, 1997, shall be deemed to comply with the Protocol Relating to the Status of Refugees, Jan. 31, 1967, T.I.A.S. No. 6577.

(e) *Reconsideration of discretionary denial of asylum.* In the event that an applicant is denied asylum solely in the exercise of discretion, and the applicant is subsequently granted withholding of deportation or removal under this section, thereby effectively precluding admission of the applicant's spouse or minor children following to join him or her, the denial of asylum shall be reconsidered. Factors to be considered will include the reasons for the denial and reasonable alternatives available to the applicant such as reunification with his or her spouse or minor children in a third country.

(f) *Removal to third country.* Nothing in this section or § 208.17 shall prevent the Service from removing an alien to a third country other than the country to which removal has been withheld or deferred.

15. Section 208.17 is revised to read as follows:

**§ 208.17   Deferral of removal under the Convention Against Torture.**

(a) *Grant of deferral of removal.* An alien who: has been ordered removed; has been found under § 208.16(c)(3) to be entitled to protection under the Convention Against Torture; and is subject to the provisions for mandatory denial of withholding of removal under § 208.16(d)(2) or (d)(3), shall be granted deferral of removal to the country where he or she is more likely than not to be tortured.

(b) *Notice to Alien.* (1) After an immigration judge orders an alien described in paragraph (a) of this section removed, the immigration judge shall inform the alien that his or her removal to the country where he or she is more likely than not to be tortured shall be deferred until such time as the deferral is terminated under this section. The immigration judge shall inform the alien that deferral of removal:

(i) Does not confer upon the alien any lawful or permanent immigration status in the United States;

(ii) Will not necessarily result in the alien being released from the custody of the Service if the alien is subject to such custody;

(iii) Is effective only until terminated; and

(iv) Is subject to review and termination if the immigration judge determines that it is not likely that the alien would be tortured in the country to which removal has been deferred, or if the alien requests that deferral be terminated.

(2) The immigration judge shall also inform the alien that removal has been deferred only to the country in which it has been determined that the alien is likely to be tortured, and that the alien may be removed at any time to another country where he or she is not likely to be tortured.

(c) *Detention of an alien granted deferral of removal under this section.* Nothing in this section shall alter the authority of the Service to detain an alien whose removal has been deferred under this section and who is otherwise subject to detention. In the case of such an alien, decisions about the alien's release shall be made according to part 241 of this chapter.

(d) *Termination of deferral of removal.*

(1) At any time while deferral of removal is in effect, the INS District Counsel for the District with jurisdiction over an alien whose removal has been deferred under paragraph (a) of this section may file a motion with the Immigration Court having administrative control pursuant to § 3.11 of this chapter to schedule a hearing to consider whether deferral of removal should be terminated. The Service motion shall be granted if it is accompanied by evidence that is relevant to the possibility that the alien would be tortured in the country to which removal has been deferred and that was not presented at the previous hearing. The Service motion shall not be subject to the requirements for reopening in §§ 3.2 and 3.23 of this chapter.

(2) The Immigration Court shall provide notice to the alien and the Service of the time, place, and date of the termination hearing. Such notice shall inform the alien that the alien may supplement the information in his or her initial application for withholding of removal under the Convention Against Torture and shall provide that the alien must submit any such supplemental information within 10 calendar days of service of such notice (or 13 calendar days if service of such notice was by mail). At the expiration of this 10 or 13 day period, the Immigration Court shall forward a copy of the original application, and any supplemental information the alien or the Service has submitted, to the

Department of State, together with notice to the Department of State of the time, place and date of the termination hearing. At its option, the Department of State may provide comments on the case, according to the provisions of § 208.11 of this part.

(3) The immigration judge shall conduct a hearing and make a *de novo* determination, based on the record of proceeding and initial application in addition to any new evidence submitted by the Service or the alien, as to whether the alien is more likely than not to be tortured in the country to which removal has been deferred. This determination shall be made under the standards for eligibility set out in § 208.16(c). The burden is on the alien to establish that it is more likely than not that he or she would be tortured in the country to which removal has been deferred.

(4) If the immigration judge determines that the alien is more likely than not to be tortured in the country to which removal has been deferred, the order of deferral shall remain in place. If the immigration judge determines that the alien has not established that he or she is more likely than not to be tortured in the country to which removal has been deferred, the deferral of removal shall be terminated and the alien may be removed to that country. Appeal of the immigration judge's decision shall lie to the Board.

(e) *Termination at the request of the alien.*

(1) At any time while deferral of removal is in effect, the alien may make a written request to the Immigration Court having administrative control pursuant to § 3.11 of this chapter to terminate the deferral order. If satisfied on the basis of the written submission that the alien's request is knowing and voluntary, the immigration judge shall terminate the order of deferral and the alien may be removed.

(2) If necessary the immigration judge may calendar a hearing for the sole purpose of determining whether the alien's request is knowing and voluntary. If the immigration judge determines that the alien's request is knowing and voluntary, the order of deferral shall be terminated. If the immigration judge determines that the alien's request is not knowing and voluntary, the alien's request shall not serve as the basis for terminating the order of deferral.

(f) *Termination pursuant to § 208.18(c).* At any time while deferral of removal is in effect, the Attorney General may determine whether deferral should be terminated based on diplomatic assurances forwarded by the

Secretary of State pursuant to the procedures in § 208.18(c).

**§§ 208.18 through 208.22   [Redesignated as §§ 208.19 through 208.23]**

16. Sections 208.18 through 208.22 are redesignated as §§ 208.19 through 208.23 respectively.

17. Section 208.18 is added to read as follows:

**§ 208.18   Implementation of the Convention Against Torture.**

(a) *Definitions.* The definitions in this subsection incorporate the definition of torture contained in Article 1 of the Convention Against Torture, subject to the reservations, understandings, declarations, and provisos contained in the United States Senate resolution of ratification of the Convention.

(1) Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

(2) Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture.

(3) Torture does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions. Lawful sanctions include judicially imposed sanctions and other enforcement actions authorized by law, including the death penalty, but do not include sanctions that defeat the object and purpose of the Convention Against Torture to prohibit torture.

(4) In order to constitute torture, mental pain or suffering must be prolonged mental harm caused by or resulting from:

(i) The intentional infliction or threatened infliction of severe physical pain or suffering;

(ii) The administration or application, or threatened administration or application, of mind altering substances or other procedures calculated to disrupt profoundly the senses or the personality;

(iii) The threat of imminent death; or

(iv) The threat that another person will imminently be subjected to death,

AR499

severe physical pain or suffering, or the administration or application of mind altering substances or other procedures calculated to disrupt profoundly the sense or personality.

(5) In order to constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering. An act that results in unanticipated or unintended severity of pain and suffering is not torture.

(6) In order to constitute torture an act must be directed against a person in the offender's custody or physical control.

(7) Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity.

(8) Noncompliance with applicable legal procedural standards does not *per se* constitute torture.

(b) *Applicability of §§ 208.16(c) and 208.17(a).*

(1) *Aliens in proceedings on or after March 22, 1999.* An alien who is in exclusion, deportation, or removal proceedings on or after March 22, 1999 may apply for withholding of removal under § 208.16(c), and, if applicable, may be considered for deferral of removal under § 208.17(a).

(2) *Aliens who were ordered removed, or whose removal orders became final, before March 22, 1999.* An alien under a final order of deportation, exclusion, or removal that became final prior to March 22, 1999 may move to reopen proceedings to seek protection under § 208.16(c). Such motions shall be governed by §§ 3.23 and 3.2 of this chapter, except that the time and numerical limitations on motions to reopen shall not apply and the alien shall not be required to demonstrate that the evidence sought to be offered was unavailable and could not have been discovered or presented at the former hearing. The motion to reopen shall not be granted unless:

(i) The motion is filed within June 21, 1999; and

(ii) The evidence sought to be offered establishes a prima facie case that the applicant's removal must be withheld or deferred under §§ 208.16(c) or 208.17(a).

(3) *Aliens who, on March 22, 1999, have requests pending with the Service for protection under Article 3 of the Convention Against Torture.*

(i) Except as otherwise provided, after March 22, 1999, the Service will not:

(A) Consider, under its pre-regulatory administrative policy to ensure compliance with the Convention Against Torture, whether Article 3 of

that Convention prohibits the removal of an alien to a particular country, or

(B) Stay the removal of an alien based on a request filed with the Service for protection under Article 3 of that Convention.

(ii) For each alien who, on or before March 22, 1999, filed a request with the Service for protection under Article 3 of the Convention Against Torture, and whose request has not been finally decided by the Service, the Service shall provide written notice that, after March 22, 1999, consideration for protection under Article 3 can be obtained only through the provisions of this rule.

(A) The notice shall inform an alien who is under an order of removal issued by EOIR that, in order to seek consideration of a claim under §§ 208.16(c) or 208.17(a), such an alien must file a motion to reopen with the immigration court or the Board of Immigration Appeals. This notice shall be accompanied by a stay of removal, effective until 30 days after service of the notice on the alien. A motion to reopen filed under this paragraph for the limited purpose of asserting a claim under §§ 208.16(c) or 208.17(a) shall not be subject to the requirements for reopening in §§ 3.2 and 3.23 of this chapter. Such a motion shall be granted if it is accompanied by a copy of the notice described in paragraph (b)(3)(ii) or by other convincing evidence that the alien had a request pending with the Service for protection under Article 3 of the Convention Against Torture on March 22, 1999. The filing of such a motion shall extend the stay of removal during the pendency of the adjudication of this motion.

(B) The notice shall inform an alien who is under an administrative order of removal issued by the Service under section 238(b) of the Act or an exclusion, deportation, or removal order reinstated by the Service under section 241(a)(5) of the Act that the alien's claim to withholding of removal under § 208.16(c) or deferral of removal under § 208.17(a) will be considered under § 208.31.

(C) The notice shall inform an alien who is under an administrative order of removal issued by the Service under section 235(c) of the Act that the alien's claim to protection under the Convention Against Torture will be decided by the Service as provided in § 208.18(d) and 235.8(b)(4) and will not be considered under the provisions of this part relating to consideration or review by an immigration judge, the Board of Immigration Appeals, or an asylum officer.

(4) *Aliens whose claims to protection under the Convention Against Torture*

*were finally decided by the Service prior to March 22, 1999.* Sections 208.16(c) and 208.17 (a) and paragraphs (b)(1) through (b)(3) of this section do not apply to cases in which, prior to March 22, 1999, the Service has made a final administrative determination about the applicability of Article 3 of the Convention Against Torture to the case of an alien who filed a request with the Service for protection under Article 3. If, prior to March 22, 1999, the Service determined that an applicant cannot be removed consistent with the Convention Against Torture, the alien shall be considered to have been granted withholding of removal under § 208.16(c), unless the alien is subject to mandatory denial of withholding of removal under § 208.16(d)(2) or (d)(3), in which case the alien will be considered to have been granted deferral of removal under 208.17(a). If, prior to March 22, 1999, the Service determined that an alien can be removed consistent with the Convention Against Torture, the alien will be considered to have been finally denied withholding of removal under § 208.16(c) and deferral of removal under § 208.17(a).

(c) *Diplomatic assurances against torture obtained by the Secretary of State.*

(1) The Secretary of State may forward to the Attorney General assurances that the Secretary has obtained from the government of a specific country that an alien would not be tortured there if the alien were removed to that country.

(2) If the Secretary of State forwards assurances described in paragraph (c)(1) of this section to the Attorney General for consideration by the Attorney General or her delegates under this paragraph, the Attorney General shall determine, in consultation with the Secretary of State, whether the assurances are sufficiently reliable to allow the alien's removal to that country consistent with Article 3 of the Convention Against Torture. The Attorney General's authority under this paragraph may be exercised by the Deputy Attorney General or by the Commissioner, Immigration and Naturalization Service, but may not be further delegated.

(3) Once assurances are provided under paragraph (c)(2) of this section, the alien's claim for protection under the Convention Against Torture shall not be considered further by an immigration judge, the Board of Immigration Appeals, or an asylum officer.

(d) *Cases involving aliens ordered removed under section 235(c) of the Act.* With respect to an alien terrorist or other alien subject to administrative

AR500

removal under section 235(c) of the Act who requests protection under Article 3 of the Convention Against Torture, the Service will assess the applicability of Article 3 through the removal process to ensure that a removal order will not be executed under circumstances that would violate the obligations of the United States under Article 3. In such cases, the provisions of Part 208 relating to consideration or review by an immigration judge, the Board of Immigration Appeals, or an asylum officer shall not apply.

(e) *Judicial review of claims for protection from removal under Article 3 of the Convention Against Torture.*

(1) Pursuant to the provisions of section 2242(d) of the Foreign Affairs Reform and Restructuring Act of 1998, there shall be no judicial appeal or review of any action, decision, or claim raised under the Convention or that section, except as part of the review of a final order of removal pursuant to section 242 of the Act; provided however, that any appeal or petition regarding an action, decision, or claim under the Convention or under section 2242 of the Foreign Affairs Reform and Restructuring Act of 1998 shall not be deemed to include or authorize the consideration of any administrative order or decision, or portion thereof, the appeal or review of which is restricted or prohibited by the Act.

(2) Except as otherwise expressly provided, nothing in this paragraph shall be construed to create a private right of action or to authorize the consideration or issuance of administrative or judicial relief.

18. Newly redesignated 208.19 is revised to read as follows:

### § 208.19   Determining if an asylum application is frivolous.

For applications filed on or after April 1, 1997, an applicant is subject to the provisions of section 208(d)(6) of the Act only if a final order by an immigration judge or the Board of Immigration Appeals specifically finds that the alien knowingly filed a frivolous asylum application. For purposes of this section, an asylum application is frivolous if any of its material elements is deliberately fabricated. Such finding shall only be made if the immigration judge or the Board is satisfied that the applicant, during the course of the proceedings, has had sufficient opportunity to account for any discrepancies or implausible aspects of the claim. For purposes of this section, a finding that an alien filed a frivolous asylum application shall not preclude the alien from seeking withholding of removal.

19. Newly redesignated § 208.21 is revised to read as follows:

### § 208.21   Effect on exclusion, deportation, and removal proceedings.

(a) An alien who has been granted asylum may not be deported or removed unless his or her asylum status is terminated pursuant to § 208.23 of this part. An alien in exclusion, deportation, or removal proceedings who is granted withholding of removal or deportation or deferral of removal may not be deported or removed to the country to which his or her deportation or removal is ordered withheld or deferred unless the withholding order is terminated pursuant to § 208.23 or deferral is terminated pursuant to § 208.17(d) or (e).

(b) When an alien's asylum status or withholding of removal or deportation is terminated under this part, the Service shall initiate removal proceedings under section 235 or 240 of the Act, as appropriate, if the alien is not already in exclusion, deportation, or removal proceedings or subject to a final order of removal. Removal proceedings may also be in conjunction with a termination hearing scheduled under § 208.23(e).

20. Section 208.30 is amended by:

A. Revising paragraphs (b), (d) and (e); and by

B. Revising paragraphs (f)(1), and (f)(2), and (f)(3), to read as follows:

### § 208.30   Credible fear determinations involving stowaways and applicants for admission found inadmissible pursuant to section 212(a)(6)(C) or 212(a)(7) of the Act.

\*      \*      \*      \*      \*

(b) *Interview and procedure.* The asylum officer, as defined in section 235(b)(1)(E) of the Act, will conduct the interview in a nonadversarial manner, separate and apart from the general public. At the time of the interview, the asylum officer shall verify that the alien has received Form M–444, Information about Credible Fear Interview in Expedited Removal Cases. The officer shall also determine that the alien has an understanding of the credible fear determination process. The alien may be required to register his or her identity electronically or through any other means designated by the Attorney General. The alien may consult with a person or persons of the alien's choosing prior to the interview or any review thereof, and may present other evidence, if available. Such consultation shall be at no expense to the Government and shall not unreasonably delay the process. Any person or persons with whom the alien chooses to consult may be present at the interview

and may be permitted, in the discretion of the asylum officer, to present a statement at the end of the interview. The asylum officer, in his or her discretion, may place reasonable limits on the number of such persons who may be present at the interview and on the length of statement or statements made. If the alien is unable to proceed effectively in English, and if the asylum officer is unable to proceed competently in a language chosen by the alien, the asylum officer shall arrange for the assistance of an interpreter in conducting the interview. The interpreter may not be a representative or employee of the applicant's country of nationality or, if the applicant is stateless, the applicant's country of last habitual residence. The asylum officer shall create a summary of the material facts as stated by the applicant. At the conclusion of the interview, the officer shall review the summary with the alien and provide the alien with an opportunity to correct errors therein. The asylum officer shall create a written record of his or her determination, including a summary of the material facts as stated by the applicant, any additional facts relied on by the officer, and the officer's determination of whether, in light of such facts, the alien has established a credible fear of persecution or torture. The decision shall not become final until reviewed by a supervisory asylum officer.

\*      \*      \*      \*      \*

(d) *Referral for an asylum hearing.* If an alien, other than an alien stowaway, is found to have a credible fear of persecution or torture, the asylum officer will so inform the alien and issue a Form I–862, Notice to Appear, for full consideration of the asylum and withholding of removal claim in proceedings under section 240 of the Act. Parole of the alien may only be considered in accordance with section 212(d)(5) of the Act and § 212.5 of this chapter. If an alien stowaway is found to have a credible fear of persecution or torture, the asylum officer will so inform the alien and issue a Form I–863, Notice to Referral to Immigration Judge, for full consideration of the asylum and withholding of removal claim in proceedings under § 208.2(b)(1).

(e) *Removal of aliens with no credible fear of persecution or torture.* If an alien is found not to have a credible fear of persecution or torture, the asylum officer shall provide the alien with a written notice of decision and inquire whether the alien wishes to have an immigration judge review the negative decision, using Form I–869, Record of Negative Credible Fear Finding and

**Federal Register** / Vol. 64, No. 33 / Friday, February 19, 1999 / Rules and Regulations **8493**

Request for Review by Immigration Judge, on which the alien shall indicate whether he or she desires such review. If the alien is not a stowaway, the officer shall also order the alien removed and issue a Form I–860, Notice and Order of Expedited Removal. If the alien is a stowaway and the alien does not request a review by an immigration judge, the asylum officer shall also refer the alien to the district director for completion of removal proceedings in accordance with section 235(a)(2) of the Act.

(f) * * *

(1) If the immigration judge concurs with the determination of the asylum officer that the alien does not have a credible fear of persecution or torture, the case shall be returned to the Service for removal of the alien. The immigration judge's decision is final and may not be appealed.

(2) If the immigration judge finds that the alien, other than an alien stowaway, possesses a credible fear of persecution or torture, the immigration judge shall vacate the order of the asylum officer issued on Form I–860 and the Service may commence removal proceedings under section 240 of the Act, during which time the alien may file an application for asylum and withholding of removal in accordance with § 208.4(b)(3)(i).

(3) If the immigration judge finds that an alien stowaway possesses a credible fear of persecution or torture, the alien shall be allowed to file an application for asylum and withholding of removal before the immigration judge in accordance with § 208.4(b)(3)(iii). The immigration judge shall decide the application as provided in that section. Such decision may be appealed by either the stowaway or the Service to the Board of Immigration Appeals. If and when a denial of the application for asylum or withholding of removal becomes final, the alien shall be removed from the United States in accordance with section 235(a)(2) of the Act. If and when an approval of the application for asylum or withholding of removal becomes final, the Service shall terminate removal proceedings under section 235(a)(2) of the Act.

21. In Subpart B, § 208.31 is added to read as follows:

**§ 208.31   Reasonable fear of persecution or torture determinations involving aliens ordered removed under section 238(b) of the Act and aliens whose removal is reinstated under section 241(a)(5) of the Act.**

(a) *Jurisdiction.* This section shall apply to any alien ordered removed under section 238(b) of the Act or whose deportation, exclusion, or removal order is reinstated under section 241(a)(5) of the Act who, in the course of the administrative removal or reinstatement process, expresses a fear of returning to the country of removal. The Service has exclusive jurisdiction to make reasonable fear determinations, and EOIR has exclusive jurisdiction to review such determinations.

(b) *Initiation of reasonable fear determination process.* Upon issuance of a Final Administrative Removal Order under § 238.1 of this chapter, or notice under § 241.8(b) of this chapter that an alien is subject to removal, an alien described in paragraph (a) of this section shall be referred to an asylum officer for a reasonable fear determination. In the absence of exceptional circumstances, this determination will be conducted within 10 days of the referral.

(c) *Interview and Procedure.* The asylum officer shall conduct the interview in a non-adversarial manner, separate and apart from the general public. At the time of the interview, the asylum officer shall determine that the alien has an understanding of the reasonable fear determination process. The alien may be represented by counsel or an accredited representative at the interview, at no expense to the Government, and may present evidence, if available, relevant to the possibility of persecution or torture. The alien's representative may present a statement at the end of the interview. The asylum officer, in his or her discretion, may place reasonable limits on the number of persons who may be present at the interview and the length of the statement. If the alien is unable to proceed effectively in English, and if the asylum officer is unable to proceed competently in a language chosen by the alien, the asylum officer shall arrange for the assistance of an interpreter in conducting the interview. The interpreter may not be a representative or employee of the applicant's country or nationality, or if the applicant is stateless, the applicant's country of last habitual residence. The asylum officer shall create a summary of the material facts as stated by the applicant. At the conclusion of the interview, the officer shall review the summary with the alien and provide the alien with an opportunity to correct errors therein. The asylum officer shall create a written record of his or her determination, including a summary of the material facts as stated by the applicant, any additional facts relied on by the officers, and the officer's determination of whether, in light of such facts, the alien has established a reasonable fear of persecution or torture. The alien shall

be determined to have a reasonable fear of persecution or torture if the alien establishes a reasonable possibility that he or she would be persecuted on account of his or her race, religion, nationality, membership in a particular social group or political opinion, or a reasonable possibility that he or she would be tortured in the country of removal. For purposes of the screening determination, the bars to eligibility for withholding of removal under section 241(b)(3)(B) of the Act shall not be considered.

(d) *Authority.* Asylum officers conducting screening determinations under this section shall have the authority described in § 208.9(c).

(e) *Referral to Immigration Judge.* If an asylum officer determines that an alien described in this section has a reasonable fear of persecution or torture, the officer shall so inform the alien and issue a Form I–863, Notice of Referral to the Immigration Judge, for full consideration of the request for withholding of removal only. Such cases shall be adjudicated by the immigration judge in accordance with the provisions of § 208.16 within 10 days of the issuance of the I–863. Appeal of the immigration judge's decision shall lie to the Board of Immigration Appeals.

(f) *Removal of aliens with no reasonable fear of persecution or torture.* If the asylum officer determines that the alien has not established a reasonable fear of persecution or torture, the asylum officer shall inform the alien in writing of the decision and shall inquire whether the alien wishes to have an immigration judge review the negative decision, using Form I–898, Record of Negative Reasonable Fear Finding and Request for Review by Immigration Judge, on which the alien shall indicate whether he or she desires such review.

(g) *Review by immigration judge.* The asylum officer's negative decision regarding reasonable fear shall be subject to review by an immigration judge upon the alien's request. If the alien requests such review, the asylum officer shall serve him or her with a Form I–863. The record of determination, including copies of the Form I–863, the asylum officer's notes, the summary of the material facts, and other materials upon which the determination was based shall be provided to the immigration judge with the negative determination. Upon review of the asylum officer's negative reasonable fear determination:

(1) If the immigration judge concurs with the asylum officer's determination that the alien does not have a reasonable

fear of persecution or torture, the case shall be returned to the Service for removal of the alien. No appeal shall lie from the immigration judge's decision.

(2) If the immigration judge finds that the alien has a reasonable fear of persecution or torture, the alien may submit Form I–589, Application for Asylum and Withholding of Removal.

(i) The immigration judge shall consider only the alien's application for withholding of removal under § 208.16 and shall determine whether the alien's removal to the country of removal must be withheld or deferred.

(ii) Appeal of the immigration judge's decision whether removal must be withheld or deferred lies to the Board of Immigration Appeals. If the alien or the Service appeals the immigration judge's decision, the Board shall review only the immigration judge's decision regarding the alien's eligibility for withholding or deferral of removal under § 208.16.

## PART 235—INSPECTION OF PERSONS APPLYING FOR ADMISSION

22. The authority citation for part 235 continues to read as follows:

**Authority:** 8 U.S.C. 1101, 1103, 1182, 1183, 1201, 1224, 1225, 1226, 1227, 1228, 1252; 8 CFR part 2.

23. Section 235.1 is amended by revising paragraph (d)(4) to read as follows:

### § 235.1 Scope of examination.

\* \* \* \* \*

(d) \* \* \*

(4) An alien stowaway is not an applicant for admission and may not be admitted to the United States. A stowaway shall be removed from the United States under section 235(a)(2) of the Act. The provisions of section 240 of the Act are not applicable to stowaways, nor is the stowaway entitled to further hearing or review of the removal, except that an alien stowaway who indicates an intention to apply for asylum, or expresses a fear of persecution, a fear of torture, or a fear of return to the country of proposed removal shall be referred to an asylum officer for a determination of credible fear of persecution or torture in accordance with section 235(b)(1)(B) of the Act and § 208.30 of this chapter. An alien stowaway who is determined to have a credible fear of persecution or torture shall have his or her asylum application adjudicated in accordance with § 208.2(b)(2) of this chapter.

\* \* \* \* \*

24. In section 235.3, revise paragraph (b)(4) introductory text and paragraph (b)(4)(i)(D) to read as follows:

### § 235.3 Inadmissible aliens and expedited removal.

\* \* \* \* \*

(b) \* \* \*

(4) *Claim of asylum or fear of persecution or torture.* If an alien subject to the expedited removal provisions indicates an intention to apply for asylum, or expresses a fear of persecution, a fear of torture, or a fear of return to his or her country, the inspecting officer shall not proceed further with removal of the alien until the alien has been referred for an interview by an asylum officer in accordance with § 208.30 of this chapter to determine if the alien has a credible fear of persecution or torture. The examining immigration officer shall record sufficient information in the sworn statement to establish and record that the alien has indicated such intention, fear, or concern, and to establish the alien's inadmissibility.

(i) \* \* \*

(D) The consequences of failure to establish a credible fear of persecution or torture.

\* \* \* \* \*

25. In § 235.6, revise paragraphs (a)(1)(ii) and (iii), and paragraph (a)(2)(i) to read as follows:

### § 235.6 Referral to immigration judge.

(a) \* \* \*

(1) \* \* \*

(ii) If an asylum officer determines that an alien in expedited removal proceedings has a credible fear of persecution or torture and refers the case to the immigration judge for consideration of the application for asylum.

(iii) If the immigration judge determines that an alien in expedited removal proceedings has a credible fear of persecution or torture and vacates the expedited removal order issued by the asylum officer.

\* \* \* \* \*

(2) \* \* \*

(i) If an asylum officer determines that an alien does not have a credible fear of persecution or torture, and the alien requests a review of that determination by an immigration judge; or

\* \* \* \* \*

26. In § 235.8, add a new paragraph (b)(4), to read as follows:

### § 235.8 Inadmissibility on security and related grounds.

\* \* \* \* \*

(b) \* \* \*

(4) The Service shall not execute a removal order under this section under circumstances that violate section 241(b)(3) of the Act or Article 3 of the Convention Against Torture. The

provisions of part 208 of this chapter relating to consideration or review by an immigration judge, the Board of Immigration Appeals, or an asylum officer shall not apply.

\* \* \* \* \*

## PART 238—EXPEDITED REMOVAL OF AGGRAVATED FELONS

27. The authority citation for part 238 continues to read s follows:

**Authority:** 8 U.S.C. 1228; 8 CFR part 2.

28. In § 238.1, revise paragraphs (b)(2)(i) and (c)(1), and add new paragraph (f)(3) to read as follows:

### § 238.1 Proceeding under section 238(b) of the Act.

\* \* \* \* \*

(b) \* \* \*

(2) *Notice.*

(i) Removal proceedings under section 238(b) of the Act shall commence upon personal service of the Notice of Intent upon the alien, as prescribed by §§ 103.5a(a)(2) and 103.5a(c)(2) of this chapter. The Notice of Intent shall set forth the preliminary determinations and inform the alien of the Service's intent to issue a Form I–851A, Final Administrative Removal Order, without a hearing before an immigration judge. The Notice of Intent shall constitute the charging document. The Notice of Intent shall include allegations of fact and conclusions of law. It shall advise that the alien: has the privilege of being represented, at no expense to the government, by counsel of the alien's choosing, as long as counsel is authorized to practice in removal proceedings; may request withholding of removal to a particular country if he or she fears persecution or torture in that country; may inspect the evidence supporting the Notice of Intent; may rebut the charges within 10 calendar days after service of such Notice (or 13 calendar days if service of the Notice was by mail).

\* \* \* \* \*

(c) \* \* \*

(1) *Time for response.* The alien will have 10 calendar days from service of the Notice of Intent or 13 calendar days if service is by mail, to file a response to the Notice of Intent. In the response, the alien may: designate his or her choice of country for removal; submit a written response rebutting the allegations supporting the charge and/or requesting the opportunity to review the Government's evidence; and/or submit a statement indicating an intention to request withholding of removal under 8 CFR 208.16 of this chapter, and/or request in writing an extension of time

for response, stating the specific reasons why such an extension is necessary.

\* \* \* \* \*

(f) \* \* \*

(3) *Withholding of removal.* If the alien has requested withholding of removal under § 208.16 of this chapter, the deciding officer shall, upon issuance of a Final Administrative Removal Order, immediately refer the alien's case to an asylum officer to conduct a reasonable fear determination in accordance with § 208.31 of this chapter.

\* \* \* \* \*

## PART 240—PROCEEDINGS TO DETERMINE REMOVABILITY OF ALIENS IN THE UNITED STATES

29. The authority citation for part 240 continues to read as follows:

**Authority:** 8 U.S.C. 1103; 1182, 1186a, 1224, 1225, 1226, 1227, 1251, 1252 note, 1252a, 1252b, 1362; sec. 202, Pub. L. 105–100 (111 Stat. 2160, 2193); 8 CFR part 2.

30. In § 240.1, revise paragraph (a) to read as follows:

### § 240.1   Immigration Judges.

(a) *Authority.* (1) In any removal proceeding pursuant to section 240 of the Act, the immigration judge shall have the authority to:

(i) Determine removability pursuant to section 240(a)(1) of the Act; to make decisions, including orders of removal as provided by section 240(c)(1)(A) of the Act;

(ii) To determine applications under sections 208, 212(a)(2)(F), 212(a)(6)(F)(ii), 212(a)(9)(B)(v), 212(d)(11), 212(d)(12), 212(g), 212(h), 212(i), 212(k), 237(a)(1)(E)(iii), 237(a)(1)(H), 237(a)(3)(C)(ii), 240A(a) and (b), 240B, 245, and 249 of the Act and section 202 of Pub. L. 105–100;

(iii) To order withholding of removal pursuant to section 241(b)(3) of the Act and pursuant to the Convention Against Torture; and

(iv) To take any other action consistent with applicable law and regulations as may be appropriate.

(2) In determining cases referred for further inquiry, immigration judges shall have the powers and authority conferred upon them by the Act and this chapter. Subject to any specific limitation prescribed by the Act and this chapter, immigration judges shall also exercise the discretion and authority conferred upon the Attorney General by the Act as is appropriate and necessary for the disposition of such cases. An immigration judge may certify his or her decision in any case under section 240 of the Act to the Board of Immigration Appeals when it involves an unusually complex or novel question of law or fact. Nothing contained in this part shall be construed to diminish the authority conferred on immigration judges under sections 101(b)(4) and 103 of the Act.

\* \* \* \* \*

## PART 241—APPREHENSION AND DETENTION OF ALIENS ORDERED REMOVED

31. The authority citation for part 241 continues to read as follows:

**Authority:** 8 U.S.C. 1103, 1223, 1227, 1251, 1253, 1255, and 1330; 8 CFR part 2.

32. In § 241.8, revise paragraph (d) to read as follows:

### § 241.8   Reinstatement of removal orders.

\* \* \* \* \*

(d) *Exception for withholding of removal.* If an alien whose prior order of removal has been reinstated under this section expresses a fear of returning to the country designated in that order, the alien shall be immediately referred to an asylum officer for an interview to determine whether the alien has a reasonable fear of persecution or torture pursuant to § 208.31 of this chapter.

\* \* \* \* \*

33. In § 241.11, revise paragraph (d)(1) to read as follows:

### § 241.11   Detention and removal of stowaways.

\* \* \* \* \*

(d) *Stowaways claiming asylum*—

(1) *Referral for credible fear determination.* A stowaway who indicates an intention to apply for asylum or a fear of persecution or torture upon return to his or her native country or country of last habitual residence (if not a national of any country) shall be removed from the vessel or aircraft of arrival in accordance with § 208.5(b) of this chapter. The immigration officer shall refer the alien to an asylum officer for a determination of credible fear in accordance with section 235(b)(1)(B) of the Act and § 208.30 of this chapter. The stowaway shall be detained in the custody of the Service pending the credible fear determination and any review thereof. Parole of such alien, in accordance with section 212(d)(5) of the Act, may be permitted only when the Attorney General determines, in the exercise of discretion, that parole is required to meet a medical emergency or is necessary for a legitimate law enforcement objective. A stowaway who has established a credible fear of persecution or torture in accordance with § 208.30 of this chapter may be detained or paroled pursuant to § 212.5 of this chapter during any consideration of the asylum application. In determining whether to detain or parole the alien, the Service shall consider the likelihood that the alien will abscond or pose a security risk.

\* \* \* \* \*

## PART 253—PAROLE OF ALIEN CREWMEN

34. The authority citation in part 253 continues to read as follows:

**Authority:** 8 U.S.C. 1103, 1182, 1282, 1283, 1285; 8 CFR part 2.

35. In § 253.1, revise paragraph (f) to read as follows:

### § 253.1   Parole.

\* \* \* \* \*

(f) *Crewman, stowaway, or alien removable under section 235(c) alleging persecution or torture.* Any alien crewman, stowaway, or alien removable under section 235(c) of the Act who alleges that he or she cannot return to his or her country of nationality or last habitual residence (if not a national of any country) because of fear of persecution in that country on account of race, religion, nationality, membership in a particular social group, or political opinion, or because of fear of torture is eligible to apply for asylum or withholding of removal under 8 CFR part 208. Service officers shall take particular care to ensure that the provisions of § 208.5(b) of this chapter regarding special duties toward aliens aboard certain vessels are closely followed.

\* \* \* \* \*

36. Add a new part 507 to read as follows:

**8496**   **Federal Register** / Vol. 64, No. 33 / Friday, February 19, 1999 / Rules and Regulations

## PART 507—ALIEN TERRORIST REMOVAL PROCEDURES

### § 507.1   Eligibility for Protection under the Convention Against Torture.

A removal order under Title V of the Act shall not be executed in circumstances that would violate Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, subject to any reservations, understandings, declarations, and provisos contained in the United States Senate resolution of ratification of the Convention, as implemented by section 2242 of the Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. 105–277. Convention-based claims by aliens subject to removal under this Title shall be determined by the Attorney General, in consultation with the Secretary of State.

**Authority:** Pub. L. 105–277, 112 Stat. 2681.

Dated: February 13, 1999.

**Janet Reno,**

*Attorney General.*

[FR Doc. 99–4140 Filed 2–18–99; 8:45 am]

**BILLING CODE 4410–10–P**

AR505





Friday
February 19, 1999

Part V

# Department of Health and Human Services

Food and Drug Administration

Clinical Chemistry and Clinical Toxicology Devices Panel of the Medical Devices Advisory Committee; Notice of Meeting; Republication

### § 774.21   [Reserved]

### § 774.22   Loan closing.

(a) *Conditions.* The applicant must meet all conditions specified by the loan approval official in the notification of loan approval prior to closing.

(b) *Loan instruments and legal documents.* The applicant will execute all loan instruments and legal documents required by the Agency to evidence the debt, perfect the required security interest in the bankruptcy claim, and protect the Government's interest, in accordance with applicable State and Federal laws. In the case of an entity applicant, all officers or partners and any board members also will be required to execute the promissory notes as individuals.

(c) *Fees.* The applicant will pay all loan closing fees for recording any legal instruments determined to be necessary and all notary, lien search, and similar fees incident to loan transactions. No fees will be assessed for work performed by Agency employees.

### § 774.23   Loan servicing.

Loans will be serviced in accordance with subpart J of part 1951 of this title, or its successor regulation. If the loan is not repaid as agreed and default occurs, servicing will proceed in accordance with section 1951.468 of that part.

### § 774.24   Exception.

The Agency may grant an exception to any of the requirements of this section, if the proposed change is in the best financial interest of the Government and not inconsistent with the authorizing statute or other applicable law.

Signed at Washington, D.C., on November 29, 2000.

**August Schumacher, Jr.,**
*Under Secretary for Farm and Foreign Agricultural Services.*

[FR Doc. 00–30977 Filed 12–5–00; 8:45 am]
**BILLING CODE 3410–05–P**

---

## DEPARTMENT OF JUSTICE

## Immigration and Naturalization Service

## 8 CFR Part 208

**[INS Order No. 1865–97; AG Order No. 2340–2000]**

**RIN 1115–AE93**

## Asylum Procedures

**AGENCY:** Immigration and Naturalization Service, Justice; and Executive Office for Immigration Review, Justice.

**ACTION:** Final rule.

---

**SUMMARY:** This final rule amends the Department of Justice regulations implementing the provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), governing asylum claims. Additionally, this rule amends portions of the regulations governing cases in which an applicant has established past persecution or in which an applicant may be able to avoid persecution in a particular country by relocating to another area of that country. Finally, the rule identifies factors that may be considered in the exercise of discretion in asylum cases in which the alien has established past persecution but may not have a well-founded fear of future persecution. This final rule will ensure that asylum applications are processed in accordance with the Immigration and Nationality Act (Act), as amended by IIRIRA, as well as with international instruments.

**DATES:** This rule is effective January 5, 2001.

**FOR FURTHER INFORMATION CONTACT:** *For matters relating to the Immigration and Naturalization Service*—Joanna Ruppel, International Affairs, Department of Justice, Immigration and Naturalization Service, 425 I Street NW., ULLICO third floor, Washington, DC 20536, telephone (202) 305–2663. *For matters relating to the Executive Office for Immigration Review*—Charles Adkins-Blanch, General Counsel, Executive Office for Immigration Review, Suite 2400, 5107 Leesburg Pike, Falls Church, Virginia 22041, telephone (703) 305–0470.

**SUPPLEMENTARY INFORMATION:**

## I. Background

*Regulations To Implement the Illegal Immigration Reform and Immigrant Responsibility Act of 1996*

On March 6, 1997, the Service and EOIR jointly published in the **Federal Register**, at 62 FR 10312, an interim rule to implement Public Law 104–208 (110 Stat. 3546) (IIRIRA). That legislation significantly amended several parts of the Immigration and Nationality Act ("Act" or "INA"), including part 208. The interim regulations implementing IIRIRA were preceded by a notice of proposed rulemaking, published in the **Federal Register** on January 3, 1997, at 62 FR 444, and providing a 30-day comment period. The interim rule provided a 120-day comment period. The Department of Justice (Department) received 39 comments on the interim rule in addition to the 124 comments already received as a result of the proposed rule. This final rule reflects further changes resulting from

comments received in response to both the original proposed rule and the interim rule.

*Proposed Rule Regarding Past Persecution, Internal Relocation, and Discretion (Past Persecution Rule)*

On June 11, 1998, at 63 FR 31945, the Service and EOIR jointly published in the **Federal Register** a proposed rule to change portions of 8 CFR 208.13 and 208.16 in order to provide further guidance on adjudicating asylum cases and withholding of removal cases when an applicant has established past persecution and when the applicant may be able to avoid persecution in his or her home country by relocating to another area of that country. The rule proposed to establish new guidelines concerning the Attorney General's exercise of discretion in cases in which past persecution is established, and the types of evidence that may be considered in determining whether an applicant has a well-founded fear of future persecution. Additionally, the rule proposed to identify new factors that could be considered in the determination whether to grant asylum when an applicant has established past persecution but no longer has a well-founded fear of future persecution. The Department received 35 comments on the proposed past persecution rule.

The Department has elected to split part 208 from the rest of the IIRIRA interim regulations and to incorporate amendments to part 208 into this final rule based both on comments to the IIRIRA interim rule and on comments to the June 1998 proposed rule regarding past persecution. In the future, the Department will publish a proposed rule concerning the definition of "persecution" and the definition of "particular social group." Those new proposals are based in part on certain of the provisions being made final in this rule.

## II. Comments

Most of the commenters on both the interim IIRIRA rule and proposed past persecution rule represented either attorney organizations or voluntary organizations predominantly involved with refugees and asylum claimants. The Department also received comments from individual attorneys and the regional representative of United Nations High Commissioner for Refugees (UNHCR). Since many of the comments were duplicative or endorsed the submissions of other commenters, the Department will address the comments by section and topic, rather than reference each comment and commenter. The following discussion

also identifies amendments made by the Department to clarify and streamline the regulations as part of the Administration's reinvention and regulation streamlining initiative.

*§ 208.2—Jurisdiction*

To clarify jurisdiction over asylum applications, the Department has reorganized and revised this section as follows:

(1) Language has been added to § 208.2(a) to establish that the Office of International Affairs has initial jurisdiction over credible fear determinations under § 208.30 and reasonable fear determinations under § 208.31.

(2) Language in § 208.2(a) relating to the filing of a complete application has been removed as redundant with the provisions of § 208.3.

(3) Section 208.2(b)(3) has been redesignated as § 208.2(b) to provide a general description of Immigration Court jurisdiction, relevant to the majority of asylum applications adjudicated in Immigration Court, prior to discussion of the more limited jurisdiction applicable in circumstances described in new § 208.2(c).

(4) The first sentence in new § 208.2(b) (formerly § 208.2(b)(3)), which refers to an immigration judge's jurisdiction over asylum applications "after a copy of the charging document has been filed with the Immigration Court," has been amended. The Department has removed the words "a copy of" from that sentence because, in general, only the charging document with the original signature of the Service officer who issued the charging document may be filed with the Immigration Court. The Department also amended the last sentence in § 208.2(b) to establish that immigration judges have exclusive jurisdiction over credible fear determinations that have been referred to the Immigration Court pursuant to § 208.30, as well as reasonable fear determinations that have been referred to the Immigration Court pursuant to § 208.31. In addition, the reference to "Executive Office for Immigration Review" has been replaced with "Immigration Court" because only immigration judges have jurisdiction over credible fear and reasonable fear review proceedings.

(5) Section 208.2(b)(1) has been redesignated as § 208.2(c), governing asylum and withholding proceedings for those aliens not entitled to removal proceedings under section 240 of the Act. Section 208.2(c)(1) relates to aliens who are not entitled to proceedings under section 240 of the Act and are eligible to apply only for asylum and

withholding of removal. Section 208.2(c)(2) relates to jurisdiction over proceedings that are limited to requests for withholding of removal pursuant to § 208.31, after an alien subject to reinstatement of a prior order under section 241(a)(5) of the Act or administrative removal under section 238(b) of the Act has been found to have a reasonable fear.

(6) The Department has rewritten the language of § 208.2(c)(1)(v) (formerly § 208.2(b)(1)(v)), to clarify the existing rules relating to cases falling under section 235(c) of the Act. Section 235(c) provides an expedited removal process for certain aliens who are suspected of being inadmissible on national security grounds; the Service has the authority to order such an alien removed without further inquiry or hearing by an immigration judge, as provided in § 235.8 of this chapter.

The current regulatory scheme provides adequate safeguards to ensure that the expedited nature of removal under section 235(c) is balanced against the right to apply for asylum in appropriate cases. An immigration officer or immigration judge must initiate certain procedures described in 8 CFR 235.8 when an arriving alien is suspected of being inadmissible on security or related grounds. Only after those procedures have been completed and a permanent order of inadmissibility is issued would the question arise regarding eligibility for asylum or withholding of removal. Although some categories of persons found inadmissible on those grounds are ineligible for asylum, other persons, such as those found inadmissible based on membership in a terrorist organization, remain eligible for asylum.

The Regional Director is authorized to pretermit an asylum application for aliens who have been issued a permanent order of inadmissibility. However, in some cases, and in the exercise of prosecutorial discretion, the Regional Director may choose to place persons found subject to removal under section 235(c) of the Act, but who are not subject to the bars to asylum, in asylum-only proceedings under § 208.2(c)(1) by issuing a Form I–863, Notice of Referral to Immigration Judge. In those cases in which the Service has affirmatively decided to place an alien in asylum-only proceedings and has issued a Form I–863, the immigration judge would then have jurisdiction to hear the alien's asylum application. Of course, unless the Service has issued a Form I–863 to an alien who is found to be removable under section 235(c) of the Act, the immigration judges have no jurisdiction with respect to those cases.

The Department further notes that § 235.8 of this chapter, as amended by the regulations implementing the Convention Against Torture, expressly limits the applicability of § 208.2. Section 235.8(b)(4) specifically states that persons seeking withholding under section 241(b)(3) of the Act or the Convention Against Torture are not subject to the "provisions of part 208 of this chapter relating to consideration or review by an immigration judge, the Board of Immigration Appeals or an asylum officer." Instead, it is the Service's responsibility to ensure that no removals are conducted under section 235(c) that violate our international obligations; the process for making such a determination remains within the Service's control.

(7) Section 208.2(c)(1)(vi) [formerly section 208.2(b)(1)(vi)] has been amended to clarify that the exclusive jurisdiction of the immigration judge comes into effect only when the district director refers an alien described in this provision for a hearing that is limited to asylum and withholding of removals.

(8) In § 208.2(c)(3)(i) (formerly § 208.2(b)(2)(i)), which describes rules of procedures, the reference to "8 CFR part 240" in the first sentence has been amended to read "8 CFR part 240, subpart A," to clarify that hearings limited to eligibility for asylum and/or withholding of removal shall be conducted under the same procedures that apply in removal proceedings.

(9) Section § 208.2(b)(2)(ii) has been redesignated as § 208.2(c)(3)(ii), but otherwise is unchanged.

(10) Section 208.2(b)(2)(iii) has been redesignated as § 208.2(c)(3)(iii). Additionally, it has been amended by removing reference to sections 208, 212(h), 212(i) of the Act and by adding an exception based on a showing of exceptional circumstances, in order to reflect the statutory language in section 240(b)(7) of the Act.

*§ 208.3—Form of Application*

The name of the Form I–589, Application for Asylum and Withholding of Removal, as it appeared in § 208.3(a) has been corrected to "Form I–589, Application for Asylum and for Withholding of Removal." Section 208.3(c)(4) has been corrected to reflect that section 274C of the Act provides for criminal as well as civil penalties for knowingly placing false information on an Application.

*§ 208.4—Filing the Application*

A considerable number of comments were received regarding the 1-year filing deadline contained in section 208(a)(2)(B) of the Act and the

AR508

Federal Register / Vol. 65, No. 235 / Wednesday, December 6, 2000 / Rules and Regulations     **76123**

provisions for exemption contained in section 208(a)(2)(D) of the Act relating to changed conditions.

Some commenters took issue with the deadline itself. While the Department understands the concerns of those commenters, the 1-year filing deadline is a statutory requirement and therefore cannot be removed by rulemaking.

Some commenters suggested that an asylum officer or immigration judge should question an applicant before an application can be rejected as untimely filed. This suggestion has been adopted for two reasons. First, the decision on a tardy filing issue can best be made only after an asylum officer, in an interview, or immigration judge, in a hearing, has given an applicant the opportunity to present any relevant and useful information bearing on any prohibitions on filing. Second, for applicants who are placed in removal proceedings, the immigration judge must still determine whether the applicant is eligible for withholding of removal, even if it is found that the alien is ineligible to apply for asylum.

Language in § 208.4(a)(2)(ii) was added for consistency with § 1.1(h), which defines the term "day" for computing the period of time for taking action provided in 8 CFR. When calculating the one-year period when the last day of the period falls on a Saturday, Sunday, or legal holiday, the period shall run until the end of the next day that is not a Saturday, Sunday, or legal holiday. One commenter suggested that the Department consider the filing of an asylum application to be the date the application is mailed or otherwise sent to the Service or Immigration Court. This suggestion has been adopted in part. For an application filed with the Service, an application is considered to have been filed on the date it is received by the Service. In a case in which the 1-year filing deadline has not been met, however, if the applicant provides clear and convincing documentary evidence of mailing the application within the 1-year period, the mailing date shall be considered the filing date. For a case before the Immigration Court or the Board of Immigration Appeals (Board), an asylum application is considered to have been filed on the date it is received by the Court or the Board.

In addition, other references to filing an application in paragraph (a) relating to "submission of," "submitted," or "applied for" have also been changed to "filed" in order to make language in the section consistent. Language was also added to reflect that the provisions of this section apply to asylum applications decided by an asylum officer, an immigration judge, or the Board.

Many commenters recommended a change in the language of § 208.4(a)(4) and § 208.4(a)(5) that would indicate the list of circumstances is not all-inclusive. That suggestion has been adopted.

The Department agreed with several of the recommended amendments to § 208.4(a)(4), relating to changed circumstances. First, the Department eliminated the requirement that the changed circumstances be "objective." The modifier "objective" was removed to avoid confusion in cases where, for example, the changed circumstance relates to a subjective choice an applicant has made, such as a religious conversion or adoption of political views. Additionally, the Department eliminated the requirement that the changed circumstances occur within the United States, because there may be situations in which the changed circumstances, such as religious conversion, took place outside the United States, but not in the applicant's home country. The Department also specified that cessation of the requisite relationship between a principal applicant and a dependent after the dependent has been included in the principal applicant's application as a derivative applicant may constitute a changed circumstance. Finally, the Department clarified that an adjudicator must take into account an applicant's delayed awareness of a changed circumstance, such as events in the home country, when determining whether a period of delay is reasonable.

Section 208.4(a)(5), relating to extraordinary circumstances, has been revised to reflect the numerous comments regarding the current list of circumstances that may constitute extraordinary circumstances. The Department has added additional circumstances to the non-exhaustive list, as discussed below. Additionally, the Department has changed the word "shall" in the second sentence of paragraph (a)(5) to "may" to better reflect the statutory language in section 208(a)(2)(D) and to reinforce the necessity of analyzing each case on an individual basis. The Department has also added language to the burden of proof requirement to specify clearly that the applicant bears the burden to demonstrate that the delay was reasonable under the circumstances.

With respect to § 208.4(a)(5), some commenters suggested that extraordinary circumstances not be limited to factors beyond the alien's control. That suggestion has been partially adopted. While it is hard to imagine a situation that both would be entirely within the alien's control and would also prevent him or her from filing the application, it is not difficult to imagine qualifying situations in which the alien might be forced to choose between the lesser of two evils, or the alien might be able to exercise a limited amount of control. The regulation has been amended to provide that the alien must not have intentionally created the circumstance.

Additionally, the phrase "but for those circumstances he or she would have been able to file the application within the 1-year period" has been modified to ensure consistency with the statutory language to read "those circumstances were directly related to the alien's failure to file the application within the 1-year period."

In § 208.4(a)(5)(i), the phrase "of significant duration," in reference to an experience of serious illness or disability, was removed to allow for a situation in which the timing of an applicant's serious illness or disability prohibited him or her from filing the asylum application within one year of the individual's arrival in the United States, even though the illness or disability was of short duration.

Several commenters recommended that the list of extraordinary circumstances be expanded to include maintaining valid immigrant or nonimmigrant status, in addition to maintaining Temporary Protected Status. The Department has accepted the recommendation because there are sound policy reasons to permit persons who were in a valid immigrant or nonimmigrant status, or were given parole, to apply for asylum within a reasonable time after termination of parole or immigration status. The Department does not wish to force a premature application for asylum in cases in which an individual believes circumstances in his country may improve, thus permitting him to return to his country. For example, an individual admitted as a student who expects that the political situation in her country may soon change for the better as a result of recent elections may wish to refrain from applying for asylum until absolutely necessary. The Department would expect a person in that situation to apply for asylum, should conditions not improve, within a very short period of time after the expiration of her status. Failure to apply within a reasonable time after expiration of the status would foreclose the person from meeting the statutory filing requirements. Generally, the Department expects an asylum-seeker to apply as soon as possible after expiration of his or her valid status, and failure to do so will result in rejection

of the asylum application. Clearly, waiting six months or longer after expiration or termination of status would not be considered reasonable. Shorter periods of time would be considered on a case-by-case basis, with the decision-maker taking into account the totality of the circumstances.

Others recommended including situations involving the death or serious illness or incapacity of the applicant's legal representative or of a member of the applicant's immediate family. The Department agrees that there may be situations in which the serious illness of an applicant's representative or family member could relate to an applicant's delay in applying for asylum. Therefore, that suggestion has been adopted. As with all exceptions to the 1-year filing requirement based on extraordinary circumstances, the applicant would have to demonstrate that the illness of the representative or family related to the delay in filing and that the applicant applied for asylum within a reasonable amount of time after the illness.

Some commenters suggested broadening the two illustrative lists. The lists have been expanded to include some, but not all, of the suggestions. The Department's decision to include only some of the circumstances suggested in the comments does not mean that the Department has determined that those that were not included could never excuse tardiness. The fact that an applicant's circumstances are described in the list of possible changed or extraordinary circumstances does not in itself mandate that a tardy filing be excused; nor does the lack of such a description mean that the circumstances cannot be raised during an interview or hearing and result in excuse of the untimely filing. The lists merely provide examples of circumstances that might result in a tardiness being excused. In order for a tardy filing to be excused, an applicant must first credibly show the existence or occurrence of the circumstances (regardless of whether those circumstances are specifically listed in the regulations), and then show (1) for changed circumstances, that those changes materially affect the alien's eligibility for asylum, or (2) for extraordinary circumstances, that those circumstances directly relate to the alien's failure to file the application within the 1-year deadline. Without the direct connection, the alien is statutorily ineligible to apply for asylum.

The Department notes that the existing provision in this section relating to "ineffective assistance of counsel" raises questions that have arisen under the Act more generally concerning whether, and if so when, errors by counsel may furnish a ground for an alien to obtain relief, such as setting aside a final order or excusing a failure to comply with a statutory deadline. For example, in a case that is currently pending before the Board of Immigration Appeals, the Service is arguing that because there is no constitutional right to government-furnished counsel in immigration proceedings, there is, under *Coleman v. Thompson,* 501 U.S. 722 (1991), no constitutional basis for relief based on a claim of ineffective assistance of counsel. Similar issues concerning errors of counsel have been raised in court in other contexts under the Act. The Department accordingly is re-examining the ineffective-assistance-of-counsel provision in the asylum regulations as part of a broader assessment of the role that counsel error may play in requests for relief in immigration proceedings. However, because those issues have not yet been raised in the context of the current rulemaking proceedings, this provision is being carried forward unchanged at the present time. The Department will address those issues separately in the future.

Certain commenters appeared to be confused about the amount of additional time an applicant should receive in order to file an application when it has been determined that a changed or extraordinary circumstance is present in a particular case. While most understood that the finding of changed or extraordinary circumstances justifies the tardiness being excused to the extent necessary to allow the alien a reasonable amount of time to submit the application, some believed that the alien would automatically receive one year from the date of the circumstance involved to file a timely application. Although there may be some rare cases in which a delay of one year or more may be justified because of particular circumstances, in most cases such a delay would not be justified. Allowing an automatic one year extension from the date a changed or extraordinary circumstance occurred would clearly exceed the statutory intent that the delay be related to the circumstance. Accordingly, that approach has not been adopted.

Section 208.4(b)(2) has been clarified to reflect that the director of the local asylum office, in addition to the director of the asylum program, can authorize the filing of an application directly with a local asylum office instead of with a Service Center. A provision was also added to this section that allows an application to be filed directly with an asylum office in a case in which an individual who was previously included in a principal applicant's asylum application as a dependent has lost derivative status and wants to file as a principal applicant.

The title of § 208.4(b)(3) has been changed from "With the immigration judge" to "With the Immigration Court," and in § 208.4(b)(3)(i), the phrase "jurisdiction over the port, district office, or sector after service and filing of the appropriate charging document" has been changed to "jurisdiction over the underlying proceeding." The form number of the Notice of Referral to Immigration Judge (I–863) has also been added to § 208.4(b)(3)(iii).

Finally, the second sentence of § 208.4(b)(5) has been amended to reflect that submission of an asylum application to the district director does not automatically trigger the issuance of a Form I–863, Notice of Referral to an Immigration Judge.

### § 208.5—Special Duties Towards Aliens in Custody of the Service

Language was added to reflect that paragraph (a), which relates to aliens in the custody of the Service who request asylum or withholding of removal, or who express a fear of persecution or harm, does not pertain to an alien in custody pending a reasonable fear determination pursuant to § 208.31, just as it does not pertain to an alien pending a credible fear determination. However, a sentence was added to reflect that, even though the Service is not required to provide application forms to aliens pending a credible fear or reasonable fear determination, the Service may provide the forms upon request. The word "persecution" was deleted after the terms "credible fear" and "reasonable fear" to reflect that a credible fear or reasonable fear determination involves an evaluation of both fear of persecution and fear of torture. Finally, § 208.5(b)(1)(ii) has been amended to allow a district director to extend the 10-day filing period for crewmen when good cause exists.

### § 208.6—Disclosure to Third Parties

One commenter suggested the restoration of the second sentence in § 208.6(a), which had been removed as superfluous, relating to the deletion of identifying details from copies of asylum cases in public reading rooms. The Department believes § 208.6 protects the confidentiality of asylum applicants in public reading rooms and, therefore, has decided not to restore the removed language to this section. The Department has added language to

§ 208.6 regarding the disclosure to third parties of information and records relating to credible fear interviews and determinations, as well as reasonable fear interviews and determinations, to protect claimants' confidentiality in those proceedings.

The Department is considering further amendments to the confidentiality provisions and will publish a proposed rule if it decides further change is necessary.

### § 208.7—Employment Authorization

One commenter suggested a clarification that an asylum office referral of an asylum application to an immigration judge does not stop the 150-day employment authorization clock. This suggestion has not been adopted because it is not entirely accurate. Although the 150-day clock continues to run even if an asylum application is referred to the Immigration Court, an applicant may cause a delay that could stop the clock, including failing to appear at a hearing before the Immigration Court, or failing to follow fingerprinting requirements. Accordingly, this section has not been changed.

### § 208.9—Procedure for Interview Before an Asylum Officer

This section has not been substantively changed, although several comments were received. The reference to § 208.14(b) in paragraph (d) of this section was amended to refer to § 208.14(c) for consistency with revisions to § 208.14.

One commenter suggested that the regulations should contain protections to ensure the non-adversarial nature of the asylum interview and further commented that, because § 208.9(b) states that interviews will be conducted separate and apart from the public except at the request of the applicant, the asylum applicant, not the asylum officer, has the right to determine the number of individuals who may be present during an asylum interview. The Department believes that the regulations contain sufficient guidelines regarding the nonadversarial nature of the interview and has not amended them. The asylum officer needs to retain control over the flow and parameters of the interview, and the Department believes it is appropriate for asylum officers, taking into account the applicant's right to bring a representative and to present witnesses, and his or her need for an interpreter, to determine the number of individuals who may be present at the interview. Individual problems that may arise are more appropriately addressed by raising

them with local asylum office directors than through regulatory changes.

The same commenter suggested that the asylum interview should be taped for accurate preservation of the record. While the Department has carefully considered that comment, and the Service does not rule out adopting a policy to tape record interviews in the future, at the present time the Department will not adopt that suggestion. In order to benefit the process, the taping would have to be transcribed for inclusion in the record. That would increase the cost, time, and personnel resources required to adjudicate an asylum application in a system that was designed to have an initial nonadversarial hearing with an asylum officer, followed, if the case is referred, by a *de novo*, more formal adversarial hearing, which is recorded, before an immigration judge. The Service believes that, in light of current circumstances, the administrative cost and burden of tape recording asylum interviews outweigh any expected benefit from the recording of interviews. As previously stated, however, the Service does not rule the option out for the future.

The same commenter also suggested that the Department should secure interpreters for asylum applicants who are interviewed at an asylum office. If the Department is unwilling to do so, the commenter continued, the Department should not penalize an applicant with an unexcused absence for failing to bring a qualified interpreter. The interim regulation provided an applicant a greater opportunity to find a qualified interpreter by permitting an applicant to provide an interpreter who is fluent in English and the applicant's native language, or any other language in which the applicant is fluent. The Service recognizes that Service-appointed interpreters could benefit applicants and the program. At this time, all federal agencies, including the Service, are reviewing issues relating to language interpreters in light of the recent Presidential Executive Order 13116, which directs federal agencies to establish written policies by December 11, 2000, on the language-accessibility of their programs and the programs of those who receive federal funds. The issue of interpreters raised by the commenter will therefore be addressed in compliance with Executive Order 13116.

The commenter's final suggestion was to incorporate into this part of the regulations guidelines for paroling detained asylum-seekers. The parole of aliens into the United States is within

the purview of a district director and covered under § 212.5. The Department believes that § 212.5 contains sufficient guidelines to the Service for determining which aliens may be paroled, and has not included any guidelines for paroling aliens into this part.

Another commenter suggested that an applicant should be able to authorize counsel or a representative to pick-up a decision, without interruption of the 150-day clock. Section 239(a)(1) of the Act, however, specifically states that a Notice to Appear shall be given in person to the alien. The Act does not allow for a counsel or representative to accept service of a Notice to Appear unless the decision is mailed.

The same commenter suggested that § 208.9(d) should allow an attorney the opportunity to respond orally to any questions or evidence presented at the interview rather than allowing an asylum officer to require a representative to submit comments in writing. The current provisions in this section do allow for an attorney or representative to make an oral statement, and they also allow an asylum officer the discretion to have a representative submit comments in writing rather than orally, depending upon the particular facts in the case. Consistent with the current regulations, it is the general practice of asylum officers to allow an attorney the opportunity for oral responses and to ask questions at the end of the interview, subject to appropriate limitations. Therefore, the Department does not believe it necessary to make the suggested changes.

### § 208.10—Failure To Appear at an Interview

The Department received comments from one commenter on this section. The comments included a request for guidance on how an applicant can prove that the Service did not mail notice of interview to his or her address, and what constitutes "exceptional circumstances." With regard to the latter, the commenter recommended that the term "exceptional circumstances," which the commenter viewed as too harsh, be replaced with "good cause."

The Department declines to provide guidance on how to prove a notice of interview was not properly provided, and to further define "exceptional circumstances" beyond the definition provided in section 240(e)(1) of the Act. Determining whether a notice was properly provided and what constitutes "exceptional circumstances" must be reviewed on a case-by-case basis. That

approach allows an asylum office director the discretion to determine the type of evidence necessary to show that notice of interview was not properly given in a particular individual's case, and the types of circumstances that may be considered "exceptional." In accordance with section 208(d)(5)(A)(v) of the Act, the Service must excuse the applicant's failure to appear for an interview for exceptional circumstances, but may excuse an applicant's failure to appear for good cause where appropriate. As a practical matter, the Service generally will exercise discretion to excuse a first-time failure to appear if (1) good cause has been shown, (2) proceedings before the Immigration Court have not been initiated, and (3) the excuse is received within a reasonable amount of time after the interview date. In the near future, the Service intends to issue a proposed rule clarifying the consequences of failure to appear, which will give the public further opportunity to comment on those issues.

### § 208.12—Reliance on Information Compiled by Other Sources

In response to one comment, paragraph (b) of this section was revised to clarify that a prohibition on discovery of information does not include requests for information made under the Freedom of Information Act (FOIA).

### § 208.13—Establishing Asylum Eligibility

Some commenters suggested that the former §§ 208.13(b)(2)(ii) and 208.16(b)(4) (giving due consideration to evidence that the government persecutes its nationals for unauthorized departure or seeking asylum) be reinstated in the regulations. This matter was thoroughly reviewed in the preamble to the interim rule at 62 FR 10312 in response to the earlier comments to the proposed rule at 62 FR 444. The comments to the interim rule raised no significant issues that were not previously addressed, and no changes have been made in that regard.

A new § 208.13(c)(2)(F) was added for consistency with the provisions of the Anti-terrorist and Effective Death Penalty Act of 1996 (AEDPA). For applications for asylum filed prior to April 1, 1997, an applicant who falls within subclauses (I), (II), or (III) of section 212(a)(3)(B)(i) of the Act (relating to terrorist activity) is ineligible for a grant of asylum unless it is determined that there are no reasonable grounds to believe that the individual is a danger to the security of the United States.

Some commenters argued that language about discretionary denials of asylum in § 208.13(d) was inconsistent with section 208(a)(2)(A) of the Act, which provides for rejection of an asylum application when an alien may be removed pursuant to a bilateral or multilateral agreement to a safe third country. In drafting the interim rule, the Department had based its decision to include this regulatory provision on section 208(d)(5)(B) of the Act (which gives the Attorney General the authority to "provide by regulation for any other conditions or limitations on the consideration of an application for asylum not inconsistent with this Act") and section 208(b)(2)(C) of the Act (which gives the Attorney General authority to establish limitations and conditions under which an alien may be found ineligible for asylum), not on section 208(a)(2)(A) of the Act. While the Department still finds that the regulatory provision would be fully in keeping with the Act, it has decided to remove it from the regulations to avoid confusion.

The Department notes that it has not issued a notice in the **Federal Register** announcing that the United States has entered into a bilateral or multilateral agreement permitting removal to a safe third country pursuant to section 208(a)(2)(A) of the Act. The Department indicated in the final rule at 59 FR 62284 its intent to notify the public in advance through a **Federal Register** publication should the United States enter into any such agreements.

Past Persecution Rule

This final rule also incorporates changes to this section and § 208.16 (withholding of removal) that were the subject of a proposed rule that was published in the **Federal Register** on June 11, 1998, at 63 FR 31945. In that rule, changes were proposed for adjudicating cases in which an applicant has established past persecution or in which an applicant may be able to avoid persecution in his or her home country by relocating to another area of that country.

There were 35 comments submitted in response to the publication of the June 11, 1998, proposed rule. Twenty-six of the commenters argued that the proposal should be withdrawn and the effort to amend the regulation abandoned because the proposed changes violate the Act under which the Attorney General is given authority over the adjudication of applications for asylum and withholding of removal, and are inconsistent with precedent court decisions and international law. The other commenters were also

opposed to virtually all the changes included in the proposed rule, but did not specifically request that the proposed rule be abandoned outright.

First, the Department does not agree with the argument that those regulatory changes are *ultra vires*, or beyond the authority granted to the Attorney General under the Act. Under section 208 of the Act, when an individual has established that he or she is a "refugee," as defined in section 101(a)(42)(A) of the Act, the Attorney General is granted the discretion to determine which "refugees" will be granted asylum in the United States. Prior to enactment of IIRIRA, this broad delegation of power to the Attorney General over the adjudication of asylum applications withstood challenges to the Attorney General's authority to implement rules that denied asylum to persons who otherwise met the "refugee" definition for reasons other than those listed in the Act. *Komarenko* v. *INS,* 35 F.3d 432, 435–36 (9th Cir. 1994) (rejected challenge to the Attorney General's authority to issue a regulatory provision that denied asylum to refugees who were convicted of particularly serious crimes); *Yang* v. *INS,* 79 F.3d 932 (9th Cir.), *cert. denied,* 519 U.S. 824 (1996) (rejected challenge to the Attorney General's authority to deny asylum to refugees who were found to have been firmly resettled). Although the commenters correctly point out that section 208 of the Act was amended by IIRIRA to make several categories of individuals ineligible for asylum who had previously been barred only by regulation, section 208(b)(2)(C) of the Act specifically continues to give the Attorney General authority "by regulation (to) establish additional limitations and conditions * * * under which an alien shall be ineligible for asylum."

The Department has concluded that revisions to the regulatory language providing guidelines on the exercise of discretion in determining an applicant's eligibility for asylum, once he or she has been found to meet the definition of refugee based on past persecution, are justified and in line with the administrative and judicial precedents outlined in the Supplementary Information section to the proposed rule at 63 FR 31945. That includes, inter alia, consideration of the ability of an applicant who has been subjected to past persecution to relocate safely in his or her home country, a factor that has been recognized as appropriate for the Attorney General to consider in the exercise of her discretion to grant or deny asylum. *Harpinder Singh v. Ilchert,* 63 F.3d 1501, 1511 (9th Cir.

1995); *Surinder Singh* v. *Ilchert,* 69 F.3d 375, 379 (9th Cir. 1995). In addition, the Department has concluded that requiring consideration of the applicant's ability to relocate safely in his or her home country in determining whether the applicant has a well-founded fear of persecution is in line with the previous administrative and judicial decisions, such as *Matter of Acosta,* 19 I. & N. Dec. 211, 235 (BIA 1985), *modified on other grounds, Matter of Mogharrabi,* 19 I & N Dec. 439 (BIA 1987); *Etugh* v. *INS,* 921 F.2d 36, 39 (3rd Cir. 1990); *Quintanilla-Ticas* v. *INS,* 783 F.2d 955, 957 (9th Cir. 1986), outlined in the Supplementary Information section to the proposed rule.

The Department does agree, however, that some changes to the proposed language are appropriate in order to ensure that those provisions are applied in a manner that complies with our international obligations under the 1951 Convention relating to the Status of Refugees ("1951 Convention"), as modified by the 1967 Protocol relating to the Status of Refugees. In determining how to revise these provisions, the Department referred to the relevant provisions of the United Nations High Commissioner for Refugee's Handbook on Procedures and Criteria for Determining Refugee Status ("UNHCR Handbook"). Although the Department is not bound by the UNHCR Handbook, the handbook can serve as a "useful interpretative aid," *INS* v. *Aguirre-Aguirre,* 526 U.S. 415, 427 (1999), and "provides significant guidance in construing the Protocol, to which Congress sought to conform" with the passage of the Refugee Act of 1980. *INS* v. *Cardoza-Fonseca,* 480 U.S. 421, 439 n.22 (1987). In §§ 208.13(b)(1)(i)(A) and 208.16(b)(1)(i)(A), the regulatory language for overcoming the presumption of a well-founded fear of persecution and a threat to the applicant's life or freedom because of past persecution is changed to state that the Service must show a "fundamental change in circumstances" in order to overcome the presumption. That phrase is consistent with Article 1 C(5) of the 1951 Convention, reflects the relevant language regarding the fundamental nature of the change at paragraph 135 of the UNHCR Handbook, and is also the exact language provided in section 208(c)(2)(A) of the Act concerning the termination of a refugee's grant of asylum in the United States. By adopting that language rather than that requiring a showing of changed country conditions to overcome the presumption, other changes in the

circumstances surrounding the asylum claim, including a fundamental change in personal circumstances, may be considered, so long as those changes are fundamental in nature and go to the basis of the fear of persecution.

The amended language in §§ 208.13(b)(1) and 208.16(b)(1)(i) is not intended to alter the holding in the Board decision *Matter of N–M–A,* Int. Dec. 3368 (BIA 1998), that the presumption raised by a finding of past persecution applies only to a fear of future persecution based on the original persecution, and not to a fear of persecution from a new source unrelated to the past persecution. In *Matter of N–M–A,* the Board explained, "once an applicant has demonstrated that he has suffered past persecution on account of a statutorily-protected ground, and the record reflects that country conditions have changed to such an extent that the applicant no longer has a well-founded fear of persecution from his original persecutors, the applicant bears the burden of demonstrating that he has a well-founded fear of persecution from any new source." While the amendments to §§ 208.13(b)(1) and 208.16(b)(1)(i) change the regulations to the extent that the presumption may be overcome by events other than a change in country conditions, the regulations retain and specify the requirement that the presumption relates only to fear of harm based on facts that give rise to the original persecution.

In the sections of the regulations dealing with the issue of internal relocation, §§ 208.13(b)(1)(i)(B) and (b)(2)(ii), and 208.16(b)(1)(i)(B) and (b)(2), the provisions have been revised to require a showing by the Service that "under all the circumstances, it would be reasonable to expect the applicant to (relocate)." That language is nearly identical to the language used in the relevant section of the UNHCR Handbook, paragraph 91. The reasonableness standard with regards to relocation is consistent with the general standard for adjudicating well-founded fear claims.

With regard to other sections of the proposed rule at 63 FR 31945, some commenters recommended that the language regarding the burden of proof to overcome the presumption that arises after a finding of past persecution should be revised to indicate clearly that the Service bears the burden to overcome those presumptions, by a preponderance of the evidence, even in the context of asylum adjudications by an asylum officer. The Department agrees, and changes have been made accordingly.

The Department declines to adopt the recommendation of many commenters to allow adjudicators to consider additional humanitarian factors, unrelated to the severity of the past persecution or other serious harm, in exercising their discretion to grant asylum to a refugee who no longer has a well-founded fear of persecution. In allowing an applicant to be granted asylum based on past persecution alone when it is determined that the applicant has established either (1) compelling reasons because of the severity of the past harm, or (2) a reasonable possibility that he or she may suffer serious harm upon removal to his or her home country, the Department is already providing avenues for relief that are consistent with the protection function of the 1951 Convention, and that go beyond the provisions of the UNHCR Handbook. *See* paragraph 136 of the UNHCR Handbook. As explained in the Supplementary Information to the proposed rule published in the **Federal Register** on June 11, 1998, at 63 FR 31945, 31947, by "other serious harm," the Department means harm that is not inflicted on account of race, religion, nationality, membership in a particular social group, or political opinion, but is so serious that it equals the severity of persecution. Mere economic disadvantage or the inability to practice one's chosen profession would not qualify as "other serious harm."

In summary, the changes in the regulation are consistent with the Act, relevant case law, international instruments, and guidance in the UNHCR Handbook. The regulations leave intact the important principle that an applicant who has established past persecution on account of one of the five grounds is a refugee. It also continues to provide that a person who has established past persecution on account of race, religion, nationality, membership in a particular social group, or political opinion shall be presumed to have a well-founded fear of future persecution on account of those same grounds, and shall also be presumed to have established a threat to his or her life or freedom under the standard for eligibility for withholding of removal. The regulations also make it clear that the Service has the burden of overcoming such presumptions by a preponderance of the evidence.

Finally, the Department has renamed paragraph (b) of § 208.13, currently "persecution," to "eligibility," to reflect the incorporation of the new paragraph (b)(3), regarding reasonableness of internal relocation, as well as the other eligibility requirements contained in paragraphs (b)(1) and (b)(2).

AR513