# EXHIBIT A

Marienna H. Murch (Bar No. 300551)
Alison C. Wall (Bar No. 319562)*
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
mmurch@cov.com
awall@cov.com

Cristina Alvarez*
Gavin Bosch*
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: + 1 (212) 841-1000
calvarez@cov.com
gbosch@cov.com

Benedict Lenhart*
Seth Tucker*
Sonia Lahr-Pastor*
Jonathan Mincer**
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
blenhart@cov.com
stucker@cov.com
slahrpastor@cov.com
jmincer@cov.com

* Not admitted in this Court
** Admission not currently active in this Court

*Counsel for Amici Curiae Former BIA Members,
Former Immigration Law Judges, and Law Professors*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EAST BAY SANCTUARY COVENANT, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>WILLIAM BARR, *et al.*,<br><br>    Defendants. | Civil Case No.: 3:19-cv-04073-JST<br><br>**MEMORANDUM OF LAW OF *AMICI CURIAE* FORMER BIA MEMBERS, FORMER IMMIGRATION LAW JUDGES, AND LAW PROFESSORS IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER** |

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | INTEREST OF AMICI CURIAE | 2 |
| III. | ARGUMENT | 8 |
| IV. | CONCLUSION | 11 |

i

MEMORANDUM OF LAW OF AMICI CURIAE FORMER BIA MEMBERS, FORMER IMMIGRATION LAW JUDGES, AND LAW PROFESSORS IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Matter of B-R-*,
    26 I&N Dec. 119 (BIA 2013) ................................................................................................1, 11

*Dhoumo v. BIA*,
    416 F.3d 172 (2d Cir. 2005) .........................................................................................................9

*East Bay Sanctuary Covenant v. Trump*,
    909 F.3d 1219 (9th Cir. 2018) .....................................................................................................8

*Youngstown Sheet & Tube Co. v. Sawyer*,
    343 U.S. 579 (1952) .....................................................................................................................1

**Statutes**

8 U.S.C. § 1101(a)(41)(A) ..................................................................................................................8

8 U.S.C. § 1158(a)(2)(A) .............................................................................................................8, 11

8 U.S.C. § 1158(b)(1)(A) ....................................................................................................................8

8 U.S.C. § 1158(d)(5)(B) ....................................................................................................................8

**Other Authorities**

Amnesty Int'l, *Overlooked, Under-Protected: Mexico's Deadly Refoulement of Central
    Americans Seeking Asylum*, 2018, https://www.amnestyusa.org/ wp-
    content/uploads/2018/01/AMR4176022018-ENGLISH-05.pdf .................................................9

Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State, *Guatemala 2018
    Human Rights Report* at 13 (Mar. 13, 2019), https://www.state.gov/wp-
    content/uploads/2019/03/GUATEMALA-2018.pdf ....................................................................9

Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State, *Guatemala 2018
    Human Rights Report* at 13 (Mar. 13, 2019), https://www.state.gov/wp-
    content/uploads/2019/03/GUATEMALA-2018.pdf .................................................................10

Human Rights First, *Is Guatemala Safe for Refugees and Asylum Seekers?*, July 1, 2019,
    https://www.humanrightsfirst.org/resource/guatemala-safe-refugees-and-asylum-
    seekers ..........................................................................................................................................9

## I. INTRODUCTION

The Government argues that its emergency interim final rule ("Rule") "promot[es] asylum's core purpose of providing refuge to desperate refugees . . . with nowhere else to turn." Defendants' Brief in Opposition to Plaintiffs' Motion for Temporary Restraining Order ("Opp.") 4. The Rule, in fact, has the opposite effect, barring asylum for any individual who has passed through a third country in transit to our southern border. *See id.* 8 (admitting the Rule "adopt[s] a categorical bar"). Because the majority of asylum seekers to the United States pass through a third country on their way to this country, the Rule would dramatically decrease—by more than half—the number of people eligible to seek asylum in the United States. As such, it would effect a sweeping and fundamental change to our country's asylum law—a change that is inconsistent and incompatible with current law. The Rule does not implement existing law, but instead imposes new law. For this reason, the Rule cannot stand. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 588 (1952) ("The Constitution did not subject th[e] law-making power of Congress to presidential . . . control.").

The Government claims that the Rule's limited exception for refugees who applied for, and were denied, protection outside the United States means that asylum protections are still available to "refugees . . . with nowhere else to turn." But as the Government's own cited case makes clear, the availability of asylum can lawfully be limited only "when other *safe* options are available" for a full and fair asylum procedure in a third country. *Matter of B-R-*, 26 I&N Dec. 119, 122 (BIA 2013) (emphasis added). The Government fails on both counts: neither does it show that an alternative *safe* asylum option is categorically available to refugees who pass through a third country, nor does it show that a full and fair asylum procedure is available—nor could it.

Central American migrants (who currently make up the majority of applicants for asylum in the United States) must pass through Mexico and often Guatemala to reach the United States. As explained further below, neither country has a safe and functioning asylum system, and both countries lack the resources and infrastructure to process even hundreds of asylum applications, let alone the tens of

1

thousands of applications that would be required under the Rule.[1]  Further, neither country assures a reasonable degree of safety to transiting migrants, who are at risk of kidnapping, burglary, rape, murder, and other forms of exploitation on their journey from their country of origin.

*Amici* are former members of the Board of Immigration Appeals ("BIA"), former immigration law judges, and law professors with expertise in immigration-related issues.  We have extensive familiarity with the experience of those who seek asylum or refugee protection in the United States.  Based on our expertise in asylum systems and the sworn testimony we have received in thousands of cases, we submit that many asylum seekers do not apply for asylum in transit countries because the asylum systems there are woefully inadequate, not because the claims of the asylum seekers lack merit.  The absence of an adequate asylum system and other protections for refugees render such transit countries as Mexico and Guatemala ineligible as alternatives to the United States system.

The Rule therefore conflicts with governing United States law and does not further its purported objectives.

**II.    INTEREST OF AMICI CURIAE**

As set forth in more detail below, *amici* are former immigration judges and law professors with expertise in immigration-related issues.  Through their work adjudicating asylum petitions or researching and analyzing such issues as the asylum systems of other countries or the experiences of migrants and asylum-seekers who come to the United States, they have a deep understanding not only of the United States' asylum system, but also of the dangers that migrants and refugees face in their travels to the southern border and of the inadequacies of the asylum policies and procedures in the countries those migrants and refugees must traverse to arrive at our border.

The Honorable Paul Grussendorf served as Supervisory Asylum Officer and as an Immigration Judge in Philadelphia, San Francisco, and Texas, and has over thirty years of experience in asylum and refugee protection.  He has worked as a Protection Officer for the UN Refugee Agency and as a Refugee

---

[1] Case no. 3:19-cv-04073-JST, Plaintiffs' Mem. in Supp. of TRO (Dkt. no. 3-1), Exh. 3 ("Pinheiro Decl.") at ¶ 21–31; Case no. 3:19-cv-04073-JST, Plaintiffs' Mem. in Supp. of TRO (Dkt. no. 3-1), Exh. 6 ("Frydman Decl.") at ¶ 13–14, 19–24.

Officer for the United States Citizenship and Immigration Services. He has also served as an Associate Professor of Clinic Law at George Washington University Law School's Immigration Clinic.

David Abraham is a Professor of Law Emeritus at the University of Miami School of Law. He teaches Immigration & Citizenship Law, and has published widely on immigration, citizenship, and migration issues.

The Honorable Steven Abrams served as an Immigration Judge from 1997 to 2013 at the New York, Varick Street, and Queens Wackenhut Immigration Courts in New York City.

Richard A. Boswell is a Professor of Law at the University of California, Hastings College of Law. He has written extensively in the field of immigration law and is a frequent lecturer on immigration law both nationally and internationally.

The Honorable Sarah M. Burr served as a U.S. Immigration Judge in New York from 1994 until 2012, and was Assistant Chief Immigration Judge in charge of the New York, Fishkill, Ulster, Bedford Hills and Varick Street immigration courts from 2006 to 2011.

The Honorable Teofilo Chapa served as an Immigration Judge in Miami, Florida from 1995 until 2018.

The Honorable Jeffrey S. Chase served as an Immigration Judge in New York City from 1995 to 2007 and was an attorney advisor and senior legal advisor at the Board of Immigration Appeals from 2007 to 2017. He also was the recipient of the American Immigration Lawyers Association's annual pro bono award in 1994 and chaired AILA's Asylum Reform Task Force.

The Honorable George T. Chew served as an Immigration Judge in New York from 1995 to 2017.

Michael J. Churgin is the Reybourne Thompson Centennial Professor at the University of Texas at Austin School of Law. He specializes in criminal procedure, immigration, and mental health law.

The Honorable Bruce J. Einhorn served as an Immigration Judge in Los Angeles from 1990 to 2007. He now serves as an Adjunct Professor of Law at Pepperdine University School of Law in Malibu, CA, and a Visiting Professor of International, Immigration, and Refugee Law at the University of Oxford, England.

The Honorable Cecelia M. Espenoza served as a Member of the Executive Office for Immigration Review (EOIR) Board of Immigration Appeals from 2000-2003.

The Honorable Noel Ferris served as an Immigration Judge in New York from 1994 to 2013 and an attorney advisor to the Board of Immigration Appeals from 2013 to 2016.  Previously, she served as a Special Assistant U.S. Attorney in the Southern District of New York from 1985 to 1990 and as Chief of the Immigration Unit from 1987 to 1990.

The Honorable John F. Gossart, Jr. served as an Immigration Judge from 1982 until 2013 and is the former president of the National Association of Immigration Judges.  From 1975 to 1982, he served in various positions with the former Immigration Naturalization Service, including as general attorney, naturalization attorney, trial attorney, and deputy assistant commissioner for naturalization. He is also the co-author of the National Immigration Court Practice Manual, which is used by all practitioners throughout the United States in immigration court proceedings.  From 1997 to 2016, Judge Gossart was an Adjunct Professor of law at the University of Baltimore School of Law teaching immigration law, and more recently was an adjunct professor of law at the University of Maryland School of Law also teaching immigration law.

The Honorable Miriam Hayward served as an Immigration Judge in San Francisco from 1997 until 2018.

Geoffrey Hoffman is a Clinical Associate Professor at the University of Houston Law Center and specializes in immigration-related federal court litigation, deportation defense, asylum cases, and appeals before the Board of Immigration Appeals.  He has represented numerous immigrants in a variety of settings, including before the Executive Office for Immigration Review, Department of Homeland Security, and in the federal courts.

The Honorable Rebecca Jamil served as an Immigration Judge from February 2016 until July 2018.  From 2011 to February 2016, Judge Jamil served as assistant chief counsel for U.S. Immigration and Customs Enforcement in San Francisco.

The Honorable William P. Joyce served as an Immigration Judge in Boston, Massachusetts from 1996 to 2002. Prior to his appointment to the bench, he served as legal counsel to the Chief Immigration Judge, and as Associate General Counsel for enforcement for INS.

The Honorable Carol King served as an Immigration Judge from 1995 to 2017 in San Francisco and was a temporary Board member for six months between 2010 and 2011. She also taught immigration law for five years at Golden Gate University School of Law.

The Honorable Elizabeth A. Lamb served as an Immigration Judge from September 1995 until 2018. Judge Lamb also served as an adjunct professor at Manhattan Community College from 1990 to 1992.

Beth Lyon is a Clinical Professor of Law and founder of Cornell's Farmworker's Legal Assistance Clinic. She is a national authority on the laws and policies affecting immigrant workers. She has written extensively on domestic and international immigrant and farm-worker rights.

Amelia S. McGowan is an Adjunct Professor of Law at Mississippi College School of Law, where she directs the Immigration Clinic. She is also a Senior Attorney at the Mississippi Center for Justice. Her practice and research focus primarily on asylum, and she has handled asylum cases before the local asylum offices and immigration courts, as well as numerous Courts of Appeal.

Estelle M. McKee is a Clinical Professor of Law at Cornell Law School and teaches Lawyering and the Asylum and Convention Against Torture Appellate Clinic. She has worked as an immigration attorney and has written extensively about immigration law and procedure.

The Honorable Margaret McManus served as an Immigration Judge from 1991 until January 2018.

M. Isabel Medina is the Ferris Family Distinguished Professor of Law at Loyola University New Orleans College of Law. She teaches and writes in the area of immigration and asylum law, and represents persons in immigration and asylum proceedings.

Jennifer Moore is a Professor of Law at the University of New Mexico School of Law who teaches Immigration Law and Refugee and Asylum Law. She also worked in various roles for the U.N. High Commissioner for Refugees.

Hiroshi Motomura is the Susan Westerberg Prager Distinguished Professor of Law at the University of California, Los Angeles School of Law. He is the author of two books on immigration law, as well as many law review articles on immigration law.

Craig B. Mousin is an Adjunct Faculty member at DePaul University College of Law and a member of the Refugee and Forced Migration Studies Department. He founded and directed the Midwest Immigrant Rights Center, a provider of legal assistance to refugees, which has since become the National Immigrant Justice Center. He also directed legal services for Travelers & Immigrant Aid.

Michael A. Olivas is the William B. Bates Distinguished Chair in Law and the Director of the Institute for Higher Education Law and Governance at the University of Houston Law Center. He has taught courses in Immigration Law and Policy and in Business Law and Immigration.

John R. B. Palmer is a Professor in the Department of Political and Social Sciences at the Universitat Pompeu Fabra in Barcelona, Spain. He has worked as a United Nations High Commissioner for Refugees Protection Officer.

Helen L. Parsonage is an Adjunct Professor of Law at Wake Forest University School of Law, where she teaches an Immigration Law Practicum. She also works as an immigration attorney in private practice.

The Honorable Charles Pazar served as an Immigration Judge in Memphis, Tennessee, from 1998 until 2017. Before his appointment, he served in the Immigration and Naturalization Service Office of General Counsel, and was a Senior Litigation Counsel in the Office of Immigration Litigation. Judge Pazar serves as an adjunct professor of law at the University of Memphis.

The Honorable Laura Ramirez served as an Immigration Judge in San Francisco from 1997 until 2018.

Renee C. Redman is a Law Instructor of Immigration Law at the University of Connecticut School of Law. She also handles cases focusing on asylum, family-based immigration, deferred action, waivers, and removal cases.

The Honorable John W. Richardson served as an Immigration Judge in Phoenix, Arizona from 1990 until 2018.

Carrie Rosenbaum is an Adjunct Professor at Golden Gate University who speaks and publishes on immigration law. She is also an immigration attorney in private practice.

The Honorable Lory D. Rosenberg served on the Board of Immigration Appeals from 1995 to 2002. She was also adjunct Immigration Professor at American University Washington College of Law from 1997 to 2004.

The Honorable Susan Roy served as an Immigration Judge in Newark from 2008 until 2010. She is the Chair-Elect of the New Jersey State Bar Association Immigration Law Section, and serves on the Executive Committee of the New Jersey AILA Chapter.

Rubén G. Rumbaut is a Distinguished Professor of Sociology at the University of California, Irvine. His research focuses on international migration and refugee movements, and he has published extensively on immigrants and refugees in the United States.

The Honorable Paul W. Schmidt served as an Immigration Judge from 2003 to 2016 in Arlington, Virginia. He previously served as Chairman of the Board of Immigration Appeals from 1995 to 2001, and as a Board Member from 2001 to 2003. He served as Deputy General Counsel of the former INS from 1978 to 1987, serving as Acting General Counsel from 1986-87 and 1979-81. He was a founding member of the International Association of Refugee Law Judges (IARLJ), where he presently serves as Americas Vice President.

The Honorable Ilyce S. Shugall served as an Immigration Judge in San Francisco from 2017 until 2019.

The Honorable Denise Slavin served as an Immigration Judge from 1995 until 2019 in the Miami, Krome Processing Center, and Baltimore Immigration Courts.

The Honorable Andrea Hawkins Sloan served as an Immigration Judge in Portland, Oregon from 2010 until 2017.

The Honorable Gustavo D. Villageliu served as a Board of Immigration Appeals Member from July 1995 to April 2003. He then served as Senior Associate General Counsel for the Executive Office for Immigration Review until 2011. Before becoming a Board Member, he was an Immigration Judge in Miami.

Leti Volpp is the Robert D. and Leslie Kay Raven Professor of Law at the University of California, Berkeley School of Law. She teaches Immigration Law and researches immigration and citizenship law.

The Honorable Polly A. Webber served as an Immigration Judge from 1995 to 2016 in San Francisco, with details in Tacoma, Port Isabel, Boise, Houston, Atlanta, Philadelphia, and Orlando Immigration Courts. She served as National President of the American Immigration Lawyers Association from 1989 to 1990 and was a national AILA officer from 1985 to 1991. She also taught Immigration and Nationality Law at Santa Clara University School of Law.

### III.   ARGUMENT

United States law provides that migrants have a broad right to seek asylum in the United States. Individuals with a "well-founded fear of persecution" based on their race, religion, nationality, political opinion, or membership in a particular group are entitled to asylum in the United States. 8 U.S.C. §§ 1158(b)(1)(A), 1101(a)(41)(A). Generally speaking, access to the asylum system is available to "[a]ny alien who is physically present in the United States or who arrives in the United States." The asylum statute provides only limited, enumerated statutory exceptions. *Id.* § 1158(a)(2).

Congress explicitly provided, and courts have subsequently reaffirmed, that further limitations on the asylum system cannot be inconsistent with Section 1158. 8 U.S.C. § 1158(d)(5)(B); *see also, e.g.*, *East Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219 (9th Cir. 2018).

One narrow statutory exception to the right to asylum applies if the applicant has access to a "safe third country" in which to seek such protections. 8 U.S.C. § 1158(a)(2)(A). Congress expressly limited that exception to third countries that have "a bilateral or multilateral agreement" with the United States; where the applicant's "life or freedom would not be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion"; and where the applicant would have "access to a full and fair procedure for determining a claim to asylum or equivalent temporary protection." *Id.*

As a preliminary matter, the Government concedes that the Rule does not fall within this exception because, as applied to applicants arriving at the southern border, it fails to meet the first prong.

8

Opp. 12.  In particular, and critically, the Government admits that "the United States has no safe third country-agreement with Mexico and other countries through which migrants transit to reach the United States."  *Id.* 11.  That admission is dispositive—absent such agreements, the countries through which Central American migrants pass may not be deemed safe third countries under United States law.  *See Dhoumo v. BIA*, 416 F.3d 172, 175 (2d Cir. 2005) ("[A] country may only qualify as a 'safe third country' by virtue of having negotiated a bilateral or multilateral treaty establishing that status. . . .").

Equally importantly, the Rule would make an end-run around Congress's expressly narrow limitations to the asylum right based on the availability of a "safe third county" because it eliminates any consideration of the remaining essential factors.  Any fair consideration of those factors reveals that, in fact, Central American migrants who seek asylum in the United States often lack a safe third country.

In order to reach the southern border of the United States, an individual must pass through Mexico, and sometimes Guatemala (depending on the person's country of origin).  Mexico and Guatemala place migrants at significant risk of violence and lack functioning asylum systems.[2]  As a result, they qualify neither as "safe" nor as offering a full and fair asylum procedure, both of which are required under the "safe third country" exception to the general right to asylum in the United States.

Mexico and Guatemala cannot, and do not, protect migrants in transit to the United States.  Neither country is a safe haven for migrants pursuing asylum claims.  Guatemala, for example, cannot, and does not, protect migrants passing through Guatemala from violence targeting them not only as refugees, but on account of their race, nationality, gender, sexual orientation, or gender identity.[3]  Similarly, as concerns Mexico, some of the undersigned *amici* have heard credible accounts of migrants

---

[2] *See*, *e.g.*, Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State, *Guatemala 2018 Human Rights Report* at 13 (Mar. 13, 2019), https://www.state.gov/wp-content/uploads/2019/03/GUATEMALA-2018.pdf.; Amnesty Int'l, *Overlooked, Under-Protected: Mexico's Deadly Refoulement of Central Americans Seeking Asylum*, 2018, https://www.amnestyusa.org/wp-content/uploads/2018/01/AMR4176022018-ENGLISH-05.pdf.  *See also* Pinheiro Aff. ¶ 21–31; Frydman Aff. ¶ 13–14, 19–24.

[3] Human Rights First, *Is Guatemala Safe for Refugees and Asylum Seekers?*, July 1, 2019, https://www.humanrightsfirst.org/resource/guatemala-safe-refugees-and-asylum-seekers.

through Mexico being targeted for violence by local gangs and others because it is known that they are not protected by Mexican authorities.

Several of us have personal experience adjudicating asylum requests that underscores the harsh reality of these conditions. For example, while one of us was supervising asylum adjudications earlier this year at the San Ysidro border crossing between Mexico and the United States, that person and his officers heard numerous credible accounts of Central American migrants being victimized on their way to the United States. These accounts included migrants being bussed from temporary shelters to the forest, where they were unloaded at gun point, assaulted, robbed and raped; of Mexican police refusing to assist migrants who were victims of violent crimes, instead telling them that the police were not there to help them; and of children being ripped from their parents' arms and removed, presumably to be used in human trafficking, while one or both parents were killed. These accounts were made under oath, and they and presumably many others like them can be verified through discovery of case files.

The countries through which migrants pass on their way to our southern border also lack functioning asylum systems, meaning that migrants cannot rely on those systems to fairly and competently adjudicate their claims for asylum. The Government argues that other Central American countries "are able to provide fair adjudications of requests for asylum . . . . ," Opp. 21, citing an item in the Federal Register. But the Federal Register notice that the Government relies on says only that *applications* for asylum in Mexico have increased since 2016, not that those claims have been fairly adjudicated. *See* 84 Fed. Reg. 33,839 (cited at Opp. 22). Indeed, neither Guatemala nor Mexico has a fair asylum-adjudication system. As the State Department reported in 2018, the "identification and referral mechanism for potential asylum seekers" in Guatemala is "inadequate," and "[b]oth migration and police authorities lack[] adequate training concerning the rules for establishing refugee status."[4] The asylum system in Mexico is equally inadequate, "routinely turning back thousands of people from

---

[4] Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State, *Guatemala 2018 Human Rights Report* at 13 (Mar. 13, 2019), https://www.state.gov/wp-content/uploads/2019/03/GUATEMALA-2018.pdf..

10

Honduras, El Salvador, and Guatemala to their countries without considering the risk to their life and security upon return, in many cases violating international and domestic law by doing so."[5]

These countries thus fall well short of providing "access to a full and fair procedure for determining a claim to asylum or equivalent temporary protection," 8 U.S.C. § 1158(a)(2)(A), and so are different in kind from the third countries contemplated under United States asylum law. For instance, in the case cited by the Government finding that "other safe options [we]re available," the Board of Immigration Appeals found that an asylum seeker fleeing persecution in Venezuela had another safe option available in Spain because of the undisputed facts that he was a citizen of Spain and could find safe refuge there. *Matter of B-R-*, 26 I&N Dec. at 122. The facts here are not comparable, and the Government does not attempt to show otherwise. It is untenable to suggest that because *that* asylum-seeker had available to him a safe third country, *every* refugee to the United States likewise has available a safe third country.

Given both the unsafe conditions confronting migrants in Guatemala and Mexico and the absence in each country of an effective, reliable system for adjudicating bona fide applications for asylum, neither Mexico nor Guatemala satisfies the requirements that Congress established for a "safe third country" under United States law. Because the Rule would categorically deny asylum to any migrant who transited through Guatemala or Mexico without seeking asylum from those countries, regardless of their inadequacy as "safe third countries," the Rule cannot be squared with the governing statute and must be declared invalid.

### IV. CONCLUSION

For all the foregoing reasons, *amici curiae* respectfully submit that the Government's Rule is invalid, and request that the Court grant Plaintiffs' Motion for a Temporary Restraining Order.

DATED: July 21, 2019                                              Respectfully submitted,

---

[5] Amnesty Int'l, *Overlooked, Under-Protected: Mexico's Deadly Refoulement of Central Americans Seeking Asylum*, 2018, https://www.amnestyusa.org/ wp-content/uploads/2018/01/AMR4176022018-ENGLISH-05.pdf.

By:  /s/ Marienna H. Murch

Marienna H. Murch (Bar No. 300551)
Alison Wall (Bar No. 319562)*
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
mmurch@cov.com
awall@cov.com

Benedict Lenhart*
Seth Tucker*
Sonia Lahr-Pastor*
Jonathan Mincer**
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
blenhart@cov.com
stucker@cov.com
slahrpastor@cov.com
jmincer@cov.com

Cristina Alvarez*
Gavin Bosch*
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: + 1 (212) 841-1000
calvarez@cov.com
gbosch@cov.com

*Counsel for Amici Curiae Asylum Officers, Immigration Judges, and Law Professors*


* Not admitted in this Court
** Admission not currently active in this Court

12

MEMORANDUM OF LAW OF AMICI CURIAE FORMER BIA MEMBERS, FORMER IMMIGRATION LAW JUDGES, AND LAW PROFESSORS IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER