JOSEPH H. HUNT
*Assistant Attorney General*
SCOTT G. STEWART
*Deputy Assistant Attorney General*
WILLIAM C. PEACHEY
*Director*
EREZ REUVENI
*Assistant Director*
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 307-4293
Email: Erez.R.Reuveni@usdoj.gov
PATRICK GLEN
*Senior Litigation Counsel*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| East Bay Sanctuary Covenant, *et al.*, )<br><br>Plaintiffs, )<br><br>v. )<br><br>William Barr, *et al.*, )<br><br>Defendants. ) | EMERGENCY MOTION TO STAY PRELIMINARY-INJUNCTION ORDER PENDING APPEAL<br><br>Civil Action No. 1:19-cv-04073-JST |

**INTRODUCTION**

Defendants hereby move the Court to stay its preliminary injunction barring enforcement of the Department of Justice's and Department of Homeland Security's rule, Asylum Eligibility and Procedural Modifications, 84 Fed. Reg. 33,829 (July 16, 2019), pending a decision from the Ninth Circuit on Defendants' forthcoming appeal.  Defendants also ask that the Court enter an order staying its preliminary injunction during the interim period while the Court considers this motion.  Defendants advise the Court that they intend to seek emergency relief from the Ninth Circuit by Friday, August 2, 2019, if this Court does not grant stay relief.  If, upon reviewing this motion, the Court does not believe that Defendants have met the requirements for a stay, Defendants request that the Court summarily deny the motion without awaiting a response from Plaintiffs.  Otherwise, the government respectfully asks that the Court rule on the motion no later than noon Pacific time on August 2, 2019, after which time Defendants intend to promptly seek relief in the Ninth Circuit.  Defendants have notified Plaintiffs, who oppose the relief requested in this motion.

As explained below, the balance of harms weighs strongly in favor of a stay and, respectfully, Defendants are likely to prevail on the merits in their appeal.  This Court's injunction directly undermines the Executive's constitutional and statutory authority to enact new regulations to address the ongoing border crisis and conflicts with a ruling from the U.S. District Court for the District of Columbia that denied a temporary restraining order of the same rule based on a similar record of alleged harms to the Plaintiffs.  The Court's injunction immediately harms the public by thwarting this rule, issued in accordance with the Departments' broad and express statutory authority over asylum.  The injunction undermines the Executive Branch's efforts, including its international diplomatic efforts, to encourage the large number of aliens transiting Mexico to seek asylum in other available countries.  Defendants acted well within their statutory and constitutional authority to address a major crisis, and the Court's injunction irreparably harms the government and jeopardizes important national interests.  The organizational Plaintiffs, by contrast, have identified only speculative harms to their abstract missions and to their administrative interests that they claim they would suffer from implementation of the rule.

**STANDARD OF REVIEW**

In deciding a motion to stay an order pending appeal, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). A stay is appropriate if the movant demonstrates serious questions going to the merits on appeal and the balance of hardships tips sharply in its favor. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

**ARGUMENT**

**I.    The Balance of Harms Weighs Strongly in Favor of a Stay**

The serious and irreparable harms to the government and the public from this Court's injunction outweigh any harm that Plaintiffs might suffer if the injunction is stayed. The Supreme Court reached a similar conclusion when it stayed in full the injunctions issued by district courts in *Trump v. Hawaii*, No. 17A550, 2017 WL 5987406 (U.S. Dec. 4, 2017), and *Trump v. International Refugee Assistance Project (IRAP)*, No. 17A560, 2017 WL 5987435 (U.S. Dec. 4, 2017). The Supreme Court necessarily determined that the government's national-security and foreign-policy interests outweighed the plaintiffs' interests in those cases. *See Nken*, 556 U.S. at 434. The government's foreign-policy and border-security interests here—which relate to negotiations with Mexico and other countries to address large groups of aliens leaving the Northern Triangle and illegally crossing or presenting themselves at our southern border—are similarly weighty.

**A.    The Preliminary Injunction Irreparably Harms the Government and Public**

This Court's injunction undermines the Executive Branch's constitutional and statutory authority to prioritize those seeking asylum and address the crisis at the border. The Executive Branch's protection of these interests warrants the utmost deference, particularly where, as here, it acts based on "[p]redictive judgment[s]" regarding the rule's effect on the border and negotiations with foreign countries. *Dep't of the Navy v. Egan*, 484 U.S. 518, 529 (1988); *see Holder v. Humanitarian Law Project*, 561 U.S. 1, 33-35 (2010). Rules "concerning the

admissibility of aliens" also "implement[] an inherent executive power." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950). Thus, a stay pending appeal is appropriate where an injunction "is not merely an erroneous adjudication of a lawsuit between private litigants, but an improper intrusion by a federal court into the workings of a coordinate branch of the Government." *INS v. Legalization Assistance Project*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers); *see Heckler v. Lopez*, 463 U.S. 1328, 1330 (1983) (Rehnquist, J., in chambers); *see also Adams v. Vance*, 570 F.2d 950, 954 (D.C. Cir. 1978) (per curiam).

The Court's order enjoining enforcement of the rule necessarily imposes irreparable harm on the government and the public. Even a single State "suffers a form of irreparable injury" "[a]ny time [it] is enjoined by a court from effectuating statutes enacted by representatives of its people." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted); *see, e.g.*, *Council for Economic Equity v. Wilson*, 122 F.3d 692, 698 n.4 (9th Cir. 1997). *A fortiori*, this Court's injunction imposes irreparable injury on the Executive Branch and the public given that the rule rests on the discretion-laden judgments of two Cabinet members designed to prioritize certain asylum seekers and address the humanitarian crisis at the border.

In issuing the rule, the Departments explained that during the first eight months of FY2019 the Department of Homeland Security has apprehended 524,446 non-Mexican border-crossers— nearly double from the prior two years combined. 84 Fed. Reg. at 33,838. Based on historical trends, the Departments explained that many of these aliens will claim a fear of persecution, secure release into our country, and then never apply for asylum, never show up for their asylum hearings, or ultimately have their asylum claims rejected as meritless. *Id.* at 33,839-41. The Executive Branch is entitled to use every legal tool available to stem the flow of aliens who lack valid asylum claims. The rule thus addresses the problems presented by the many aliens who have no bona fide asylum claim "by restricting the claims of aliens who, while ostensibly fleeing persecution, chose not to seek protection at the earliest possible opportunity," raising "questions about the validity and urgency of the alien's claim." *Id.* at 33,839. The rule encourages aliens to apply for protection in other countries that they enter before proceeding to the United States, aids ongoing negotiations with Mexico and other countries on deterring mass migration to the United States, and promotes

asylum's purpose of helping desperate refugees who reach our shores with truly nowhere else to turn. Immediate action is warranted for the prioritization of legitimate asylum claims and to respond to the conditions at the border, which is suffering from a surge in border crossings. The problem is all the greater given this Court's extension of its order not only to the organizations before the Court, or even to aliens with whom these organizations have an attorney-client relationship, but also to *all aliens worldwide* who traverse third countries to come to the United States. *See* Dkt. 28, *Council on Am.-Islamic Relations v. Trump*, 1:19-cv-2117 (D.D.C. July 24, 2019) (*CAIR*) (denying TRO in organizations' challenge to same rule).

The Supreme Court has warned of "the danger of unwarranted judicial interference in the conduct of foreign policy." *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 116 (2013). The injunction here effects such interference by substituting the Court's independent views on conditions in Mexico for the policy determinations of the political branches of the U.S. government. *See id.*; *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991) (courts should not "run interference" in a "delicate field of international relations"). The Executive Branch—tasked with international relations—found that the "rule will facilitate ongoing diplomatic negotiations with foreign countries regarding migration issues, including measures to control the flow of aliens into the United States ... and the urgent need to address the current humanitarian and security crises along the southern land border between the United States and Mexico." 84 Fed. Reg. at 33,842. It is not the province of any court to itself determine that "Mexico is not a safe third option for many refugees, despite its party status to all three agreements." Order 23. Thus, the United States suffers a separation-of-powers harm in the Court's blocking of the Executive Branch's lawful action, on top of the harms to the Nation and the public described above and in Defendants' prior briefing.

### B.     A Stay Pending Expedited Appeal Would Not Substantially Harm Plaintiffs

As the government explained in its opposition brief and at the July 24, 2019 hearing, Plaintiffs themselves have not shown that they face irreparable harm on their own account that is tied to the rule, and cognizable under the INA, because expending resources does not constitute irreparable harm. *See* TRO Br. 23-34. Indeed, they have not even identified an actual client in

fact affected by the rule.  Nor can they rely on financial concern.  *See, e.g.*, *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended … are not enough.").  And their professed inability to comment does not present irreparable harm:  Plaintiffs may comment on the rule now, and any harms tied to the impact of the rule at present are again purely monetary.  *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League,* 634 F.2d 1197, 1202 (9th Cir. 1980).

Plaintiffs failed to establish irreparable harm sufficient to warrant an injunction.  The balance of harms strongly supports a stay of this Court's injunction pending appeal.

## II.   The Government is Likely to Prevail on the Merits

The government respectfully submits that, notwithstanding this Court's order, the government is likely to succeed on the merits of its appeal.[1]

This Court held that the rule is inconsistent with the safe-third-country provision, 8 U.S.C. § 1158(a)(2)(A), and the firm-resettlement bar to asylum eligibility, *id.* § 1158(b)(2)(A)(vi).  Order 21-27.  In the Court's view, "both [of these] provisions incorporate requirements to ensure that the third country in question actually is a safe option," Order 22, evidencing a congressionally-mandated requirement that the agency consider "an applicant's circumstances and those of the third country" before asylum could be denied based on a failure to apply in that third country, Order 22-23.

But the statute contains no such mandate.  The firm-resettlement statutory bar contains no express requirements regarding what the agency must consider in applying that bar.  *See* 8 U.S.C. § 1158(b)(2)(A)(vi).  The "requirements" that the Court found compelling are regulatory, not statutory, and thus a result of a determination by the Attorney General regarding how his discretion should be used.  8 C.F.R. §§ 208.15; 1208.15.  That the Attorney General determined that certain considerations should govern the analysis of whether the firm-resettlement bar applies says nothing about the permissibility of adopting a distinct rule, applying to a different class of aliens, and without mandating an individualized assessment of third country conditions.

---

[1] The government also reasserts its objections to Plaintiffs Article III standing and their failure to plead a claim within the statutory zone of interests.  *See* TRO Br. 7.

As for the safe-third-country provision, Congress did incorporate specific language to govern application of the bar:  removal must be pursuant to a valid agreement, to a country where the alien would not face persecution on account of a protected ground, and "where the alien would have access to a full and fair procedure for determining a claim to asylum or equivalent temporary protection."  8 U.S.C. § 1158(a)(2)(A).  But mandating these requirements in the specific context of removal to a safe third country says nothing about the permissibility of adopting the third-country-transit rule, which is not concerned with the removal of aliens to a safe third country, but with barring a discretionary benefit to aliens who failed to seek available relief while en route to the southern border.  Indeed, the safe-third-county provision does not even require that an alien set foot in the country to which he may be removed; the rule here does.

In the end, although the Court expressly disclaimed a holding that the statute prohibits the "government from adopting additional mandatory bars based on an applicant's relationship with a third country," Order 21, its opinion effectively embraces that view.  Yet, as the government noted in its response, there is no indication on the face of the statute that the Attorney General may not take into account an alien's transit to the United States in considering whether to exercise his discretion to grant asylum, and no conflict between the rule and the existing statutory bars.  *See* TRO Br. 9-14.  The existing third-country-transit rule complements, rather than displaces, either bar, and all three are concerned with different classes of aliens—a fact that the Court recognized. *See* Order 23 (noting that the firm resettlement bar applies to an option "the alien had or has," that the safe-third-country provision applies to an option the alien "will have," and that the challenged rule applies to an option the alien "forewent").

The Court's good-cause and foreign-affairs analysis is also erroneous.  As to foreign affairs, the Court incorrectly concluded that the rule must be supported by a showing of "definitely undesirable international consequences," and that "facilitat[ing] ongoing negotiations" regarding illegal immigration is not enough.  Order 28.  Neither conclusion is correct.  *See* 5 U.S.C. § 553(a)(1) (no such showing required to invoke); *Yassini v. Crosland*, 618 F.2d 1356, 1360 (9th Cir. 1980) ("prompt response" required to embassy takeover sufficient for foreign affairs exception).  The choice of the Executive Branch here—to require aliens seeking asylum to seek it

1    in the countries they traverse en route to the United States, as part of the Executive Branch's efforts

2    in negotiations with other countries—is a "[d]ecision[] involving the relationships between the

3    United States and its alien visitors" that "implicate[s] our relations with foreign powers" and

4    "implement[s] the President's foreign policy." *Id.* at 1361.

5         Likewise, the good-cause analysis was flawed.  Although the Court recognized that the

6    record contained the same newspaper article that permitted "the agencies to infer that 'smugglers

7    might [] communicate' the rule's unfavorable terms to potential asylum seekers," thereby inducing

8    a surge to the border if notice and comment was undertaken, Order 31 (quoting *East Bay Sanctuary*

9    *Covenant v. Trump*, 354 F. Supp. 3d 1094, 1115 (2018)), it nevertheless rejected the same article

10   as a basis for good cause here because "[a] single, progressively more stale article cannot excuse

11   notice-and-comment for every immigration-related regulation *ad infinitum*."  Order 31.  But the

12   article in question no less demonstrates that aliens respond to changes in immigration policies now

13   than it did in October, 2018.  It is not the age of the article, but it the logic contained within it that

14   is important—it discusses the current trends toward information-sharing and responses to changes

15   in policy, as do several other sources in the record that the Court ignored.  *See* AR438-48.

16   Moreover, the court's second-guessing of the inferences drawn by the agencies based on these

17   articles is contrary to bedrock principle of administrative law which preclude courts from "second-

18   guessing the" Attorney General's and Secretary's "weighing of risks and benefits" and decisions

19   based on that weighing. *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2571 (2019).

20        The Court's holding that the rule is arbitrary and capricious—because the agencies failed

21   to address whether "asylum in Mexico is a feasible alternative to relief in the United States," Order.

22   33; *see also id.* 33-39—is equally mistaken.  None of the rule's stated rationales depends on the

23   feasibility of Mexico's asylum system to absorb transiting aliens. *See* 84 Fed. Reg. at 33,831.  And

24   even if they did, it is "reasonable for the [agency] to rely on its experience" to arrive at its

25   conclusions, even if those conclusions are not supported with "empirical research." *Sacora v.*

26   *Thomas*, 628 F.3d 1059, 1068-69 (9th Cir. 2010).  More importantly, the Court's review and

27   second-guessing (Order 34-39) of the agencies' assessment of conditions in Mexico or Northern

28   Triangle countries was contrary to the well-settled "recogni[tion] that it is for the political

branches, not the judiciary, to assess practices in foreign countries and to determine national policy in light of those assessments." *Munaf v. Geren*, 553 U.S. 674, 700-01 (2008).  And if that is so even in cases implicating the denial or violation of constitutional rights of *citizens*, *see id.*, *a fortiori* it is true with aliens like those on whose behalf Plaintiffs purport to speak, who are seeking initial admission to this country.  *See U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950).

Finally, the court's injunction imposes particularly sweeping harm because it defies the rule that injunctions "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs"—particularly when, on the same day, the U.S. District Court for the District of Columbia denied a temporary restraining order challenging the same rule.  *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994); *see* Dkt. 28, *CAIR*, 1:19-cv-2117.

## CONCLUSION

For the reasons stated above, the Court should grant a stay pending appeal.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

SCOTT G. STEWART
Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director

By: */s/ Erez Reuveni*
EREZ REUVENI
Assistant Director
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 307-4293
Email: Erez.R.Reuveni@usdoj.gov

PATRICK GLEN
Senior Litigation Counsel

Dated: July 29, 2019                    *Attorneys for Defendants*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2019, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of for the Northern District of California by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: */s/ Erez Reuveni*
EREZ REUVENI
Assistant Director
United States Department of Justice
Civil Division

JOSEPH H. HUNT
*Assistant Attorney General*
SCOTT G. STEWART
*Deputy Assistant Attorney General*
WILLIAM C. PEACHEY
*Director*
EREZ REUVENI
*Assistant Director*
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 307-4293
Email: Erez.R.Reuveni@usdoj.gov
PATRICK GLEN
*Senior Litigation Counsel*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| East Bay Sanctuary Covenant, *et al.*, ) | Civil Action No. 3:19-cv-04073-JST |
| ) | |
| Plaintiffs, ) | **[PROPOSED] ORDER GRANTING MOTION TO STAY** |
| ) | |
| v. ) | |
| ) | |
| William Barr, *et al.*, ) | |
| ) | |
| Defendants. ) | |

Before the Court is the Defendants' motion for a stay of the Court's order entering a preliminary injunction (ECF No. 42) pending appeal. Having reviewed the motion, IT IS HEREBY ORDERED that the motion is GRANTED.

Dated: July __, 2019

_____
United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28