Lee Gelernt*
Omar C. Jadwat*
Anand Balakrishnan*
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
*lgelernt@aclu.org*
*ojadwat@aclu.org*
*abalakrishnan@aclu.org*

Katrina Eiland (SBN 275701)
Cody Wofsy (SBN 294179)
Spencer Amdur (SBN 320069)
Julie Veroff (SBN 310161)
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-0770
F: (415) 395-0950
*keiland@aclu.org*
*cwofsy@aclu.org*
*samdur@aclu.org*
*jveroff@aclu.org*

*Attorneys for Plaintiffs*
*(Additional counsel listed on following page)*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| East Bay Sanctuary Covenant; Al Otro Lado; Innovation Law Lab; and Central American Resource Center in Los Angeles,<br><br>*Plaintiffs*,<br><br>v.<br><br>William Barr, Attorney General, in his official capacity; U.S. Department of Justice; James McHenry, Director of the Executive Office for Immigration Review, in his official capacity; the Executive Office for Immigration Review; Kevin McAleenan, Acting Secretary of Homeland Security, in his official capacity; U.S. Department of Homeland Security; Ken Cuccinelli, Acting Director of the U.S. Citizenship and Immigration Services, in his official capacity; U.S. Citizenship and Immigration Services; John Sanders, Commissioner of U.S. Customs and Border Protection, in his official capacity; U.S. Customs and Border Protection; Matthew Albence, Acting Director of Immigration and Customs Enforcement, in his official capacity; Immigration and Customs Enforcement,<br><br>*Defendants*. | Case No.: 3:19-cv-04073-JST<br><br>**OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO STAY PRELIMINARY INJUNCTION ORDER PENDING APPEAL** |

Melissa Crow*
SOUTHERN POVERTY LAW CENTER
1101 17th Street, NW Suite 705
Washington, D.C. 20036
T: (202) 355-4471
F: (404) 221-5857
*melissa.crow@splcenter.org*

Mary Bauer*
SOUTHERN POVERTY LAW CENTER
1000 Preston Avenue
Charlottesville, VA  22903
T: (470) 606-9307
F: (404) 221-5857
*mary.bauer@splcenter.org*

Baher Azmy**
Angelo Guisado**
Ghita Schwarz**
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
T: (212) 614-6464
F: (212) 614-6499
*bazmy@ccrjustice.org*
*aguisado@ccrjustice.org*
*gschwarz@ccrjustice.org*

Christine P. Sun (SBN 218701)
Vasudha Talla (SBN 316219)
Angélica Salceda (SBN 296152)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
T: (415) 621-2493
F: (415) 255-8437
*csun@aclunc.org*
*vtalla@aclunc.org*
*asalceda@aclunc.org*

*Attorneys for Plaintiffs*

*Admitted pro hac vice
**Pro hac vice application forthcoming

The Court should reject the government's stay motion. The Court already concluded that a preliminary injunction is warranted in this case. *See* ECF No. 42 (PI Order) at 45. The standard for a stay pending appeal mirrors the standard for an injunction in the first instance. *Compare id.* at 11 (standard for a preliminary injunction) *with* ECF No. 47 (Stay Mot.) at 2 (standard for a stay). Thus, in asking the Court for a stay, the government in effect is asking the Court to reverse its prior decision granting injunctive relief. But in so doing, the government merely recycles its already rejected arguments; it offers no new reason to revisit the Court's decision to grant preliminary injunctive relief. And every one of the preliminary injunction factors favors the relief issued, and therefore weighs against a stay. In short, the Court's decision was correct, and the government's stay motion should be denied.

## I.     The Balance of Harms Tips Sharply Against a Stay

The balance of hardships and public interest tip decisively in favor of Plaintiffs. *See* PI Order 3 ("[T]he balance of equities and the public interest tip strongly in favor of injunctive relief."). The government's response to the harms inflicted on Plaintiffs by the Rule is simply to repeat arguments previously made to and rejected by this Court. *Compare* Stay Mot. 4-5 *with* ECF No. 28 (PI Opp.) at 23-24. But as this Court held, the new Rule requires a diversion of Plaintiffs' resources and jeopardizes their funding, all in ways that cannot be remedied after the fact. *See* PI Order 41. The Rule also denies Plaintiffs the critical opportunity Congress provided to comment on a Rule that so deeply impacts their operations and missions—a harm that is not cured, as the government claims, by the ability to comment *after* the Rule is already in effect. Stay Mot. 5. *See East Bay Sanctuary Covenant v. Trump* ("*East Bay I D.Ct. Stay*"), 354 F. Supp. 3d 1085, 1093 (N.D. Cal. 2018) ("Defendants' argument that the Immigration Organizations suffer no harm because they may now comment on the Rule is not supported by authority and does not address cases holding otherwise.").[1]

In addition, as this Court previously explained, in considering whether to issue a stay pending appeal, the Court may "consider the harm to non-parties." *East Bay I D.Ct. Stay*, 354 F. Supp. 3d at

---

[1] Plaintiffs refer to *East Bay Sanctuary Covenant v. Trump*, the first challenge to an asylum bar that this Court considered, as *East Bay I* throughout, and provide a shorthand description of the specific opinion being cited that indicates the stage of the case at which it was issued.

1092 (citing *Nken v. Holder*, 556 U.S. 418, 433 (2009)).  As the Court already concluded, the Rule puts asylum seekers at risk of being persecuted in third countries or "wrongfully returned to their original countries of persecution," and so jeopardizes "'the public's interest in ensuring that we do not deliver aliens into the hands of their persecutors.'"  PI Order 42-43 (quoting *Leiva-Perez v. Holder*, 640 F.3d 962, 971 (9th Cir. 2011) (per curiam)).

For its own side of the balance, the government offers only vague platitudes about executive power and the need for deference to its interest in immigration enforcement.  *See* Stay Mot. 2-3.  It made the same argument in its brief opposing temporary injunctive relief.  *See* PI Opp. at 23-24.  The Court should again reject this argument, for as the Court already explained, "[w]hile the public has a weighty interest in the efficient administration of the immigration laws at the border, it also has a substantial interest in ensuring that the statutes enacted by its representatives are not imperiled by executive fiat."  PI Order 3; *see also East Bay I D.Ct. Stay*, 354 F. Supp. 3d at 1093; *East Bay Sanctuary Covenant v. Trump* ("*East Bay I CA9 Stay*"), 2018 WL 8807133, at *24 (9th Cir. Dec. 7, 2018).

Likewise, the government asserts that the public interest is harmed by an injunction because asylum seekers with unsuccessful claims will continue to come to the United States, and "[t]he Executive Branch is entitled to use every legal tool available to stem the flow of aliens who lack valid asylum claims."  Stay Mot. 3.  But the Court held that the Rule likely is *not* legal.  *See* PI Order 1-2; *see also East Bay I D.Ct. Stay*, 354 F. Supp. 3d at 1093 (denying stay in first asylum ban case and rejecting similar argument from the government because they had "not shown even serious questions that the Rule [was], in fact, legal").

Thus, the government's assertions about harm to the separation of powers get it exactly backwards; the injunction is necessary to protect the separation of powers and uphold duly enacted statutes.  *See* PI Order 43 ("[S]hortcutting the law, or weakening the boundary between Congress and the Executive, are not the solutions to these problems [at the border]."); *East Bay I CA9 Stay*, 2018 WL 8807133 at *20 ("Here, the Executive has attempted an end-run around Congress. . . . [C]ontinued inaction by Congress is not a sufficient basis under our Constitution for the Executive to rewrite our immigration laws.").  Indeed, the Court's order maintains a legal status quo that has been

in effect for decades.  Accordingly, "a stay of the district court's order would not preserve the status quo; it would upend it, as the [preliminary injunction] has temporarily restored the law to what it had been for many years prior to [the Rule's enactment]." *East Bay I CA9 Stay*, 2018 WL 8807133 at *24.

The government further contends that any time the executive is enjoined from effectuating its policy, it is irreparably injured.  *See* Stay Mot. 3.  This Court "reject[ed] Defendants' argument that an injunction against the Executive Branch 'a fortiori' imposes irreparable injury" the last time the government asked this Court for a stay pending appeal of an order enjoining an unlawful asylum ban.  *East Bay I D.Ct. Stay*, 354 F. Supp. 3d at 1092.  As the government offers no new argument on this front, the Court should do so again here.  Otherwise, on the government's logic, the government will always win on the harms prong.  But that is not the law.

Finally, the government's vague invocation of foreign negotiations, *see* Stay Mot. 2, 4, is not sufficient to warrant a stay, particularly in the context of a notice-and-comment claim where the applicability of the foreign affairs exception is a disputed issue.

## II.     Plaintiffs Are Likely to Succeed on the Merits[2]

The government offers nothing to disturb this Court's conclusion that Plaintiffs are likely to succeed on the merits because the Rule "is inconsistent with the existing asylum laws," the government failed "to comply with the Administrative Procedure Act's notice-and-comment rules," and "the government's decision to promulgate [the Rule] was arbitrary and capricious."  PI Order 1-2.

1. As to Plaintiffs' statutory claim, the government asserts that the requirements regarding what the agency must consider in applying the firm resettlement bar "are regulatory, not statutory," and so cannot be the basis for a statutory conflict barring the current Rule.  Stay Mot. 5.  But that argument ignores this Court's conclusion that "Congress codified the firm resettlement bar" in 1996,

---

[2] The government in a footnote "reasserts its objections" on standing and the zone of interests, Stay Mot. 5 n.1, but offers no argument on those issues.  As this Court already explained, the government's objections are "generally irreconcilable with the Ninth Circuit's and this Court's rulings in a prior case brought by the Organizations . . . ."  PI Order 11-12.

*see* PI Order 18, thus incorporating the longstanding regulatory definition, *see id.* at 15-18 (discussing the history of the firm resettlement bar).

Regarding the safe third country provision, the government notes, as it did before, that the safe third country provision does not require that a noncitizen transit through a third country to be removed there. *See* Stay Mot. 6; *see also* PI Opp. 12. That assertion misses the point that the Rule and the safe third country provision both "disqualify asylum applicants based on third countries," PI Order 15, and is wholly unresponsive to the primary basis for the Court's conclusion that the Rule is inconsistent "with the design and structure of the statute as a whole"—namely, that "the Rule does virtually nothing to ensure that a third country is a 'safe option.'" PI Order 21-22 (citation omitted).

Ultimately, the government rests on the same unsuccessful arguments it made in opposing Plaintiffs' request for preliminary injunctive relief: that 8 U.S.C. § 1158 does not "on its face" forbid the Attorney General from considering transit through a third country when exercising his discretion to grant asylum, and that the Rule "complements" the firm resettlement and safe third country provisions, which are "concerned with different classes of aliens." Stay Mot. 6; *see also* PI Opp. 8-9, 13. The Court already rejected these arguments, *see* PI Order 21-26, and the government offers no basis to revisit that conclusion.

2. The government offers nothing to cast doubt on the Court's notice-and-comment analysis. On the foreign affairs exception, the Court held that the government failed to demonstrate the "definitely undesirable consequences" required by Ninth Circuit precedent, because it had not shown how immediate enactment of the Rule would aid negotiations. PI Order 28-30 (quoting *East Bay I CA9 Stay*, 2018 WL 8807133 at *21). The government's stay motion makes no attempt to address this defect, instead arguing—contrary to binding precedent—that "no such showing [is] required" and that every immigration action in some sense impacts foreign affairs. Stay Mot. 6-7. As to good cause, the government simply defends the Rule's reliance on "[a] single, progressively more stale article" about a different policy that did not purport to document any surge. PI Order 31. It makes no attempt to explain or correct its "failure to produce more robust evidence." *Id.* The Court correctly rejected the government's view, because it would mean that no immigration policy would *ever* be subject to the APA's core procedural guarantees—a result the Ninth Circuit has rejected.

Opposition to Motion to Stay Preliminary Injunction
Case No.: 3:19-cv-04073

*See Buschmann v. Schweiker*, 676 F.2d 352, 357 (9th Cir. 1982); *Yassini v. Crosland*, 618 F.2d 1356, 1360 n.4 (9th Cir. 1980).

3. The government similarly offers nothing new that would cast doubt on the Court's conclusion that the Rule is arbitrary and capricious. The Court's order is clear that it does not "second-guess[]," Stay Mot. 7, any considered agency findings, but rather holds the government to its obligations under the APA to adequately explain its reasoning and to address the impact of highly relevant and contrary evidence in the administrative record. *See* PI Order 33-40, 38 n.23. Indeed, as the Court correctly found, the government "failed to provide any reasoned explanation" for the Rule's assumption that in every case a "third country is safe and asylum relief is sufficiently available, such that the failure to seek asylum there casts doubt on the validity of an applicant's claim." PI Order 33. In reaching this conclusion, the Court did not substitute its own judgment for the government's assessment of conditions in Mexico—rather, it found that Defendants' arguments regarding the viability of Mexico's asylum system were post hoc rationales not articulated in the Rule itself. PI Order 33-35. And even if the Rule *had* concluded that Mexico provides a safe and accessible asylum process for all transiting asylum seekers, the Court correctly held that such a finding is contradicted by a "mountain" of evidence in the agency's own administrative record that the agency failed to acknowledge or address.[3] PI Order 38. The cases the government cites, *see* Stay Mot. 7, do not undermine the Court's conclusion, as they do not address the situation here, where the government wholly failed to explain the Rule's assumptions and address evidence in the record undermining the Rule's rationale. *See* PI Opp. 19, 22.

### III. The Scope of the Injunction Is Appropriate

The government devotes a single sentence to the scope of the injunction. *See* Stay Mot. 8. Yet again, it fails to explain how a narrower injunction could provide complete relief to the

---

[3] Defendants' post hoc explanations for the agency's decision appear to be a moving target. Although Defendants' stay motion contends that the Rule's rationales do not "depend[] on the feasibility of Mexico's asylum system to absorb transiting aliens," Stay Mot. 7, Defendants' *own opposition* to Plaintiffs' PI motion advanced such reasoning. *See* PI Opp. 21-22 (raising the alleged feasibility of Mexico's asylum system as supporting the reasonableness of the Rule's use of an individual's transit through a third country without seeking asylum there as a proxy for those who likely lack meritorious claims).

Plaintiffs, and it fails "to distinguish this case from the Ninth Circuit's uncontroverted line of precedent" upholding nationwide injunctions against unlawful immigration policies.  PI Order 45 (quoting *East Bay I CA9 Stay*, 2018 WL 8807133 at *24) (alteration omitted).

## CONCLUSION

For the foregoing reasons, the Court should deny the government's stay motion.

Dated: July 31, 2019

Katrina Eiland (SBN 275701)
Cody Wofsy (SBN 294179)
Spencer Amdur (SBN 320069)
Julie Veroff (SBN 310161)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-1198
F: (415) 395-0950
*keiland@aclu.org*
*cwofsy@aclu.org*
*samdur@aclu.org*
*jveroff@aclu.org*

Melissa Crow*
SOUTHERN POVERTY LAW CENTER
1101 17th Street, NW Suite 705
Washington, D.C. 20036
T: (202) 355-4471
F: (404) 221-5857
*melissa.crow@splcenter.org*

Mary Bauer*
SOUTHERN POVERTY LAW CENTER
1000 Preston Avenue
Charlottesville, VA  22903
T: (470) 606-9307
F: (404) 221-5857
*mary.bauer@splcenter.org*

*Attorneys for Plaintiffs*


* *Admitted pro hac vice*
**Pro hac vice application forthcoming*

Respectfully submitted,

/s/ Lee Gelernt
Lee Gelernt*
Omar Jadwat*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
*lgelernt@aclu.org*
*ojadwat@aclu.org*
*abalakrishnan@aclu.org*

Christine P. Sun (SBN 218701)
Vasudha Talla (SBN 316219)
Angélica Salceda (SBN 296152)
AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
T: (415) 621-2493
F: (415) 255-8437
*csun@aclunc.org*
*vtalla@aclunc.org*
*asalceda@aclunc.org*

Baher Azmy**
Angelo Guisado**
Ghita Schwarz**
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Telephone: (212) 614-6464
Facsimile: (212) 614-6499
*bazmy@ccrjustice.org*
*aguisado@ccrjustice.org*
*gschwarz@ccrjustice.org*

7
Opposition to Motion to Stay Preliminary Injunction
Case No.: 3:19-cv-04073