Duane Morley Cox
1199 Cliffside Dr.
Logan, Utah 84321
801-755-3578

RECEIVED
AUG - 2 2019
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

| | |
|---|---|
| East Bay Sanctuary Covenant, et. al. | |
| Plaintiffs | Case No. 19-4073 JST |
| William Barr, Attorney General, in his Official Capacity, et. al. | Amicus Brief Arguing For Dismissal For Lack Of Jurisdiction |
| Defendants | |

++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

**NOW COMES**, Duane Morley Cox, Pro Se, and files this Amicus Brief in support of Defendants which brief argues that this Court must Dismiss For Lack Of Jurisdiction pursuant to **Nixon v. Fitzgerald.**

### Summary

1. During the Nixon administration, an act by the Administration allegedly harmed a man named Fitzgerald, who filed suit against Nixon. Ultimately, the U.S. Supreme Court recognized that there would be times when an act of the Administrative Branch or the President himself which was designed to operate for the good of the Country would intrude upon the rights of individuals, and held that before a Court could take jurisdiction of such a case, it must be determined if the harm to the individual was greater than the good to the country, and if not, then the Court would have no Jurisdiction to hear the complaint of the injured party.

2. The U.S. Supreme Court held:

"Held ... 2.(b) The President's absolute immunity is a functionally mandated incident of

Pg 1

his unique office, rooted in the constitutional tradition of the separation of powers and supported by the Nation's history. Because of the singular importance of the President's duties, diversion of his energies by concern with private lawsuits would raise unique risks to the effective functioning of the government. While the separation of powers doctrine does not bar every exercise of jurisdiction over the President, **a court, before exercising jurisdiction, must balance the constitutional weight of the interest to be served against the dangers of intrusion on the authority and functions of the Executive Branch**. The exercise of jurisdiction is not warranted in the case of merely private suits for damages based on a President's official acts." **Nixon v. Fitzgerald, 457 U.S. 731** {Emphasis Added}

3. In this case, Petitioners stated that: "This court has subject matter jurisdiction under 28 U.S.C. $ 1331." But omitted to include any analysis showing that this Court had Jurisdiction pursuant to the criteria of **Nixon v. Fitzgerals.**

## Table Of Contents

|  | Pages |
|---|---|
| Summary | 1 |
| Table Of Contents | 2 |
| Table Of Authorities | 2 |
| Arguments | 3 |
| Conclusions | 8 |

## Table Of Authorities

|  | Pages |
|---|---|
| Complaint, East Bay Sanctuary Covenant et. al. v William Barr et. al. | 4, 5 |
| Drug Trafficking Across Borders | 6 |
| Gonzles, 550 U.S. 124 | 7 |
| New FAIR Study; Illegal Immigration Costs $116 Billion Annually | 6 |
| New Rule,, 8 CFR Part 208, RIN 1615-AC44, Asylum Eligibility And Procedural Modifications | 4, 5, 6 |

## Table Of Authorities, Continued

|  | Pages |
|---|---|
| Nixon v. Fitzgerald, 457 U.S. 731 | 1, 2, 3, 7, 8 |
| Whole Woman's Health v. Hellerstedt, 579 U.S. ____ (2016) | 7, 8 |
| Presidential Proclamation on Declaring a National Emergency Border Of The United States | 3 |

## Argument

4.  This Case is of similar character to **Nixon v. Fitzgerald**.

5.  President Trump on 15 February 2019 signed a Presidential Proclamation on Declaring a National Emergency concerning the Southern Border of the United States which stated in relevant part:

> "The current situation at the southern border presents a border security and humanitarian crisis that threatens core national security interests and constitutes a national emergency. The southern border is a major entry point for criminals, gang members, and illicit narcotics. The problem of large-scale unlawful migration through the southern border is long-standing, and despite the executive branch's exercise of existing statutory authorities, the situation has worsened in certain respects in recent years. In particular, recent years have seen sharp increases in the number of family units entering and seeking entry to the United State and an inability to provide detention space for many of these aliens while their removal proceedings are pending. If not detained, such aliens are often released into the country and are often difficult to remove from the United States because they fail to appear for hearings, do not comply with orders of removal, or are otherwise difficult to locate. ... The Secretary of Homeland Security ... shall take all appropriate actions, consistent with applicable law, to use or support the use of the authorities herein invoked ... This proclamation is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the Unitef States, its departments, agencies, or entities, its officers, employees, or agents, or any other person." **Presidential Proclamation, 15 February 2019**

6.  On 19 July 2019, the Department of Homeland Security and the Department of Justice, pursuant to the above Declaration adopted an interim final rule under 8 CFR Part 208 which pursuant to authority delegated by Congress under 8 U.S.C. 1158, "will limit aliens' eligibility [for entry] ... if they enter or attempt to enter the United States across the southern border land

after failing to apply for protection in at least one third country through which they transited en route to the United States, subject to limited exceptions." **New Rule**

7. Plaintiff East Bay Sanctuary Covenant in summary claims harm as follows:

   "The new policy jeopardizes EBSC's funding streams. If EBSC is no longer able to handle affirmative asylum cases for individuals who enter after transiting through another country, it will face a marked decrease in its budget and will have to significantly cut its program and staff, or dramatically overhaul its program to provide types of assistance it is not currently equipped or trained to provide. The grant that funds EBSC's work is only to serve people who make under 250 percent of the poverty guidelines. In practice, the few noncitizens who will remain eligible to apply affirmatively for asylum under the new Rule will mostly be those who have visas of some kind and could travel to the U.S. by air and so likely fall outside the population it is EBSC's mission to serve and outside the requirements for DBSC's services." **Complaint, Pg 25**

8. Plaintiff Al Otro Lado in summary claims harms as follows:

   "The new Rule frustrates Al Otro Lado's mission and will force Al Otro Lado to divert significant resources away from its other programs. Becvause individuals who enter after transiting through another country are categorically ineligible for asylum under the Rule, Al Otro Lado will have to revamp its representation strategy, overhaul the materials it uses to train pro bono attorneys, and evaluate the eligibility of each of its clients for other types of immigration relief. It will allso have to expand resources to litigate eligibility issues, including under the higher standard governing withholding of removal, resulting in additional hearings and time spent on each case. ... The new policy also jeopardizes some of Al Otro Lado's most critical funding streams." **Complaint, Pg 25**

9. Plaintiff Innovation Law Lab in summary claims harms as follows:

   "The new policy will require Innovation Law Lab to significantly divert its limited resources. ... The new Rule thus would make a high percentage of the asylum seekers Innovation Law Lab serves ineligible for asylum [and] ... to entirely rework the advice and guidance it provides in its legal workshops, and respond to a flood of inquiries and uncertainty from the immigrant communities Innovation Law lab serves regarding the attempt to change asylum law [and] ...will also make a significant percentage of Innovation Law Lab's new pro bono cases a great deal more complicated and will require it to reevaluate relief eligibility in all of the cases that it screens and mentors." **Complaint, Pg 25**

10. Plaintiff CARECEN in summary claims harms as follows:

    "Nearly all of CARECEN'S asylum clients entered the United States through the southern

border after transiting through at least one country en route from their country of origin. ... [and] Funding ... is based on the number of cases it handles per year, and the number of clients it anticipates serving. ... [that] CARECEN's mission as it relates to asylum applicants will be frustrated because the organization will be unable to assist most asylum seekers from Central America because they will no longer be eligible for asylum given that they traveled through another country en route to the United States and did not apply for asylum in those countries. ... and will instead be forced to assist them in applying for withholding and Convention Against torture protection in removal proceedings, a much more resource-intensive process. The additional staff time required to handle such cases because of the more stringent standards for withholding and CAT and lack of derivative applications will require diverting resources from other critical areas of work." **Complaint, Pg 27-28**

11. Clearly, this Complaint is about Corporate Preservation, which leads to the reasonable conclusion that if President had instead decided to let any migrant into the country without any constraints or conditions in order to focus Homeland Security resources on countering the drug trafficking epidemic at the border, that these four Petitioners would have opposed that decision in order to Preserve their Corporate client base and funding streams

12. But either way, the Constitutional Weight relating to the Preservation of Private Corporate Entities by this Complaint simply cannot outweigh the Constitutional Weight of the dangers of intrusion on the authority and functions of the Executive Branch based upon:

    A. The Administration's Rule seeks to deal with the "large number of meritless asylum claims [which] places an extraordinary strain on the nation's immigration system, undermines many of the humanitarian purposes of asylum, has excerberated the humanitarian crisis of human smuggling, and affects the United States' ongoing diplomatic negotiations with foreign countries" **New Rule, Pg 5**

    B. The Administration's Rule seeks to reduce asylum cases which overwhelm the administration Judges where in spite of "deploying close to double the number of immigration Judges as in 2010 and completing historic numbers of cases, [there are] currently more than 900,000 cases are pending before the immigration courts. ... [which] represents an increase in more than 100,000 cases ... since the start of FY 2019." **New Rule, Pg 6**

    C. The Administration's Rule seeks to more effectively weed out asylum applications where, "a large majority of the asylum claims raised by those apprehended at

the southern border are ultimately determined to be without merit." **New Rule, Pg 7**

D.    The Administration's Rule seeks to "further the humanitarian purposes of asylum" [where it] "prioritizes individuals who are unable to obtain protection from persecution elsewhere and individuals who are victims of a "severe form of trafficking in persons" as defined by 8 CFR 214.11 ... " by deterring meritless asylum claims and de-prioritizing the applications of individuals who could have obtained protection in another country "in order to ensure that those refugees who have no alternative to U.S. based asylum relief or have been subjected to an extreme form of human trafficking are able to obtain relief more quickly." **New Rule, Pg 7**

E.    The Administration's Rule seeks to "curtail the humanitarian crisis created by human smugglers bringing men, women and children across the southern border." **New Rule, Pg 7**

F.    The Administrations Rule seeks to "aid the United States in its negotiations with foreign nations on migration issues" [by] "addressing the eligibility for asylum of aliens who enter or attempt to enter the United States after failing to seek protection in at least one third country through which they transit en route to the United States ... as it engages in ongoing diplomatic negotiations with Mexico and the Northern Triangle countries (Guatamala, El Salvador, and Honduras)." **New Rule, Pg 7-8**

G.    This Administration Rule is also expected to help stabilize or reduce the enormous taxpayer expense by federal, state and local governments to provide services to the estimated 12.5 million illegal immigrants and their children which a new study by the Immigration Reform Law Institute estimates to be a staggering "116 billion a year - an increase of some $16 billion compared to previous estimates." **New FAIR Study: Illegal Immigration Costs $116 Billion Annually**, 27 September 2017 (www.irli.org/single-post/2017/09/27/New-FAIR-Study-Illegal-Immigration-Costs'116-billion-Annually?gelid=EAIaIQobChM174qFvJW7... )

H.    This Administration Rule is expected to allow a shifting in personnel to focus more manpower on drug smuggling where over 95% of the drugs seized by the U.S. Border Patrol nationally occurs along the southern border. **Drug Trafficking Across Borders**

I.    This Administration Rule is expected to reduce the number of undocumented immigrants who illegally come into the U.S. in future years, including MS-13 Gang Members and recruits such as Jorge Palacios, 41 who was sentenced to life in prison without the possibility of parole, plus 25 years for the kidnapping, rape and murder of a 13-year-old girl **https://ktla.com/2019/06/21/ms-13-member-sentenced-to-life**, and the more recent charging of 22 MS-13 members who are allegedly linked to 7 murders in the greater LA area. **https://ktla.com/2019/07/16/ms-13-committed-l-a-area-killings**,

13.    The Constitutional Weight of any single benefit to the Executive Branch's Administrative duty to control the southern border, as expressed at indenture A thru I above far exceeds any possible Constitutional Weight that can be assigned to the preservation of the client base, funding stream, or even the viability of the Plaintiff entities themselves.  In fact the existence or non-existence of these Plaintiff entities for the purposes of assisting migrants is not a basis for dictating or controlling what statutes and rules are to be adopted and followed by the Executive Branch in performing its Constitutional duty to protect this Nation from the influx of drugs, the elimination of human trafficking, or the number and qualifications of migrants to enter and remain on the soil of the United States.

14.    And because this Jurisdictional issue which is a precedent stated to exist by the U.S. Supreme Court in **Nixon v. Fitzgerald** is now before the Court, the Court cannot award any of the temporary or permanent relief sought by Plaintiff entities because the Court has only the Jurisdiction to determine if it has Jurisdiction over the Case. - which Amicus argues it does not and can never have.

15.    Further, this Court cannot ignore thus limitation on Jurisdiction where the Executive Branch complying with its Constitutional duty to protect and defend the Nation and its Boarders for the welfare of the Citizens of America by simply changing the immigration rules as allowed by congressional authority to adjust to changing needs and circumstances, where with citation to **Gonzales**, **550 U.S. 124**, the U.S. Supreme Court has also held that a:

> "Court retains an independent constitutional duty to review factual findings where constitutional rights are at stake." **Whole Woman's Health v. Hellerstedt**, 579 U.S. ___ **[Opinion @ III, Next To Last Para.]**

Thus, this Court must consider the Constitutional Weight of Plaintiff's Complaint against

Pg 7

the Constitutional Weight associated to the damage which would be caused if the Court were to enjoin the Executive Branch from doing its Constitutional duties by adopting and enforcing this **New Rule**.

16.    And further, this Court must find in favor of Defendant Executive Branch parties on this Jurisdiction issue even if Defendant's do not request consideration of or brief on this Jurisdictional issue.

> "The Federal Rules of Civil Procedure state that ... a "final judgement should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings. Rule 54c." **Whole Woman's Health v. Hellerstedt**, 579 U.S. _____ [Opinion @ II, A, Last Para.]

## Conclusions

17.    Amicus argues that the U.S. Supreme Court has formulated a Jurisdictional Test in **Nixon v. Fitzgerald** which cannot simply be answered affirmatively in favor of Plaintiff's Complaint but must or will be answered affirmatively in favor of Defendants.

18.    And Amicus argues that application of this Jurisdictional Test to this Complaint will and does reveal that the Constitutional Weight of this Complaint which in reality seeks to assure that Plaintiff entities do not see a reduction in immigrant clients, a loss of funding and thus remain viable as entities must be held to be de-minimis because granting the relief requested would severely injure and hinder the ability of the Executive Branch from fulfilling its Constitutional duty to control our borders.

19.    Therefore Amicus argues that this Court must Dismiss this Complaint with Prejudice for lack of Jurisdiction pursuant to the Jurisdictional mandate of **Nixon v. Fitzgerald.**

_/s/ Duane Morley Cox_                                                               19 July 2019
Duane Morley Cox, Pro Se                                                   Date

Certification

I, Duane Morley Cox, Pro Se, do hereby swear that I am the author of this brief, that I was not paid or asked by anyone to file thjis Brief, nor did I solicit or obtain any money or assistance in any form in its preparation. Instead, I did all of my own research and preparation.

Further, the total word count by actual count is 2,472 words and 8 Pages.

Signed and sworn on this 17 Day of July 2019 by

_____                                    17 July 2019
Duane Morley Cox, Pro Se                                                          Date

Notary:

County of Cache:

State of Utah:

I did verify that the above signed Duane Morley Cox did appear before me and is known to me, and that he did Swear that this Certification Statement is true and correct.

_____
Notary

ASHLEY BEDKE
NOTARY PUBLIC • STATE OF UTAH
COMMISSION NO. 697569
COMM. EXP. 09/27/2021

Certificate Of Service

I, Duane Morley Cox, Pro Se, does hereby swear that on 19 July 2019, that I did serve true and correct copies of the attached Amicus Brief Arguing For Dismissal For Lack Of Jurisdiction to the below listed parties by first class mail, postage prepaid.

Clerk (Original)
United States District Court
Northern District of California
450 Golden State Ave.
San Francisco, California 94120-3489

William Barr, et. al.
U.S. Department of Justice
950 Pennsylvania Ave, NW
Washington D.C. 20530-0001

Lee Gelernt et. al.
ACLU FOUNDATION
IMMIGRANTS' RIGHTS Project
125 Broad Street, 1th Floor
New York, NY 1004 10004

Katrina Eilander. al.
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, California 94111

Melissa Crow
Southern Poverty Law Center
1101 17th Street, NW Suite 705
Washington DC 20036

Mary Bauer
Southern Poverty Law Center
1100 Preston Ave.
Charlottesville VA 22903

Baher Azmy, et. al.
Cewnter For Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012

Christine P. Sun, et. al.
ACLU, Foundation Of Northern Calif Inc
39 Drumm Street
San Francisco Calif. 94111

_____
Duane Morley Cox, Pro Se

19 July 2019
Date