Katrina Eiland (SBN 275701)
Cody Wofsy (SBN 294179)
Spencer Amdur (SBN 320069)
Julie Veroff (SBN 310161)
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-0770
F: (415) 395-0950
*keiland@aclu.org*
*cwofsy@aclu.org*
*samdur@aclu.org*
*jveroff@aclu.org*

Lee Gelernt\*
Omar C. Jadwat\*
Anand Balakrishnan\*
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
*lgelernt@aclu.org*
*ojadwat@aclu.org*
*abalakrishnan@aclu.org*

*Attorneys for Plaintiffs*
*(Additional counsel listed on following page)*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| East Bay Sanctuary Covenant; Al Otro Lado; Innovation Law Lab; and Central American Resource Center in Los Angeles,<br><br>*Plaintiffs*,<br><br>v.<br><br>William Barr, Attorney General, in his official capacity; U.S. Department of Justice; James McHenry, Director of the Executive Office for Immigration Review, in his official capacity; the Executive Office for Immigration Review; Kevin McAleenan, Acting Secretary of Homeland Security, in his official capacity; U.S. Department of Homeland Security; Ken Cuccinelli, Acting Director of the U.S. Citizenship and Immigration Services, in his official capacity; U.S. Citizenship and Immigration Services; John Sanders, Commissioner of U.S. Customs and Border Protection, in his official capacity; U.S. Customs and Border Protection; Matthew Albence, Acting Director of Immigration and Customs Enforcement, in his official capacity; Immigration and Customs Enforcement,<br><br>*Defendants*. | Case No.: 3:19-cv-04073-JST<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION TO CONSIDER SUPPLEMENTAL EVIDENCE AND RESTORE THE NATIONWIDE SCOPE OF THE INJUNCTION** |

Melissa Crow**
SOUTHERN POVERTY LAW CENTER
1101 17th Street, NW Suite 705
Washington, D.C. 20036
T: (202) 355-4471
F: (404) 221-5857
*melissa.crow@splcenter.org*

Mary Bauer**
SOUTHERN POVERTY LAW CENTER
1000 Preston Avenue
Charlottesville, VA 22903
T: (470) 606-9307
F: (404) 221-5857
*mary.bauer@splcenter.org*

*Attorneys for Plaintiffs*

*Admitted Pro hac vice
**Pro hac vice application forthcoming

Baher Azmy**
Angelo Guisado**
Ghita Schwarz**
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
T: (212) 614-6464
F: (212) 614-6499
*bazmy@ccrjustice.org*
*aguisado@ccrjustice.org*
*gschwarz@ccrjustice.org*

Christine P. Sun (SBN 218701)
Vasudha Talla (SBN 316219)
Angélica Salceda (SBN 296152)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
T: (415) 621-2493
F: (415) 255-8437
*csun@aclunc.org*
*vtalla@aclunc.org*
*asalceda@aclunc.org*

**INTRODUCTION**

This Court issued an order preliminarily enjoining the challenged Interim Final Rule nationwide on July 24, 2019. *See* ECF No. 42. The government sought an administrative stay and a stay pending appeal from the Ninth Circuit. *See* No. 19-16487 (9th Cir.), Dkt. 3-1. The Ninth Circuit motions panel denied the government's request for an administrative stay that same day. *See id.*, Dkt. 19. On August 16, 2019, the motions panel denied the government's request for a stay "insofar as the injunction applies within the Ninth Circuit." *Id.*, Dkt. 30 (Order) at 3.

The motions panel did not disturb this Court's conclusions about Plaintiffs' likelihood of success on the merits or the equities, and agreed that the government has "not made the required 'strong showing' that they are likely to succeed on the merits on [the notice-and-comment] issue." *Id.* However, the motions panel limited the scope of the injunction to the Ninth Circuit. *Id.* Critically, however, the panel recognized that a nationwide injunction of the Rule could well be appropriate. But before it would uphold nationwide relief in this case, the panel required further record evidence and findings by this Court connecting that scope of relief to Plaintiffs' injuries. *Id.* at 3-6. Accordingly, the motions panel provided that "[w]hile [the preliminary injunction] appeal proceeds, the district court retains jurisdiction to further develop the record in support of a preliminary injunction extending beyond the Ninth Circuit." *Id.* at 8-9.

Consistent with that express permission from the Ninth Circuit, Plaintiffs now respectfully request that the Court consider additional evidence in support of a nationwide injunction, and, based on supplemental findings of fact, restore the nationwide scope of the preliminary injunction.[1] Absent nationwide relief, the serious and irreparable harm to Plaintiffs caused by the Rule cannot be fully remedied.

---

[1] Given the panel's clear acknowledgment that this Court retains jurisdiction to revisit the proper scope of the injunction, there is no jurisdictional bar to this Court restoring the nationwide scope of the preliminary injunction based on further factual findings. *See* Order at 8-9; *id.* at 9 ("Because the record is insufficiently developed as to the question of the national scope of the injunction, we vacate the injunction to the extent that it applies outside California and remand to the district court for a more searching inquiry into whether this case justifies the breadth of the injunction imposed.") (quoting *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1245 (9th Cir. 2018)); *see also* Fed. R. Civ. Proc. 62(d) (permitting district courts to "modify, restore, or grant an injunction" even while an interlocutory appeal is pending).

# ARGUMENT

## I. Nationwide Relief Is Necessary to Remedy Plaintiffs' Injuries.

As the Ninth Circuit motions panel confirmed, nationwide injunctions will be upheld where they are "necessary to remedy a plaintiff's harm." Order at 4. The declarations accompanying this motion—which supplement the declarations filed by Plaintiffs in support of their motion for a temporary restraining order, *see* ECF No. 3-2, 3-3, 3-4, 3-5—clearly demonstrate that the injunction in this case must be nationwide "to remedy the specific harm shown" to Plaintiffs. Order at 4 (quoting *City and County of San Francisco v. Trump*, 897 F.3d 1225, 1243-45 (9th Cir. 2018)).

As set forth below, Plaintiffs have specific reasons why a nationwide injunction is necessary to remedy the harms to their organizations. But one common theme is that asylum seekers frequently do not enter the country and complete their asylum proceedings within the same circuit, and it is not possible to predict asylum seekers' movements in advance. For instance, an asylum seeker may enter the U.S. through Texas, have a credible fear interview in New Jersey, and ultimately apply for asylum in California. *See* Alvarez Decl. ¶ 6; Supp. Manning Decl. ¶¶ 12, 16. The Declaration of Aaron Reichlin-Melnick discusses the reasons for and frequency with which this movement occurs. The declarations from each of the four Plaintiffs discuss these scenarios as they relate to the organization's work.

<u>Innovation Law Lab</u>: Law Lab's operations are not limited to the Ninth Circuit. In addition to its work in the Ninth Circuit, Law Lab has offices in Georgia, Missouri, and Texas; operates pro bono representation projects in Georgia, Kansas, Missouri, and North Carolina, with expansion underway to New Mexico; and provides direct representation to persons applying for asylum outside the Ninth Circuit. *See* Supp. Manning Decl. ¶¶ 4-5. And six of the seven detention centers at which Law Lab regularly works are outside the Ninth Circuit. *Id.* ¶ 19. Given Law Lab's national scope, an injunction limited to the Ninth Circuit would not fully remedy the harm to the organization.

First, because Law Lab provides training, materials, and overall legal assistance to other organizations and asylum seekers throughout the country, the harm to Law Lab will not be remedied by an injunction limited to the Ninth Circuit. Among other things, Law Lab currently uses synchronized templates and materials across its program sites. A geographically limited injunction

will force it to abandon this practice, and will require it to meaningfully restructure its operations to effectively serve persons who are subject to the transit ban as well as persons who are not. *Id.* ¶¶ 7-8, 13-14, 20.

Second, the fact that Law Lab directly represents individuals outside the Ninth Circuit means that an injunction limited to the Ninth Circuit is insufficient. *Id.* ¶ 15.

Moreover, providing legal guidance and assistance to persons subject to the Rule will be a significant burden on Law Lab employee time and program operations, as these persons will now only be eligible for withholding of removal and relief under the Convention Against Torture. Those forms of relief are more time consuming than asylum to pursue, as they involve higher burdens of proof than asylum and require the development of distinct and more in-depth legal analyses. They also do not permit derivative applications to be filed on behalf of family members. In addition, Law Lab will have to retrain its volunteers on these forms of relief and adjust how it screens individuals for relief. *Id.* ¶¶ 9, 11.

And, importantly, because asylum seekers often move between different locations—and between judicial circuits—during their proceedings, Law Lab's ability to provide legal assistance workshops will be hindered. *Id.* ¶¶ 12, 16. For instance, at Law Lab's workshops in Tijuana for individuals about to seek asylum in the U.S., Law Lab will have to provide guidance about a Rule that might apply at different points throughout their asylum cases, depending on where they ultimately cross the border or where they end up once in the U.S. Indeed, the number of asylum seekers Law Lab serves in Tijuana who end up in detention centers in Louisiana and Mississippi has been significantly increasing. *Id.* ¶ 12. *See also* Reichlin-Melnick Decl. (discussing movement of asylum seekers across jurisdictions).[2] As a result, it will now be impossible simply to provide all of these asylum seekers and their legal representatives with one set of guidelines.

---

[2] The Reichlin-Melnick declaration analyzes recent statistics from the Department of Homeland Security ("DHS") and Executive Office for Immigration Review demonstrating that asylum seekers frequently move throughout the country during the asylum process, either by their choice or because DHS transfers detained asylum seekers from one detention center to another. This data reveals that there is almost no connection between asylum seekers' place of entry and ultimate destination. Reichlin-Melnick Decl. ¶¶ 5-6, 14-15.

Finally, an injunction limited to the Ninth Circuit not only will frustrate Law Lab's operations outside the Ninth Circuit, but will adversely impact its programs within the Ninth Circuit as well. Because serving individuals affected by the Rule's categorical ban is so time consuming, Law Lab will have to direct significant resources towards their representation, which will negatively affect clients in the Ninth Circuit and may force Law Lab to serve fewer people overall. Supp. Manning Decl. ¶ 17.

East Bay Sanctuary Covenant ("EBSC"): The harms caused to EBSC by the Rule, *see* ECF No. 3-2, will persist if the Rule is allowed to go into effect everywhere other than the Ninth Circuit. *See* Supp. Smith Decl. ¶ 4. Part of EBSC's mission is to serve clients in affirmative asylum cases, regardless of where they entered the United States. Accordingly, EBSC serves clients who enter the United States anywhere in the country, not just the Ninth Circuit. A sizable portion of EBSC's clients enter the United States outside the Ninth Circuit's geographic boundaries and then end up in California, where they apply for asylum. More than 22% of EBSC's affirmative asylum applications filed in 2019 were on behalf of clients who transited through Mexico without applying for protection there and then entered the United States in Texas or New Mexico, i.e., outside the Ninth Circuit. If the organization is unable to serve a sizable portion of its client base in affirmative asylum cases, its mission will be frustrated, and a core part of its operations will be undermined. *Id.* ¶¶ 5, 7.

For the same reason, an injunction limited to the Ninth Circuit also jeopardizes EBSC's funding streams. Pursuant to a grant from the California Department of Social Services ("CDSS"), EBSC receives $2,000 for every affirmative asylum case it files. If, because of the Rule, EBSC is no longer able to handle affirmative asylum cases for individuals who transit through a third country en route to the southern border and enter outside the Ninth Circuit, the organization likely will face a marked decrease in its budget. Indeed, if the Rule is allowed to remain in effect outside the Ninth Circuit, EBSC estimates that it could lose up to $50,000 under the terms of its CDSS grant during the rest of 2019 and up to $100,000 in 2020. *Id.* ¶ 8.

Because of the strain imposed on EBSC if the Rule remains in effect outside of the Ninth Circuit, EBSC will either have to significantly cut its affirmative asylum program and staff, or overhaul its program to provide types of assistance it is not currently equipped or trained to provide.

*Id.* ¶ 9.  Notably, EBSC does not currently have sufficient capacity or expertise to handle applications for humanitarian relief in the removal context.  Yet to continue serving clients affected by the Rule, EBSC will have to shift to representing those individuals in removal cases.  Doing so would be extremely resource intensive for EBSC.  *Id.* ¶ 10.  EBSC will also be burdened by having to provide different services to those subject to the Rule and those not subject to the Rule.  *Id.* ¶¶ 12-13.

CARECEN: The injuries inflicted on CARECEN by the Rule, *see* ECF No. 3-5, will persist if the Rule is not enjoined nationwide, *see* Alvarez Decl. ¶ 4.  CARECEN represents Central American asylum seekers regardless of where they enter the United States.  Nearly all of CARECEN's current asylum clients entered through the southern border after transiting through a third country without applying for protection there, and at least 60% of those individuals entered outside of the Ninth Circuit.  *Id.* ¶ 5. Thus, the majority of CARECEN's asylum clients could still be subject to the Rule's categorical bar on asylum under an injunction limited to the Ninth Circuit.  *Id.* CARECEN would be forced to divert significant resources to serve these clients, as they would only be eligible for far more resource-intensive forms of relief, such as withholding and CAT protection.  *Id.* ¶¶ 8-9.  Despite having to devote significantly increased resources to such applications, CARECEN's main source of funding for its asylum work pays a fixed amount per case.  This will significantly strain the organization's budget.  *Id.* ¶ 9.

In addition, CARECEN will have to undertake time consuming screening efforts to determine whether a prospective client is subject to the Rule under a geographically limited injunction.  Prospective clients who call CARECEN's offices for representation frequently do not have paperwork showing where they entered the country or have other geographical information that may be relevant to the applicability of the Rule.  *Id.* ¶ 11.  CARECEN staff therefore will have to do additional investigation and screening to determine whether the Rule is likely to apply.  *Id.*  It will also have to bifurcate its operations to provide different services to those subject to the Rule and those not subject to it.  *Id.* ¶¶ 10-11.

Al Otro Lado: Al Otro Lado will continue to suffer injuries if the Rule is enjoined only in the Ninth Circuit.  *See* ECF No. 3-3; Ramos Decl. ¶¶ 3-4.  Of the thousands of noncitizens Al Otro Lado

serves through its offices in Tijuana, Mexico, not all cross the border in the Ninth Circuit. Rather, some ultimately enter the United States elsewhere, including Texas and New Mexico. *Id.* ¶ 5. It is impossible for Al Otro Lado to know with certainty ex ante where a given asylum seeker whom they serve will ultimately enter the United States. *Id.* ¶¶ 5-8.[3] As a result, they will now have to provide burdensome additional guidance to ensure that individuals understand the Rule's impact in different parts of the United States. *Id.* ¶¶ 9-10.

Likewise, Al Otro Lado serves individuals who end up outside the Ninth Circuit for their asylum proceedings. Al Otro Lado clients who entered the United States along the southern border in California have ended up in Colorado, Georgia, Maine, Maryland, Michigan, Minnesota, and Wisconsin. *Id.* ¶ 6. This cross-circuit movement happens because of where the government chooses to detain a given asylum seeker, or because of where a given asylum seeker goes to live after release from detention. *Id*. *See also* Reichlin-Melnick Decl. In Al Otro Lado's experience, this cross-circuit movement is quite common, particularly for unaccompanied minors. Ramos Decl. ¶ 7. As with the uncertainty about ultimate border-crossing locations, it is impossible for Al Otro Lado to know for certain where an individual they advise will end up once they are in the United States. *Id.* ¶ 8.

As a result, if the Rule is only enjoined in certain parts of the country, rather than nationwide, Al Otro Lado will have to advise asylum seekers without knowing whether they will ultimately be subject to the Rule's categorical asylum bar or not. To fulfill their professional obligations, Al Otro Lado will have to account for all possibilities in giving advice. Having to do so will require Al Otro Lado to expend significant organizational resources regarding training materials, staff time, and capacity, and would create a serious burden for the organization. *Id.* ¶¶ 9-10.

**II.    Nationwide Relief Is Appropriate on the Record Here.**

This Court and the Ninth Circuit concluded that the first asylum ban was likely unlawful and enjoined it nationwide. The Supreme Court did not disturb that conclusion and let stand the

---

[3] Likewise, Law Lab's declaration makes the same point that the organization does not know in advance where asylum seekers it serves in Mexico will enter the U.S. or where they will travel around the country during the asylum process. Supp. Manning Decl. ¶¶ 12, 16.

injunction's nationwide scope. *See Trump v. East Bay Sanctuary Covenant*, 139 S.Ct. 782 (2018) (denying stay). The record of harm to Plaintiffs absent a nationwide injunction, as supplemented, is even stronger than the record in that case. The Court should therefore reinstate the nationwide injunction to remedy Plaintiffs' injuries. Moreover, the public interest calculation—which the stay panel did not disturb—strongly favors a nationwide injunction given the grave harm individual migrants will face.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be granted.

Dated: August 19, 2019               Respectfully submitted,

                                     /s/ Lee Gelernt
Katrina Eiland (SBN 275701)          Lee Gelernt*
Cody Wofsy (SBN 294179)              Omar Jadwat*
Spencer Amdur (SBN 320069)           Anand Balakrishnan*
Julie Veroff (SBN 310161)            AMERICAN CIVIL LIBERTIES UNION
AMERICAN CIVIL LIBERTIES UNION       FOUNDATION
FOUNDATION                           IMMIGRANTS' RIGHTS PROJECT
IMMIGRANTS' RIGHTS PROJECT           125 Broad St., 18th Floor
39 Drumm Street                      New York, NY 10004
San Francisco, CA 94111              T: (212) 549-2660
T: (415) 343-1198                    F: (212) 549-2654
F: (415) 395-0950                    *lgelernt@aclu.org*
*keiland@aclu.org*                   *ojadwat@aclu.org*
*cwofsy@aclu.org*                    *abalakrishnan@aclu.org*
*samdur@aclu.org*
*jveroff@aclu.org*
                                     Christine P. Sun (SBN 218701)
Melissa Crow**                       Vasudha Talla (SBN 316219)
SOUTHERN POVERTY LAW CENTER          Angélica Salceda (SBN 296152)
1101 17th Street, NW Suite 705       AMERICAN CIVIL LIBERTIES UNION OF
Washington, D.C. 20036               NORTHERN CALIFORNIA, INC.
T: (202) 355-4471                    39 Drumm Street
F: (404) 221-5857                    San Francisco, CA 94111
*melissa.crow@splcenter.org*         T: (415) 621-2493
                                     F: (415) 255-8437
                                     *csun@aclunc.org*
                                     *vtalla@aclunc.org*
                                     *asalceda@aclunc.org*

Mary Bauer**
SOUTHERN POVERTY LAW CENTER
1000 Preston Avenue
Charlottesville, VA  22903
T: (470) 606-9307
F: (404) 221-5857
*mary.bauer@splcenter.org*

*Attorneys for Plaintiffs*

*\*Admitted Pro hac vice*
*\*\* Pro hac vice application forthcoming*

Baher Azmy**
Angelo Guisado**
Ghita Schwarz**
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Telephone: (212) 614-6464
Facsimile: (212) 614-6499
*bazmy@ccrjustice.org*
*aguisado@ccrjustice.org*
*gschwarz@ccrjustice.org*