## SUPPLEMENTAL DECLARATION OF MICHAEL SMITH, REFUGEE RIGHTS PROGRAM DIRECTOR, EAST BAY SANCTUARY COVENANT

I, Michael Smith, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I make this declaration based on my personal knowledge except where I have indicated otherwise. If called as a witness, I would testify competently and truthfully to these matters.

2. I previously submitted a declaration in this matter. *See East Bay Sanctuary Covenant v. Barr*, No. 3:19-cv-04073-JST (N.D. Cal.) ECF No. 3-2 (July 17, 2019). This declaration supplements that first declaration.

3. For the reasons I explained in my first declaration, the Interim Final Rule ("Rule") at issue in this litigation—which categorically bars from asylum individuals who enter the southern land border after transiting through a third country without applying for protection there—will significantly harm East Bay Sanctuary Covenant ("EBSC") as an organization, seriously frustrate EBSC's mission, and divert organizational resources.

4. EBSC will suffer serious harms if the Rule is allowed to go into effect everywhere other than the Ninth Circuit. To fully remedy the harms the Rule will inflict on EBSC, it is essential that the Rule be declared unlawful and enjoined nationwide, not just in the Ninth Circuit.

5. It is part of EBSC's mission to serve clients regardless of where or how they entered the United States. Accordingly, EBSC's services are not limited to clients who entered the United States in one of the states in the Ninth Circuit. Rather, EBSC serves clients who enter the United States anywhere in the country. A sizable portion of EBSC's clients enter the United States outside the Ninth Circuit's geographic boundaries and then end up in California and apply for asylum. In fact, of the 183 affirmative asylum applications EBSC has filed on behalf of its clients thus far in 2019, 41 of those individuals transited through Mexico and entered the United States in Texas or New Mexico. In other words, more than 22% of EBSC's affirmative asylum

applications filed in 2019 were on behalf of clients who may still be subject to the Rule's categorical bar on asylum under an injunction limited to the Ninth Circuit.

6. An injunction limited in geographic scope to the Ninth Circuit, and thus allowing the Rule to be in effect outside the Ninth Circuit, will result in myriad, significant, and irreparable harms to EBSC.

7. Providing legal services to affirmative asylum applicants is a key part of EBSC's mission and core activities. If the Rule is enjoined only in the Ninth Circuit, EBSC may be unable to serve those clients who enter the United States outside the Ninth Circuit and are subject to the Rule's categorical ban. Being unable to serve a sizable portion of our client base frustrates EBSC's mission and thwarts a core part of our operations.

8. EBSC's funding streams as to these clients will also be jeopardized. As I explained in my first declaration, pursuant to a grant from the California Department of Social Services ("CDSS"), EBSC receives $2,000 for every affirmative asylum case we file. If we are no longer able to handle affirmative asylum cases for individuals who transit through a third country en route to the southern border and enter outside the Ninth Circuit, we likely will face a marked decrease in our budget. Indeed, if the Rule is allowed to remain in effect outside the Ninth Circuit for the rest of 2019, I estimate that EBSC could lose up to $50,000 under the terms of our CDSS grant. If the Rule is allowed to remain in effect outside the Ninth Circuit for 2020, our projected losses under the grant are approximately $100,000.

9. As a result, if the Rule remains in effect outside the Ninth Circuit, we will either have to significantly cut our affirmative asylum program and staff, or overhaul our program to provide types of assistance we are not currently equipped or trained to provide.

10. As I explained in my first declaration, EBSC does not currently have capacity to handle applications for humanitarian relief in the removal context. Yet to continue serving clients affected by the Rule, we will have to shift to representing those individuals in removal cases. Doing so would be extremely resource intensive, as we would have to develop such a program, develop training materials, provide significant training to existing staff, and hire new staff experienced in practicing before the immigration court. Furthermore, representing individuals on withholding of removal and/or Convention Against Torture claims instead of asylum is extremely resource intensive. Among other reasons, such claims are subject to a stricter standard than asylum claims and, unlike asylum claims, do not allow for derivative claims for certain close family members.

11. EBSC considers training law students to be a significant part of our mission, and since the beginning of our affirmative asylum program we have trained more than 750 law students from many universities around the country. A great many law students have informed me that their work for EBSC was their most rewarding experience in law school. Law students cannot represent clients in Removal Proceedings, and if the Rule remains in effect outside the Ninth Circuit we would have to sharply curtail our very successful program of training law students

12. An injunction that enjoins the Rule in the Ninth Circuit but allows it to be in effect elsewhere imposes a significant burden on EBSC because we may either have to totally shut down our services to individuals who enter outside the Ninth Circuit—a significant part of our client base—or bifurcate our operations, providing different services to those subject to the Rule and those not subject to the Rule.

13. Bifurcating our operations in this way will be extremely cumbersome, as we will have to make the changes discussed here and in my first declaration, in addition to maintaining our current operations. Doing so will pose a significant strain on our staff and resources.

14. If EBSC had been given the opportunity to comment on the Rule before it went into effect, EBSC would have submitted comments about why the Rule is unlawful and factually unsupported, arbitrary and why it must be rescinded nationwide.

I hereby declare under penalty of perjury that the foregoing is true and correct.

*Michael Smith*
Michael Smith
Executed this 19th day of August 2019