JOSEPH H. HUNT
*Assistant Attorney General*
SCOTT G. STEWART
*Deputy Assistant Attorney General*
WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section
EREZ REUVENI
*Assistant Director*
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 347-4293
Email: Erez.R.Reuveni@usdoj.gov
PATRICK GLEN
*Senior Litigation Counsel*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| East Bay Sanctuary Covenant, *et al.*, | Civil Action No. 1:19-cv-04073-JST |
| Plaintiffs, | **OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR A NATIONWIDE INJUNCTION** |
| v. | |
| William Barr, *et al.*, | |
| Defendants. | |

# TABLE OF CONTENTS

**INTRODUCTION**..................................................................................................1

**BACKGROUND** .................................................................................................3

**ARGUMENT** ......................................................................................................5

**I.      This Court Lacks Jurisdiction to Restore the Nationwide Scope of the Injunction** ...5

**II.     Nationwide Injunctive Relief is Inappropriate in This Case** .....................................**10**

      A.     Nationwide Relief is Not Necessary to Remedy Plaintiffs' Specific Harms  ......11

      B.     The Violations Shown Do Not Warrant Nationwide Injunctive Relief.................19

      C.     No Other Considerations Warrant Nationwide Injunctive Relief ........................22

**CONCLUSION** .................................................................................................**24**

**CERTIFICATE OF SERVICE** ...........................................................................

# TABLE OF AUTHORITIES

## CASE LAW

*Brenneise v. San Diego Unified School District*,
No. 08-cv-28-MMA (WMc), 2012 WL 12953527 (S.D. Cal. July 23, 2012) ..........................7

*Britton v. Co-op Banking Grp.*,
916 F.2d 1405 (9th Cir. 1990) ...................................................................................7

*CAIR v. Trump*,
No. 1:19-cv-02117-TJK, 2019 WL 3436501 (D.D.C. July 24, 2019) ..........................2, 21

*Cal. Communities Against Toxics v. U.S. E.P.A.*,
688 F.3d 989 (9th Cir. 2012) ....................................................................................20

*Califano v. Yamasaki*,
442 U.S. 682 (1979) .................................................................................................10

*California v. Azar*,
911 F.3d 558 (9th Cir. 2018) ............................................................... 10, 16. 19. 22

*Council, Inc. v. SW. Marine Inc.*,
242 F.3d 1163 (9th Cir. 2001) .................................................................................6, 7

*East Bay Sanctuary Covenant v. Barr*,
No. 19-16487, 2019 WL 3850928 (9th Cir. Aug. 16, 2019).....................................1, 3

*East Bay Sanctuary Covenant v. Trump*,
354 F. Supp. 3d 1094 (N.D. Cal. 2018) ...................................................................6, 8

*East Bay Sanctuary Covenant v. Trump*,
No. 18-17274, --F.3d--, 2018 WL 8807133 (9th Cir. Dec. 7, 2018) ..................... 11, 21

*Griggs v. Provident Consumer Disc. Co.*,
459 U.S. 56 (1982) ......................................................................................................6

*Idaho Farm Bureau Federation v. Babbitt*,
58 F.3d 1392 (9th Cir. 1995) ...............................................................................20, 21

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. C-07-01827 SI, 2013 WL 6055079 (N.D. Cal. Nov. 13, 2013)..........................7

*Kansas v. Nebraska*,
135 S. Ct. 1042 (2015) ..............................................................................................22

*L.A. Haven Hospice, Inc. v. Sebelius*,
  638 F.3d 644 (9th Cir. 2011) ..................................................................... 10, 19

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................ 15

*Madsen v. Women's Health Ctr., Inc.*,
  512 U.S. 753 (1994) ...................................................................................... 1, 11

*Martinez Banos v. Godfrey*,
  No. C16-1454 JLR, 2019 WL 2357871 (W.D. Wash. June 4, 2019) ................. 9

*McClatchy Newspapers v. Cent. Valley Typographical Union No. 46, Int'l Typographical Union*,
  686 F.2d 731 (9th Cir. 1982) ........................................................................ 1, 6

*Mendez-Gutierrez v. Gonzales*,
  444 F.3d 1168 (9th Cir. 2006) ......................................................................... 8

*Mendia v. Garcia*,
  874 F.3d 1118 (9th Cir. 2017) ....................................................................... 1, 9

*NewGen, LLC v. Safe Cig, LLC*,
  840 F.3d 606 (9th Cir. 2016) ........................................................................... 9

*Phillipe Charriol Int'l Ltd. v. A'lor Int'l Ltd.*,
  No. 13cv1257-MMA-JLB, 2014 WL 12279504 (S.D. Cal. May 29, 2014) ......... 7

Plaintiffs allude to *City & Cnty. of San Francisco v. Trump*,
  897 F.3d 1225 (9th Cir. 2018) ..................................................................... 8, 20

*Rabang v. Kelly*,
  No. C17-0088-JCC, 2018 WL 1737944 (W.D. Wash. Apr. 11, 2018) ............... 9

*San Francisco Aesthetics & Laser Medicine Inc. v. Presidio Trust*,
  No. C-07-05170 EDL, 2010 WL 4226696 (N.D. Cal. Oct. 21, 2010) ................ 8

*Sgaraglino v. State Farm Fire & Cas. Co.*,
  896 F.2d 420 (9th Cir. 1990) ........................................................................... 6

*Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200, AFL-CIO*,
  611 F.3d 483 (9th Cir. 2019) ........................................................................... 6

*State v. Azar*,
  385 F. Supp. 3d 960 (N.D. Cal. 2019) ............................................................ 20

*Thomas v. Cnty. of Los Angeles,*
  978 F.2d 504 (9th Cir. 1992) ...................................................................................8

*Tribe v. Nat'l Marine Fisheries Serv.,*
  No. 16-CV-04294-WHO, 2018 WL 2010980 (N.D. Cal. Apr. 30, 2018) ..................................9

*Trump v. Hawaii,*
  138 S. Ct. 2392 (2018) .........................................................................................11

*United States v. Mendoza,*
  464 U.S. 154 (1984) ...........................................................................................11

*United States v. Thrasher,*
  483 F.3d 977 (9th Cir. 2007) ...................................................................................6

*Virginia Soc'y for Human Life, Inc. v. FEC,*
  263 F.3d 379 (4th Cir. 2001) ..................................................................................20

*Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.,*
  No. 3:17-cv-0118, 2018 WL 4698566 (S.D. Cal. Sept. 28, 2018) .................................17

*Winter v. NRDC,*
  555 U.S. 7 (2008)...........................................................................................12, 15

## FEDERAL STATUTES

5 U.S.C. § 705...................................................................................................20

5 U.S.C. § 706...................................................................................................20

28 U.S.C. § 1292(a)(1) ..........................................................................................7

## FEDERAL REGISTER

84 Fed. Reg. 33829 ..............................................................................................3

## FEDERAL RULES FOR CIVIL PROCEDURE

Fed. R. App. P. 12.1...........................................................................................9

Fed. R. App. P. 62(d) ..........................................................................................6

OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR A NATIONWIDE INJUNCTION
*East Bay Sanctuary Covenant v. Barr*
Case No. 1:19-cv-04073-JST

Fed. R. App. P. 62.1 ..................................................................................................9

Fed. R. App. P. 62.1(b) ............................................................................................9

Fed. R. App. P. 62.1(c) ............................................................................................9

OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR A NATIONWIDE INJUNCTION
*East Bay Sanctuary Covenant v. Barr*
Case No. 1:19-cv-04073-JST

v

**INTRODUCTION**

This Court should deny Plaintiffs' renewed motion for a nationwide injunction.

As a general rule, courts lack the authority to enter universal injunctions that preclude enforcement of a law or rule against all persons, rather than against only the actual plaintiffs. As the Ninth Circuit explained in reversing this Court's nationwide injunction, such injunctions are the exception, and may be issued only in those "exceptional cases" in which the plaintiff affirmatively demonstrates, through evidence, "why a nationwide injunction is necessary to remedy Plaintiffs' alleged harm in this case." *East Bay Sanctuary Covenant v. Barr*, No. 19-16487, 2019 WL 3850928, at *2 (9th Cir. Aug. 16, 2019).  Plaintiffs have now had three opportunities to make this showing, *see* Dkt. 3, Dkt. 57, Dkt. 63, and have thrice failed in making the exceptional showing necessary to warrant relief that runs beyond their specific injuries. And for good reason: an injunction that runs to Plaintiffs, which covers specific aliens that Plaintiffs identify as actual clients in the United States who are otherwise subject to the rule "provide[s] complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994). Yet, despite multiple opportunities, Plaintiffs' counsel does not identify a single, bona fide client who suffers injury as a result of the rule, or explain how an injunction limited to such aliens would not cure their alleged injuries while this litigation proceeds.

In any event, even had Plaintiffs tried, they cannot make the "exceptional" showing necessary to warrant a nationwide injunction anew.  To begin, the most this Court has the authority to do is issue an indicative ruling.  "The filing of a notice of appeal generally divests the district court of jurisdiction over the matters appealed." *McClatchy Newspapers v. Cent. Valley Typographical Union No. 46, Int'l Typographical Union*, 686 F.2d 731, 734 (9th Cir. 1982).  Thus, unless and until the Ninth Circuit formally remands the issue to this Court, it is without authority to issue a new injunction. *See* F.R.C.P. 62.1(c); *Mendia v. Garcia*, 874 F.3d 1118, 1121 (9th Cir. 2017).

On the merits, Plaintiffs' arguments in favor of a nationwide injunction are baseless. Plaintiffs largely recycle the same irreparable harm arguments they have repeatedly made in this litigation to assert their entitlement to a nationwide injunction and which were found wanting by

OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR A NATIONWIDE INJUNCTION
*East Bay Sanctuary Covenant v. Barr*
Case No. 1:19-cv-04073-JST

1

the Ninth Circuit.  They claim an injunction is needed because aliens—who they fail to identify—
*may* not "complete their asylum proceedings within the same circuit, and it is not possible to
predict asylum seekers' movements in advance." Dkt. 57-1 at 2.  But that is refuted by the fact
that the Departments report that they are implementing the injunction as modified by the Ninth
Circuit and treating individuals as covered by the injunction if: "(1) the alien was apprehended in
the Ninth Circuit, (2) the alien is detained in the Ninth Circuit, or (3) the interview or adjudication
itself occurs in the Ninth Circuit." Ex. A, EOIR Guidance at 1; *accord* Ex B., USCIS Guidance at
1 ("the IFR should not apply to any [credible fear] determination or asylum adjudication in which:
(1) the alien was apprehended in the jurisdiction of the Ninth Circuit" or" (2) the alien is in the
jurisdiction of the Ninth Circuit when the credible fear screening is conducted or the claim is
adjudicated."); Ex. C, ICE Guidance at 1 (ICE "will consider the PI to apply in situations where
the alien: (i) was initially apprehended by DHS within the jurisdiction of the Ninth Circuit; (ii) is
detained within the Ninth Circuit at the time of adjudication of the asylum application; or (iii) was
initially located outside the Ninth Circuit but whose asylum application is subsequently
adjudicated within the Ninth Circuit").  This implementation eliminates a huge volume of
Plaintiffs' claimed harms, including harms stemming from not knowing where "individuals will
cross [the border] or where their asylum proceedings will be conducted," Dkt. 63 at 4, restoring
the potential "client base" that the organizations could theoretically serve, *id.* at 5, harms based on
individuals entering the country "outside of the Ninth Circuit," *id.* at 6, and any harms based on
"[un]certainty ex ante where a given asylum seeker whom [the organizations] serve ultimately will
enter the United States." *Id.* at 7.

Plaintiffs further argue that a "nationwide injunction is necessary to remedy the harms to
their organizations," Dkt. 63 at 3, but that argument blurs the lines between the showing required
for irreparable harm with the "separate" analysis of whether a nationwide injunction is appropriate.
Stay Op. 10.  They also assert that because this case involves an "APA violation" and arises in a
matter of "immigration policy," that a nationwide injunction is warranted, Dkt. 63 at 9-10, yet that
position was clearly rejected in this case by the Ninth Circuit in its decision partially granting the
Government's stay motion.  And Plaintiffs' counsel claims it is difficult to identify actual alien

clients, *see* Dkt. 63 at 4, but these assertions are belied by the fact that counsel for Plaintiffs had no trouble finding such aliens the moment the Ninth Circuit stayed this Court's injunction, as evidenced by their identical lawsuit filed almost immediately after the Ninth Circuit's decision on behalf of specific, actual people in the District Court for the District of Columbia. *See CAIR v. Trump*, No. 1:19-cv-02117-TJK, 2019 WL 3436501 (D.D.C. July 24, 2019). Indeed, though Plaintiffs proclaim that that "hundreds of thousands of asylum seekers are at imminent risk of removal to their countries of persecution," Dkt. 63 at 12, they have not identified a single one to substantiate their claim for a nationwide injunction.

At bottom, then, Plaintiffs' claims reduce to mere ipse dixit—an entitlement to a nationwide injunction because they believe their attorneys' strategic choice to not identify bona fide clients they represent makes it easier to justify nationwide injunctive relief. But that is not how "exceptional" departures from the norm are litigated. Because Plaintiffs have failed to demonstrate why an injunction limited to them and their bona fide clients would remedy their alleged harms during the pendency of this litigation, the Court must deny their motion in full.

## BACKGROUND

On July 24, 2019, this Court preliminarily enjoined the Interim Final Rule titled "Asylum Eligibility and Procedural Modifications," 84 Fed. Reg. 33,829 (July 16, 2019) ("Rule"). *See* Dkt. 42. Although the government argued that a nationwide injunction was inappropriate, and that Plaintiffs had failed to carry their affirmative burden of demonstrating such an injunction was the sole means of remedying their alleged harms, Dkt. 28 at 24-25, this Court, citing the "authority of district courts to enjoin unlawful policies on a universal basis," and the fact the rule arose in the "immigration context," enjoined the rule nationwide. *Id.* at 45.

On August 2, 2019, the government sought an emergency stay of the injunction from the Ninth Circuit. *See East Bay Sanctuary Covenant v. Barr*, No. 19-16487, Dkt. 3 (9th Cir. Aug. 2, 2019). In a published opinion, a Ninth Circuit motions panel granted the stay motion in part. *See East Bay Sanctuary Covenant v. Barr*, No. 19-16487, ---F.3d---, 2019 WL 3850928 (9th Cir. Aug. 16, 2019). Specifically, the Ninth Circuit "den[ied] the motion for stay pending appeal insofar as the injunction applies within the Ninth Circuit," but "grant[ed] the motion for stay pending appeal

insofar as the injunction applies outside the Ninth Circuit, because the nationwide scope of the injunction is not supported by the record as it stands."  Stay Op. 6.

The Ninth Circuit panel explained that an "injunction must be narrowly tailored to remedy the specific harm shown" and "nationwide injunctions" are thus "exceptional cases."  Stay Op. 7. "To permit such broad injunctions as a general rule, without an articulated connection, to a plaintiff's particular harm, would unnecessarily stymie novel legal challenges and robust debate arising in different judicial districts."  Stay Op. 8 (internal quotation marks omitted).  The Ninth Circuit found that the preliminary injunction ruling "failed to discuss whether a nationwide injunction is necessary to remedy Plaintiffs' alleged harm.  Instead, in conclusory fashion, the [decision] stated that nationwide relief is warranted simply because district courts have the authority to impose such relief in some cases and because such relief has been applied in the immigration context."  *Id.*  That ruling was "clear[] err[or]" because it failed "to consider whether nationwide relief is necessary to remedy Plaintiffs' alleged harms."  *Id.*  "[B]ased on the limited record" before the Ninth Circuit, "a nationwide injunction" was not "justified."  *Id.*

The Ninth Circuit panel rejected the view, articulated by Judge Tashima in dissent, "that a nationwide injunction is appropriate simply because this case presents a rule that applies nationwide."  *Id.*  "That view … ignores our well-established rule that injunctive relief must be tailored to remedy the specific harm alleged.  Indeed, were we to adopt the dissent's view, a nationwide injunction would result any time an enjoined action has potential nationwide effects. Such an approach would turn broad injunctions into the rule rather than the exception.  Under our case law, however, all injunctions—even ones involving national policies—must be narrowly tailored to remedy the specific harm shown."  Stay Op. 8-9 (internal quotation omitted).  The Ninth Circuit reiterated that "[n]ational injunctions interfere with good decisionmaking by the federal judiciary" because they "deprive other parties of the right to litigate in other forums."  Stay Op. 9. Thus, "absent an explanation by the district court as to why a nationwide injunction is necessary to remedy Plaintiffs' alleged harm in this case, we must grant the motion for stay pending appeal insofar as the injunction applies outside the Ninth Circuit."  *Id.*

In sum, the Ninth Circuit stay panel concluded that "beyond examining the merits of a

party's arguments," the court must assess "whether nationwide relief is *necessary* to give prevailing parties the relief to which they are entitled before issuing such an injunction." Stay Op. 10 (internal quotation omitted). The Ninth Circuit noted that its decision to grant "a more limited injunction" allowed "other litigants wishing to challenge the Rule to do so. Indeed, several already have. Litigation over the Rule's lawfulness will promote the development of the law and percolation of legal issues in the lower courts and allow the Supreme Court, if it chooses to address the Rule, to do so" with "the benefit of additional viewpoints from lower federal courts" coupled with a "fully developed factual record." *Id.* (internal quotation omitted). The Ninth Circuit concluded by noting that "[w]hile this appeal proceeds, the district court retains jurisdiction to further develop the record in support of a preliminary injunction extending beyond the Ninth Circuit," and noted that the Government's "opening brief is due September 3, 2019." Stay Op. 11. The Court did not, however, formally remand the case back to the district court.

Three days after the Ninth Circuit issued its ruling, Plaintiffs filed an "emergency" motion to restore the nationwide scope of the injunction. *See* Dkt. 57. That same day, this Court issued a scheduling order noting that it "require[d] more legal briefing from the Plaintiffs than is contained in their Emergency Motion on the legal framework for the issuance of a nationwide injunction," and directed Plaintiffs to file an "amended opening brief" by August 22, 2019, and the Government to file an opposition by August 29, 2019. Dkt. 59 at 1. Plaintiffs filed their amended brief on August 22. In essence, Plaintiffs contend that a nationwide injunction is necessary to remedy the ongoing harms Plaintiffs are suffering, Dkt. 63 at 3-8, that nationwide relief is necessary because the case involves a violation under the Administrative Procedure Act (APA) and arises in the immigration context, *id.* at 9-11, and that nationwide relief is needed to avoid what they believe are adminstrability problems and based on the balance of equities. *Id.* at 11-13.

On Friday, August 23, 2019, the government filed an application for a stay pending appeal of this Court's injunction in the Supreme Court. *See William P. Barr v. East Bay Sanctuary Covenant*, No. 19A230. Plaintiffs' response is due at 3 PM, September 3. *See id.* In addition, the government's opening brief in the merits portion of its appeal from this injunction is due in the Ninth Circuit on September 3.

**ARGUMENT**

I.    **This Court Lacks Jurisdiction to Restore the Nationwide Scope of the Injunction.**

In a footnote, Plaintiffs contend that "there is no question the Court has authority" to "revise the scope of the injunction while the remainder of the case is on appeal." Dkt. 63 at 1 n.1. They are wrong.

It is axiomatic that "the filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200, AFL-CIO*, 611 F.3d 483, 495 (9th Cir. 2019) (finding that "the district court lacked jurisdiction to modify the injunction" "once an appeal was taken"); *see also Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (same); *East Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1105 n.3 (N.D. Cal. 2018) ("*East Bay I*") ("[T]his principle still limits the Court's authority."). The purpose of this rule "is to promote judicial economy and avoid the confusion that would ensue from having the same issues before two courts simultaneously." *Nat'l Res. Def. Council, Inc. v. SW. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001). Until the Ninth Circuit issues a mandate formally remanding the case back to this Court, this Court lacks jurisdiction over any of the aspects of the case that are being appealed. *See United States v. Thrasher*, 483 F.3d 977, 981 (9th Cir. 2007) ("When a case has been once decided by this court on appeal, and remanded to the [district court], whatever was before this court, and disposed of by its decree, [it] is considered as finally settled. The [district court] is bound by the decree as the law of the case, and must carry it into execution according to the mandate."); *Sgaraglino v. State Farm Fire & Cas. Co.*, 896 F.2d 420, 421 (9th Cir. 1990) ("Upon issuance of the mandate, the case was returned to the district court's jurisdiction."). It is uncontroverted that the mandate has not issued in this case, and thus, this Court lacks jurisdiction to restore the injunction that the Ninth Circuit stayed "outside the Ninth Circuit." Stay Op. 6.

Though there are narrow exceptions to the general rule that the pendency of an appeal divests this Court of jurisdiction, they are inapplicable here. While an appeal is "taken from an interlocutory or final judgment granting, dissolving, or denying an injunction," district courts may

1    "preserve the status quo" if the "circumstances" justify such action.  *McClatchy Newspapers* 686

2    F.2d at 734.  This principle is codified in Federal Rule of Civil Procedure 62(d), which Plaintiffs

3    invoked in their initially-filed brief.  *See* Dkt. 57-1 at 1 n.1.  But the status quo exception is

4    "narrow[]" and district courts are proscribed from taking action that "would affect substantial

5    rights of the parties after appeal."  *McClatchy*, 686 F.2d at 734-35.  In the wake of the Ninth

6    Circuit's narrowing of the injunction, the status quo is that the injunction is limited to the Ninth

7    Circuit.   Granting Plaintiffs' motion, far from merely preserving the status quo, would

8    impermissibly "materially alter the status of the case on appeal."  *SW. Marine Inc.*, 242 F.3d at

9    1166; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C-07-01827 SI, 2013 WL 6055079, at *1-

10   *2 (N.D. Cal. Nov. 13, 2013) ("[T]he district court … may not take any action that would change

11   the core issues before the appellate court … . The Court may not take any action that would alter

12   the questions currently before the Ninth Circuit."); *see also Phillipe Charriol Int'l Ltd. v. A'lor

13   Int'l Ltd.*, No. 13cv1257-MMA-JLB, 2014 WL 12279504, at *4 (S.D. Cal. May 29, 2014) ("[T]he

14   modification sought would sizably narrow the scope of the injunction.  Indeed, A'lor's own

15   arguments speaking to the effect of modification demonstrate the material effect such modification

16   would have on the status quo.  Accordingly, the Court finds that it lacks jurisdiction.").  In this

17   case, granting Plaintiffs' motion would sweep the rug from under the Ninth Circuit, as it would

18   dramatically expand the only subject of the appeal—the injunction—while the Ninth Circuit is

19   simultaneously and expeditiously considering the propriety of the much narrower injunction

20   currently in place.  That is the paradigmatic example of a material alteration, and would effectuate

21   a change to the "core issues" before the Ninth Circuit, *Flat Panel*, 2013 WL 6055079, at *2, and

22   improperly create a "moving target" for the Ninth Circuit to deal with.  *Britton v. Co-op Banking

23   Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990).

24        Nor is there any merit to Plaintiffs' contention that the restoration of a nationwide

25   injunction simply "assist[s]" the Ninth Circuit "in the exercise of its jurisdiction."  Dkt. 63 at 1

26   n.1.  That exception applies only in situations where there are questions going to the Court of

27   Appeals' jurisdiction if, for example, the order at issue is not appealable.  *See, e.g. T.B. by and

28   through Brenneise v. San Diego Unified School District*, No. 08-cv-28-MMA (WMc), 2012 WL

1   12953527, at *2 (S.D. Cal. July 23, 2012) ("The district court may act to assist the court of appeals

2   in the exercise of its jurisdiction.  By this Order, the Court confirms that the May 8, 2012 judgment

3   was intended to be the final judgment.").  But it is undisputed that the Ninth Circuit possesses

4   jurisdiction over the appeal of the entry of a preliminary injunction, *see* 28 U.S.C. § 1292(a)(1),

5   so this exception is inapposite.  Although Plaintiffs cite this Court's prior decision in *East Bay I*,

6   *see* Dkt. 63 at 1 n.1, this Court simply noted that filing "written findings of fact and conclusions

7   of law" in support of a *preexisting* injunction on appeal is permissible.  354 F. Supp. 3d at 1105

8   n.3 (citing *Thomas v. Cnty. of Los Angeles*, 978 F.2d 504, 507 (9th Cir. 1992)).  There is no basis,

9   however, as Plaintiffs suggest, to apply that proposition to the entry of a *new injunction*.

10          Plaintiffs rely on the single sentence in the stay opinion that "the district court retains

11  jurisdiction to further develop the record in support of a preliminary injunction extending beyond

12  the Ninth Circuit."  Dkt. 63 at 1 n.1.  They contend that this sentence authorizes "revis[ing] the

13  scope of the injunction while the remainder of the case is on appeal."  *Id.*  The text of the sentence

14  belies that assertion.  At most, the Ninth Circuit contemplated further factual development from

15  this Court, nothing more, during the pendency of the appeal.  No aspect of the phrase "further

16  develop the record" can be plausibly construed to include altering the scope of the injunction being

17  appealed.  Indeed, even assuming, *arguendo*, that this sentence constitutes a "limited remand," *id.*,

18  Plaintiffs' requested relief would contravene the well-settled rule that "in both civil and criminal

19  cases," "a district court is limited by this court's remand in situations where the scope of the

20  remand is clear."  *Mendez-Gutierrez v. Gonzales*, 444 F.3d 1168, 1172 (9th Cir. 2006); *see also*

21  *San Francisco Aesthetics & Laser Medicine Inc. v. Presidio Trust*, No. C-07-05170 EDL, 2010

22  WL 4226696, at *4 (N.D. Cal. Oct. 21, 2010) ("[B]ecause the … argument is beyond the scope of

23  this limited remand … it will not be considered.").  Restoring the nationwide injunction would

24  plainly exceed the scope of the authority that the Ninth Circuit conferred in its stay opinion, and

25  would stray far from simply developing the record.  Plaintiffs allude to *City & Cnty. of San*

26  *Francisco v. Trump*, 897 F.3d 1225, 1245 (9th Cir. 2018) but, as the stay panel observed, that case

27  involved a markedly "different procedural posture."  Stay Op. 7 n.5.  Specifically, *Trump* was an

28  appeal fully resolved by a merits panel, as opposed to a motions panel at the preliminary stay stage,

OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR A NATIONWIDE INJUNCTION
*East Bay Sanctuary Covenant v. Barr*
Case No. 1:19-cv-04073-JST

8

and jurisdiction was fully restored, complete with issuance of the mandate, for the district court to "fully consider[]" on remand, whether a "nationwide injunction" was appropriate.  897 F.3d at 1245.  That complete restoration of authority is clearly lacking here.  Indeed, accepting Plaintiffs' contention would create the anomalous result that the Ninth Circuit sanctioned the authority of this Court to change the subject of the appeal, while nonetheless insisting that the Government's complete opening brief be due just 5 days after the submission of this brief on "September 3, 2019."  Stay Op. 11.  That cannot be right.

Because the Court lacks jurisdiction, the only procedurally appropriate vehicle for modifying the injunction as Plaintiffs propose is through the indicative ruling procedure under Federal Rule of Civil Procedure 62.1. That provision provides that "if a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." *Id.*  "[I]f the district court states that it would grant the motion or that the motion raises a substantial issue," "[t]he movant must promptly notify the circuit clerk under Federal Rule of Appellate Procedure 12.1." *Id.* at 62.1(b). Although the Court may "consider new evidence at its discretion" as part of the Rule 62.1 process, *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 612 (9th Cir. 2016), "[t]he district court may decide the motion" only if "the court of appeals remands for that purpose." F.R.C.P. 62.1(c). Unless and until such a "remand" occurs, the district court lacks jurisdiction. *See Mendia*, 874 F.3d at 1121; *Tribe v. Nat'l Marine Fisheries Serv.*, No. 16-CV-04294-WHO, 2018 WL 2010980, at *4 (N.D. Cal. Apr. 30, 2018) ("Because Rule 62.1 allows me at least to consider the merits of intervenors' motion, I will do so. I have authority to deny it, but I may not grant it without a remand from the court of appeals.").

Thus, although this Court has jurisdiction to take evidence and issue an indicative ruling, it cannot actually rule until a formal remand occurs, and so lacks jurisdiction to restore the nationwide scope of the injunction. And given that the aspects of the decision to institute an injunction are pending in both the Supreme Court and the Ninth Circuit, and that those rulings will likely further clarify many of the legal issues pending in this case, this Court should "defer[]

1  ruling" "until after the Government's appeal before the Ninth Circuit is complete." *Martinez*

2  *Banos v. Godfrey*, No. C16-1454 JLR, 2019 WL 2357871, at *2 (W.D. Wash. June 4, 2019); *see*

3  *also Rabang v. Kelly*, No. C17-0088-JCC, 2018 WL 1737944, at *3 (W.D. Wash. Apr. 11, 2018)

4  ("The Court will defer ruling on the motion until the Court of Appeals has issued its order.").

5          **II.   Nationwide Injunctive Relief is Inappropriate in This Case.**

6        Even assuming, *arguendo*, that this Court may alter the status quo by enlarging the scope

7  of the injunction during the pendency of the government's appeal, Plaintiffs have not made the

8  exacting showing necessary to demonstrate that a nationwide injunction is the only way to afford

9  them complete relief.  Although the stay panel carefully explained the "exceptional" threshold

10  showing necessary to warrant imposition of a nationwide injunction, Stay Op. 8, Plaintiffs do not

11  even mention or grapple with any part of this holding, which suffices, by itself, to deny Plaintiffs'

12  motion.

13        As the Ninth Circuit found, nationwide injunctions are permitted only in "exceptional

14  cases" and there must be a specific finding that a nationwide injunction is *"necessary* to give

15  prevailing parties the relief to which they are entitled." Stay Op. 8 (emphasis in original).  This

16  proposition logically follows from the principle that "injunctive relief should be no more

17  burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano*

18  *v. Yamasaki*, 442 U.S. 682, 702 (1979).  Critically, "[t]his rule applies with special force where,"

19  as here, "there is no class certification," *L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664

20  (9th Cir. 2011), and injunctive "relief generally should be limited to apply only to named plaintiffs

21  where there is no class certification." *Id.*  Stated differently, absent class certification, the general

22  rule is that injunctions cannot be extended to non-parties, unless an "exceptional case[]" is

23  presented.  Stay Op. 8.

24        Sound practical reasons underpin this approach, as permitting "such broad injunctions as a

25  general rule, without an articulated connection to a plaintiff's particular harm, would unnecessarily

26  stymie novel legal challenges and robust debate arising in different judicial districts." Stay Op. 8;

27  *California v. Azar*, 911 F.3d 558, 583 (9th Cir. 2018) ("The Supreme Court has repeatedly

28  emphasized that nationwide injunctions have detrimental consequences to the development of law

and deprive appellate courts of a wider range of perspectives."); *L.A. Haven Hospice*, 638 F.3d at 664 ("The Supreme Court has also suggested that nationwide injunctive relief may be inappropriate where a regulatory challenge involves important or difficult questions of law, which might benefit from development in different factual contexts and in multiple decisions by the various courts of appeals."); *see also Trump v. Hawaii*, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring) ("District courts, including the one here, have begun imposing universal injunctions without considering their authority to grant such sweeping relief.  These injunctions are beginning to take a toll on the federal court system—preventing legal questions from percolating through the federal courts, encouraging forum shopping, and making every case a national emergency for the courts and for the Executive Branch."); *United States v. Mendoza*, 464 U.S. 154, 160 (1984) ("Allowing only one final adjudication would deprive this Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari.").  For this very reason, the Ninth Circuit has "recognize[ed] a growing uncertainty about the propriety of universal injunctions."  *East Bay Sanctuary Covenant v. Trump*, No. 18-17274, --F.3d--, 2018 WL 8807133, at *24 (9th Cir. Dec. 7, 2018) ("*East Bay II*").

As shown below, Plaintiffs have fallen well short of discharging their burden of showing that a nationwide injunction is appropriate.

**A.  Nationwide Relief is Not Necessary to Remedy Plaintiffs' Specific Harms.**

Plaintiffs contend that nationwide injunctive relief is necessary to remedy their specific harms.  *See* Dkt. 63 at 3-8.  That is wrong; Plaintiffs' purported harms are fully remedied by the narrower injunction confined to the Ninth Circuit.

As the government explained in its brief opposing Plaintiffs' motion for a temporary restraining order, *see* Dkt. 28 at 24-25, a narrow injunction to fully remedy Plaintiffs' asserted harms can be crafted.  In particular, and as noted, an injunction that runs to the clients that Plaintiffs actually represent who are affected by the Rule would accord all of the Plaintiffs complete relief in this case.  Thus, the further "factual" development contemplated by the Ninth Circuit, Stay Op. 10, would involve Plaintiffs affirmatively demonstrating that they represent bona fide clients subject to the Rule in the Ninth Circuit or any other Circuit, and then tailoring the injunction

accordingly so that it runs to those specific clients.  This approach would "remedy the specific harm shown," Stay Op. 7, and would be "no more burdensome than necessary." *Madsen*, 512 U.S. at 765.

More generally, in order to ascertain whether a nationwide injunction is appropriate, it is necessary to ascertain whether Plaintiffs' injuries cannot be remedied by anything but a nationwide injunction.  That requires assessing Plaintiffs' asserted injuries—diversion of resource harms, Dkt. 63 at 4-8—and whether those harms require anything more than an injunction limited to Plaintiffs themselves to cure.  And because Plaintiffs bear the burden on all aspects of their motion for preliminary injunction, including the scope of relief, they must affirmatively demonstrate with evidence why nothing short of a nationwide injunction will remedy their alleged injuries.  *See Winter v. NRDC*, 555 U.S. 7, 22 (2008).

It is undisputed that Plaintiffs have not identified bona fide clients they represent outside the Ninth Circuit, or even in this Circuit, which, by itself, suffices to deny their renewed nationwide injunction motion.  Undeterred, Plaintiffs make several arguments for why a nationwide injunction is needed to remedy their specific harms.  None has merit.

First, Plaintiffs argue that a nationwide injunction is necessary because "asylum seekers frequently do not enter the country and complete their asylum proceedings within the same circuit" and "it is not possible to predict asylum seekers' movements in advance."  Dkt. 57-1 at 2; *see also* Dkt. 63 at 11 ("[T]he need for a nationwide injunction is especially strong in this context, where … asylum seekers will not always know in advance what part of the United States they will enter, or once inside the country, the circuit in which their case will proceed.").  But Plaintiffs have not shown—as they must—that any of these individuals will have actual bona fide relationships with the Plaintiff organizations in this case, nor have they even attempted to provide concrete evidence of specific individuals they represent outside the Ninth Circuit that are subject to the rule.  Thus, the possibility that individuals may not complete their asylum proceedings in the same Circuit in which they enter is simply an abstract possibility that cannot sustain a nationwide injunction.

In any event, even were there any evidence that Plaintiffs in fact represent aliens who may be transferred to or from the Ninth Circuit, any harm is illusory.  Since the entry of the stay, the

Departments report that they have issued guidance that aliens who are initially apprehended in the Ninth Circuit, are detained in the Ninth Circuit at the time of adjudication, who after apprehension in the Ninth Circuit are transferred elsewhere, or whose adjudications and proceedings occur in the Ninth circuit are subject to the injunction as limited by the Ninth Circuit. *See* Exs. A-C.  In other words, even if Plaintiffs represent aliens who after their apprehension in the Ninth Circuit are transferred to elsewhere, or who are apprehended elsewhere and then transferred to the Ninth Circuit before their asylum adjudication occurs in the Ninth Circuit,  those aliens are not subject to the rule, and so no alleged harms flow from the possibility that aliens who Plaintiffs actually represent may be subject to custodial transfer or have their asylum application adjudicated in one circuit versus another.

Plaintiffs make two additional general arguments as to why a nationwide injunction is necessary to ameliorate the particular harms at issue: (1) one of the Plaintiffs' operations extend outside the Ninth Circuit, *see* Dkt. 63 at 3 ("Law Lab's operations are not limited to the Ninth Circuit."); and (2) Plaintiffs will "continue to suffer injuries if the Rule is enjoined only in the Ninth Circuit." *Id.* at 7.  Both arguments are equally unavailing.

With respect to the first argument, the extent of Plaintiffs' operations was already set forth in the initial set of declarations Plaintiffs submitted, a fact the supplemental declarations readily concede.  *See* Dkt. 57-2, ¶ 4 ("As I described in my previous declaration, Law Lab has an office Oakland, California in addition to offices … [in] Portland, Oregon; Atlanta, Georgia; San Diego, California; Kansas City, Missouri, and San Antonio and El Paso, Texas."); Dkt. 57-3, ¶ 3 ("For the reasons I explained in my first declaration, the Interim Final Rule … will significantly harm East Bay Sanctuary Covenant."); Dkt. 57-4, ¶ 3 ("In a previous declaration … [we] explained our organization's work and the harms we will experience from the Interim Final Rule."); Dkt. 57-5, ¶ 3 (same); *see also* Dkt. 3-4, ¶ 4 (describing projects "in Georgia, Kansas, Missouri, North Carolina, and Oregon, with expansion underway to Texas, New Mexico, and California").  This fact is critical because the Ninth Circuit explicitly stated that Plaintiffs' previously-submitted declarations, which largely comprised the "limited record" before the Ninth Circuit, could not support a nationwide injunction.  Stay Op. 8 ("[B]ased on the limited record before us, we do not

believe a nationwide injunction is justified."); Stay Op. 9 ("Based on the briefing and limited record before us … we must grant the motion for stay pending appeal insofar as the injunction applies outside the Ninth Circuit."). Thus, the evidentiary submissions Plaintiffs submitted prior to the Ninth Circuit's decision have already been determined by that Court to be insufficient to warrant any nationwide relief. *See id.* at 8-9.

The Ninth Circuit reached this conclusion with good reason. Of the four Plaintiff organizations, three of them do not even purport to have any operations outside the Ninth Circuit. *See* Compl. ¶ 15 ("Plaintiff East Bay Sanctuary Covenant ('ESBC') is a nonprofit organization incorporated in California. ESBC's main office is in Berkeley, California."); *id.* ¶ 18 ("Al Otro Lado … operates primarily in Southern California and Tijuana, Mexico."); *id.* ¶ 21 ("Plaintiff Central American Resource Center ('CARCEN') is a nonprofit organization incorporated in California."); *see also* Dkt. 3-2, ¶ 3 ("ESBC [was] incorporated in 1996 in Berkeley, California. Our office is located at 2362 Bancroft Way, Berkeley, California."); Dkt. 3-3, ¶ 4 ("Al Otro Lado serves indigent deportees, migrants, refugees and their families, principally in Los Angeles and San Diego, California, and Tijuana, Mexico."); Dkt. 3-5, ¶ 3 ("CARCEN is … incorporated in Los Angeles, California. Our headquarters is located at … Los Angeles, CA 90005. We also have permanent offices in Van Nuys and San Bernardino, California."). Plaintiffs do not argue otherwise with respect to these three organizations.

With respect to the sole remaining Plaintiff, Innovation Law Lab, although Plaintiffs have purported to introduce evidence that Innovation Law Lab has operations outside the Ninth Circuit, that evidence falls far short of showing that the organization has nationwide reach, the finding necessary to even consider whether a nationwide injunction as to them alone is the only means of remedying their harm. Instead, Plaintiffs contend that Innovation Law Lab "has offices in Georgia, Missouri, and Texas" and "operates pro bono representation projects in Georgia, Kansas, Missouri, and North Carolina." Dkt. 63 at 3; Dkt. 57-2, ¶¶ 4-5 ("Law Lab has … offices … [in] Atlanta, Georgia … Kansas City, Missouri, and San Antonio and El Paso, Texas. Las Lab operates pro

bono representation projects … . in Georgia, Kansas, Missouri [and] North Carolina.").[1]  These operations do not come close to showing that Innovation Law Lab operates in all 50 states..

And even if Innovation Law Lab could make that threshold showing, it has put forth no evidence at all that its offices and projects outside the Ninth Circuit encompass bona fide relationships with individuals affected by the Rule.  Instead, the declaration submitted by the organization avers that "[w]e also provide direct representation to persons applying for asylum inside the Ninth Circuit and outside the Ninth Circuit," and fails to offer any more specific details. Dkt. 57-2, ¶ 5. That lack of specificity is fatal to Plaintiffs' argument, as they bear the burden, as the movants, of justifying a nationwide injunction, yet they have provided no concrete evidence that any of the Plaintiffs' operations outside the Ninth Circuit would encompass representing an individual affected by the Rule.  Nor have they identified any reason to conclude that such a mechanism could not be devised.  Indeed, although Plaintiffs argue that "six of the seven detention centers at which Law Lab regularly works are outside the Ninth Circuit," Dkt. 63 at 6 (citing Dkt. 57-2, ¶ 19), they do not identify where those detention centers are or whether those detention centers' operations would include representing individuals affected by the Rule.

Instead, Plaintiffs' argument appears to hinge entirely upon the conjectural possibility that at some undetermined time in the future, an individual could potentially be subject to the Rule and also potentially be represented by Innovation Law Lab outside the Ninth Circuit.  Such speculation, however, cannot substitute for Plaintiffs actually proffering concrete evidence of representation of individuals subject to the Rule outside of the Ninth Circuit, something the record currently lacks. *See Winter v. NRDC*, 555 U.S. at 22 ("[I]njunctive relief [i]s an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."). To conclude otherwise is to allow Plaintiffs to invoke the necessity of a nationwide injunction by asserting that they *might* have clients in the *future* who *could* be subject to the rule outside this Circuit. But such speculations fail to articulate Article III injury because they do not constitute "concrete adverse effect[s]," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 583 (1992), and so cannot be the basis for

---

[1]  Importantly, although Innovation Law Lab argues that "expansion [is] underway to New Mexico," it does not presently have operations in New Mexico and thus lacks a basis to extend the injunction to New Mexico.  Dkt. 63 at 3.

an injunction that requires evidence of such injury in the first place.  Plaintiffs' attempt to reap a windfall from their attorneys' strategic decision not to identify any single individual alien clients, despite the fact that they have been readily able to identify such clients subject to the exact same Rule in other forums, should not be rewarded.  Indeed, as noted, the various conjectures Plaintiffs offer elide a much simpler way for Plaintiffs to receive full relief: identifying clients subject to the Rule, as they have in other cases, such that an injunction can be narrowly tailored based on the harms to those clients.

Likely cognizant of the dearth of record evidence supporting a nationwide injunction, Plaintiffs attempt to recast the inquiry as to whether the various Plaintiffs will continue to be harmed "by an injunction limited to the Ninth Circuit."  Dkt. 63 at 3; *id.* at 5-7.  Plaintiffs, however, improperly attempt to frame the issue as whether they would suffer irreparable harm in the absence of an injunction, instead of actually demonstrating why nationwide relief extending to non-parties is necessary.  But only the latter question is at issue, and the Ninth Circuit was clear that the finding that Plaintiffs were likely to suffer irreparable harm did not settle the question of whether a nationwide injunction was necessary.  *See* Stay Op. 10 ("[B]eyond examining the merits of a party's arguments, a district court must *separately* analyze whether nationwide relief is *necessary* to give prevailing parties the relief to which they are entitled before issuing such an injunction." (first emphasis added)); Stay Op. 9 ("[A]bsent an explanation by the district court as to why a nationwide injunction is necessary to remedy Plaintiffs' alleged harm in this case, we must grant the motion for stay pending appeal insofar as the injunction applies outside the Ninth Circuit.").  For Plaintiffs to simply frame the question, on remand, as to whether they will suffer irreparable harm in the absence of a nationwide injunction simply attempts to impermissibly collapse the two inquiries together, when in fact they are clearly separate, with the nationwide injunction inquiry narrowly focused on whether Plaintiffs have demonstrated that they will represent individuals affected by the Rule outside the Ninth Circuit.  *See Azar*, 911 F.3d at 584 ("The plaintiff states argue that complete relief to them would require enjoining the IFRs in all of their applications nationwide.  That is not necessarily the case … .  On the present record, an injunction that applies only to the plaintiff states would provide complete relief to them.").  Because they have not made

the requisite showing, it is not enough for Plaintiffs to simply recycle their previously-made irreparable harm arguments with the additional qualifier that such irreparable harm would ensue without a preliminary injunction.  Such a showing, if accepted, would vitiate the directive for this Court to "further develop the record in support of a preliminary injunction extending beyond the Ninth Circuit," Stay Op. 11, and is yet another attempt by Plaintiffs to evade the onerous burden of substantiating a nationwide injunction.

In any event, Plaintiffs' arguments fail on their own terms.  Beginning with Innovation Law Lab, Plaintiffs' assertion that "providing legal guidance and assistance to persons subject to the Rule will be a significant burden on Law Lab employees' time and program operations," Dkt. 63 at 4, relates exclusively to whether Plaintiffs will likely suffer irreparable harm, and this operational issue would not be impacted one way or another if the injunction was limited geographically to the Ninth Circuit.  Plaintiffs' concern that "asylum seekers often move between different locations," *id.*, meanwhile, is completely assuaged by the fact that an individual is covered by the injunction if he or she is apprehended in the Ninth Circuit, even if later transferred elsewhere, or if that individual's credible fear interview or asylum adjudication occur in the Ninth Circuit. Exs. A-C.  The purported harm stemming from "hav[ing] to provide guidance about a rule that might apply to people at different points throughout their asylum cases," Dkt. 57-2, ¶¶ 12, 16, are therefore inapplicable.  The remaining arguments made on behalf of Innovation Law Lab are entirely speculative.  Plaintiffs argue that in the wake of a geographically-limited injunction, Innovation Law Lab "might have to shift significant resources towards representation of clients who entered the country in Texas or New Mexico and are subject to the ban." *Id.*, ¶ 17; Dkt. 63 at 5 ("Because serving individuals affected by the Rule's categorical ban is so time consuming … [this] may force Law Lab to serve fewer people overall.").  This consideration not only has no relevance to the scope of the injunction, but it is also devoid of factual support, and thus cannot justify a nationwide injunction. *See Whitwater West Indus., Ltd. v. Pac. Surf Designs, Inc.*, No. 3:17-cv-0118, 2018 WL 4698566, at *3 ("[T]he inference would be based on too much speculation to warrant a preliminary injunction.").  Finally, the fact that Innovation Law Lab might have to "meaningfully restructure its operations," Dkt. 63 at 4, is again only pertinent to whether the

organization will suffer irreparable harm.  That potential diversion of resources cannot exempt Plaintiffs from making the predicate showing that a nationwide injunction is necessary.

The arguments specific to the remaining three Plaintiffs suffer similar deficiencies.  ESBC contends that "[a] sizable portion of ESBC's clients enter the United States outside the Ninth Circuit's geographic boundaries and then end up in California and apply for asylum." Dkt. 57-3 ¶ 5; Dkt. 63 at 5 (same).  Based on this assertion, Plaintiffs argue that an injunction confined to the Ninth Circuit will frustrate ESBC's mission and "jeopardize[]" its funding streams.  *Id.*  Because the described individuals are covered by the injunction, though, these supposed harms are illusory. As for the alleged expenditure of resources ESBC would have to undergo absent a nationwide injunction, these contentions are immaterial to the scope of the injunction and thus have no weight in the calculus.  The same is true of all of the harms that the Central American Resource Center of California ("CARECEN") complains of, which are also speculative.  *See* Dkt. 63 at 6 ("[T]he majority of CARCEN's asylum clients *could* still be subject to the Rule's categorical bar on asylum under an injunction limited to the Ninth Circuit." (emphasis added)); Dkt. 57-5 ¶ 5 (same).  As for Al Otro Lado, the final Plaintiff, Plaintiffs rely on the same argument that some of Al Otro Lado's clients enter the United States "elsewhere," before ending up in the Ninth Circuit, while others enter the United States "in California" before exiting the jurisdiction. Dkt. 63 at 7.  As noted, because the sets of individuals described in both scenarios are covered under the injunction, such "cross-circuit movement" creates no uncertainty and does not provide support for a nationwide injunction. *Id.*

Plaintiffs conclude by arguing that because they "do not operate in a fashion that permits neat geographic boundaries" like the plaintiff States in *Azar* that a nationwide injunction is inevitable. Dkt. 63 at 8.  Precisely the opposite is true.  The burden is squarely on Plaintiffs to demonstrate where they do operate, and how those operations will entail representation of individuals affected by the Rule, even if such operations transcend geographic boundaries. Plaintiffs have simply failed to make the necessary showing.  Moreover, the courts in New Mexico and Texas are fully open to the aliens Plaintiffs purport to represent; yet they have not filed suit in either forum on their even a single alien's behalf, and have instead elected to demand that this

1   Court extend the injunction to those two states.  Such transparent forum shopping should not be

2   rewarded.

3         In sum, the information asymmetry that Plaintiffs have themselves created, in terms of the

4   unknown individuals who may or may not be represented by Plaintiffs outside the Ninth Circuit,

5   is a factor that Plaintiffs have to overcome with evidence justifying a nationwide injunction, not

6   the other way around.  Moreover, Plaintiffs vastly exaggerate the organizations' scope; as noted,

7   Innovation Law Lab's operations outside of the Ninth Circuit are circumscribed to a few, select,

8   and easily-identifiable cities, and the remaining three organizations operate exclusively within the

9   Ninth Circuit.

10      **B.  The Violations Asserted Do Not Warrant Nationwide Injunctive Relief**

11         Plaintiffs alternatively argue that because they showed that they were likely to succeed on

12   claims under the Immigration and Nationality Act ("INA") and the Administrative Procedure Act

13   ("APA"), as a matter of law, they are entitled to a nationwide preliminary injunction.  *See* Dkt. 63

14   at 9-11.  Not so.

15         The most straightforward reason that Plaintiffs' argument must fail is the Ninth Circuit stay

16   opinion in this case.  If it were true that an APA or an INA violation, by itself, could sustain a

17   nationwide injunction, there would be no need for further record development on this point.  Yet,

18   that is precisely what the Ninth Circuit ordered: "[T]he district court stated that nationwide relief

19   is warranted simply … because such relief has been applied in the immigration context.  *The*

20   *district court clearly erred by failing to consider whether nationwide relief is necessary to remedy*

21   *Plaintiffs' alleged harms.*"  Stay Op. 8 (emphasis added); *see also* Stay Op. 8-9 ("Our dissenting

22   colleague believes that a nationwide injunction is appropriate simply because this case presents a

23   rule that applies nationwide.  That view, however, ignores our well-established rule that injunctive

24   relief must be tailored to remedy the specific harm alleged.  Indeed, were we to adopt the dissent's

25   view, a nationwide injunction would result any time an enjoined action has potential nationwide

26   effects.  Such an approach would turn broad injunctions into the rule rather than the exception.").

27   That language unequivocally undermines the position that the "nature and extent" of the alleged

28   violation, by itself, can justify a nationwide injunction.  Dkt. 63 at 9.

Far from being an outlier, the principle adduced in the Ninth Circuit's stay opinion finds firm support in Ninth Circuit precedent, which repudiates the notion that a standalone APA or INA violation exempts a factual showing that a nationwide injunction is necessary.  *See Azar*, 911 F.3d at 575 ("The district court held that the states are likely to succeed on the merits of their APA claim.   We agree. … .   The district court abused its discretion in granting a nationwide injunction."); *L.A. Hospice*, 638 F.3d at 664 ("The Supreme Court has also suggested that nationwide injunctive relief may be inappropriate where a regulatory challenge involves important or difficult questions of law."); *State v. Azar*, 385 F. Supp. 3d 960, 1021 (N.D. Cal. 2019) ("Plaintiffs … . assert that any violation of the APA compels a nationwide injunction.  Notably, however, *Azar* found that the plaintiffs there had shown a likelihood of success on their APA claims, and nonetheless ruled that a nationwide injunction was overbroad.  This suggests that, notwithstanding an APA violation, this Court must still assess whether the circumstances of this case dictate a narrower scope.").  Similarly, even in the immigration context, the Ninth Circuit has emphasized the need for sufficient facts to support the imposition of a nationwide injunction.  *See City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1244 (9th Cir. 2018) (sustaining injunction in immigration context but noting that "the present record is not sufficient to support a nationwide injunction").

Plaintiffs' contrary arguments lack merit.  Plaintiffs first rely on the language of 5 U.S.C. § 706, which provides that a reviewing court shall "set aside" unlawful agency action to argue that this language supports the imposition of nationwide injunctions. Dkt. 63 at 9.  As an initial matter, the authority Plaintiffs cite rely on APA violations "at the *merits* stage," Dkt. 63 at 9 (emphasis added), whereas this case is in a preliminary posture that has not even proceeded to the motion-to-dismiss stage.  In that posture the APA itself reaffirms the general rule that such relief should be limited as "necessary to prevent irreparable injury" to the parties, 5 U.S.C. § 705.  In any event, Plaintiffs' argument erroneously presupposes that vacatur of the challenged Rule is the only remedy, which is not the case. The APA is silent as to the scope of any vacatur, and does not provide any explicit requirement that the rule be "set aside" as to the *parties* or *on its face*.  5 U.S.C. §§ 705, 706; *see Virginia Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 393-94 (4th

Cir. 2001) ("Nothing in the language of the APA" requires that a unlawful regulation be set aside "for the entire country."); *Right to Life of Dutchess Cty., Inc. v. Fed. Election Comm'n*, 6 F. Supp. 2d 248, 253 (S.D.N.Y. 1998) ("If Congress had intended to replace the well-accepted territorial limits of the precedential effects of court decisions by means of the APA, it presumably would have done so directly and expressly, rather than through a series of implied inferences"). Indeed, reading "set aside" as limited to the parties, rather than the entire country follows from basic Article III ripeness and administrative law finality principles under which a regulation is ordinarily not ripe for review until it is *applied. Cf. DRG Funding Corp. v. Sec'y of Hous. & Urban Dev.*, 76 F.3d 1212, 1214 (D.C. Cir. 1996) (explain that agency action that "does not itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action" is not final review agency action).

Even where rules are declared invalid under the APA, "remand without vacatur" is a remedy that courts must consider. *Cal. Communities Against Toxics v. U.S. E.P.A.*, 688 F.3d 989, 994 (9th Cir. 2012); *see also id.* ("That the EPA's final rule is invalid is not the end of the analysis. In considering whether vacatur is warranted, we must balance these errors against the consequences of such a remedy."); *Idaho Farm Bureau Federation v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995) ("Ordinarily, when a regulation is not promulgated in compliance with the APA, the regulation is invalid.  However, when equity demands, the regulation can be left in place while the agency follows the necessary procedures.").  The possibility of remand without vacatur has particular force in this case, because this Court found that Plaintiffs were likely to succeed on their APA notice-and-comment claim, *see* Dkt. 42 at 27-32, Stay Op. 5, yet such violations can be remedied even while the Rule is "left in place."  *Babbitt*, 58 F.3d at 1405.  Thus, Plaintiffs are wrong to suggest that a nationwide injunction is "compelled" by the statutory text of the APA, as the Ninth Circuit has clearly delineated a distinction between an APA violation, which involves setting aside agency action, and the remedy for that violation, which is not always vacatur.

Plaintiffs next rely on the need for "uniformity" in the immigration context.  Dkt. 63 at 10. Again, however, the Ninth Circuit explicitly rejected this argument in *this case*.  "[T]he district court stated that nationwide relief is warranted simply … because such relief has been applied in

the immigration context.  *The district court clearly erred by failing to consider whether nationwide relief is necessary to remedy Plaintiffs' alleged harms.*"  Stay Op. 8; Stay Op. 11 n.8 ("Contrary to the dissent's position, the fact that injunctive relief may temporarily cause the Rule to be administered inconsistently in different locations is not a sound reason for imposing relief that is broader than necessary.  As we explain above, our law requires that injunctive relief be narrowly tailored to remedy the plaintiffs' alleged harm, and it may only be broadened if such breadth is necessary to give prevailing parties the relief to which *they* are entitled." (emphasis in original) (internal quotation omitted)).  This is so because under Ninth Circuit "case law" "all injunctions— even ones involving national policies—must be narrowly tailored to remedy the specific harm shown."  Stay Op. 9.  Plaintiffs' emphasis on the need for a uniform immigration system again elides the distinction between the violation and the remedy for the violation.  The Ninth Circuit could not have been clearer in mandating that the two questions must be evaluated separately, even in cases "involving national policies."  Stay Op. 9.  To hold otherwise would improperly make nationwide injunctions the norm, "rather than the exception" and would not engage in the necessary narrow tailoring that all injunctions must undergo. *Id.*[2]  Indeed, it is the initial injunction in this case that caused disuniformity, diverging with the ruling in the District of Columbia finding that similarly situated organizations are not entitled to injunctive relief.  *See CAIR*, 2019 WL 3436501, at *2 ("[Plaintiffs] have not provided enough information for me to find that they have met their burden here.  They have not specified how many of their clients will be newly eligible under the Interim Rule; how many intake interviews or credible fear interviews will take place over the next few weeks; and ultimately, how many potential clients they will be unable to reach in that time frame.").

### C. No Other Considerations Warrant Nationwide Injunctive Relief.

Plaintiffs make two final arguments as to why they believe nationwide injunctive relief is necessary.  First, they contend that a nationwide injunction is needed to avoid "serious administrability problems" caused by "cross-jurisdictional movement."  Dkt. 63 at 11.  As noted,

---

[2] Plaintiffs rely heavily on the Ninth Circuit's decision in *East Bay II*, *see* Dkt. 63 at 8-10, but even in that case, the Ninth Circuit caveated its holding by recognizing the "growing uncertainty about the propriety of universal injunctions."  2018 WL 8807133, at *24.

in view of the Government's implementation of the injunction, this concern is moot.  Indeed, far from creating administrability problems, a limited injunction "allows other litigants wishing to challenge the Rule to do so.  Indeed, several already have.  Litigation over the Rule's lawfulness will promote the development of the law and the percolation of legal issues in the lower courts and allow the Supreme Court, if it chooses to address the Rule, to do so with the benefit of additional viewpoints from other lower federal courts and [with] a fully developed factual record."  Stay Op. 10; *Azar*, 911 F.3d at 583 ("The detrimental consequences of a nationwide injunction are not limited to their effects on judicial decisionmaking.  There are also the equities of non-parties who are deprived the right to litigate in other forums.").

Plaintiffs finally argue that "equitable considerations are relevant to the scope of injunctive relief," Dkt. 63 at 12, but cite no case for the proposition that a strong showing on the "equities," *id.*, is applicable to the question of whether a nationwide injunction is appropriate.  *Kansas v. Nebraska*, 135 S. Ct. 1042, 1053 (2015) does not support Plaintiffs' position, as that case unremarkably stated that lower courts have substantial flexibility in crafting injunctions "in furtherance of the public interest," although each injunction must be "mold[ed]" "to the necessities of the particular case."  *Id.*  As with their previous irreparable harm arguments, Plaintiffs are attempting to shoehorn their past success on the injunctive factors into the question of whether a nationwide injunction is appropriate.  That runs afoul of the Ninth Circuit's admonition that "beyond examining the merits of a party's arguments, a district court must separately analyze whether nationwide relief is" necessary.  Stay Op. 10.  Plaintiffs bear the burden of proposing a remedy narrowly tailored to their harms, and have not done so, instead repeatedly maintaining that a nationwide injunction is the only remedy that can redress their complained-of harms.  That is insufficient.  Nothing prevents Plaintiffs from forming bona fide relationships with individual clients, identifying those clients (under seal if necessary), and then proposing a narrower injunction that is tied to the actual scope of harm presented in this case.  Because Plaintiffs have not even endeavored to do this, their motion should be denied.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' motion to restore the nationwide scope of the injunction.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

SCOTT G. STEWART
Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director

By: /s/ *Erez Reuveni*
EREZ REUVENI
Assistant Director
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 347-4293
Email: Erez.R.Reuveni@usdoj.gov

PATRICK GLEN
*Senior Litigation Counsel*

Dated: August 29, 2019                    *Attorneys for Defendants*

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that on August 29, 2019, I electronically filed the foregoing document with

3  the Clerk of the Court for the United States Court of for the Northern District of California by

4  using the CM/ECF system.  Counsel in the case are registered CM/ECF users and service will be

5  accomplished by the CM/ECF system.

6

7                              By:  */s/ Erez Reuveni*
                                    Erez Reuveni
8                                   Assistant Director
                                    United States Department of Justice
9                                   Civil Division

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28