Katrina Eiland (SBN 275701)
Cody Wofsy (SBN 294179)
Spencer Amdur (SBN 320069)
Julie Veroff (SBN 310161)
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-0770
F: (415) 395-0950
*keiland@aclu.org*
*cwofsy@aclu.org*
*samdur@aclu.org*
*jveroff@aclu.org*

Lee Gelernt*
Omar C. Jadwat*
Anand Balakrishnan*
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
*lgelernt@aclu.org*
*ojadwat@aclu.org*
*abalakrishnan@aclu.org*

*Attorneys for Plaintiffs*
*(Additional counsel listed on following page)*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

East Bay Sanctuary Covenant; Al Otro Lado; Innovation Law Lab; and Central American Resource Center in Los Angeles,

*Plaintiffs*,

v.

William Barr, Attorney General, in his official capacity; U.S. Department of Justice; James McHenry, Director of the Executive Office for Immigration Review, in his official capacity; the Executive Office for Immigration Review; Kevin McAleenan, Acting Secretary of Homeland Security, in his official capacity; U.S. Department of Homeland Security; Ken Cuccinelli, Acting Director of the U.S. Citizenship and Immigration Services, in his official capacity; U.S. Citizenship and Immigration Services; John Sanders, Commissioner of U.S. Customs and Border Protection, in his official capacity; U.S. Customs and Border Protection; Matthew Albence, Acting Director of Immigration and Customs Enforcement, in his official capacity; Immigration and Customs Enforcement,

*Defendants*.

Case No.: 3:19-cv-04073-JST

**REPLY IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION TO RESTORE THE NATIONWIDE SCOPE OF THE INJUNCTION**

Melissa Crow*
SOUTHERN POVERTY LAW CENTER
1101 17th Street, NW Suite 705
Washington, D.C. 20036
T: (202) 355-4471
F: (404) 221-5857
melissa.crow@splcenter.org

Mary Bauer*
SOUTHERN POVERTY LAW CENTER
1000 Preston Avenue
Charlottesville, VA 22903
T: (470) 606-9307
F: (404) 221-5857
mary.bauer@splcenter.org

Baher Azmy**
Angelo Guisado**
Ghita Schwarz**
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
T: (212) 614-6464
F: (212) 614-6499
bazmy@ccrjustice.org
aguisado@ccrjustice.org
gschwarz@ccrjustice.org

Christine P. Sun (SBN 218701)
Vasudha Talla (SBN 316219)
Angélica Salceda (SBN 296152)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
T: (415) 621-2493
F: (415) 255-8437
csun@aclunc.org
vtalla@aclunc.org
asalceda@aclunc.org

Attorneys for Plaintiffs

*Admitted Pro hac vice
**Pro hac vice application forthcoming

# **TABLE OF CONTENTS**

I.      NATIONWIDE RELIEF IS NECESSARY AND APPROPRIATE............................. 1

   A.   Nationwide Relief Is Necessary to Remedy Plaintiffs' Specific Harms...................... 1

       1. The Limited Injunction Does Not Provide Plaintiffs Complete Relief.............. 1

       2. The Narrowed Injunction Also Causes Confusion and Allows the Government to Circumvent Its Application............................................................................. 6

       3. An Injunction Limited to Plaintiffs and Their Retained Clients Would Not Fully Remedy Plaintiffs' Injuries and Would Be Unworkable. ................................. 8

   B.   The Types of Violations at Issue Here Further Support a Nationwide Injunction....... 9

   C    The Equities Are Relevant to and Tip Sharply in Favor of Nationwide Relief. ........ 11

II.     THE COURT HAS THE AUTHORITY TO RESTORE THE NATIONWIDE SCOPE OF THE INJUNCTION. ..................................................................................................... 11

CONCLUSION...................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n,*
    988 F.2d 146 (D.C. Cir. 1993) ........................................................................ 10

*Am. Fed'n of Gov't Emps., AFL-CIO v. Block,*
    655 F.2d 1153 (D.C. Cir. 1981) ..................................................................... 10

*Amgen, Inc. v. Kidney Ctr. of Delaware Cty., Ltd.,*
    95 F.3d 562 (7th Cir. 1996) ........................................................................... 12

*Batalla Vidal v. Nielsen,*
    279 F. Supp. 3d 401 (E.D.N.Y. 2018) .............................................................. 3

*Bhd. of Locomotive Eng'rs v. Mo.-Kan.-Tex. R.R. Co.,*
    363 U.S. 528 (1960)........................................................................................ 11

*Cal. Communities Against Toxics v. U.S. E.P.A.,*
    688 F.3d 989 (9th Cir. 2012) ......................................................................... 10

*City & County of San Francisco v. Trump,*
    897 F.3d 1225 (9th Cir. 2018) ....................................................................... 13

*East Bay Sanctuary Covenant v. Trump,*
    349 F. Supp. 3d 838 (N.D. Cal. 2018) ......................................................... 8, 9

*East Bay Sanctuary Covenant v. Trump,*
    354 F. Supp. 3d 1094 (N.D. Cal. 2018) ........................................ 8, 12, 14, 15

*East Bay Sanctuary Covenant v. Trump,*
    932 F.3d 742 (9th Cir. 2018) ........................................................................ 8, 9

*Friery v. Los Angeles Unified Sch. Dist.,*
    448 F.3d 1146 (9th Cir. 2006) ....................................................................... 12

*Gulliver v. Dalsheim,*
    739 F.2d 104 (2d Cir. 1984)........................................................................... 12

*Harmon v. Thornburgh,*
    878 F.2d 484 (D.C. Cir. 1989) .................................................................... 9, 10

*Idaho Farm Bureau Fed'n v. Babbitt,*
    58 F.3d 1392 (9th Cir. 1995) ......................................................................... 10

*In re TFT-LCD (Flat Panel) Antitrust Litigation,*
    2013 WL 6055079 (N.D. Cal. Nov. 13, 2013) ............................................... 15

*Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Eastern Air Lines, Inc.*,
847 F.2d 1014 (2d Cir. 1988) ............................................................................................ 14

*Kern Oil & Ref. Co. v. Tenneco Oil Co.*,
840 F.2d 730 (9th Cir. 1988) ..................................................................................... 12, 15

*Mendez-Gutierrez v. Gonzales*,
444 F.3d 1168 (9th Cir. 2006) ........................................................................................... 14

*N. Cheyenne Tribe v. Norton*,
503 F.3d 836 (9th Cir. 2007) ............................................................................................. 11

*N. Mariana Islands v. United States*,
686 F. Supp. 2d 7 (D.D.C. 2009) ...................................................................................... 10

*NAACP v. Trump*,
315 F. Supp. 3d 457 (D.D.C. 2018) ................................................................................... 10

*Nat. Resources Def. Council, Inc. (NRDC) v. S.W. Marine, Inc.*,
242 F.3d 1163 (9th Cir. 2001) ..................................................................................... 12, 15

*Nat'l Grange of the Order of Patrons of Husbandry v. Cal. State Grange*,
182 F. Supp. 3d 1065 (E.D. Cal. 2016) .............................................................................. 15

*Nat'l Min. Ass'n v. U.S. Army Corps of Engineers*,
145 F.3d 1399 (D.C. Cir. 1998) ........................................................................................... 9

*O.A. v. Trump*,
2019 WL 3536334 (D.D.C. Aug. 2, 2019) ........................................................................ 10

*Pennsylvania v. President United States*,
930 F.3d 543 (3d Cir. 2019) ................................................................................................. 3

*Regents of the Univ. of Cal. v. DHS*,
809 F.3d 476 (9th Cir. 2018) ............................................................................................... 9

*Regents of Univ. of Cal. v. DHS*,
279 F. Supp. 3d 1011 (N.D. Cal. 2018) ............................................................................. 10

*Rodriguez v. County of Los Angeles*,
891 F.3d 776 (9th Cir. 2018) ............................................................................................. 12

*San Francisco Aesthetics & Laser Med. Inc. v. Presidio Trust*,
2010 WL 4226696 (N.D. Cal. Oct. 21, 2010) ................................................................... 14

*Texas v. United States*,
809 F.3d 134 (5th Cir. 2015) ............................................................................................... 3

*Trump v. East Bay Sanctuary Covenant*,
   139 S. Ct. 782 (2018) ................................................................................................ 8

*United States ex rel. Stone v. Rockwell Int'l Corp.*,
   282 F.3d 787 (10th Cir. 2002) ................................................................................. 13

*United States v. Phelps*,
   283 F.3d 1176 (9th Cir. 2002) ................................................................................. 12

**Statutes**

5 U.S.C. § 706 ............................................................................................................. 9

8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ................................................................................ 7

**Other Authorities**

U.S. Immigration and Customs Enforcement, *Detention Statistics*,
   https://www.ice.gov/detention-management (last updated Aug. 30, 2019) ................... 7

Wright & Miller, *Retained Jurisdiction*, 16 Fed. Prac. & Proc. Juris. § 3937.1 (3d ed.) ................. 12

# I.     NATIONWIDE RELIEF IS NECESSARY AND APPROPRIATE.

Contrary to the government's suggestion, the motions panel was clear: a nationwide injunction of the Rule could well be appropriate. The barrier to sustaining this Court's grant of nationwide relief was simply that, in the panel majority's view, the connection between Plaintiffs' injuries and the need for nationwide relief had not been drawn clearly enough. The motions panel therefore remanded for further factual findings and further explanation of why nationwide relief is necessary to remedy Plaintiffs' harms. As supplemented, the record shows that nationwide relief "is necessary to remedy Plaintiffs' alleged harms." Order 5, 6.

## A.  Nationwide Relief Is Necessary to Remedy Plaintiffs' Specific Harms.

The limited injunction, even as the government claims it will be applied, does not provide complete relief to Plaintiffs. And an injunction limited to Plaintiffs' clients would prove even more unworkable.

### 1.  The Limited Injunction Does Not Provide Plaintiffs Complete Relief.

Notably, the government does not contest any of the facts in Plaintiffs' evidence. Instead, the government argues only that Plaintiffs' evidence is not sufficient to warrant nationwide relief. But Plaintiffs have now provided more than ample evidence of nationwide harm.

*Innovation Law Lab* ("Law Lab"): Law Lab maintains seven offices in California, Missouri, Georgia, Oregon, and Texas. ECF No. 57-2 (Supp. Manning Decl.) ¶ 4. It provides diverse support to asylum seekers, including through direct asylum representation, pro bono case placement and attorney mentoring, pro se workshops, and the creation and distribution of technology and training materials used by advocates and asylum seekers. Law Lab provides these services across the United States and in Mexico. Many of the individuals Law Lab serves through its broad operations will be subject to the Rule. Anything less than a nationwide injunction will result in Law Lab being forced to divert significant resources in each of these areas.

Defendants contend that Law Lab has failed to show that it directly represents asylum seekers affected by the Rule. *See* ECF No. 64 (Opp.) 15. But the evidence makes clear that Law Lab provides direct representation to individuals both inside and outside the Ninth Circuit, and that those it represents outside the Ninth Circuit will likely be subject to the Rule under the limited injunction.

*See* Supp. Manning Decl. ¶¶ 5, 15. Without a nationwide injunction, these individuals outside the Ninth Circuit will be ineligible for asylum under the Rule, and representing them will thus impose significant additional burdens on the organization. *See id.* ¶¶ 9, 11, 15 (explaining that withholding and Convention Against Torture (CAT) cases are significantly more resource intensive).[1]

Defendants also overlook the fact that Law Lab provides critical services to individuals subject to the Rule who are not retained clients.[2] These operations take place across the country and in Mexico, so the harms to them will persist under a limited injunction, and can only be remedied fully by nationwide relief.

For instance, Law Lab places asylum seekers' cases with pro bono attorneys and provides the attorneys with "legal, technical, and strategic assistance in the preparation and presentation of claims in Georgia, Kansas, Missouri, North Carolina, and Oregon, with expansion underway to New Mexico and California." *Id.* ¶ 5. Under an injunction limited to the Ninth Circuit, the Rule will apply in most of these areas, meaning that a "significant percentage" of Law Lab's new pro bono placement cases will be "a great deal more complicated," due to the higher burden imposed to secure withholding and CAT relief and the lack of derivative applications. *See* ECF No. 3-4 (Manning Decl.) ¶ 17; Supp. Manning Decl. ¶¶ 14, 20. Law Lab will therefore have to conduct additional legal research for each case, hold "multiple strategy meetings with pro bono counsel," and "shift a

---

[1] It is not necessary, contrary to the government's claim, for Plaintiffs to "identif[y] bona fide clients they represent outside the Ninth Circuit" in order for this Court to order nationwide relief. Opp. 12. The Ninth Circuit and Supreme Court refused to stay the nationwide injunction in the first asylum ban case even though Plaintiffs there also did not identify specific individuals. Indeed, the government fails to identify a single case so holding. Plaintiffs' evidence is more than enough: it makes clear that they serve asylum seekers inside and outside the Ninth Circuit; explains how they serve those individuals; and specifies the proportion of those who will be affected by the Rule. *See* Manning Decl. ¶¶ 14-15; Supp. Manning Decl. ¶¶ 9, 19; ECF No. 3-3 (Pinheiro Decl.) ¶ 13; ECF No. 57-4 (Ramos Decl.) ¶¶ 5-6; ECF No. 3-5 (Sharp Decl.) ¶ 6; ECF No. 57-5 (Alvarez Decl.) ¶ 5; ECF No. 3-2 (Smith Decl.) ¶ 15; ECF No. 57-3 (Supp. Smith Decl.) ¶ 5. That is sufficient.

[2] The government asserts that to justify nationwide relief, Plaintiffs must "demonstrate[] that they will *represent* individuals affected by the Rule outside the Ninth Circuit." Opp. 16 (emphasis added); *see also id.* at 14-15. There is also no requirement that Plaintiffs "represent," rather than serve in other capacities, individuals affected by the Rule. In any event, as already discussed, Law Lab meets the government's proffered test because it will represent individuals subject to the Rule if it is not enjoined nationwide.

significant portion of [its] resources towards mentoring pro bono attorneys on complicated appeals before the Board of Immigration Appeals and the circuit courts." Manning Decl. ¶ 17.

Law Lab also creates "materials for pro bono attorneys and asylum applicants, including printed guides, worksheets, training videos, self-help videos, and other resources that are used around the country." *Id.* ¶ 19; Supp. Manning Decl. ¶¶ 7, 10, 14. Absent nationwide relief, Law Lab "would have to substantially revise its materials across programs, and create bifurcated resources going forward." Supp. Manning Decl. ¶ 14; *see also id.* (explaining that Law Lab will have to scrap an educational video that has been in the works for months because it does not address the Rule's bar on asylum). This overhaul "would represent such a substantial burden that it could cause Law Lab *to cease most of its pro bono activities.*" Manning Decl. ¶ 19 (emphasis added).

In addition, Law Lab operates pro se asylum workshops in Atlanta, Georgia; Kansas City, Missouri; Portland, Oregon; and in Tijuana, Mexico, and, pursuant to a recent expansion, Ciudad Juarez. Supp. Manning Decl. ¶¶ 7, 13.[3] The workshops require staff to spend "many hours training volunteers on law, process, and [Law Lab's] materials; preparing technology for use in the workshops; and preparing individual clients and client applications," and, to date, have relied on "a centralized set of training materials and technology—all of which are designed around a uniform application of the asylum regulations." *Id.* ¶ 10. The Rule and the limited injunction both require Law Lab to divert its resources to re-do its workshop programming to account for the application of the Rule. *Id.* Providing information and advice at the workshops Law Lab conducts at these sites in Mexico will also be especially difficult under a limited injunction, given that Law Lab does not know in advance where the attendees will cross into the United States or be detained. *Id.* ¶ 12; *see also id.* ¶ 13 (explaining that Law Lab not cannot simply "replicate" at sites in Ciudad Juarez the

---

[3] Without citing any case, the government suggests that Plaintiffs must show that they operate across every inch of the country to warrant nationwide relief. Opp. 14-15. That is wrong. Indeed, the Ninth Circuit and Supreme Court refused to stay the nationwide injunction in the first asylum ban case without such evidence. It is enough that Plaintiffs' operations and the mobile individuals they serve transcend neat geographic boundaries and extend to numerous jurisdictions across the country. *See, e.g.*, *Pennsylvania v. President United States*, 930 F.3d 543, 576 (3d Cir. 2019); *Texas v. United States*, 809 F.3d 134, 188 (5th Cir. 2015); *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 437-38 (E.D.N.Y. 2018).

materials it created to launch its Tijuana workshops, threatening its planned "program expansion" there).

Further, the majority of individuals served at the workshops Law Lab holds outside the Ninth Circuit will be subject to the Rule. *Id.* ¶ 9. As a result, Law Lab must "spend additional time developing the facts and legal theories for" withholding and CAT claims, and must retrain volunteers on how to screen for applicability of the Rule and on the new standards. *Id.*

Law Lab provides other critical services to asylum seekers, such as creating and updating a technology platform used by advocates nationwide to represent asylum seekers. Absent nationwide relief, Law Lab will be forced "to deploy expensive and limited engineering resources to recode its software to create new analytical modeling" to address the Rule's impact. Manning Decl. ¶ 19.

Critically, the record reflects that a significant proportion of the asylum seekers Law Lab serves in these many capacities are subject to the Rule. *See* Supp. Manning Decl. ¶ 9 ("The majority of persons served at these workshops are Central American asylum seekers who would be subject to the asylum transit ban."); Manning Decl. ¶¶ 16, 18. Defendants have pointed to nothing suggesting that there has been or will be a marked shift in the population Law Lab serves. It is therefore not speculative or "conjectural," Opp. 15, to conclude that a significant portion of the people Law Lab serves will be subject to the Rule if the injunction is limited to the Ninth Circuit. The record also reflects that the significant burden required to overhaul all of Law Lab's programming, materials, and technology, which have been designed around *uniform* application of the asylum rules, directly results from a limited injunction, and will persist absent nationwide relief. *Contra* Opp. 17-18. The government has no answer to how these harms can be remedied absent a nationwide injunction.[4]

---

[4] Defendants wrongly suggest that Plaintiffs' supplemental evidence does not go beyond the initial declarations. Opp. 13. Law Lab's supplemental declaration, for example, offers additional information about the locations in which the organization operates, *compare* Manning Decl. ¶ 3, *with* Supp. Manning Decl. ¶ 4; explains that Law Lab provides direct asylum representation to individuals outside the Ninth Circuit, *see* Supp. Manning Decl. ¶¶ 5, 10; discusses how Law Lab's model uses collaborative operations and synchronized materials across program sites, *id.* ¶ 7; and clarifies the locations of Law Lab's BorderX program, *id.* ¶ 19, and the nature and locations of Law Lab's work related to the Migrant Protection Protocols, *id.* ¶ 18. The additional evidence also more thoroughly addresses why nationwide relief is necessary to fully remedy the frustration of mission and diversion harms Law Lab will suffer because of the Rule. *See, e.g.*, *id.* ¶¶ 8-11, 13-14.

*CARECEN:* CARECEN's injuries are also not fully remedied by the limited injunction. *Contra* Opp. 18. At least 60% of CARECEN's asylum-seeking clients entered the United States outside the Ninth Circuit after transiting through another country without seeking asylum there. Alvarez Decl. ¶ 5. If an asylum seeker enters, is apprehended, and given a credible fear interview outside of the Ninth Circuit—as is the case for a sizable portion of CARECEN's clients, *see id.*— then that person likely will never make it to CARECEN. Indeed, the Rule will cause the asylum seeker to fail her credible fear interview and, as a result, she may be quickly removed.[5] Thus, an injunction limited to the Ninth Circuit, even as the government has agreed to implement it, would still prevent a significant portion of CARECEN's client base from ever reaching them. Absent nationwide relief, then, CARECEN's mission of serving Central American asylum seekers regardless of where or how they entered the United States will be frustrated, *see id.* ¶ 5, and their programs and per-case funding will be threated, *see, e.g.*, Sharp Decl. ¶¶ 7-8.

*Al Otro Lado:* The limited injunction also cannot fully remedy Al Otro Lado's injuries. Like CARECEN, Al Otro Lado serves asylum seekers who do not enter the United States in the Ninth Circuit. *See* Ramos Decl. ¶ 5. Unless those individuals are able to make their way back to the Ninth Circuit, which many will not, *see id.* ¶ 6, they will not be covered by the limited injunction. As a result, Al Otro Lado remains injured by the Rule, which frustrates its mission of "assist[ing] migrants who wish to seek asylum in the United States." Pinheiro Decl. ¶ 14. Moreover, to serve those individuals still affected by the Rule without yet knowing to whom the Rule will apply, Al Otro Lado will have to "overhaul" its training materials for volunteers and pro bono attorneys, and its "service delivery model." *Id.* ¶ 12. *See also* Ramos Decl. ¶¶ 9-10.

---

[5] It would be possible for such an individual to reach CARECEN *only* if she satisfied the heightened screening standard for withholding of removal and/or CAT *and* was permitted by the government to travel to the Ninth Circuit—a series of unlikely events given the government's detention power and unclear "guidance" regarding the limited injunction. *See* Part I.A.2 *infra*. Even then, the government would have to permit the individual to apply for asylum despite her having already failed the asylum screening.

Reply in Support of Emergency Mot. to Restore Nationwide Relief
Case No.: 3:19-cv-04073

1

### 2.  The Narrowed Injunction Also Causes Confusion and Allows the Government to Circumvent Its Application.

2

The government states that, according to agency guidance, the limited injunction will cover

3

those who "are initially apprehended in the Ninth Circuit, are detained in the Ninth Circuit at the

4

time of adjudication, who after apprehension in the Ninth Circuit are transferred elsewhere, or whose

5

adjudications *and* proceedings occur in the Ninth [C]ircuit . . . ." Opp. 13 (emphasis added); *but see*

6

*also* Opp. 2 (describing the injunction as covering individuals whose "interview *or* adjudication"

7

occurs in the Ninth Circuit) (emphasis added). For the reasons discussed above, even if this guidance

8

were clear and administrable, nationwide relief would still be necessary. But the fact that the cryptic

9

email "guidance" to the agencies charged with implementing the Rule lacks the details or consistent

10

terminology necessary to understand the government's application of an injunction limited to the

11

Ninth Circuit provides an additional reason for nationwide relief.

12

For example, the guidance fails to make clear how the injunction applies to an asylum seeker

13

who enters and has her threshold fear screening interview outside the Ninth Circuit. The individual

14

would be subject to the Rule and, accordingly, denied credible fear and instead be required to meet

15

the higher reasonable fear standard for withholding and/or CAT.  If that individual (1) were able to

16

meet the higher standard and was placed into regular removal proceedings to apply for withholding

17

and/or CAT, and (2) her removal proceedings were moved to the Ninth Circuit, it is unclear whether

18

the immigration judge could override the fact that the Rule was initially applied to her and allow her

19

nonetheless to apply for asylum. The government does not spell this out. It states only that those

20

"whose adjudications *and* proceedings" Opp. 13 (emphasis added), and whose "interview or

21

adjudication," Opp. 2, occur in the Ninth Circuit are subject to the injunction, without explaining

22

what that means.[6] This uncertainty is significant, as Plaintiffs frequently serve individuals who enter

23

24

25

26

27

28

[6] The government's brief uses the term "proceedings," Opp. 13, but that term does not appear in the actual guidance, creating further confusion. For instance, "interview" and "adjudication," Opp. 2, could refer to USCIS's adjudications of credible fear screenings and affirmative asylum applications, while "proceedings," Opp. 13, could refer to the location where a defensive asylum application takes place, leaving unprotected individuals like those described above. Beyond the differing descriptions provided in the government's brief, the government's exhibits contain different formulations of who is covered by the injunction and do not use consistent terminology, compounding the uncertainty. *Compare* ECF No. 65-1 (EOIR guidance referring to "interview or adjudication"), *with* ECF No. 65-3 (ICE guidance referring to "adjudication of the asylum application" but making no mention of

Reply in Support of Emergency Mot. to Restore Nationwide Relief
Case No.: 3:19-cv-04073

and have a credible fear adjudication outside of the Ninth Circuit, but who then apply for asylum in the Ninth Circuit. *See, e.g.*, Alvarez Decl. ¶ 6.

The confusion and workability concerns stemming from the geographically limited injunction are compounded by the reality that, in many cases, neither the agency nor the asylum seeker knows exactly where the asylum seeker entered the United States. *See id.* ¶ 11. Indeed, some Notices to Appear show an asylum seeker's location of entry as "unknown." And even if *the government* could possibly keep track of who remains eligible for asylum based on the complicated patchwork set out in the guidance emails, having to do so would still impose serious burdens on *Plaintiffs*. It will be difficult for them to determine whether the Rule applies to potential clients who seek services, *see id.*, and, because they cannot know *ex ante* whether a given individual will ultimately be subject to the Rule, Plaintiffs will still have to provide advice to asylum seekers through workshops, training materials, and other services that accounts for the Rule applying and not applying, *see* Ramos Decl. ¶¶ 5-9, Supp. Manning Decl. ¶ 12.

Critically, moreover, the government elides that it will have significant control over who is and is not subject to the Rule under the limited injunction. The government initially detains all asylum seekers who are placed in expedited removal proceedings through at least their fear screening interviews. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). Even if they pass the screening and are placed in regular removal proceedings, many asylum seekers are detained for the duration of those proceedings, as are many asylum seekers who are placed directly into regular removal proceedings.[7] The government therefore can prevent any asylum seekers who are apprehended outside the Ninth Circuit from ever reaching the Ninth Circuit by simply detaining them outside its jurisdiction and denying them parole or bond. *See* ECF No. 57-6 (Reichlin-Melnick Decl.) ¶ 13 (discussing government's power to detain and transfer asylum seekers, and noting that the vast majority of ICE detention centers are located outside the Ninth Circuit).

---

credible fear or an "interview").

[7] For example, on July 31, 2019, there were nearly 9,000 individuals in ICE custody who had passed their fear screening interviews.  *See* U.S. Immigration and Customs Enforcement, *Detention Statistics*, https://www.ice.gov/detention-management (last updated Aug. 30, 2019).

**3.  An Injunction Limited to Plaintiffs and Their Retained Clients Would Not Fully Remedy Plaintiffs' Injuries and Would Be Unworkable.**

The Ninth Circuit already declined the government's request that the injunction be limited to Plaintiffs' clients. *See* No. 19-16487, Dkt. 3-1 at 22 (9th Cir.) (government stay brief requesting that injunction be limited to "Plaintiffs' identified clients"). This Court, the Ninth Circuit, and the Supreme Court also rejected the same request in the context of the first asylum ban. *See East Bay Sanctuary Covenant v. Trump*, 349 F. Supp. 3d 838, 866-67 & n.21 (N.D. Cal. 2018); *East Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1121 (N.D. Cal. 2018); *East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018); *Trump v. East Bay Sanctuary Covenant*, 139 S. Ct. 782 (2018) (denying stay). Yet even though the Ninth Circuit motions panel remanded the issue of relief to this Court to determine whether a *broader* injunction was warranted, the government again suggests that the injunction should be *narrowed* to run only to Plaintiffs and the individuals they "identify as actual clients in the United States who are otherwise subject to the rule." Opp. 1. Such a limited injunction would not provide complete relief to Plaintiffs and would be unworkable.

*First*, as explained above, Plaintiffs not only provide direct representation to clients all over the United States, but also routinely serve a broad swath of asylum seekers through written and digital materials, support to pro bono attorney networks, community education initiatives, and in-person trainings, many of which are conducted in Mexico. *See* Supp. Manning Decl. ¶¶ 5, 7-10, 12-14, 18-19; Pinheiro Decl. ¶¶ 4-7; Sharp Decl. ¶¶ 5-6. Many, if not most, of the individuals served by these programs are not "actual clients" with retainers. Indeed, these programs are not intended only for the limited number of individuals the organizations can actually represent. The assistance Plaintiffs provide to these individuals is an integral part of Plaintiffs' missions and work. *See East Bay*, 354 F. Supp. 3d at 1121 (Plaintiffs' "harms are not limited to their ability to provide services to their *current* clients, but extend to their ability to pursue their programs writ large"). And for desperate individuals trying to understand the asylum process, these services are critical.

*Second*, an injunction limited to Plaintiffs' clients would be unworkable in many respects. To start, Plaintiffs cannot know in advance which of these individuals will ultimately become an "actual client[] in the United States." Opp. 1. And the individuals Plaintiffs directly represent and serve in

other ways are a large and constantly evolving group.[8] Further, an injunction limited to the individuals Plaintiffs directly represent would create an unworkable dynamic, as every potential asylum seeker would seek representation from the four Plaintiffs, thereby disrupting existing legal service networks and overwhelming the operations of these relatively small and underfunded organizations.[9]

## B. The Types of Violations at Issue Here Further Support a Nationwide Injunction.

As shown above, Plaintiffs' harms will not be remedied by anything less than a nationwide injunction. For that reason, a nationwide injunction is appropriate. But the types of violations at issue here provide additional support in favor of a nationwide injunction. *See East Bay*, 932 F.3d at 779.

The government dismisses the import of the APA's language that unlawful agency action be "set aside," 5 U.S.C. § 706, *see* Opp. 20, but this Court has already held that such language is relevant when determining relief in a preliminary injunction posture. *See East Bay*, 349 F. Supp. 3d at 867; *see also East Bay*, 932 F.3d at 779 (noting, in the context of a decision denying a stay of a TRO, that enjoining an unlawful policy on a universal basis is "commonplace in APA cases") (quoting *Regents of the Univ. of Cal. v. DHS*, 809 F.3d 476, 512 (9th Cir. 2018)). And Plaintiffs never claimed that vacatur "is the *only* remedy," Opp. 20; rather, under well-established case law, vacatur is the "*ordinary* result," *Nat'l Min. Ass'n v. U.S. Army Corps of Engineers*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (emphasis added) (quoting *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21

---

[8] Requiring Plaintiffs to provide a running list of individuals they serve to the government and the Court to facilitate enforcement of a plaintiff-specific injunction would be an impossible undertaking, given the large number of asylum seekers Plaintiffs serve, e.g., through workshops and pro bono networks across the country, and through materials used by non-plaintiff organizations. *See East Bay Sanctuary Covenant v. Trump*, Tr. Prelim. In. Hr'g 7:3-13 (THE COURT: "What if the Court entered a preliminary injunction and there were a future client of one of the organizations who is not presently in the United States but crossed into the United States three months from now while this case was pending and the preliminary injunction were in effect?" [GOVERNMENT]: "I think we'd have to see the plaintiffs identify that person, Your Honor, and bring them within the scope of the injunction. . . . ." THE COURT: "How many future proceedings do you anticipate the Court would hold to amend the injunction? Would it be a weekly roundup? I mean, how would that work?").

[9] *See East Bay Sanctuary Covenant v. Trump*, Tr. TRO Hr'g, 56:4-8 (THE COURT: "I'd make these organizations the most popular lawfirms at the border if I did that, wouldn't I? This rule doesn't apply to you or your clients, but it applies to every other law firm that might be trying to help asylum-seekers? How's that going to work?").

(D.C. Cir. 1989)). *See also Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995) ("*Ordinarily* when a regulation is not promulgated in compliance with the APA, the regulation is invalid.") (emphasis added); *Cal. Communities Against Toxics v. U.S. E.P.A.*, 688 F.3d 989, 994 (9th Cir. 2012). The government, moreover, has not argued that the factors typically used to assess whether remand without vacatur is appropriate are present here. *See Cal. Communities Against Toxics*, 688 F. 3d at 992 (explaining that the decision whether to remand without vacatur "depends on how serious the agency's errors are 'and the disruptive consequences of an interim change that may itself be changed'") (quoting *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993)).[10]

Likewise, circuit law is clear that uniformity in the immigration context is a relevant, even if not dispositive, factor when determining the appropriate scope of relief. *See* ECF No. 63 (Supp. Br.) 10 (collecting cases). Nothing in the motions panel's Order forecloses taking this factor into account.

Finally, contrary to the government's contention, a limited injunction is not necessary to allow other challenges to the Rule to proceed. District courts can and often do issue parallel or, as this case makes plain, differing decisions. *See* Opp. 22 (noting that the U.S. District Court for the District of Columbia denied a TRO in a similar challenge to the Rule); *see also, e.g.*, *Regents of Univ. of Cal. v. DHS*, 279 F. Supp. 3d 1011 (N.D. Cal. 2018); *NAACP v. Trump*, 315 F. Supp. 3d 457 (D.D.C. 2018). The existence of a nationwide injunction thus in no way eliminates the opportunity for other litigants to obtain a separate, appealable merits determination. *See, e.g.*, *O.A. v. Trump*, 2019 WL 3536334, at *2 (D.D.C. Aug. 2, 2019) (granting plaintiffs' motion for summary judgment in a case challenging the first asylum ban, which this Court had already enjoined nationwide on a preliminary injunction motion).

---

[10] The government offers the cursory assertion that "[t]he possibility of remand without vacatur has particular force in this case" because violations of the APA's notice-and-comment procedures "can be remedied even while the Rule is left in place." Opp. 21 (quotation marks omitted). That is mistaken. "[T]he damage done by [the agencies'] violation of the APA cannot be fully cured by later remedial action" because the agencies are "far less likely to be receptive to comments" now that the Rule is in effect. *N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 18 (D.D.C. 2009). *See also Am. Fed'n of Gov't Emps., AFL-CIO v. Block*, 655 F.2d 1153, 1158 (D.C. Cir. 1981). And neither the Ninth Circuit nor the Supreme Court narrowed the injunction in the earlier asylum ban case.

**C. The Equities Are Relevant to and Tip Sharply in Favor of Nationwide Relief.**

Courts, including the Supreme Court and the Ninth Circuit, frequently take account of the equities and the public interest when determining the appropriate scope of injunctive relief. *See, e.g.*, Supp. Br. 12 (collecting cases); *Bhd. of Locomotive Eng'rs v. Mo.-Kan.-Tex. R.R. Co.*, 363 U.S. 528, 531-32 (1960); *N. Cheyenne Tribe v. Norton*, 503 F.3d 836, 843 (9th Cir. 2007) ("When injunctive relief is appropriate, the court must balance the equities between the parties and give due regard to the public interest. Sometimes a full injunction is appropriate. But at other times, the equities demand a partial injunction.") (quotation marks omitted).

Plaintiffs' argument is not, as the government suggests, *see* Opp. 23, that the mere fact that the balance of the equities in this case tips sharply in their favor means that nationwide relief is automatically warranted. Rather, Plaintiffs argue that the *particular* equities involved *as they relate to the scope of relief* counsel in favor of a nationwide injunction given that asylum seekers will face grave harm if wrongly returned to their persecutors.[11] *See* Supp. Br. 12-13 (explaining that the Rule's harms are immediate, nationwide, and irreparable, such that nationwide relief is the equitable result). And as to those particular equities, the government has no response.

**II. THE COURT HAS THE AUTHORITY TO RESTORE THE NATIONWIDE SCOPE OF THE INJUNCTION.**

Appellate courts have the inherent authority to retain jurisdiction over an appeal while remanding for further proceedings on a particular issue. That is exactly what the Ninth Circuit has done here. The motions panel expressly retained jurisdiction over the preliminary injunction appeal while ordering a limited remand to this Court on the question of the injunction's nationwide scope. The government does not dispute that the Ninth Circuit has authority to do so, Opp. 7-8, but contests only that the Ninth Circuit did so here. Indeed, the cases the government cites are not to the contrary. They either stand for the uncontroversial proposition that ordinarily jurisdiction does not return to

---

[11] In explaining that, "beyond examining the merits of a party's arguments, a district court must separately analyze whether nationwide relief is 'necessary,'" the panel simply stated the obvious proposition that success on the merits does not automatically warrant a nationwide injunction. Order 7. It did not, as the government suggests, Opp. 23, find that considerations relevant to the propriety of issuing an injunction cannot also be relevant to the question of that injunction's scope.

the district court until the mandate issues absent a remand, Opp. 6, or address circumstances where there is no explicit remand, Opp. 7.

1. The general principle that the filing of a notice of appeal divests the trial court of jurisdiction "over the matters being appealed" is not truly jurisdictional. It is a "judge-made" rule, *Nat. Resources Def. Council, Inc. (NRDC) v. S.W. Marine, Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001), that "is not absolute." Instead, it is applied flexibly and "there are exceptions." *United States v. Phelps*, 283 F.3d 1176, 1181 n.5 (9th Cir. 2002). "The purpose of the rule is to promote judicial economy and avoid the confusion of having the same issues before two courts simultaneously." *Id.* "It should not be employed to defeat its purposes nor to induce needless paper shuffling." *Kern Oil & Ref. Co. v. Tenneco Oil Co.*, 840 F.2d 730, 734 (9th Cir. 1988) (quotation marks omitted). *See also Rodriguez v. County of Los Angeles*, 891 F.3d 776, 790 (9th Cir. 2018) (explaining that the divestiture principle "may be applied in a 'less stern' manner than true jurisdictional rules" and is subject to exception); *East Bay*, 354 F. Supp. 3d at 1105 n.3 (similar).

Because the divestiture principle is flexible and judge-made, the court of appeals of course has power to retain jurisdiction over an appeal while simultaneously restoring the district court's authority over a particular issue. *See* Wright & Miller, *Retained Jurisdiction*, 16 Fed. Prac. & Proc. Juris. § 3937.1 (3d ed.) ("Power to deal with the issues presented on appeal inherently includes authority to . . . regulate the course of further proceedings required to reach an effective decision."); *id.* ("[The use of retained jurisdiction] is a desirable [practice] . . . when there are special reasons to facilitate a prompt return to the court of appeals."); *Friery v. Los Angeles Unified Sch. Dist.*, 448 F.3d 1146, 1150 (9th Cir. 2006) ("We therefore order a limited remand to the district court with instructions to develop the factual record and to determine whether Friery has standing to bring suit."); *Amgen, Inc. v. Kidney Ctr. of Delaware Cty., Ltd.*, 95 F.3d 562, 568 (7th Cir. 1996) ("[T]he court of appeals has the power to direct further proceedings by the district court while retaining jurisdiction of the appeal, even though the result is that both courts have for a short time simultaneous jurisdiction . . . .") (quotation marks omitted); *Gulliver v. Dalsheim*, 739 F.2d 104, 106 (2d Cir. 1984) ("The remand is a 'limited' one, . . . which requires the district court to find facts or pass on issues while the court of appeals retains jurisdiction over the merits . . . .") (quotation marks

omitted); *United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 803 (10th Cir. 2002) ("We therefore make a limited remand for further proceedings in accord with this order, further findings, conclusions and a further ruling on the jurisdictional issue . . . .").

And, as a limited remand while the court of appeals retains jurisdiction over the appeal, no mandate needs to—or even could—issue before the district court is free to undertake the proceeding directed by the court of appeals. *Contra* Opp. 6.

Here, the Ninth Circuit invoked its power to issue a limited remand on the appropriate scope of the injunction: "While this appeal proceeds, the district court retains jurisdiction to further develop the record in support of a preliminary injunction extending beyond the Ninth Circuit." Order 8-9. *See also id.* at 9 ("Because the record is insufficiently developed as to the question of the national scope of the injunction, we vacate the injunction to the extent it applies outside California and remand to the district court for a more searching inquiry into whether this case justifies the breadth of the injunction imposed.") (quoting *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1245 (9th Cir. 2018)); Dissent from Order 4 n.4 (describing Order as "remand[ing] the case to the district court for a partial do-over" on the scope of relief).

In other words, rather than waiting for this Court to issue an indicative ruling—a device the government agrees is available, *see* Opp. 9—the Ninth Circuit proactively gave the Court advance permission to act regarding the scope of the injunction while it retained jurisdiction over the preliminary injunction appeal. Notably, in its Stay Application filed with the Supreme Court, the government *agreed* that the Ninth Circuit gave this Court jurisdiction to restore the nationwide scope of the injunction: "The court stated that the district court retained jurisdiction to further develop the record *and to re-extend the injunction beyond the Ninth Circuit.*" *Barr v. East Bay Sanctuary Covenant*, No. 19A230, Application for a Stay Pending Appeal at 3 (Aug. 26, 2019) (emphasis added).[12] Yet in its opposition brief to this Court, the government has now taken the opposite position, maintaining that "the Ninth Circuit contemplated further factual development from this

---

[12] Available at https://www.supremecourt.gov/DocketPDF/19/19A230/113613/20190826132549423_East%20Bay%20II%20Stay%20FINAL.pdf. Plaintiffs' opposition to the government's Supreme Court Stay Application is actually due September 4, not September 3. *Contra* Opp. 5.

Court, nothing more, during the pendency of the appeal." Opp. 8. Putting aside the inconsistency, the government fails to explain what purpose the Ninth Circuit's limited remand would have if this Court lacked power to take any action pending completion of the appeal, especially because district courts already possess authority to issue additional findings notwithstanding a pending appeal.[13] *See, e.g.*, *East Bay*, 354 F. Supp. 3d at 1105 n.3 (noting a district court's authority to "fil[e] written findings of fact and conclusions of law in support of" rulings on appeal) (citations and quotation marks omitted). And the government's cases about exceeding the scope of a remand are inapposite. Opp. 8 (citing *Mendez-Gutierrez v. Gonzales*, 444 F.3d 1168, 1172 (9th Cir. 2006) (addressing situation where a party raised new issue on remand that was outside the scope of the questions remanded for consideration after mandate); *San Francisco Aesthetics & Laser Med. Inc. v. Presidio Trust*, 2010 WL 4226696, at *4 (N.D. Cal. Oct. 21, 2010) (ignoring party's "waiver and release" arguments where remand was for computation of amounts owed)).

2. Because the Ninth Circuit gave this Court permission to restore the scope of the injunction, this Court need not rely on Federal Rule of Civil Procedure 62(d) (previously Rule 62(c)), which enables a district court to "suspend, modify, restore, or grant an injunction" even while an appeal of an injunction is pending. *Cf. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Eastern Air Lines, Inc.*, 847 F.2d 1014, 1018 (2d Cir. 1988) (explaining that Rule 62(d) applies "where the consent of the court of appeals has not been obtained"). Nonetheless, should the Court additionally wish to rely on Rule 62(d), it would be well within the Rule's coverage.

---

[13] The government wrongly implies that the Ninth Circuit motions panel knew the briefing schedule on Plaintiffs' emergency motion asking this Court to consider supplemental evidence and restore the nationwide scope of the injunction when it set the briefing schedule on the preliminary injunction appeal. *See* Opp. 9 ("[A]ccepting plaintiffs' contention would create the anomalous result that the Ninth Circuit sanctioned the authority of this Court to change the subject of the appeal, while nonetheless *insisting* that the Government's complete opening brief be due just 5 days after the submission of this brief on 'September 3, 2019.'") (emphasis added). Of course, as Plaintiffs only filed their emergency motion with this Court *after* the Ninth Circuit issued its Order authorizing the limited remand, the Ninth Circuit could not have known what the briefing schedule in this Court would be. And in fact, the Ninth Circuit motions panel *extended* the preliminary injunction briefing schedule beyond the dates originally set, giving the government *more* time to file their opening brief. *Compare* No. 19-16487, Dkt. 2 (setting deadline for government's opening brief as Aug. 26, 2019), *with* Order at 9 (extending deadline for government's opening brief to Sept. 3, 2019).

A district court may use Rule 62(d) "to preserve the status quo during the pendency of an appeal." *NRDC*, 242 F.3d at 1166. Contrary to the government's assertions, *see* Opp. 7, for purposes of the Rule 62(d) analysis, the status quo to be preserved is as of the *time the appeal was taken*. *See, e.g.*, *NRDC*, 242 F.3d at 1166; *Nat'l Grange of the Order of Patrons of Husbandry v. Cal. State Grange*, 182 F. Supp. 3d 1065, 1072 (E.D. Cal. 2016) ("The status quo is measured at the time the appeal is filed."); *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 2013 WL 6055079, at *1 (N.D. Cal. Nov. 13, 2013) (same). Restoring the nationwide scope of the injunction thus would preserve, not alter, the status quo at the time the government noticed its appeal of the preliminary injunction. Rule 62(d) can also be used to issue a second injunction. *See East Bay*, 354 F. Supp. 3d at 1105 n.3.

Contrary to the government's suggestion, Opp. 7, restoring the scope of the injunction does not present any of the concerns that could undermine the applicability of Rule 62(d). Indeed, there is no concern that there will be "confusion" from having "the same issues before two courts simultaneously" where the court of appeals itself considered the circumstances and expressly directed the limited remand here. *NRDC*, 242 F.2d at 1166.  And because the appeal in this case will not be heard until the Ninth Circuit's December calendar, there will be more than enough time for the government to address the reinstated scope in supplemental briefing or its reply brief. Alternatively, the government could take an appeal from any subsequent order this Court issues, which would be consolidated with the pending appeal, as happened in the first asylum ban case. *See* Case Nos. 18-17274 and 18-17436 (9th Cir.). This would obviate the need for a separate, additional proceeding and appeal on the issue many months from now and thereby avoid "needless paper shuffling." *Kern Oil*, 840 F.2d at 734.

Finally, Plaintiffs agree with the government that the Court may use the indicative ruling procedure under Federal Rule of Civil Procedure 62.1. However, as that procedure is the flipside of advance permission to undertake a limited remand, which the Ninth Circuit already gave, the Court need not use it.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be granted.

Dated: September 3, 2019

Respectfully submitted,

Katrina Eiland (SBN 275701)
Cody Wofsy (SBN 294179)
Spencer Amdur (SBN 320069)
Julie Veroff (SBN 310161)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-1198
F: (415) 395-0950
*keiland@aclu.org*
*cwofsy@aclu.org*
*samdur@aclu.org*
*jveroff@aclu.org*

/s/ Lee Gelernt
Lee Gelernt*
Omar Jadwat*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
*lgelernt@aclu.org*
*ojadwat@aclu.org*

*abalakrishnan@aclu.org*

Melissa Crow*
SOUTHERN POVERTY LAW CENTER
1101 17th Street, NW Suite 705
Washington, D.C. 20036
T: (202) 355-4471
F: (404) 221-5857
*melissa.crow@splcenter.org*

Mary Bauer*
SOUTHERN POVERTY LAW CENTER
1000 Preston Avenue
Charlottesville, VA 22903
T: (470) 606-9307
F: (404) 221-5857
*mary.bauer@splcenter.org*

Christine P. Sun (SBN 218701)
Vasudha Talla (SBN 316219)
Angélica Salceda (SBN 296152)
AMERICAN CIVIL LIBERTIES UNION OF
NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
T: (415) 621-2493
F: (415) 255-8437
*csun@aclunc.org*
*vtalla@aclunc.org*
*asalceda@aclunc.org*

Baher Azmy**
Angelo Guisado**
Ghita Schwarz**
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Telephone: (212) 614-6464
Facsimile: (212) 614-6499
*bazmy@ccrjustice.org*
*aguisado@ccrjustice.org*
*gschwarz@ccrjustice.org*

*Attorneys for Plaintiffs*

*\*Admitted Pro hac vice*
*\*\* Pro hac vice application forthcoming*