**Pages 1 - 29**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Jon S. Tigar, Judge

```
EAST BAY SANCTUARY COVENANT,    )
ET AL.,                         )
                                )
          Plaintiffs,           )
                                )
  VS.                           )        NO. CV 19-04073-JST
                                )
WILLIAM BARR, ET AL.,           )
                                )
          Defendants.           )
_____)
```

Oakland, California
Thursday, September 5, 2019

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:

ACLU FOUNDATION IMMIGRANTS' RIGHTS
PROJECT
125 Broad Street - 18th Floor
New York, NY  10004
**BY:  LEE GELERNT, ESQUIRE**

ACLU FOUNDATION IMMIGRANTS' RIGHTS
PROJECT
39 Drumm Street
San Francisco, CA  94111
**BY:  KATRINA L. EILAND, ESQUIRE**
**JULIE M. VEROFF, EQUIRE**
**MORGAN RUSELL, ESQUIRE**

Reported By:    Pamela Batalo-Hebel, CSR No. 3593, RMR, FCRR
Official Reporter

APPEARANCES CONTINUED


For Defendants:
U.S. DEPARTMENT OF JUSTICE
Office of Immigration Litigation,
Civil Division
950 Pennsylvania Avenue, NW
Washington, DC  20530
BY:  **SCOTT G. STEWART**
     **DEPUTY ASSISTANT ATTORNEY GENERAL**

```
 1   Thursday - September 5, 2019                    9:30 a.m.

 2                     P R O C E E D I N G S

 3                          ---000---

 4          THE CLERK:  Your Honor, now calling CV 19-4073, East

 5   Bay Sanctuary covenant, et al. vs. Barr, et al.

 6      If counsel could please come forward and state their

 7   appearances for the record.

 8           MR. STEWART:  Good morning, Your Honor.  Scott Stewart

 9   on behalf of the United States.

10           THE COURT:  Good morning, Mr. Stewart.

11           MR. GELERNT:  Good morning, Your Honor.  Lee Gelernt

12   for Plaintiffs from the ACLU.

13           THE COURT:  Good morning, Mr. Gelernt.

14           MS. VEROFF:  Good morning, Your Honor.  Julie Veroff

15   for Plaintiffs.

16           THE COURT:  Good morning, Ms. Veroff.

17           MS. EILAND:  Good morning, Your Honor.  Katrina Eiland

18   for Plaintiffs.

19           THE COURT:  Good morning, Ms. Eiland.

20           MR. RUSSELL:  Your Honor, Morgan Russell for

21   Plaintiffs.

22           THE COURT:  Good morning, Mr. Russell.

23      Who will be arguing on behalf of the plaintiff this

24   morning?

25           MR. GELERNT:  I will, Your Honor.
```

1    **THE COURT:**  Very well.

2    So unless counsel have worked out some other arrangement,

3  I will hear first from Mr. Gelernt and then I will hear from

4  Mr. Stewart and then Mr. Gelernt will have a second go at the

5  microphone and then Mr. Stewart will have a second go at the

6  microphone.

7    I probably will have a couple of questions for counsel.  I

8  don't know that our exchanges will be as spirited as they have

9  been in the past.  I don't know that I have all that much for

10  you.

11    I would say to the Government that with regard to its

12  argument about whether the Court has authority to consider the

13  question of whether this should be a nationwide injunction, it

14  is hard for me reconcile the Government's position that I don't

15  with the language of the Ninth Circuit's order which says that,

16  "the district court retains jurisdiction," etc.  And it seems

17  to me that there are parts of the Government's opposition brief

18  that, if I were to accept those parts, would require me to read

19  the very same phrase in the Ninth Circuit's order as saying

20  that the district court does not retain jurisdiction, and so

21  you should explain to me why I'm overreading or misreading the

22  Government's position on that point.

23    Other than that, I think I'll have maybe a few questions

24  as we go along.

25    Mr. Gelernt.

1          **MR. GELERNT:**  Thank you, Your Honor.

2       We believe that the supplemental declarations we've

3    submitted with this motion are more than ample to show why our

4    plaintiffs will suffer injury if there is not a nationwide

5    injunction, and we would think that the record is more full

6    than when Judge Bybee and then ultimately the Supreme Court

7    refused to stay the nationwide injunction.

8       I would in particular ask the Court to focus on the

9    declaration -- supplemental declarations submitted by Law Lab,

10   and they outline several different harms that will occur if the

11   injunction is limited to the Ninth Circuit.

12      For one, they directly represent individuals outside the

13   Ninth Circuit.  A Ninth Circuit injunction would not remedy

14   those harms.  I think that's dispositive to begin with.

15      The other two points have to deal -- deal with the types

16   of work they do beyond just retained clients.  One is their

17   Centers of Excellence where they match pro bono attorneys with

18   clients, and that's an enormous part of their work, and it

19   occurs all over the country.

20      And what the declaration explains is that if they now need

21   to do that matching all over the country with different rules,

22   it's going to significantly increase the amount of work they

23   have to do.  In particular, they will have to now train their

24   pro bono attorneys to deal with CAT and withholding relief,

25   which is much more difficult to obtain, much more complicated.

1    It also does not allow derivatives like asylum so it will

2    increase the number of cases they have.  And that goes on all

3    over the country.

4         In addition, they have trainings and workshops all over

5    the country.  They do not know in advance where those people

6    will ultimately enter, where they will end up, but moreover,

7    they certainly do those workshops in areas where the people

8    have entered and will remain outside the Ninth Circuit.

9         What they have explained is that it will require, again,

10   enormous work for them to create a second set of materials to

11   deal with the rule and for people who are only going to be

12   eligible for CAT and withholding.  In particular some of the

13   software and videos will have to be redone, and they're not

14   sure they can even do that.

15        I think the other point in particular they make is they

16   would like to expand their workshops in Tijuana to Juarez where

17   the rule currently does apply.  They're not sure they'll

18   ultimately be able to do it.  What they were anticipating doing

19   is duplicating the Tijuana workshops, and that was going to be

20   a big task, but they felt it was doable.  Now if they have to

21   create a whole different workshop in Juarez, they're not sure

22   they can do it without enormous, enormous effort.

23        So those are just some of the injuries that Law Lab will

24   suffer.

25        Carecen, in addition, has 60 percent of their clients --

1      **THE COURT:**  Madame Reporter, C-A-R-E-C-E-N.

2      **MR. GELERNT:**  Sorry.

3      They have -- 60 percent of their clients -- that's in the

4   new supplemental declaration -- come from outside the Ninth

5   Circuit.  Those individuals will likely not make it to the

6   Ninth Circuit because they will either fail the higher standard

7   or the Government who controls where individuals are detained

8   will not make it to the Ninth Circuit.  So that's an enormous

9   harm, substantial harm, for them resources-wise and their

10  mission.

11     AOL is the same as Law Lab in terms of the workshops for

12  people who are not in the Ninth Circuit.  They're the same as

13  Carecen for individuals who will not make it to the Ninth

14  Circuit.

15     Your Honor, we believe on the first go-around, the first

16  asylum ban, that the record was sufficient, but I think this is

17  far greater now than the record on the first asylum ban, even

18  with the Government's guidance.

19     We are not relying on the confusion and vague aspects of

20  the guidance for you to rule.  We believe that even if you take

21  the most expansive understanding of the guidance, the harms are

22  still obvious to our plaintiffs outside the Ninth Circuit.

23     But as an additional sort of makeweight, we do believe the

24  guidance is extremely vague.  We don't understand what is meant

25  by "proceedings" versus "adjudication," and even if the -- and

1    there is inconsistencies between the guidance being issued to

2    EOIR, to ICE, and to various other agencies, to USCIS.  But

3    even if the Government in their own head has some sense of how

4    the guidance works, it's going to be an enormous task for

5    plaintiffs in every single case to figure out how the guidance

6    would apply to any individual.

7         But, again, Your Honor, that's simply a makeweight because

8    even if the guidance isn't understood to be expansive, it's

9    still, by the Government's own admission -- would not help all

10   of these things outside the Ninth Circuit:  The direct

11   representation, the workshops, the Law Lab Center of

12   Excellence.

13        So for all those reasons, we believe the record here is

14   now plainly sufficient.  The supplemental affidavits lay out

15   the facts, connect the dots.  And so unless there are

16   questions, I will --

17        **THE COURT:**  I don't know that this is really a

18   question for you, but let me think this thought out loud so you

19   can hear it and respond to it and then Mr. Stewart also can, if

20   he wants.

21        Of course the Ninth Circuit Motions Panel gave careful

22   consideration to the materials in front of them.  That's

23   evident from their order.  I do think that this question of the

24   sufficiency of the record is tied up a little bit with the

25   sufficiency of the explanation that I gave and that obviously

1  the record needs to be considered in its totality and there's a

2  bigger record now, but I really did not go through a lot of

3  effort to explain why a nationwide injunction in this case was

4  appropriate because it was my reading of the Motions Panel's

5  order in the first East Bat Sanctuary case that -- and I'm

6  oversimplifying just to speed through these remarks.  Don't

7  take this literally, either of you, but Judge Bybee's -- that

8  portion of Judge Bybee's order was very, very short, and he, in

9  so many words said, "Well, it's an immigration case.  Of course

10  it's a nationwide injunction."  And so I am oversimplifying a

11  little bit when I say that, but my original order in this East

12  Bay case really reflected that understanding of what that

13  Motions Panel had said.

14      And so I think that when they say the record is not

15  adequate, I take that to mean a little bit *Judge Tigar's*

16  *explanation of the record was not adequate,* and so I think I

17  have some more explaining -- if I decide to grant this motion,

18  I have some more explaining to do, and my explaining needs to

19  include the parts of the original record as well as the

20  supplemental record.

21          **MR. GELERNT:**  Your Honor, I know the question was more

22  posed to the Government, but I think that's right; that reading

23  the stay order, they seem to be talking about the extent to

24  which they might have looked at the affidavits.  We didn't put

25  the affidavits before them in excerpts of record --

1    **THE COURT:**  Let me say what I said a moment ago in one

2  sentence, so much shorter but much more clear.

3    I take the current Motions Panel to say, "Judge Tigar, you

4  seem to assume that in a situation like this, a nationwide

5  injunction is appropriate.  You shouldn't make that assumption.

6  Please explain yourself."

7    So that's where I think we are.

8    **MR. GELERNT:**  We agree, Your Honor, that it probably

9  makes sense to focus on both the original and the supplemental

10 declarations and lay it out fully.

11   **THE COURT:**  Aside from that comment, I don't have any

12 questions for you.

13   **MR. GELERNT:**  Thank you, Your Honor.

14   **THE COURT:**  Thank you, Mr. Gelernt.

15   Mr. Stewart.

16   **MR. STEWART:**  Thank you, Your Honor.  May it please

17 the Court.

18   I will start with the jurisdictional question, Your Honor,

19 and focusing on the text of the Ninth Circuit's observations

20 just quickly, the key thing we're focusing on, Your Honor, is

21 the Ninth Circuit said, quote, "the district court retains

22 jurisdiction to further develop the record in support of a

23 preliminary injunction extending beyond the Ninth Circuit."

24   What we're saying, Your Honor, is that the court

25 contemplated that this Court could, while the appeal was

1    proceeding -- and the Ninth Circuit surely contemplated that it

2    was going to proceed apace, rapidly, opening brief has been

3    filed, argument to follow, as Your Honor is well aware, because

4    it's later in that very paragraph, of course.  The Ninth

5    Circuit was not contemplating and did not authorize the

6    district court and this Court to issue a new injunction or to

7    alter the scope of the injunction pending --

8            **THE COURT:**  We are at our first question already.  So

9    doesn't that question of a new injunction versus existing

10   injunction -- doesn't that look at the injunction that this

11   Court issued prior to any modification on appeal?  Isn't that

12   the slice of time I'm looking at?

13       And that's a predicate question to another question I want

14   to ask you, so I will ask both of them.  You will understand

15   why I asked that question.

16       Isn't the limitation that this Court can't expand or alter

17   in certain ways the injunction that it issued right at the

18   moment of time it issued before any modification that happened

19   on appeal?  And if that's true, why is it a new injunction?

20   Let's say I were to say, "Yes, I still think that a nationwide

21   injunction is appropriate."  How is that a new injunction?

22           **MR. STEWART:**  I mean, I think because the Ninth

23   Circuit didn't authorize this Court to actually issue an

24   injunction or alter the order that the validity -- the validity

25   and scope of which is currently under consideration on appeal,

1  Your Honor, when that has not been remanded back to this Court

2  yet or when the Ninth Circuit didn't -- didn't say it

3  authorized the Court to rule -- actually rule on a further

4  injunction.

5       **THE COURT:**  What would the purpose be of my developing

6  a record in support of a nationwide injunction if I didn't have

7  the authority to issue one?  What would the purpose be?

8       **MR. STEWART:**  I think similar to the way the

9  indicative ruling process works, Your Honor.  It's, you know --

10  the Court can develop, make fact findings, indicate how it

11  would rule if jurisdiction were retained.  The Ninth Circuit

12  could then be notified as to what the Court were inclined to

13  do.

14       But that sort of thing, Your Honor, developing the record,

15  getting those facts that the Ninth Circuit believed were not

16  before it, were not in the record at the time, and both -- so

17  basically both moving the case along while respecting the

18  balance of the Court's authority and the Ninth Circuit's

19  decision to proceed apace with the appeal.

20       **THE COURT:**  Okay.

21       **MR. STEWART:**  So I think still retain the ability to

22  do quite a bit, Your Honor, and to move forward and do the

23  relevant fact-finding, but the ability to actually make a

24  ruling would be to await a clear signal from the Ninth Circuit,

25  a remand for a ruling of that sort, the issuance of the mandate

1    following the disposition of the appeal, and we think the Ninth

2    Circuit did not -- did not remand or indicate, you know,

3    restoration or expansion of the injunction.  It just -- it

4    contemplated further factual development while it considers the

5    order that is now on appeal.

6         **THE COURT:**  The Government cites in its opposition

7    several cases in which appellate courts chided or reversed

8    district courts because they had -- the district courts in

9    those cases had taken steps to modify a previously-issued

10   injunction; right?  I mean, you cite several cases in which

11   that happened.

12        My question for you is isn't it true that with regard to

13   every single one of those cases -- isn't it true that with

14   regard to none of those cases did the Court of Appeal do as it

15   did here where it expressly said the district court has

16   jurisdiction to consider that question?

17        I unfortunately didn't bring the note in front of me.  I

18   wanted to focus on three of those cases in particular.  But are

19   there -- I will just ask you about all the cases in your brief.

20   Are there any cases in which the appellate court said to the

21   district court, "Please take a look at this question," and then

22   the district court did something with the injunction, and the

23   appellate court said, "You shouldn't have done that"?

24        **MR. STEWART:**  I can't summon to mind one, Your Honor.

25        The point I would emphasize here is that we have kind of

an interesting posture situation where it's not just an appeal
is pending and kind of awaiting the normal course.  We have a
stay that -- that -- that affected the operation of the
injunction that this district court ruled.

So in a way, it's kind of like, look, the appellate court
said here is an error.  We're going to identify it, and we're
going to explicitly say in the interests of moving things
along, however you want to describe it, the district court can
still do fact-finding.

So I think it could be a response to the situation that
resulted from the Ninth Circuit stay.

**THE COURT:**  It's possible that you and I and
Mr. Gelernt all agree on this thing I'm about to say, which is
there is some ambiguity in the direction that was provided by
the Ninth Circuit.  Do you disagree with that?

**MR. STEWART:**  I'd say the Ninth Circuit could have --
I mean, it could have said more.  I don't think there is
ambiguity as to the granting of authority to issue the
injunction, Your Honor.  And I would add -- and we do cite
cases to this effect, that when -- if there is a situation
where the scope of a remand is unclear, it's a situation where
the district court needs to stay its hand, so I would emphasize
that if that's a point that all would agree on.

**THE COURT:**  Well, I -- you can agree or not agree, but
I think -- I think that there -- neither you nor the plaintiffs

1   would have spilled so much ink if the direction from the Ninth

2   Circuit was as clear as it could possibly be.

3        So I think that means, by definition, there is some

4   ambiguity.  And I'm just wondering if it's possible that what

5   they wanted was for the -- this Court to examine -- to develop

6   the record, to then examine the more-developed record in its

7   totality, and just affirm its -- or not -- its prior nationwide

8   injunction, if that's a possibility, but it's also possible

9   that all they wanted was an indicated ruling under 62.1.

10       What would the harm be in the Court issuing an order

11  saying, "This is what I'm doing, but if all you wanted was an

12  indicated ruling under 62.1, please consider it in that

13  posture."  Wouldn't that solve all these problems, and that way

14  one of you -- whichever one of you is right gets what he or she

15  wants?

16       **MR. STEWART:**  I mean, I think -- I guess I have not --

17  I'm not sure what all would follow that, Your Honor, but it

18  sounds like there is a risk there.  If they -- if the Court

19  were to issue a ruling changing -- expanding injunctive relief

20  or that sort of thing, it could potentially precipitate another

21  round of emergency filings and all that stuff.  The indicative

22  ruling procedure --

23       **THE COURT:**  But how could I possibly expand it?  I

24  issued a nationwide injunction.  What is the case that says

25  that I am now limited in my own consideration to something

1    other than the order I previously issued?  What is the case

2    that says that?

3         MR. STEWART:  I think it's the body of cases, *Small* --

4    these other cases that lay down the rule that when an order is

5    on appeal --

6         THE COURT:  Yes.

7         MR. STEWART:  -- the validity and scope of that order

8    is jurisdiction, authority, you know, whichever word sort of

9    fits here, I understand, Your Honor -- is with -- is with the

10   Court of Appeals, and that rule applies to make this Court

11   unable, without square direction from the Ninth Circuit --

12        THE COURT:  Just tell me what your best case is.  I

13   will reread that case when I get off the bench.

14       What's your best case on this point?  It's foundational to

15   everything else we're doing.

16        MR. STEWART:  I mean, I think -- I think the *McClatchy*

17   case is a good one, Your Honor.  The *Small* case makes the point

18   well.

19        THE COURT:  I've really done a terrible job of living

20   up to my promise to not ask that many questions of you.  So why

21   don't I just stay my hand for the moment.  I'll just let you

22   finish making the argument that you came to make, and then if I

23   have more questions, I will ask them at the end of that.

24        MR. STEWART:  Happy to proceed, Your Honor.

25       I would say -- and this will be in response to one of --

one of Your Honor's questions to my friend -- that I think that the Ninth Circuit's -- what it faulted the injunction order's analysis on was twofold and I think two independent points. One was not -- not considering -- and this is at page 5 of the ruling -- not considering whether nationwide relief was necessary to remedy the harms, but then it added, you know, as a separate and additional point -- I think that gets to Your Honor's first point about just, you know, addressing and walking through the different considerations in evidence.  But then the Court said "and," and then based on the record before it, it didn't believe a nationwide injunction was limited, so it really, I think, goes beyond the amount of explanation or consideration and to just the absence of an evidentiary showing.

     And this leads me into the -- the part of my, for lack of a better word, merits argument, Your Honor, beyond the jurisdictional points we've covered, and that's the new declarations submitted by the plaintiffs here, they don't change anything.  They don't carry the plaintiffs' tremendous burden for exceptional -- for an exceptional expansion of injunctive relief, let alone an exceptional nationwide injunction yet again.

     I mean, they're essentially a repackaging, a representation of the arguments they already made.  And we already knew that Law Lab, Al Otro Labo, were operating in

different parts across the country, in Mexico; that they

represented people outside the Ninth Circuit; that they had

these different projects.  We knew all of those things.

    Now the plaintiffs have maybe reframed or added a little

bit of emphasis, but we knew that the operations were

nationwide, and the Ninth Circuit still deemed the record

insufficient.

    To respond to a couple -- I will begin by saying,

Your Honor, I -- the guidance put out which, you know --

does -- does -- eliminates a great number of the harms here,

and it's really -- really quite clear about how clear and I

think brings across the point well.  But I'll say that the

approach of the plaintiffs coming forward and identifying

actual clients subject to the rule would eliminate a vast swath

of their harms.

    The plaintiffs acknowledge in their reply brief that they

are not -- they say they're not huge organizations.  They --

some of their declarations are -- identify the small numbers of

clients some of them represent.  It would not be an onerous

burden to say, "Look, here are the folks we have identified as

actual clients.  Don't subject them to the rule."  That would

provide complete relief to them, and it would get rid of most

of their concerns right off the bat.  That would address the

issue of individuals outside the Ninth circuit.  And, again,

they're still -- with respect to those individuals, there are

1    still other problems, Your Honor.

2         Again, the Ninth Circuit Motions Panel knew about

3    operations outside the Ninth Circuit.  A lot of these things --

4    these claims about people outside the Ninth Circuit are

5    speculative.  We still don't have the plaintiffs coming forward

6    with any evidence of actual individual clients.  They've had

7    the opportunity many times to do so.  They know the Government

8    emphasizes that that's the proper approach.

9         **THE COURT:**  Does it say anywhere in the Ninth

10   Circuit's Motions Panel's order that they believe either --

11   that they conclude either that the plaintiff organizations

12   would not suffer any harm outside the Ninth Circuit or that

13   they believe that less than a nationwide injunction would

14   address any harm to those organizations that they suffer

15   outside the Ninth Circuit?

16        I mean, you're doing what I would do if I were you.  You

17   are putting as much weight as you think you possibly can on the

18   completeness of the existing record at the moment of appeal.

19   I'm trying to figure out how much weight it will really bear.

20        So my question for you is I don't remember the Ninth

21   Circuit addressing that subject anywhere.  Do you?

22        **MR. STEWART:**  I -- I -- I'm not sure I completely

23   grasp which formulation, Your Honor, but I think the key line

24   for me -- and maybe I can just read this off and you can tell

25   me where I may be missing -- crossing -- the point you're

1    asking, Your Honor, is the page 5: "And based on the limited
2    record before us, we do not believe a nationwide injunction is
3    justified."  That's what I'm focusing on.

4        We don't have a record showing that a nationwide
5    injunction is justified, and I'm saying all that has been added
6    since then doesn't make up for that shortfall.  We still don't
7    have individual aliens.  We still don't know --

8        **THE COURT:**  Well, let me just ask you, I get the
9    argument the record is not that different.  I get that
10   argument.

11       How does an injunction that isn't nationwide completely
12   address the harm to the plaintiffs?  So, in other words,
13   putting that "Hey, Judge, the record is not that different"
14   point to one side, let's assume that I agree with you and I
15   say, "Okay, I've looked at this record, that plaintiffs got the
16   chance that the Ninth Circuit gave them, and I have nothing
17   further to say on this topic, and I think we ought to just
18   allow the injunction to stay in force only within the Ninth
19   Circuit, as the Motions Panel ruled."

20       How would that injunction completely address the harm to
21   these plaintiffs?

22       **MR. STEWART:**  It would -- it would demonstrate any
23   harms that they have been able to show, Your Honor.  They could
24   perhaps show some out-of-circuit harms by bringing forth some
25   actual clients.  They have declined to do that, and it's their

1    burden.  Therefore --

2         **THE COURT:**  But how is that -- how are you answering

3    the question?  I previously found in the first East Bat

4    Sanctuary case and again in this case that these organizations

5    suffered organizational harms that were not tied to any

6    particular client, and that finding has now been either

7    explicitly or implicitly affirmed twice, so they are not

8    required to show that in order to show sufficient

9    organizational harm for purposes of both standing and the

10   issuance of an injunction.

11        And so the question is those sufficient organizational

12   harms, if they are being suffered outside the Ninth Circuit, do

13   you dispute that those harms are being suffered, or do you

14   believe that a Ninth-Circuit-only injunction addresses those

15   harms?  Don't you have to take one of those two positions?

16        **MR. STEWART:**  I mean, I think the difficulty,

17   Your Honor, is that as the Government explained in its

18   application to the Supreme Court, we think there are some --

19   are flaws even with a circuit-limited injunction because it's

20   not truly tailored to the plaintiffs' remedy.  So it's

21   difficult to kind of endorse a circuit-wide approach, which is

22   why I am emphasizing that the client-by-client approach is the

23   sensible one to address the harms.

24        What I would argue in response to Your Honor's --

25        **THE COURT:**  I want to be clear right now, the Supreme

1   Court has not spoken on this question.  And of course once they

2   do, that will be the final word.  But until that happens, we

3   have the harms that I just identified, and you can say, "I

4   don't like that analytical structure," and you're entitled to

5   that opinion, but I'm giving you what in tort law we would call

6   "the last clear chance" to explain to me how a

7   less-than-nationwide injunction solves these harms, either

8   because it does solve them or because the harms aren't real,

9   and I am limiting myself to the harms that have been identified

10  in this Court's and the Ninth Circuit's prior orders.

11      **MR. STEWART:**  And what I would say is that those are

12  not cognizable harms for these organizations.  I recognize that

13  the Court may disagree and is indicating disagreement with that

14  approach, but what I'm saying is that the only cognizable harms

15  that the plaintiffs can press here are the ones to actual

16  bona fide clients.

17      The other harms they claim could be addressed in -- to the

18  extent they exist at all, could be addressed in the ways that

19  the Government has proposed.

20      The key thing I would just come back to, Your Honor -- and

21  I recognize what Your Honor is saying -- is that the plaintiffs

22  have not carried their burden to show that a nationwide

23  injunction is necessary to address their harms.  And I think

24  that's -- that's a critical fault that the Ninth Circuit

25  Motions Panel found here, and it's, I think, very, very

1   important to heed, and we just don't have that showing, that

2   carrying of the burden outside the Ninth Circuit that the

3   plaintiffs were obliged to do if the Court were to have

4   jurisdiction.

5           **THE COURT:**  All right.

6           **MR. STEWART:**  Just briefly, Your Honor, I will note --

7   I just want to make sure that I responded to each of

8   Mr. Gelernt's points.

9       (Pause in proceedings.)

10          **MR. STEWART:**  I think I'll save remaining for

11  rebuttal, if I have anything else, Your Honor.

12          **THE COURT:**  Very good.  Thank you, Mr. Stewart.

13      Mr. Gelernt.

14          **MR. GELERNT:**  Your Honor, I actually do not have more.

15  The only thing I would just mention on the jurisdictional

16  thing --

17          **THE COURT:**  *McClatchy* is not a bad case for you.

18  There is a case called *Mayweathers* that distinguishes it for

19  the reasons that matter.

20          **MR. GELERNT:**  Right.

21      I would just say if the Government is asking you to narrow

22  the injunction to client-specific, you couldn't have

23  jurisdiction to do that but not jurisdiction to reinstate your

24  prior order.

25      Unless the Court has other questions, I think I will just

1    sit down then.

2              **THE COURT:**  I don't have.

3              **MR. GELERNT:**  Okay.

4              **THE COURT:**  Thank you, Mr. Gelernt.

5       Mr. Stewart, nonetheless, you can make the points that you

6    were going to make.

7              **MR. STEWART:**  Thank you, Your Honor.

8       I'm sure Your Honor is anticipating it, but I wasn't

9    suggesting the Court had jurisdiction.  I was just saying the

10   problem with the -- a correctly-tailored injunction, in the

11   Government's view, would be one of client focus, but of course

12   the Court knows that from our briefing and our argument.

13      I would just reemphasize the point, Your Honor, that at

14   most, the Court -- at most what the Court can do is indicate

15   how it would rule under a further development of the record.

16   The plaintiffs --

17             **THE COURT:**  Unlikely to do it in the alternative for

18   the reasons I explained earlier.  I don't want -- whatever view

19   I have of what the Ninth Circuit said is actually fairly clear

20   now, and it will only clarify itself further for me as I'm

21   finishing this order, but I might be wrong, whichever way I go,

22   and so I think I need to give them the option of deciding what

23   it is they said because, of course, they're the ones who said

24   it.

25      So that indicative ruling will be part of what I say.

1          **MR. STEWART:**  Understood, Your Honor.

2      Aside from that, I would just reemphasize the points about

3   burden.  The record really hasn't changed here, Your Honor, and

4   I think given the Ninth Circuit's order and its view of the

5   limited record not justifying an injunction, the Court still is

6   not at a point where it could restore or broaden the

7   injunction, even if it had jurisdiction.

8          **THE COURT:**  Let me just say one more thing out loud

9   that I'm just remembering, and I will ask Mr. Gelernt to

10  respond to this, too.

11     There is a little back and forth in your respective briefs

12  about the question of vacatur of that regulation, and I think

13  that is sort of a distraction, and here is why.

14     First of all, I think that that's what the injunction

15  does, and it's the right thing to do.

16     There is going to be something for each of you in what I'm

17  about to saying.

18     That's just the right thing to do in this situation.  The

19  cases say that when there are the kind of Administrative

20  Procedures Act problems that are alleged here, that vacatur is

21  the right result.  But that doesn't really tell you anything

22  about the scope of the injunction.

23     Vacatur is either effective within the Ninth Circuit or

24  it's effective nationwide, so even though -- even though I

25  am -- I am just as firmly convinced today as I was on any other

1    day that vacatur is the right remedy, I actually don't think

2    that helps the plaintiffs on this motion because I just don't

3    think the question is relevant.  And so I'm likely to give

4    these points fairly short shrift in whatever order I issue, but

5    I just wanted to check with both of you to make sure I'm not

6    missing something.

7          **MR. STEWART:**  Sure, Your Honor.

8        I think our key point is that it's a -- and I think

9    Your Honor may have been --

10         **THE COURT:**  You suggest in your brief that perhaps the

11   Court ought to just leave the regulation in place pending

12   appeal.

13       First of all, that isn't what I did in my prior order, but

14   putting that to one side, I just think on the merits, that's

15   not right.  But it doesn't affect whether you or Mr. Gelernt

16   win today.

17         **MR. STEWART:**  I mean, I think there is still a

18   question, Your Honor, about when you're doing a set-aside

19   remedy, the scope of that remedy -- we say in our brief -- the

20   APA is silent on that.  It doesn't say it has to be facial or

21   as to everyone or universal.  And what we've explained in our

22   briefs is the proper approach in an APA case is one that is

23   limited to the parties.  And -- but I take the point that the

24   word "vacatur," the label, may not solve it alone, but --

25         **THE COURT:**  I think you're right.  The question of

1   scope is not addressed by these APA cases.  I just -- I just --

2   anyway, I'm just repeating myself.

3       Mr. Gelernt, do you disagree with what I just said?  I

4   just don't think it helps you very much.

5       **MR. GELERNT:**  No, Your Honor.  The only thing I would

6   just add is I think Judge Bybee thought it was an additional

7   factor, but I don't think it's dispositive for the reasons that

8   you're outlining.

9       **THE COURT:**  I think that might be right.  It's a

10  factor for the Court to consider, but it doesn't get you all

11  the way there.

12      **MR. GELERNT:**  I think that's absolutely right.

13      **THE COURT:**  It comes back to the scope of the harms

14  and what is needed to address the harms.

15      **MR. GELERNT:**  I think that is absolutely right,

16  Your Honor.

17      The only thing I wanted to just say about the indicative

18  ruling is I think the approach that Your Honor is contemplating

19  about letting the Ninth Circuit say, "Well, we didn't actually

20  remand it and so you're going to have the indicative part in

21  there," I think that's the right approach.

22      The only thing I would say is if you're going to do it, to

23  say the court can -- the Ninth Circuit can treat it as an

24  indicative ruling rather than formally making it an indicative

25  ruling in the alternative because that would trigger us filing

1    a whole bunch of papers that may just make things more

2    complicated.

3         **THE COURT:**  Well, we all have a long history with each

4    other now.  We're coming up on a year.

5         You know, there are these radio and television shows in

6    which you have two very well-spoken persons from opposite

7    political or judicial perspectives sort of going at it, and

8    whenever all this is done, the two of you might consider having

9    such a show.

10        But what I want to say is that I try not -- I have tried

11   typically not to tip my hand too far during these hearings, and

12   I have followed that same path today.  But I do -- I will just

13   say, I do think that I have the authority to make a clear

14   ruling in favor of my prior injunction as it was issued if I

15   believe that the record supports that ruling.  And so if I rule

16   that the record is adequate, I'm likely to say that.

17        And what I will say as an indicative ruling in that

18   instance is that it's a backup position, and so I wouldn't be

19   making a formal indicative ruling.  I would be inviting the

20   Ninth Circuit to treat it that way if they felt that the

21   authority that they had given me was lesser than what I had

22   concluded.

23        **MR. GELERNT:**  Under --

24        **THE COURT:**  I want to be very respectful of them, but

25   I also tend to think the law on this point is actually pretty

1   clear.

2           **MR. GELERNT:**  Understood, Your Honor.  Thank you.

3           **THE COURT:**  Gentlemen, if there is nothing further, I

4   thank you again for your arguments.  I will take this motion

5   under submission.  I will give it my careful consideration.

6       My goal would be to get something out tomorrow, but it

7   might be over the weekend, and, as always, I thank you both for

8   your very thoughtful briefs and your arguments this morning.

9       Court is in recess.

10                  (Proceedings adjourned at 10:06 a.m.)

1

2

3                    CERTIFICATE OF REPORTER

4          I certify that the foregoing is a correct transcript

5     from the record of proceedings in the above-entitled matter.

6

7     DATE:    Friday, September 6, 2019

8

9     *Pamela Batalo Hebel*

10    _____
      Pamela Batalo Hebel, CSR No. 3593, RMR, FCRR
11    U.S. Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25