UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EAST BAY SANCTUARY COVENANT, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM BARR, et al.,<br><br>Defendants. | Case No. 19-cv-04073-JST<br><br>**ORDER GRANTING MOTION TO RESTORE NATIONWIDE SCOPE OF INJUNCTION**<br><br>Re: ECF No. 57 |

Now before the Court is Plaintiffs' motion "to consider supplemental evidence and restore the nationwide scope of injunction." ECF No. 57. For the reasons set forth below, the Court will grant the motion.

I.  **BACKGROUND**

The factual background to this case is discussed at length in the Court's preliminary injunction order, and the Court will not repeat those details here except as necessary to explain its ruling on the present motion.

On July 16, 2019, the Department of Justice ("DOJ") and the Department of Homeland Security ("DHS") published a joint interim final rule, entitled "Asylum Eligibility and Procedural Modifications" (the "Rule" or the "third country transit bar"). The effect of the Rule is to categorically deny asylum to almost anyone entering the United States at the southern border if he or she did not first apply for asylum in Mexico or another third country.

Plaintiffs in this case – East Bay Sanctuary Covenant, Al Otro Lado, Innovation Law Lab, and Central American Resource Center (the "Organizations") – are legal and social service organizations that provide assistance, advocacy, and legal services to undocumented persons. On July 17, 2019, the Organizations filed a motion for temporary restraining order to prevent the Rule

from taking effect. ECF No. 3. By consent of the parties, the motion was converted to one for preliminary injunction, which the Court granted on July 24, 2019. ECF No. 42. The injunction prevented the Defendants[1] "from taking any action continuing to implement the Rule" and ordered them "to return to the pre-Rule practices for processing asylum applications." *E. Bay Sanctuary Covenant v. Barr ("East Bay IV")*, 385 F. Supp. 3d 922, 960 (N.D. Cal. 2019).[2] Among other things, the Court found that "the Organizations [had] . . . established a sufficient likelihood of irreparable harm through 'diversion of resources and the non-speculative loss of substantial funding from other sources.'" *Id.* at 957-58 (quoting *E. Bay Sanctuary Covenant v. Trump ("East Bay III")*, 354 F. Supp. 3d 1094, 1116 (N.D. Cal. 2018)).

Defendants appealed that order to the Ninth Circuit and moved for a stay pending appeal. The Ninth Circuit denied the motion for stay pending appeal, but only "insofar as the injunction applies within the Ninth Circuit." *E. Bay Sanctuary Covenant v. Barr ("East Bay V")*, --- F.3d ---, No. 19-16487, 2019 WL 3850928, at *1 (9th Cir. Aug. 16, 2019). The court "grant[ed] the motion for stay pending appeal insofar as the injunction applies outside the Ninth Circuit, because the nationwide scope of the injunction is not supported by the record as it stands." *Id.* The Ninth Court also ordered that this Court "retains jurisdiction to further develop the record in support of a preliminary injunction extending beyond the Ninth Circuit." *Id.* at *3. That court did not disturb this Court's prior findings regarding the nature of the harms the Organizations were likely to suffer if the Rule were given effect.

The Organizations then filed this motion "to consider supplemental evidence and restore

---

[1] Defendants in this action are Attorney General William Barr; the Department of Justice ("DOJ"); the Executive Office for Immigration Review ("EOIR"); James McHenry, the Director of EOIR; the Department of Homeland Security ("DHS"); Kevin K. McAleenan, the Acting Secretary of DHS; U.S. Citizenship and Immigration Services ("USCIS"); Kenneth T. Cuccinelli, the Acting Director of USCIS; Customs and Border Protection ("CBP"); John P. Sanders, the Acting Commissioner of CBP; Immigration and Customs Enforcement ("ICE"); and Matthew T. Albence, the Acting Director of ICE.

[2] In its prior order, the Court referred to the district court's temporary restraining order in Case No. 18-cv-06810-JST as "*East Bay I*," to the Ninth Circuit's order denying a stay of that order as "*East Bay II*," and the district court's order issuing a preliminary injunction as "*East Bay III*." *See generally id.* Consistent with that nomenclature, the Court therefore refers to its July 24, 2019 order in this case as "*East Bay IV*" and the Ninth Circuit's order partially denying and partially granting a stay of that order as "*East Bay V*."

the nationwide scope of injunction," ECF No. 57, as well as a supplemental brief ordered by the Court, ECF No. 63.  The Government filed an opposition, ECF Nos. 65, 66, and the Organizations filed a reply, ECF No. 67.[3]

After the Organizations filed their motion, but before the Government filed its opposition, three of the defendants – EOIR, USCIS, and ICE – issued guidance regarding the implementation of the Court's injunction as modified by the Ninth Circuit's stay order.  The guidance requires employees of those agencies to treat individuals as covered by the injunction if: "(1) the alien was apprehended in the Ninth Circuit, (2) the alien is detained in the Ninth Circuit, or (3) the interview or adjudication itself occurs in the Ninth Circuit."  ECF No. 65-1 (EOIR Guidance) at 1; *see also* ECF No. 65-2 (USCIS Guidance) at 1 ("the IFR should not apply to any [credible fear] determination or asylum adjudication in which: (1) the alien was apprehended in the jurisdiction of the Ninth Circuit . . . (2) the alien is detained in the jurisdiction of the Ninth Circuit; or (3) the interview itself occurs in the jurisdiction of the Ninth Circuit"); ECF No. 65-3 (ICE Guidance) at 1 (ICE "will consider the PI to apply in situations where the alien: (i) was initially apprehended by DHS within the jurisdiction of the Ninth Circuit; (ii) is detained within the Ninth Circuit at the time of adjudication of the asylum application; or (iii) was initially located outside the Ninth Circuit but whose asylum application is subsequently adjudicated within the Ninth Circuit").

The Court conducted a hearing on the motion on September 5, 2019.

## II.     JURISDICTION

The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.  However, the parties dispute the nature and extent of the Court's jurisdiction to decide the present motion.  The Organizations contend that this Court retains jurisdiction to further develop the record and affirm or disaffirm the nationwide scope of its injunction order.[4]  ECF No. 67 at 17-21.

---

[3] With leave of court, a consortium of non-profit organizations and law school clinics filed an amicus curiae brief in support of the Organizations' motion.  ECF Nos. 60, 61.

[4] Defendants have previously agreed with this characterization.  *See* Defendants' Application to the United States Supreme Court for Stay Pending Appeal, *Barr v. E. Bay Sanctuary Covenant*, Case No. 19A230 (Aug. 26, 2019) (describing the Ninth Circuit's order in *East Bay V* as "stat[ing] that the district court retained jurisdiction to further develop the record and to re-extend the injunction beyond the Ninth Circuit.").

1   Defendants contend that the Court lacks jurisdiction to restore the nationwide scope of the
2   injunction, and that the Court at most has jurisdiction to issue an indicative ruling pursuant to Rule
3   62.1 of the Federal Rules of Civil Procedure. ECF No. 65 at 12-16. The parties' positions turn on
4   their competing interpretations of the Ninth Circuit's language that "the district court retains
5   jurisdiction to further develop the record in support of a preliminary injunction extending beyond
6   the Ninth Circuit." *East Bay V,* 2019 WL 3850928, at *1.

The normal rule is that "[o]nce a notice of appeal is filed, the district court is divested of jurisdiction over the matters being appealed." *Nat'l Res. Def. Council v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001). This rule is "judge-made" rather than jurisdictional, designed to "promote judicial economy and avoid the confusion that would ensue from having the same issues before two courts simultaneously." *Id.* One exception to this rule is when the court of appeals orders a limited remand to the district court. *See* Wright & Miller, *Retained Jurisdiction*, 16 Fed. Prac. & Proc. Juris. § 3937.1 (3d ed.) ("Whatever the reason, the courts of appeals often have retained jurisdiction while making a limited remand for additional findings or explanations."). Such remands often come with specific instructions. *See, e.g.*, *Friery v. Los Angeles Unified Sch. Dist.*, 448 F.3d 1146, 1147 (9th Cir. 2006) (remanding to district court "for the limited purpose of finding facts and making a determination of the plaintiff's standing" and empowering the court to "entertain any appropriate motions" and "enter an appropriate order" if it found abstention or dismissal appropriate). Here, although the Ninth Circuit did not provide instructions as to what action the Court should take if it finds that the supplemented record supports a nationwide injunction, the most plausible reading of *East Bay V*'s language is that it grants the Court jurisdiction to consider the augmented record in its totality and, based on that record, affirm or disaffirm the nationwide scope of its prior order. Several considerations support this conclusion.

First, there is a longstanding exception to the divestiture rule, providing that a "district court retains jurisdiction during the pendency of an appeal to act to preserve the status quo." *Sw. Marine Inc.*, 242 F.3d at 1166. This exception is codified in Federal Rule of Civil Procedure 62(d), which allows a district court to "suspend, modify, restore, or grant an injunction" while an appeal of a prior injunction is pending. *Id.*; Fed. R. Civ. Proc. 62(d). Any action taken pursuant to

4

Rule 62(d) "may not materially alter the status of the case on appeal." *Sw. Marine Inc.*, 242 F.3d at 1166 (citation omitted).

For the purposes of Rule 62(d), "status quo" means the state of affairs at the time the appeal was filed, i.e., the nationwide injunction originally issued by the Court. *Mayweathers v. Newland*, 258 F.3d 930 (9th Cir. 2001) is instructive. In that case, a prison appealed a preliminary injunction forbidding it from disciplining inmates for missing work to attend religious services. *Id.* at 933. Because the injunction expired under the terms of the Prison Litigation Reform Act, the district court entered a second, identical injunction while the appeal was pending. *Id.* at 934. The Ninth Circuit held that the district court had jurisdiction to issue the second injunction under Rule 62(d)[5] because it "neither changed the status quo *at the time of the first appeal* nor materially altered the status of the appeal." *Id.* at 935 (emphasis added); *see also Sw. Marine*, 242 F.3d at 1167 (affirming district court's modification of injunction while appeal was pending because it "left unchanged the core questions before the appellate panel"). The *Mayweathers* court noted that the case involved "defendants who were subject to an injunction at the time of appeal" and that "the renewed injunction was identical to the original one." 258 F.3d at 935.

Defendants cite *McClatchy Newspapers v. Cent. Valley Typographical Union No. 46*, 686 F.2d 731 (9th Cir. 1982) to support their argument that the Court lacks authority to consider the Organizations' motion, ECF No. 65 at 13, but that case is not helpful. In *McClatchy Newspapers*, a publisher appealed a district court's confirmation of an arbitration award in favor of a union. 686 F.2d at 732. While the appeal was pending, the district court entered an amended judgment that swept more broadly than the original, this time requiring the publisher to return certain employees to their positions. *Id.* at 733. The Ninth Circuit held that, "by ordering the publisher to reinstate employees *who were not working when the appeal was filed*, the amended judgment required a change from the status quo" and thus fell outside the bounds of Rule 62. *Id.* at 735 (emphasis added). Notably, in *Mayweathers*, which Defendants do not discuss, the court distinguished *McClatchy Newspapers*, 258 F.3d at 935 finding that unlike in that case, the

---

[5] The *Mayweathers* court, like other courts cited in this section, refers to Rule 62(c). Rule 62 was reorganized in 2018, and the pertinent subsection is now 62(d).

1   *Mayweathers* injunction "involve[d] defendants who were subject to an injunction at the time of
2   appeal, and the renewed injunction was identical to the original one." 258 F.3d at 935-36.
3         As in *Mayweathers*, the injunction now before the Court is the same as the one the Court
4   originally issued. Should the Court agree with the Organizations that the supplemented record
5   demands restoration of the injunction's nationwide scope, it would not, as Defendants allege, be
6   entering a "new injunction." ECF No. 65 at 14 (emphasis omitted). Rather, it would be using its
7   Rule 62(d) power to preserve the status quo at the time the government appealed the injunction. If
8   anything, the Court would be entering the "old injunction." The "core questions before the
9   appellate panel" – the propriety and scope of the preexisting nationwide injunction – would be
10  unchanged. *Sw. Marine*, 242 F.3d at 1167.
11        This conclusion is also consistent with the case law holding that a court has the authority to
12  issue additional factual findings while an appeal is pending. *See East Bay III*, 354 F. Supp. 3d at
13  1105 n.3 (noting that a district court "may act to assist the court of appeals in the exercise of its
14  jurisdiction . . . such as by fil[ing] written findings of fact and conclusions of law in support of the
15  preliminary injunction order on appeal") (quoting *Davis v. United States*, 667 F.2d 822, 824 (9th
16  Cir. 1982) and *Thomas v. County of Los Angeles*, 978 F.2d 504, 507 (9th Cir. 1992), *as amended*
17  (Feb. 12, 1993)) (quotation marks omitted). As well, it is consistent with the Ninth Circuit's
18  citation to the instructions issued by that court's merits panel in *City & County of San Francisco v.*
19  *Trump*:

> Because the record is insufficiently developed as to the question of the national scope of the injunction, we vacate the injunction to the extent that it applies outside California and remand to the district court for a more searching inquiry into whether this case justifies the breadth of the injunction imposed.

23  897 F.3d 1225, 1245 (9th Cir. 2018).
24        The Court thus concludes that it has jurisdiction to consider the Organizations' motion to
25  restore the nationwide scope of the injunction. Should the Ninth Circuit conclude otherwise,
26  however, the Court adds that, to the extent that the Organizations' motion may also be construed
27  as one for an indicative ruling under Rule 62.1, the Court would grant it.

III. **LEGAL STANDARD**

A district court has "considerable discretion in ordering an appropriate equitable remedy." *City & Cty. of San Francisco*, 897 F.3d at 1244. "Crafting a preliminary injunction is 'an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents.'" *California v. Azar*, 911 F.3d 558, 582 (9th Cir. 2018) (quoting *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017)). Injunctive relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 422 U.S. 682, 702 (1979). "Where relief can be structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown." *Bresgal v. Brock*, 843 F.2d 1163, 1170 (9th Cir. 1987). But in certain "exceptional cases," an injunction "is not necessarily made overbroad by extending benefit or protection to persons other than prevailing parties in the lawsuit . . . if such breadth is necessary to give prevailing parties the relief to which they are entitled." *City & Cty. of San Francisco*, 897 F.3d at 1244 (quoting *Bresgal*, 843 F.2d at 1170-71) (internal quotation marks omitted). The record must show, however, that nationwide relief is necessary to remedy plaintiffs' harms. *City & Cty. of San Francisco*, 897 F.3d at 1244 (vacating injunction to the extent it applied outside of California because "the record [was] not sufficiently developed on the nationwide impact of the Executive Order").

Recently, there has arisen in some quarters "a growing uncertainty about the propriety of universal injunctions."[6] *E. Bay Sanctuary Covenant v. Trump* ("*East Bay II*"), 932 F.3d 742, 779 (9th Cir. 2018). One concern is that nationwide injunctions "have detrimental consequences to the development of law and deprive appellate courts of a wider range of perspectives." *Azar*, 911 F.3d at 583. Another is "the equities of non-parties who are deprived the right to litigate in other

---

[6] Some writers also use the term "universal injunctions." *See* Amanda Frost, *In Defense of Nationwide Injunctions*, 93 NYU L. Rev. 1065, 1071 (2018) ("[N]o one denies that district courts have the power to enjoin a defendant's conduct anywhere in the nation (indeed, the world) as it relates to *the plaintiff*; rather, the dispute is about *who* can be included in the scope of the injunction, not *where* the injunction applies or is enforced. For that reason, some scholars refer to injunctions that bar the defendant from taking action against nonparties as 'universal injunctions,' 'global injunctions,' or 'defendant-oriented injunctions.'") (citations omitted).

7

forums." *Id.* Lastly, "[n]ationwide injunctions are . . . associated with forum shopping, which hinders the equitable administration of laws." *Id.* Nonetheless, there is a robust jurisprudence supporting the issuance of nationwide injunctions, especially in immigration cases. *See, e.g.*, *East Bay II*, 932 F.3d at 779 ("In immigration matters, we have consistently recognized the authority of district courts to enjoin unlawful policies on a universal basis.") (citing *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 511 (9th Cir. 2018), *cert. granted*, 139 S. Ct. 2779 (2019)). In *East Bay II*, for example, the Ninth Circuit upheld a nationwide injunction in circumstances very similar to those present here, because "the Government raise[d] no grounds on which to distinguish this case from our uncontroverted line of precedent" and "'fail[ed] to explain how the district court could have crafted a narrower [remedy]' that would have provided complete relief to the Organizations." *Id.* (quoting *Regents*, 908 F.3d 476 at 512).

## IV. DISCUSSION

The Court previously found that the Organizations had "established a sufficient likelihood of irreparable harm through 'diversion of resources and the non-speculative loss of substantial funding from other sources.'" *East Bay IV*, 385 F. Supp. 3d at 957-58 (citing *East Bay III*, 354 F. Supp. 3d at 1116). The question now before the Court is whether those harms can be addressed by any relief short of a nationwide injunction. The answer is that they cannot.

### A. A Nationwide Injunction Is Necessary to Provide Complete Relief

The primary reason a nationwide injunction is appropriate is that it is the only means of affording complete relief to the Organizations. As one commentator has observed, the principle that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Califano*, 422 U.S. at 702, "suggests that when a national injunction is needed for complete relief a court *should* award one," Samuel L. Bray, *Multiple Chancellors: Reforming the National Injunction*, 131 Harv. L. Rev. 417, 466 (2017) (emphasis in original). And as the Supreme Court has observed in analogous circumstances, "the scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class." *Califano*, 442 U.S. at 702. Accordingly, "[the Ninth Circuit has] upheld nationwide injunctions where such breadth was necessary to remedy a plaintiff's harm."

8

1    *East Bay V*, 2019 WL 3850928, at *2.

2        *Bresgal v. Brock* provides an example. Plaintiffs in that case were the Northwest Forest
3    Workers Association and individual migrant agricultural workers who worked in forestry on a
4    seasonal basis. *Bresgal*, 843 F.2d at 1165. They sought, and the district court granted, a
5    declaratory judgment that the Migrant and Seasonal Agricultural Workers Protection Act applied
6    to forestry workers and an injunction requiring the Secretary of Labor to enforce the Act in the
7    industry. *Id.* The Ninth Circuit affirmed the nationwide scope of the injunction, even though it
8    would impact labor contractors who were not parties to the suit, including contractors located
9    outside the Ninth Circuit. *Id.* at 1171. The court concluded that a nationwide scope was necessary
10   to provide the plaintiffs complete relief because "[m]igrant laborers who are parties to this suit
11   may be involved with contractors whose operations are concentrated elsewhere. Similarly, these
12   plaintiffs, as migrant laborers, may travel to forestry jobs in other parts of the country under the
13   supervision of labor contractors." *Id. See also Texas v. United States*, 787 F.3d 733, 769 (5th Cir.
14   2015) (refusing to narrow preliminary injunction of Deferred Action for Parents of Americans and
15   Lawful Permanent Residents (DAPA) to Texas or the plaintiff states due to "a substantial
16   likelihood that a partial injunction would be ineffective because DAPA beneficiaries would be free
17   to move between states"); *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501-02
18   (9th Cir. 1996) (upholding statewide injunction where 14 named plaintiffs were spread across four
19   counties because "plaintiffs would not receive the complete relief to which they are entitled
20   without statewide application of the injunction").

21       By contrast, a district court abuses its discretion when it grants a geographically broader
22   injunction than is necessary to prevent a plaintiff's injury. In *Azar*, for example, five plaintiff
23   states challenged the federal government's implementation of two interim final rules exempting
24   employers with religious and moral objections from the Affordable Care Act's contraceptive
25   coverage requirement. 911 F.3d at 566. The states claimed that enforcement of the rules would
26   cause them economic harm by forcing them to pay for contraceptive care for women whose
27   employers would otherwise cover it. *Id.* at 571, 581. The record established that enjoining
28   implementation of the rules within the plaintiff states would prevent this harm, but "it was not

developed as to the economic impact on other states." *Id.* at 584. Because a narrower injunction "would provide complete relief" to the plaintiff states, the court held that the district court abused its discretion by enjoining the rules nationwide. *Id. See also City & Cty. of San Francisco*, 897 F.3d at 1244 (remanding to the district court for reexamination of the nationwide scope of a permanent injunction where plaintiff counties' "tendered evidence [wa]s limited to the effect of the [executive order] on their governments and the State of California").

The circumstances here are much more like those in *Bresgal* than those in *Azar*. Some of the plaintiff Organizations serve clients within and outside of the Ninth Circuit. In addition to representing individuals seeking asylum, three of the organizations serve individuals who are not retained clients by, for example, offering asylum law training for pro bono lawyers and pro se asylum workshops for immigrants. ECF No. 67 at 8-9, 11; ECF No. 3-2 ¶ 7. Under the current bifurcated asylum regime, at least two of the Organizations must expend significant resources determining which of their clients are subject to which regime and adjusting their legal services accordingly, as well as revising centralized resources to reflect the complicated landscape of the limited injunction. A nationwide injunction is thus necessary to provide complete relief from the diversion of resources harms the Court identified in its order granting the first preliminary injunction. *East Bay IV*, 385 F. Supp. 3d at 957.

A discussion of two of the plaintiffs' circumstances makes this point. Plaintiff Innovation Law Lab ("Law Lab") is a nonprofit focused on "improv[ing] the legal rights of immigrants and refugees in the United States." ECF No. 3-4 ¶ 2. Law Lab has offices in California, Oregon, Missouri, Texas, and Georgia. ECF No. 57-2 ¶ 4. Law Lab offers workshops and support to noncitizens and pro bono attorneys in Georgia, Kansas, Missouri, North Carolina, and Oregon, as well as to legal service providers at immigrant detention centers throughout the country. *Id.* ¶ 5. Law Lab can offer such a geographically diverse set of services partly thanks to template materials it has developed to assist asylum seekers. *Id.* ¶ 7. Law Lab also directly represents persons applying for asylum inside and outside the Ninth Circuit. *Id.* ¶ 5. While many of these clients cross the border in the Ninth Circuit, they "move between jurisdictions throughout the lifetime of their asylum case." *Id.* ¶ 16.

Law Lab will suffer a variety of harms if the third country transit bar goes into effect outside the Ninth Circuit. For example, it will have to redesign its workshops and templates and "devote significant time to re-training . . . volunteers on the new standards and how to screen for attendees who might be subject to the ban." *Id.* ¶¶ 7, 9. Its direct representation work will "become significantly more complicated and burdensome." *Id.* ¶ 15. Implementation of the Rule outside the Ninth Circuit would also adversely impact Law Lab's work within the Ninth Circuit by diverting resources to clients who are subject to the Rule. *Id.* ¶ 17. Because these clients will no longer be eligible for asylum, they will instead have to apply for withholding of removal or relief under the Convention Against Torture ("CAT"), which "have a higher standard of proof than asylum, do not allow for derivative applications, and are more time-consuming cases to handle." ECF No. 3-4 ¶ 17. As a result, Law Lab would be "forced to serve fewer people overall because of the increased time burden required for a subset of cases." ECF No. 57-2 ¶ 17.

Plaintiff Al Otro Lado is a nonprofit whose mission is, in part, "to provide screening, advocacy, and legal representation for individuals in asylum and other immigration proceedings." ECF No. 3-3 ¶ 4. Al Otro Lado is based in California as well as Tijuana, Mexico. *Id.* ¶¶ 4, 8. It offers "legal orientation workshops" at its Tijuana office, "providing information about the U.S. asylum system to migrants who wish to seek asylum in the United States." *Id.* ¶ 5. Al Otro Lado "recruits and trains volunteers and pro bono attorneys" to assist with these workshops. *Id.* ¶ 6. A number of Al Otro Lado's clients end up crossing the border in Texas or New Mexico or later relocate (or are detained) outside the Ninth Circuit. ECF No. 57-4 ¶ 5. As a result, "[i]t is impossible for Al Otro Lado to know with certainty *ex ante* where a given asylum seeker whom [Al Otro Lado] serve[s] prior to their entry will ultimately enter the United States, or where they will end up once they are in the United States, or where a given asylum seeker whom [Al Otro Lado] serve[s] while in detention will end up if released from custody." *Id.* ¶ 8.

If the injunction is limited to the Ninth Circuit, it will force Al Otro Lado to provide a much broader range of advice to pre-entry asylum seekers to account for different outcomes based on where they choose to enter the country and travel within it. *Id.* at ¶ 9. This will require the expenditure of "significant organizational resources regarding training materials, staff time,

resources, and capacity . . . ." *Id.*; *see also* ECF No. 67 at 11.[7]

Defendants do not dispute this evidence or engage with the applicable law. Instead, they devote much of their argument to focusing on the lack of harm to identified asylum seekers. *See, e.g.,* ECF No. 65 at 7 ("Yet, despite multiple opportunities, Plaintiffs' counsel does not identify a single, bona fide client who suffers injury as a result of the rule, or explain how an injunction limited to such aliens would not cure their alleged injuries while this litigation proceeds."). But this is a strawman – the harm to the Organizations, not their potential clients, was the focus of the Court's injunction. *See East Bay IV*, 385 F. Supp. 3d at 957 ("Here, the Organizations have again established a sufficient likelihood of irreparable harm through diversion of resources and the non-speculative loss of substantial funding from other sources.") (citation and quotation marks omitted). And, rather than dispute that harm, Defendants disagree with Ninth Circuit law on organizational standing, *see* ECF No. 28 at 16 n.1; *East Bay IV*, 385 F. Supp. 3d at 937, and repeat their contention from earlier phases of this litigation that the organizational harms Plaintiffs allege are speculative, *see* ECF No. 65 at 23; ECF 28 at 32.[8] These issues have already been decided.

The Organizations have presented sufficient evidence that they will suffer organizational and diversion of resources harms unless the Rule is enjoined outside of, as well as within, the Ninth Circuit.[9] A nationwide injunction is thus "necessary to give prevailing parties the relief to which they are entitled." *City & Cty. of San Francisco*, 897 F.3d at 1244 (quoting *Bresgal*, 843 F.2d at 1170-71) (internal quotation marks omitted).

---

[7] Because the Court finds that a nationwide injunction is necessary to provide complete relief to Law Lab and Al Otro Lado, it need not examine the supplemental evidence provided by plaintiffs CARECEN and EBSC.

[8] Indeed, at the hearing on this motion, in response to a direct question from the Court, the Government did not dispute that (1) the Organizations would suffer harm if the Rule were applied outside the Ninth Circuit, and (2) that a nationwide injunction was necessary to remedy that harm. ECF No. 72 at 19-23.

[9] Defendants also argue that the Organizations' supplemental evidence does not go beyond the declarations that were already in the record at the time of the Ninth Circuit's stay. ECF No. 65 at 19. This is incorrect. While some of the material in the Organizations' five supplemental declarations is redundant with their original declarations, *compare* ECF Nos. 57-2, 57-3, 57-4, 57-5, 57-6 *with* ECF Nos. 3-2, 3-3, 3-4, 3-5, 3-6, 3-7, they have provided additional detail about where the organizations operate, how they train their staff and volunteers, and how the limited injunction will impact their operations.

12

### B. Additional Factors Supporting a Nationwide Injunction

The need to provide complete relief to the Plaintiffs, standing alone, is sufficient reason for the re-issuance of the nationwide injunction. In addition to that factor, however, three other factors support such relief.

First, a nationwide injunction is supported by the need to maintain uniform immigration policy. *See East Bay II*, 932 F.3d at 779 (collecting cases and stating that "[i]n immigration matters, we have consistently recognized the authority of district courts to enjoin unlawful policies on a universal basis"); *Regents of the Univ. of Cal.*, 908 F.3d at 511 (affirming nationwide injunction against the government's rescission of the Deferred Action for Childhood Arrivals (DACA) program based in part on "the need for uniformity in immigration policy"). While this factor may not, by itself, support the issuance of a nationwide injunction, it weighs in its favor.

Second, nationwide relief is supported by the text of the Administrative Procedure Act (APA), which requires the "reviewing court," "[t]o the extent necessary and when presented," to "hold unlawful and set aside agency action, findings, and conclusions" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." 5 U.S.C. § 706. The Ninth Circuit has cited this language in upholding a nationwide injunction of regulations that conflicted with the governing statute. *Earth Island Inst. v. Ruthenbeck*, 490 F.3d 687, 699 (9th Cir. 2007), *aff'd in part, rev'd in part on other grounds sub nom. Summers v. Earth Island Inst.*, 555 U.S. 488 (2009); *see also Regents of the Univ. of Cal.*, 908 F.3d at 511 ("In [the APA] context, '[w]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated – not that their application to the individual petitioners is proscribed.'") (quoting *Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998)).[10]

---

[10] Although Defendants attempt to address the propriety of vacatur, ECF No. 65 at 27, that issue is not before the Court. Defendants also misstate the law. They cite *California Communities Against Toxics v. U.S. E.P.A.*, 688 F.3d 989, 994 (9th Cir. 2012) for the proposition that "[e]ven where rules are declared invalid under the APA, 'remand without vacatur' is a remedy that courts *must consider*." ECF No. 65 at 27 (emphasis added). But *California Communities* does not stand for that proposition. To the contrary, *California Communities* is clear that remand without vacatur should be ordered only in "limited circumstances." 688 F.3d at 994. Defendants do not explain what "limited circumstances" are present here. Furthermore, as Defendants themselves note,

13

Lastly, anything but a nationwide injunction will create major administrability issues. Although the Government's recently-issued guidance with regard to the Rule is intended to allow the Court's injunction to be applied within the Ninth Circuit, problems in administration would remain. For one thing, ambiguities within the guidance documents will lead to uneven enforcement. *See* ECF No. 67 at 12 (comparing the Government's description of the injunction as covering those "whose adjudications *and* proceedings occur in the Ninth [C]ircuit" to the EOIR Guidance's instruction that the Rule does not apply to those whose "interview *or* adjudication" occurs in the Ninth Circuit). For another, it is not clear what effect the guidance will have on an asylum applicant who transits between circuits. For example, an applicant who crosses the border and has a credible fear interview outside the Ninth Circuit would, in the absence of a nationwide injunction, be subject to the Rule and thus (barring an exception) eligible only for withholding of removal or CAT. *Id.* If that individual's removal proceedings were later moved to the Ninth Circuit, it is unclear whether the immigration judge would be bound by the original denial of credible fear or, since the Rule is enjoined within the Ninth Circuit, able to allow the individual to apply for asylum.

## CONCLUSION

While nationwide injunctions are not the "general rule," they are appropriate "where such breadth [is] necessary to remedy a plaintiff's harm." *East Bay V*, 2019 WL 3850928, at *2. This is such a case. Accordingly, and for the reasons set forth above, the Court grants the Organizations' motion to restore the nationwide scope of the injunction.

**IT IS SO ORDERED.**

Dated: September 9, 2019

_____
JON S. TIGAR
United States District Judge

---

"[o]rdinarily, when a regulation is not promulgated in compliance with the APA, the regulation is invalid." *Ida. Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995); ECF No. 65 at 27.