JEFFREY BOSSERT CLARK
*Assistant Attorney General*
WILLIAM C. PEACHEY
*Director*
EREZ REUVENI
*Assistant Director*
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 307-4293
Email: Erez.R.Reuveni@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

East Bay Sanctuary Covenant, *et al.*,

Plaintiffs,

v.

Donald J. Trump, President of the United States, *et al.*,

Defendants.

Civil Action No. 4:19-cv-04073-JST

**OPPOSITION TO MOTIONS TO INTERVENE AND FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION PREVENTING REMOVAL**

**INTRODUCTION** .......... **1**

**BACKGROUND** .......... **3**

**STANDARD OF REVIEW** .......... **8**

**ARGUMENT** .......... **9**

**I. Intervenors' Cannot Demonstrate a Strong Likelihood of Success** .......... **9**

A. The Rule Against Claim Splitting, and First-to-File and Res Judicata Rules Bar Intervention .......... 9

B. The Motion Is Not Timely Filed, Barring Intervention under Rules 24(a) and (b) .......... 12

C. Movants Have No Protectable Interest That May Be Impaired in This Case, Denying Intervention Would Not Preclude the Movants From Protecting Such Interests, and Plaintiffs Adequately Protect Such Interests .......... 14

D. The Court Should Deny Permissive Intervention under Rule 24(b) .......... 15

E. Intervention is Futile, as the Court Lacks Jurisdiction Over Intervenors' Underlying Claim for Relief and Request for a Stay of Removal .......... 16

**II. Considerations of Irreparable Harm and the Equities Favor the Government** .......... **24**

**III. The INA Prohibits a Stay of Removal** .......... **24**

**CONCLUSION** .......... **24**

**CERTIFICATE OF SERVICE** .......... **25**

## TABLE OF AUTHORITIES

### CASE LAW

*Adams v. Cal. Dep't of Health Servs.*,
487 F.3d 684 (9th Cir. 2007) .......... 9, 10, 11

*Aguilar v. ICE*,
510 F.3d 1 (1st Cir. 2007) .......... 19

*Allen v. McCurry*,
449 U.S. 90 (1980) .......... 10, 12

*Alt v. U.S. E.P.A.*,
758 F.3d 588 (4th Cir. 2014) .......... 13

*Am. Immigration Lawyers Ass'n v. Reno*,
199 F.3d 1352 (D.C. Cir. 2000) .......... 21

*Aspex Eyewear, Inc. v. Revolution Eyewear, Inc.*,
2008 WL 11409571 (C.D. Cal. Mar. 7, 2008) .......... 24

*Avendano-Ramirez v. Ashcroft*,
365 F.3d 813 (9th Cir. 2004) .......... 3, 17, 19

*Avila-Sanchez v. Mukasey*,
509 F.3d 1037 (9th Cir. 2007) .......... 22

*Barr v. East Bay Sanctuary Covenant*,
No. 19A230, 2019 WL 4292781 (U.S. Sept. 11, 2019) .......... 4

*Blount-Hill v. Zelman*,
636 F.3d 278 (6th Cir. 2011) .......... 13

*California ex rel. Lockyer v. United States*,
450 F.3d 436 (9th Cir. 2006) .......... 15

*California v. Trump*,
267 F. Supp. 3d 1119 (N.D. Cal. 2017) .......... 11

*Canatella v. California*,
404 F.3d 1106 (9th Cir. 2005) .......... 9, 16

*Capital Area Immigrants' Rights Coal.* ("*CAIR*") *v. Trump*,
2020 WL 3542481 (D.D.C. June 30, 2020) .......... 4, 6, 21, 22

*Castro v. DHS*,
835 F.3d 422 (3d Cir. 2016) .......... 17, 18, 20

*Church of Scientology of California v. U.S. Dep't of Army*,
611 F.2d 738 (9th Cir. 1979) .......... 24

*Clements v. Airport Auth. of Washoe Cty.*,
69 F.3d 321 (9th Cir. 1995)........................................................................................9

*D.A.M. v. Barr*,
--- F. Supp. 3d ---, 2020 WL 4218003 (D.D.C. July 23, 2020) ........................................... 1, 6

*D.A.M. v. Barr*,
--- F. Supp. 3d ---, 2020 WL 5525056 (D.D.C. Sept. 15, 2020)...................................... *passim*

*Dep't of Homeland Sec. v. Thuraissigiam,*
140 S. Ct. 1959 (2020)........................................................................................ *passim*

*Dugdale v. U.S. Customs & Border Protection*,
88 F. Supp. 3d 1 (D.D.C. 2015) ........................................................................................20

*E.J. Friedman Co. v. United States*,
6 F.3d 1355 (9th Cir. 1993)........................................................................................19

*East Bay Sanctuary Covenant v. Trump*,
354 F. Supp. 3d 1118 (9th Cir. 2020)........................................................................18

*East Bay Sanctuary Covenant v. Barr*,
385 F. Supp. 3d 922 (N.D. Cal. 2019)........................................................................ 4, 18

*East Bay Sanctuary Covenant v. Barr*,
391 F. Supp. 3d 974 (N.D. Cal. 2019)........................................................................4

*East Bay Sanctuary Covenant v. Trump*,
909 F.3d 1219 (9th Cir.) ........................................................................................18

*East Bay Sanctuary Covenant v. Barr*,
964 F.3d 832 (9th Cir. 2020)........................................................................................4

*Garcia de Rincon v. DHS*,
539 F.3d 1133 (9th Cir. 2008)........................................................................ 17, 18

*Grace v. Barr*,
965 F.3d 883 (D.C. Cir. 2020) ........................................................................................24

*Grace v. Whitaker*,
344 F. Supp. 3d & n.31 ........................................................................................21

*Gundy v. United States*,
139 S. Ct. 2116 (2019)........................................................................................20

*Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*,
296 F.3d 982 (10th Cir. 2002)........................................................................ 10, 11

*Heartland By-Products, Inc. v. United States*,
568 F.3d 1360 (Fed. Cir. 2009)........................................................................ 7, 22

*Henrikson v. Turbomeca*, S.A.,
No. 06-cv-1563, 2007 WL 2215398 (E.D. Cal. July 30, 2007) .............................................. 12

*Holloway v. United States*,
2014 WL 1747467 (E.D. Cal. Apr. 29, 2014), *aff'd*, 636 F. App'x 965 (9th Cir. 2016) .......... 19

*Ill. Cent. R. Co. v. Pub. Utilities Comm'n of Ill.*,
245 U.S. 493 (1918)...................................................................................................................... 19

*In re Cathode Ray Tube Antitrust Litig.*,
No. 07-CV-05944-JST, 2020 WL 5224241 (N.D. Cal. Aug. 27, 2020)............................ 14, 15

*In re Holocaust Victim Assets Litig.*,
225 F.3d 191 (2d Cir. 2000)......................................................................................................... 14

*Jennings v. Rodriguez*,
138 S. Ct. 830 (2018).................................................................................................................... 19

*L.M.-M v. Cuccinelli*,
442 F. Supp. 3d 1 (D.D.C. 2020)................................................................................................. 21

*League of United Latin Am. Citizens v. Wilson*,
131 F.3d 1297 (9th Cir. 1997)...................................................................................................... 15

*M.M.V. v. Barr*,
456 F. Supp. 3d 193 (D.D.C. 2020)....................................................................................... 1, 17

*M.M.V. v. Barr*,
--- F. Supp. 3d ---, 2020 WL 2119744 (D.D.C. May 1, 2020)...................................................... 1

*M.M.V. v. Barr*,
No. 19-CV-2773 (TJK), 2019 WL 10888831 (D.D.C. Sept. 25, 2019) ................................ 5, 6

*M.M.V. v. Barr*,
2020 WL 6129343 (D.D.C. Aug. 19, 2020)............................................................... 5, 6, 20

*Make The Rd. New York v. Wolf*,
962 F.3d 626 (D.C. Cir. 2020) ............................................................................................ 16, 20

*Maryland v. King*,
133 S. Ct. 1 (2012)........................................................................................................................ 23

*McCleskey v. Zant*,
499 U.S. 467 (1991)...................................................................................................................... 12

*Moten v. Bricklayers, Masons & Plasterers, Int'l Union of Am.*,
543 F.2d 224 (D.C. Cir. 1976) ............................................................................................ 12, 13

*Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*,
145 F.3d 1399 (D.C. Cir. 1998) .................................................................................................. 21

*Nianga v. Wolfe*,
435 F. Supp. 3d 739 (N.D. Tex. 2020) .......... 18

*Nken v. Holder*,
556 U.S. 418 (2009).......... *passim*

*Padilla v. Willner*,
No. 15-cv-4866, 2016 WL 860948 (N.D. Cal. Mar. 7, 2016).......... 11

*Patel v. Barr*,
2020 WL 4282051 (E.D. Pa. July 27, 2020).......... 17, 19

*Perry v. Proposition 8 Official Proponents*,
587 F.3d 947 (9th Cir. 2009).......... 9

*Prete v. Bradbury*,
438 F.3d 949 (9th Cir. 2006).......... 8

*R&G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*,
584 F.3d 1 (1st Cir. 2009).......... 13, 14

*Reid L. v. Illinois State Bd. of Educ.*,
289 F.3d 1009 (7th Cir. 2002).......... 13

*Reynoldsville Casket Co. v. Hyde*,
514 U.S. 749 (1995).......... 22

*Rivas Rosales v. Barr*,
No. 20-CV-00888-EMC, 2020 WL 1505682 (N.D. Cal. Mar. 30, 2020) .......... 9

*Rivera v. Am. Fed'n of State, Cty., & Mun. Employees, AFL-CIO*, *Local 444*,
No. 3:16-CV-04959, 2017 WL 3021038 (N.D. Cal. July 17, 2017).......... 9, 10

*Rodrigues v. McAleenan*,
435 F. Supp. 3d 731 (N.D. Tex. 2020) .......... 19

*Saravia v. Sessions*,
280 F. Supp. 3d 1168 (N.D. Cal. 2017).......... 18

*Seils v. Rochester City Sch. Dist.*,
199 F.R.D. 506 (W.D.N.Y. 2001) .......... 14

*Shermoen v. United States*,
982 F.2d 1312 (9th Cir. 1992).......... 15

*Smith v. L.A. Unified Sch. Dist.*,
830 F.3d 843 (9th Cir. 2016).......... 12

*Stark v. Starr*,
94 U.S. 477 (1876) .......... 10

*SurvJustice Inc. v. DeVos*,
No. 18-cv-535, 2019 WL 1427447 (N.D. Cal. Mar. 29, 2019) .................... 12, 13, 14

*Taylor v. Sturgell*,
553 U.S. 880 (2008) .................... 9

*Thuraissigiam v. U.S. Dep't of Homeland Sec.*,
917 F.3d 1097 (9th Cir.) .................... 17, 18

*U.S. Bank Nat. Ass'n v. State Farm Fire & Cas. Co.*,
765 F.3d 867 (8th Cir. 2014) .................... 14

*United States v. Alisal Water Corp.*,
370 F.3d 915 (9th Cir. 2004) .................... 12

*Vanover v. NCO Fin. Servs., Inc.*,
857 F.3d 833 (11th Cir. 2017) .................... 9, 11

*W.C. v. Bowen*,
807 F.2d 1502 (9th Cir. 1987) .................... 21

*Waterkeeper Alliance, Inc. v. Wheeler*,
No. 18-cv-2230, 2020 WL 1873564 (D.D.C. Apr. 15, 2020) .................... 21

*Western Watersheds Project v. Zinke*,
441 F. Supp. 3d 1042 (D. Idaho 2020) .................... 21

**FEDERAL STATUTES**

5 U.S.C. § 701(a)(1) .................... 19

8 U.S.C. § 1158 .................... 3

8 U.S.C. § 1225 .................... 16

8 U.S.C. § 1225(b) .................... 17

8 U.S.C. § 1225(b)(1) .................... 1, 3, 4

8 U.S.C. § 1225(b)(1)(A)(i) .................... 3

8 U.S.C. § 1225(b)(1)(B)(ii) .................... 3

8 U.S.C. § 1225(b)(1)(B)(iii)(I) .................... 3, 23

8 U.S.C. § 1225(b)(1)(B)(iii)(III) .................... 3

8 U.S.C. § 1225(b)(1)(B)(v) .................... 3,

8 U.S.C. § 1225(b)(1)(C) .................... 4

8 U.S.C. § 1229a .................... 3

8 U.S.C. § 1252(a)(2)(A) .................... 2, 3, 9, 24

DEFENDANTS' OPPOSITION TO MOTIONS TO INTERVENE AND FOR TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION
*East Bay Sanctuary v. Trump*, Case No. 4:19-cv-04073-JST

vi

8 U.S.C. § 1252(a)(2)(A)-(C) .......... 16
8 U.S.C. § 1252(a)(2)(A)(i) .......... *passim*
8 U.S.C. § 1252(a)(2)(A)(ii) .......... 5, 16
8 U.S.C. § 1252(a)(2)(A)(iii) .......... 4
8 U.S.C. § 1252(a)(2)(A)(iv) .......... 4, 16
8 U.S.C. § 1252(b)(9) .......... 19
8 U.S.C. § 1252(e) .......... 18
8 U.S.C. § 1252(e)(1) .......... 3, 9
8 U.S.C. § 1252(e)(2) .......... 4, 7, 11
8 U.S.C. § 1252(e)(2)(C) .......... 20
8 U.S.C. § 1252(e)(3) .......... 4
8 U.S.C. § 1252(e)(4) .......... 20
8 U.S.C. § 1252(e)(5) .......... 7, 18, 20
8 U.S.C. § 1252(g) .......... 3, 9, 24

**FEDERAL REGULATIONS**

8 C.F.R. § 208.30(e)(2) ..........
8 C.F.R. § 208.30(f) .......... 3
8 C.F.R. § 235.3 .......... 3
8 C.F.R. § 1003.42(f) .......... 3, 4

**FEDERAL REGISTER**

84 Fed. Reg. 33,829 .......... 1
84 Fed. Reg. 33,837 .......... 4
84 Fed. Reg. 33,843 .......... 1, 4

**FEDERAL RULES FOR CIVIL PROCEDURE**

Fed. R. Civ. P. 24 .......... 15
Fed. R. Civ. P. 24(a) .......... 2, 14
Fed. R. Civ. P. 24(b)(1) .......... 2

## INTRODUCTION

Intervenors are inadmissible aliens subject to final orders of expedited removal who are ineligible for asylum or other protections in this country. *See* 8 U.S.C. § 1225(b)(1). Those orders are premised in part on an interim final rule that renders ineligible for asylum certain aliens who seek asylum in this country without first seeking asylum in at least one country through which they have transited en route to the United States. *See* Asylum Eligibility and Procedural Modifications, 84 Fed. Reg. 33,829, 33,843 (July 16, 2019) (the "Rule"). This Court twice issued universal injunctions against the Rule, but on September 11, 2019, the Supreme Court stayed those injunctions "in full pending disposition of the Government's appeal in the United States Court of Appeals for the Ninth Circuit and disposition of the Government's petition for a writ of certiorari, if such writ is sought." *Barr v. E. Bay Sanctuary Covenant*, No. 19A230, 2019 WL 4292781 (U.S. Sept. 11, 2019). Intervenors received final removal orders *after* the injunctions were stayed. They have since unsuccessfully challenged those orders in repeated litigation in the District of Columbia. *See D.A.M. v. Barr*, --- F. Supp. 3d ---, 2020 WL 5525056, at *2 (D.D.C. Sept. 15, 2020); *D.A.M. v. Barr*, --- F. Supp. 3d ---, 2020 WL 4218003 (D.D.C. July 23, 2020); *M.M.V. v. Barr*, 456 F. Supp. 3d 193 (D.D.C. 2020).[1] They have also repeatedly—and unsuccessfully—sought stays of their removal before multiple district judges, the D.C. Circuit Court of Appeals, and the full en banc D.C. Circuit. *See D.A.M. v. Barr*, 20-5281 (D.C. Circuit); *M.M.V. v. Barr*, 20-5106 (D.C. Circuit); *D.A.M. v. Barr*, 2020 WL 5525056, at *1; *D.A.M.*, 2020 WL 4218003, at *1; *M.M.V. v. Barr*, --- F. Supp. 3d ---, 2020 WL 2119744, at *4 (D.D.C. May 1, 2020). Most recently, on October 16, 2020, the en banc D.C. Circuit unanimously concluded that intervenors' challenges to their orders of removal lacked merit and denied their emergency motion for a stay of removal.

Having failed in multiple other fora, intervenors now ask this Court to stay their removals indefinitely and permit them to intervene in this case. The Court should deny that extraordinary request—the ***<u>seventh</u>*** such request in six months. Intervenors cannot demonstrate a strong likelihood of success on the merits; they will not be irreparably harmed absent a stay of removal; and the equities favor the government, *see Nken v. Holder*, 556 U.S. 418, 436 (2009).

---

[1] All relevant pleadings and orders not available on westlaw are included in an appendix.

To begin, intervenors are already litigating challenges to their removal orders in two pending district court cases and two separate appeals, including on the very grounds they seek intervention on here. Permitting intervention would therefore violate the rule against claim splitting, which prohibits parties from initiating duplicate actions in multiple fora, as well as the first-to-file rule and principles of res judicata. *Second*, the motion—whether seeking intervention as of right or permissive intervention—is untimely. *See* Fed. R. Civ. P. 24(a), (b)(1). Intervenors have had notice of this litigation since it was filed in July 2019. Yet, instead of intervening promptly to protect their alleged rights, they chose instead to initiate multiple lawsuits and appeals challenging their removal orders in other fora. Having made that choice, they cannot now—after losing at every stage in those cases—contend that intervention here for the purpose of a seventh try at a stay of removal is timely. *Third*, intervenors have no protectable interest in this case and denying intervention would not preclude them from protecting any such interests. Their removal orders were issued *after* this Court's injunction was stayed by the Supreme Court and *before* the Rule was set aside by a D.C. District Court, and so are lawfully issued. Moreover, intervenors are currently litigating the very issue they seek intervention on in the D.C. District Court and the D.C. Circuit, so they plainly have other means of protecting their interests in their first-filed cases. Win or lose, their interests will be vindicated in those fora. *Fourth*, intervenors cannot show that their interests are inadequately represented by the organizations in this suit.

*Fifth*, even if intervention is timely and otherwise warranted, any intervention and motion to enjoin removal must be denied, as the Court lacks jurisdiction over both their underlying claims and their request to stay their removals. 8 U.S.C. § 1252(a)(2)(A), titled "Matters not subject to judicial review," provides, among other things, that, for "[r]eview relating to section 1225(b)(1)"—including orders of expedited removal or credible fear determinations—"*[n]otwithstanding any other provision of law* ... no court shall have jurisdiction to review ... *except as provided in subsection (e)* [*i.e.*, section 1252(e)]," "any ... cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)." (Emphasis added). As relevant here, section 1252(e) only restores jurisdiction with respect to judicial review in habeas of whether the "petitioner is an alien," "was ordered removed under"

section 1225(b)(1) or "is an alien lawfully admitted for permanent residence" or "has been admitted as a refugee … or has been granted asylum." *Id.*, § 1252(e)(2); *see DHS v. Thuraissigiam*, 140 S. Ct. 1959 (2020). Intervenors' claim seeks to "nullify the continuing effects of that order," and so is covered by section 1252(a)(2)(A), *Avendano-Ramirez v. Ashcroft*, 365 F.3d 813, 818 (9th Cir. 2004), but raises no permissible basis for review under section 1252(e), and so is barred. Regardless, the Immigration and Nationality Act (INA) still prohibits the entry of a stay of removal in these circumstances. *See* 8 U.S.C. § 1252(a)(2)(A), (e)(1), (g).

Finally, should the court nevertheless enter an injunction, the government requests that the Court stay that injunction so the government can seek emergency relief from the Ninth Circuit.

**BACKGROUND**

Legal Background. Congress has authorized the Department of Homeland Security (DHS) to summarily remove certain inadmissible aliens who have arrived at or illegally crossed the border. *See* 8 U.S.C. § 1225(b)(1). Under this summary-removal mechanism—known as "expedited removal"—certain aliens who lack valid entry documentation or make material misrepresentations shall be "order[ed] ... removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under [8 U.S.C. § 1158] or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i); *see id.* § 1182(a)(6)(C), (a)(7); *accord Thuraissigiam*, 140 S. Ct. at 1964-67 (discussing expedited removal). Aliens so indicating are referred to an interview with an asylum officer, who assesses whether the alien has a "credible fear of persecution."[2] *Id.* § 1225(b)(1)(B)(ii), (v). If the officer determines that the alien has a credible fear, the officer refers the alien to removal proceedings under 8 U.S.C. § 1229a where the alien may apply for asylum and other protection from removal. *Id.* § 1225(b)(1)(B)(ii); 8 C.F.R. § 208.30(f). The alien may seek *de novo* review of a negative determination before an immigration judge (IJ). *Id.* § 1225(b)(1)(B)(iii)(I), (III). If the IJ concludes that the alien has established a credible fear, the alien is placed in section 1229a proceedings. 8 C.F.R. § 1003.42(f). If the IJ finds that the alien lacks a credible fear, the alien is "removed from the United States without further

[2] Aliens are also screened for eligibility for withholding of removal and protection under the Convention Against Torture (CAT). 8 C.F.R. §§ 208.30(e)(2), 235.3.

hearing or review." 8 U.S.C. § 1225(b)(1)(B)(iii)(I); 8 C.F.R. § 1208.30(g)(2)(iv)(A). No further review of the credible-fear determination is permitted. 8 U.S.C. §§ 1225(b)(1)(C), 1252(a)(2)(A)(iii), 1252(e)(2); 8 C.F.R. § 1003.42(f).

Third-Country-Transit Rule. On July 16, 2019, the Attorney General and the Acting Secretary issued the Rule, which provides generally that "any alien who enters, attempts to enter, or arrives in the United States across the southern land border on or after July 16, 2019, after transiting through at least one country outside the alien's country of citizenship, nationality, or last lawful habitual residence en route to the United States, shall be found ineligible for asylum." 84 Fed. Reg. at 33,843. If subject to the Rule, aliens are "screened, but in a manner that reflects that their only viable claims could be for statutory withholding or [CAT] protection." *Id.* at 33,837.

On July 24, 2020, this Court enjoined the Rule nationwide. *East Bay Sanctuary Covenant v. Barr*, 385 F. Supp. 3d 922 (N.D. Cal. 2019). The Ninth Circuit stayed the injunction outside of the Ninth Circuit on August 16. This Court then reissued the universal injunction on September 9. *East Bay Sanctuary Covenant v. Barr*, 391 F. Supp. 3d 974 (N.D. Cal. 2019). On September 11, the Supreme Court stayed both injunctions "in full," allowing the Rule to go into effect nationwide. *East Bay*, 2019 WL 4292781. Although the Ninth Circuit has since affirmed this Court's injunction, 964 F.3d 832 (9th Cir. 2020), the Supreme Court's stay remains in effect "pending disposition of the Government's appeal" and "the Government's petition for a writ of certiorari, if such writ is sought." *Id.* A petition for rehearing en banc is pending at the Ninth Circuit, and the Supreme Court stay remains in effect.

On June 30, 2020, a district court in D.C. vacated the Rule for failure to follow notice-and-comment procedures. *See Capital Area Immigrants' Rights Coal. v. Trump* ("*CAIR*"), --- F. Supp. 3d ---, 2020 WL 3542481 (D.D.C. June 30, 2020).

Intervenors' Litigation. Intervenors are all subject to removal orders issued while the Rule was operative. *See* Dkt. 54 ¶¶ 12-111, 19-cv-2773 (D.D.C.); Dkt. 31 ¶¶ 37-124, 20-cv-1321 (D.D.C.). They previously challenged the validity of their removal orders under 8 U.S.C. § 1252(e)(3), which provides limited judicial review of "written polic[ies]" implementing the expedited removal system under 8 U.S.C. § 1225(b)(1) if those policies are challenged within "60

days after the date the challenged [policy] is first implemented." 8 U.S.C. § 1252(e)(3)(A)(ii), (B). *See M.M.V.*, 2020 WL 1984309, at *22. They alleged that their expedited removal orders were unlawful, and sought a temporary restraining order (TRO) barring their removal. *Id.* at *4-5. The complaint was deemed "related" to *CAIR*, and was assigned to Judge Kelly. However, plaintiffs contended that they "*are not challenging the legality of the [Rule] itself, nor are they challenging the direct implementation of that [Rule] in the expedited removal process*." Dkt. 5 at 4, *M.M.V.*, 19-cv-2773 (D.D.C.). Relying on that disclaimer, Judge Kelly concluded that the cases were not related because "Plaintiffs repeatedly make clear in their complaint that they do not challenge the July 16 Rule." *M.M.V.*, 2019 WL 10888831, at *1. "Plaintiffs have chosen to challenge alleged regulations and policies separate and apart from the July 16 Rule—a choice that they must be held to as the parties litigate their claims." *Id.* Judge Kelly concluded that "if Plaintiffs' allegations are mistaken—that is, if the alleged procedures are actually just direct applications of the July 16 Rule—Plaintiffs have conceded that that is outside the bounds of their complaint." *Id.* at *2. The case was then assigned to Judge Amy Berman Jackson, who likewise found that "plaintiffs expressly disclaimed any intention to challenge the [Rule]." *M.M.V.*, 2020 WL 6129343, at *1.

The district court entered numerous administrative stays prohibiting intervenors' removal, but lifted those stays on April 27, 2020, when it concluded that it lacked jurisdiction over all but one of the claims and most of the plaintiffs. *Id.* at *10-22. Intervenors immediately appealed and sought an emergency stay. Dkts. 100, 102, No. 20-5106, *M.M.V. v. Barr* (D.C. Cir.). A motions panel issued an administrative stay, but on May 15, 2020, the panel dissolved the stay and denied the emergency motion, reasoning that Plaintiffs "have not satisfied the stringent requirements for a stay pending appeal." Order, *M.M.V. v. Barr*, No. 20-5106 (D.C. Cir. May 15, 2020).[3]

On May 18, 2020, the next business day, the *M.M.V.* plaintiffs whose removal orders were premised on the Rule and were no longer stayed filed a new lawsuit in the D.C. District Court, alleging that their removal during the COVID-19 pandemic would violate the Administrative Procedure Act (APA) and the Fifth Amendment. Dkt. 3, *D.A.M. v. Barr*, 20-1321 (D.D.C. May 18, 2020). They also sought another TRO barring their removal. *Id.*, Dkt. 6. The district court

[3] Oral argument was held September 11, 2020.

issued an administrative stay pending resolution of the motion. While that motion was pending, on June 30, Judge Kelly issued the *CAIR* decision. 2020 WL 3542481. Thereafter, petitioners amended their petition in *D.A.M.*, adding two claims alleging that their removal would violate the Due Process Clause because the underlying order were based on the Rule, and the Rule has been vacated. Dkt. 31 ¶¶ 300-10, *D.A.M.*, 20-1321 (D.D.C. July 9, 2020).

On July 23, 2020, the district court denied the TRO, finding a lack of jurisdiction over some of petitioners' claims, and a failure to show a likelihood of success on the claims over which the court did have jurisdiction. *See D.A.M.*, 2020 WL 4218003, at *5-14. Within hours of that decision, petitioners filed a third TRO seeking to prevent their removal. Although petitioners had repeatedly waived challenges to the Rule in prior litigation, *see M.M.V.*, 2020 WL 1984309, at *4, *15 (noting waiver of this claim); *M.M.V.*, 2020 WL 6129343, at *1 (same); *M.M.V.*, 2019 WL 10888831, at *1 (same), they now claimed that the vacatur of the Rule in *CAIR* retroactively rendered their (and the many thousands of other) final removal orders issued prior to that vacatur unlawful. Dkt. 35, 20-1321 (D.D.C. July 23, 2020).

On September 15, 2020, the district court denied the TRO and lifted the administrative stays of removal for all intervenors. *D.A.M.*, 2020 WL 5525056, at *1. First, the court held that 8 U.S.C. § 1252(a)(2)(A)(i)—which eliminates "jurisdiction to review" "any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to [section 1225(b)(1)]" "except as provided in subsection (e)"—covered petitioners' claims, because "[i]n challenging the government's plan to deport them pursuant to their final orders of removal with allegedly inadequate process, petitioners necessarily challenge 'the implementation or operation' of those orders." *Id.* at *8. Second, the court rejected petitioners' argument that "because *CAIR* vacated" the Rule, their removal orders no longer exist, such that they have not received "procedural and substantive due process rights to access the congressionally created pre-removal process [under section 1225(b)(1)]," *id.* at *6, reasoning that while "vacatur protects everyone from having an invalid rule applied to them in future adjudications," it does not "erase[] from legal existence all past adjudications under the vacated rule" and "'does not mean that final judicial or administrative

decisions are to be reopened.'" *Id.* (quoting *Heartland By-Products, Inc. v. United States*, 568 F.3d 1360, 1366-67 (Fed. Cir. 2009)). Third, the court held that "petitioners' claims likely fall[] outside § 1252(e)[(2)]." *Id.* at *10. That provision permits "[j]udicial review" of determinations "made under section 1225(b)(1)" in habeas, "limited to" "whether the petitioner is an alien," "was ordered removed under such section," and "is an alien lawfully admitted for permanent residence" or has been "admitted as a refugee" or "been granted asylum," "such status not having been terminated," 8 U.S.C. § 1252(e)(2). But "the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner," and "[t]here shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal." *Id.* § 1252(e)(5). Petitioners were aliens, ordered removed under section 1225(b)(1), and not lawful permanent residents, asylees, or refugees. *Id.* at *10. Moreover, section 1252(e)(2) foreclosed any argument that review of whether an "order in fact was issued" encompassed review of whether events subsequent to the order' issuance retroactively invalidated the order. 2020 WL 5525056, at *10-11. Finally, the court rejected their argument that the Suspension Clause required finding jurisdiction as foreclosed by "controlling precedent" in *DHS v. Thuraissigiam*, 140 S. Ct. 1959 (2020). *Id.* at *11. As the court explained, *Thuraissigiam* held that the "Suspension Clause does not apply to a habeas petition" that does not seek release from "'physical confinement,'" but instead "seek[s] 'to obtain additional administrative review of [an] asylum claim and ultimately to obtain authorization to stay in this country,'" and so cannot apply to petitioners' "non-core' habeas claims" which "do not seek release from custody." *Id.* at *11-12. (quoting *Thuraissigiam*, 140 S. Ct. at 1963, 1970-75).

Finally, the court concluded that petitioners had shown a likelihood of irreparable harm, but that the balance of the equities and the public interest do not "weigh strongly in either direction." *Id.* at *12-14. Accordingly, because "petitioners are unlikely to succeed on the merits, and the balance of equities and the public interest do not clearly favor granting" relief, the court denied the TRO and "lift[ed] the administrative stay of petitioners' removals." *Id.* at *15.

Petitioners immediately appealed and sought a stay of removal. A motions panel of the D.C. Circuit entered an administrative stay. *D.A.M. v. Barr*, 20-5281, Order (9/17/20). After receiving briefing, the D.C. Circuit panel unanimously concluded that petitioners "have not

satisfied the stringent requirements for a stay pending appeal," and "ordered that the administrative stay be dissolved." *Id.*, Order (9/30/20). The next day, Petitioners sought reconsideration en banc and another stay of removal. The en banc court issued a temporary administrative stay on October 2, 2020. *Id.*, (Order 10/2/20). On October 16, 2020, the en banc court unanimously denied the motion for reconsideration and dissolved the administrative stay.[4] *Id.*, (Orders 10/16/20).

That same day, the *D.A.M.* petitioners sought to intervene in this case and an emergency stay of removal, contending that "the consequence of *CAIR*'s vacatur of the Rule is that" their removal orders are invalid and that their removal before they receive new credible fear interviews subject to the "process created by Congress" under section 1225(b)(1) violates their rights. Mot. 4; Dkts. 94-97. This Court issued an order concluding that "Intervenors have made a sufficient showing" for a TRO barring their removal, including "serious questions going to the merits of whether intervention should be granted under Rule 24(a) and whether vacatur of the Rule renders their removal orders unlawful," Dkt. 98 at 4, while recognizing that "it is not clear that intervention in this action would provide them an opportunity for the relief they seek," *id.* at 6, and that "questions regarding this Court's jurisdiction and the legality of Proposed Intervenors' removal orders are better resolved after briefing and hearing." *Id.* at 8 n.1.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 24(a) provides, in relevant part, that, "[o]n timely motion, the court must permit anyone to intervene who ... (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." To establish the right to intervene under Rule 24(a)(2), a third party applicant must satisfy four elements:

> (1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest.

*Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006)."Failure to satisfy any one of the

---

[4] Intervenors' opening brief in that case is due November 2, 2020.

requirements is fatal to the application." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009). In addition, intervention under either Rule 24(a) or (b) "must be denied, though all the requirements of Rule 24 are met, if the federal court cannot take jurisdiction with regard to the intervenor." *Canatella v. California*, 404 F.3d 1106, 1113 (9th Cir. 2005). Moreover, regardless of the equities, "[a] district court may not grant a preliminary injunction if it lacks subject matter jurisdiction over the claim before it." *Rivas Rosales v. Barr*, No. 20-CV-00888-EMC, 2020 WL 1505682, at *3 (N.D. Cal. Mar. 30, 2020).

**ARGUMENT**

Intervention and an injunction barring removal is not warranted. Intervenors lack any basis to intervene and cannot show a strong likelihood of success on the merits of their underlying claims, they will not be irreparably harmed absent a stay, and the equities do not favor them. *Nken*, 556 U.S. at 436; *see id.* at 434 (standard "substantial[ly] overlaps" with "factors governing preliminary injunctions"). Moreover, even if intervention were otherwise warranted, the Court lacks jurisdiction over their underlying claim, and independently lacks jurisdiction to stay intervenor's removal. *See* 8 U.S.C. § 1252(a)(2)(A), (e)(1), (g).

**I. Intervenors Cannot Demonstrate a Strong Likelihood of Success.**

A. The Rule Against Claim Splitting, and First-to-File and Res Judicata Rules Bar Intervention

Permitting intervention would violate the rule against claim splitting. This rule prohibits one from bringing a duplicate action in another forum. *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 689 (9th Cir. 2007), *overruled on other grounds Taylor v. Sturgell*, 553 U.S. 880 (2008). The rule "protect[s] the defendant from being harassed by repetitive actions based on the same claim." *Clements v. Airport Auth. of Washoe Cty.*, 69 F.3d 321, 328 (9th Cir. 1995). Accordingly, it "bars a party from bringing claims arising from the same set of facts in successive actions, rather than bringing them all at once," *Rivera v. Am. Fed'n of State, Cty., & Mun. Employees, AFL-CIO, Local 444*, No. 3:16-CV-04959, 2017 WL 3021038, at *3 (N.D. Cal. July 17, 2017), thus "ensur[ing] that a plaintiff may not 'split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which relief is sought, and leave the rest to be presented in a second suit, if the first fails.'" *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir.

2017) (quoting *Stark v. Starr*, 94 U.S. 477, 485 (1876)).

"[I]n assessing whether the second action is duplicative of the first, we examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Adams*, 487 F.3d at 689. In *D.A.M.*, intervenors seek the same relief they seek here: invalidation of their removal orders on the theory that vacatur of the Rule in *CAIR* or ultimately in this case retroactively renders their removal orders unlawful. Here, they allege that "*CAIR*" "retroactive[ly]" "restore[d]" them to the position they were in before the Rule was applied to them, so that effectuating their removal would be unlawful. Mot. 4. But that is what they are litigating before the D.C. district and circuit courts. *See D.A.M.*, 20-cv-1321, Dkt. 31 ¶¶ 302-04 (alleging "[b]ecause of *CAIR*, [they] have unlawful final orders of removal," and effectuating those orders would violate the Due Process Clause.); *D.A.M.*, 2020 WL 5525056, at *6 (petitioners assert "that they do not have outstanding removal orders because *CAIR* wiped those orders out of legal existence" and that therefore they "have no negative credible fear determinations" and "their orders of removal are not final or executable"). Intervenors also pressed this claim in their emergency motions to stay removal and for en banc review, *D.A.M.*, 20-5281 (D.C. Cir.); in their opposition to the motion to dismiss in *D.A.M.*, Dkt. 56 at 23-27, 20-1321 (D.D.C.); and it is what they must argue and prevail on in order to win in their pending appeal, whose opening brief is due November 2, Order (9/30/20), 20-5281, (D.C. Cir.). "This [putative] action is [therefore] indisputably the same: the causes of action are the same and they are alleged against a defendant who was a party to the Prior Action." *Rivera*, 2017 WL 3021038, at *4. And just as "the fact that plaintiff was denied leave to amend does not give her the right to file a second lawsuit based on the same facts," so too does the fact that intervenors were denied a stay of removal. *See Adams*, 487 F.3d at 688. Intervenors thus impermissibly seek to pursue two simultaneous opportunities to challenge the same orders of expedited removal on the same theories of liability, and so violate the rule against claim splitting.[5]

---

[5] A final judgment in *D.A.M.* would bar intervenors from proceeding with this action because res judicata "precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). A claim splitting challenge, however, "need not--indeed, often cannot--wait until the first suit reaches final judgment." *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 987 n.1 (10th Cir. 2002). Rather,

Moreover, even if intervenors did not explicitly challenge the Rule in *D.A.M.* or *M.M.V.* on similar grounds to those raised by the organizational plaintiffs in this litigation, the dispositive point is that *they could have*. Claim splitting bars the second suit not just where claims are identical, but where the "two actions share a common transactional nucleus of facts." *Adams*, 487 F.3d at 689; *Vanover*, 857 F.3d at 842 (same, collecting cases). That test is readily met here: intervenors challenged their expedited removal orders—which were premised on the Rule—in *D.A.M.*, contending the Rule was held unlawful and that accordingly their removal orders were unlawful because the Rule's invalidation applies retroactively. Now they wish to challenge those same orders on the same theory, but also on the theory that the Rule is unlawful in the first place. That is a textbook example of claims arising from a common transactional nucleus of facts, as all claims arise from their expedited removal orders based on the Rule.

On top of that, under the "first to file" rule, it is a "generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Padilla v. Willner*, No. 15-cv-4866, 2016 WL 860948, at *5 (N.D. Cal. Mar. 7, 2016) (Tigar, J.). A clear example of where "there is ample basis to apply" the rule is where, as here, a later-suit "involve[s] the same parties as well as the same substantive issues" as an earlier filed suit, but in effect "seek[s] relief from orders issued by" the Court in the first-filed action "to avoid th[e] rulings ... they don't like." *Id.* at *5. And because intervention here would achieve the same result, comity to the multiple appellate panels and district courts in the D.C. Circuit who have already addressed the claims intervenors wish to litigate anew here and whether they are entitled to a stay of removal dictates denying the motion to intervene. *See California v. Trump*, 267 F. Supp. 3d 1119, 1127 (N.D. Cal. 2017) (relying on *Padilla*, and explaining that intervention should be denied "where a plaintiff sued in one court, didn't like how it was going, and then tried to sue in another court").[6]

---

court asks "'whether, *assuming that the first suit were already final*, the second suit *could* be precluded.'" *Adams*, 487 F.3d at 689 (emphasis added) (quoting *Hartsel*, 296 F.3d at 987 n.1).

[6] A similar result is required under the "abuse of the writ" doctrine. As explained below, the only basis for jurisdiction over intervenors is in a habeas petition under 8 U.S.C. § 1252(e)(2). But where a party "abuse[s] the writ by raising a claim in a subsequent petition that he could have

Finally, all intervenors who are also parties in *M.M.V.* may not litigate new challenges to their removal orders. *M.M.V.* has been litigated to final judgment, and so "precludes" them from "relitigating issues that were or could have been raised in that action." *Allen* , 449 U.S. at 94. Intervenors could have raised any merits challenge to the Rule in *M.M.V.* Dkt. 1, ¶ 1, 19-cv-02773 (acknowledging *East Bay* "litigation" and the rule"). But, as noted, to *avoid* relation to *CAIR*, they disclaimed any "challeng[e to] the legality of the [Rule] itself," or any "direct implementation of that [Rule] in the expedited removal process." Dkt. 5 at 4, *M.M.V.*, 19-cv-2773. That waiver is part and parcel of the final judgment in *M.M.V.* and intervenors cannot now pretend that they have sought "to invalidate the Rule" all along. *See* Mot. 15 ("Intervenors [seek] to invalidate the Rule").

B. The Motion Is Not Timely Filed, Barring Intervention under Rules 24(a) and (b)

The intervenors' motion is untimely. This litigation has been ongoing since July 16, 2019, the date that the Rule issued, intervenors were aware of this litigation since its inception, Dkt. 1, ¶ 1, 19-cv-02773, and they acknowledge that their interest in intervening is not related to this litigation at all, but rather to their desire to obtain "relief ... under *CAIR*," a case whose impact they have been litigating in other fora for months. Mot. 13.

Under Rule 24, a third party is expected to intervene as soon as it is aware that litigation may affect its interests. *See, e.g.*, *United States v. Alisal Water Corp.*, 370 F.3d 915, 923 (9th Cir. 2004). The crucial date in assessing timeliness is "when the proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Smith v. L.A. Unified Sch. Dist*., 830 F.3d 843, 854 (9th Cir. 2016). However, "an intervenor's desire to delay action to see if it could avert litigation ... does not excuse its delay." *Henrikson v. Turbomeca*, S.A., No. 06-cv-1563, 2007 WL 2215398, *4 (E.D. Cal. July 30, 2007). Likewise, "differences in litigation strategy is an insufficient explanation for delay." *SurvJustice Inc. v. DeVos*, No. 18-cv-535, 2019 WL 1427447, at *4 (N.D. Cal. Mar. 29, 2019). The textbook case of untimely intervention is when a party makes an "informed, tactical" decision not to intervene earlier because of "parallel litigation." *Moten v. Bricklayers, Masons & Plasterers, Int'l Union of Am.*, 543 F.2d

raised in his first, regardless of whether the failure to raise it earlier stemmed from a deliberate choice," the second case should be dismissed. *McCleskey v. Zant*, 499 U.S. 467, 489 (1991). Intervenors' habeas claims under section 1252(e)(2) are pending on appeal in *D.A.M.*

224, 228 (D.C. Cir. 1976). When an intervenor "closely monitored" the proceedings it wishes to join and makes "a strategic decision" not to get involved until a ruling has been made, that "deliberate forbearance" does not support late-filed intervention. *Alt v. U.S. E.P.A.*, 758 F.3d 588, 591-92 (4th Cir. 2014). Indeed, when a party "gambled and lost in the execution of its litigation strategy," that action weighs against timeliness. *Id.*

Intervenors make no allegations that they were unaware of this litigation at the time that their removal orders became final, when they filed *M.M.V.*, when they filed *D.A.M.*, or when they appealed their losses in those cases. Indeed, they "did not claim and in all likelihood could not claim" that they "did not have actual notice." *Moten*, 543 F.2d at 228. This Court previously suggested that the motion may be timely because "[i]ntervenors seek to intervene in response to recent developments that include the Government's position" concerning the impact of *CAIR* on "Intervenors' removal orders" and whether they are entitled to "the correct credible fear process prescribed by statute." Mot. 5. But that is not enough. Intervenors made the conscious decision to litigate those issues in other cases, emergency stay motions, and appeals, and only sought to intervene here after having lost at every stage in other litigation. "It is perfectly clear that they knew about this litigation and were content to participate on the sidelines for a long period of time." *Reid L. v. Illinois State Bd. of Educ.*, 289 F.3d 1009, 1018 (7th Cir. 2002). Their "wait-and-see" approach to this and the *CAIR* litigation "plainly makes their motion untimely." *Blount-Hill v. Zelman*, 636 F.3d 278, 285-86 (6th Cir. 2011); *see R&G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 9 (1st Cir. 2009) (two-month delay inexcusable when movant knew TRO was in place two months prior). And, this case has undergone multiple rounds of litigation, so their intervention would prejudice the parties. *See SurvJustice*, 2019 WL 1427447, at *3 (motion to intervene untimely when movants "bring claims that have already been substantively decided by the Court" and parties would be prejudiced by introduction of new issues or claims).[7]

---

[7] While the Court credited intervenors' argument that the government's position on *CAIR* is a new "development," that is incorrect. TRO Order 5. The government's position, detailed before this Court over a year ago, is that vacatur should only apply to parties to the suit at the merits stage and that remand without vacatur should be considered, *see, e.g.*, Dkt. 65 at 20-21 (Aug. 29, 2019). Both parties extensively litigated this issue as part of the nationwide scope of the injunction in this case, and intervenors have done so in the *D.A.M.* litigation now pending appeal.

C. Movants Have No Protectable Interest That May Be Impaired in This Case, Denying Intervention Would Not Preclude the Movants From Protecting Such Interests, and Plaintiffs Adequately Protect Such Interests

The intervenors have no protectable interest in this litigation, and are already litigating their interests in dual litigation in the D.C. Circuit; moreover, any theoretical interest they may have is adequately represented by the plaintiffs in this suit. As such, intervention of right is inappropriate.

Intervention as of right is foreclosed when the disposition will not "impair or impede" movants' "ability to protect" their interests. Fed. R. Civ. P. 24(a). Such is the case when "movants' grievances could be raised in separate actions" and "have already been." *Seils v. Rochester City Sch. Dist.*, 199 F.R.D. 506, 511 (W.D.N.Y. 2001); *see U.S. Bank Nat. Ass'n v. State Farm Fire & Cas. Co.*, 765 F.3d 867, 870 (8th Cir. 2014) (similar); *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 199 (2d Cir. 2000) (similar). Indeed, this Court recently denied intervention of right when "[w]hatever claims [the intervenors] have will remain intact" notwithstanding the litigation. *In re Cathode Ray Tube Antitrust Litig.*, No. 07-CV-05944-JST, 2020 WL 5224241, at *3 (N.D. Cal. Aug. 27, 2020) (Tigar, J.). And other courts in this district recognize that a case will not impair or impede intervenors' interests when they have already brought suit in another district court asserting the same or similar claims. *SurvJustice Inc.*, 2019 WL 1427447, at *6. The fact that an intervenor might "obstacles if they file their own lawsuit does not as a matter of law require their intervention." *Seils*, 199 F.R.D. at 511. Rather, "the denial of intervention" does not "cause prejudice" when one can "bring" (and here in fact has brought) "a separate action." *R&G Mortg. Corp.*, 584 F.3d at 10 (collecting cases).

Intervenors have been litigating their interests in the D.C. district and circuit courts. None of those decisions suggest that the D.C. courts are an improper forum, or that this forum clearly would be. Indeed, the appeal in *CAIR*—which intervenors have inexplicably not sought to intervene in—is pending in that jurisdiction, as are appeals of both *M.M.V.* and *D.A.M.* Moreover, as explained in Part E infra, this Court lacks jurisdiction over intervenors' claims, and venue would be improper here in any event. The ultimate result in this case has no preclusive effect on the claims that intervenors are litigating in D.C. Intervenors do not explain why *this case* threatens their interests—they merely claim that their inability to get *a stay of removal* based on the government's interpretation of *CAIR* in *other* litigation harms them. Mot. 14. But they are litigating that very issue in that other litigation, and win or lose, their interest in a decision concerning

whether their removal orders are valid notwithstanding the vacatur of the Rule in *CAIR* will be vindicated in that litigation. Thus, they have "other means" to protect their interests, so intervention should be denied. *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006).

Even if the present action touched upon any of intervenors' interests, intervention of right is foreclosed because "existing parties adequately represent" their interest. Fed. R. Civ. P. 24. "When a proposed intervenor has not alleged any substantive disagreement between it and the existing parties to the suit, and instead has vested its claim for intervention entirely upon a disagreement over litigation strategy or legal tactics, courts have been hesitant to accord the applicant full-party status." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1306 (9th Cir. 1997). Here, intervenors concede the "sufficiency of counsel that currently represents the Plaintiffs." Mot 14.-15. But they claim that "representation" is inadequate because of "the Government's position" *concerning other litigation*. *Id.* But intervenors did not seek to intervene in *CAIR*, and again, are pursuing their rights in their own litigation elsewhere. Regardless, the Complaint *in this case* makes clear that the existing plaintiffs seek a permanent injunction and vacatur of the Rule, Dkt. 1 at 31, and a ruling that "the Rule is unlawful under the APA as applied to everyone, not just Plaintiffs," Dkt. 63 at 10, just like intervenors. *See id.* at 12 (seeking relief for the "hundreds of thousands of asylum seekers [who] are at imminent risk of removal"). Intervenors offer no basis to find that plaintiffs' counsel is incapable of arguing that vacatur of the Rule should apply retroactively to outstanding removal orders. In short, intervenors fail to show that their interests are so impaired by this litigation that they are "necessary" parties entitled to intervene. *See Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992).

D. The Court Should Deny Permissive Intervention under Rule 24(b)

Permissive intervention under Rule 24(b) is permitted only when the movant "shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Wilson*, 131 F.3d at 1308; *see, e.g.*, *In re Cathode*, 2020 WL 5224241, at *5. As described supra Section B, the motion is untimely, and as discussed more infra in Section E, this Court lacks jurisdiction over intervenors' underlying claims. So this Court should deny permissive intervention.

E. Intervention is Futile, as the Court Lacks Jurisdiction Over Intervenors' Underlying Claim for Relief and Request for a Stay of Removal

The Court also may not grant intervention because it lacks jurisdiction over intervenors' underlying claim and their request for a stay of removal. *See Canatella*, 404 F.3d at 1113.

Title 8, Section 1252 of the INA bars jurisdiction over intervenors' claims. Section 1252(a)(2)(A), titled "Matters not subject to judicial review," provides that, for "[r]eview relating to section 1225(b)(1)"—including any order of expedited removal or credible fear determination issued under section 1225(b)(1)—"*[n]otwithstanding any other provision of law* ... no court shall have jurisdiction to review ... *except as provided in subsection (e)* [*i.e.*, section 1252(e)]," "any ... cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)," "a decision ... to invoke the provisions of such section," or "procedures and policies adopted ... to implement the provisions of section 1225(b)(1)." 8 U.S.C. § 1252(a)(2)(A)(i), (ii), (iv) (emphasis added). Section 1252(a)(2)(A)(iii) further eliminates jurisdiction—without any exception under subsection (e)—to review "the application of [section 1225(b)(1)] to individual aliens, including the determination made under section 1225(b)(1)(B)" concerning whether an alien has a credible fear. Section 1252(a)(2)(A) thus squarely removes from federal courts *any* jurisdiction to review issues "relating to section 1225(b)(1)," other than "as provided in subsection(e)." *Make The Rd. New York v. Wolf*, 962 F.3d 612, 626 (D.C. Cir. 2020).

Section 1252(e)(2) provides for jurisdiction in habeas to review expedited removal orders, limited to three issues: "(A) whether the petitioner is an alien; (B) whether the petitioner was ordered removed under [the expedited removal statute, 8 U.S.C. § 1225], and (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee ..., or has been granted asylum[.]" *Id.* § 1252(e)(2)(A)-(C). "In determining whether an alien has been ordered removed under" section 1225(b)(1), "the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner," and "[t]here shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal. *Id*. § 1252(e)(5).[8]

---

[8] Section 1252(e)(3) authorizes "[j]udicial review of determinations under section 1225(b) of this title and its implementation" in D.C. district court, "limited to determinations of—(i) whether

Under these provisions, this Court lacks jurisdiction over intervenors' claims. As in *D.A.M.*, intervenors contend here that "because of the *CAIR* decision, the [intervenors] have the right to seek asylum through a lawful process created by Congress ... under 8 U.S.C. § 1225(b)," and that their removal would violate that right. Mot. 4. *Compare D.A.M.*, Dkt. 31 ¶¶ 302-04 (alleging that "[b]ecause of *CAIR*, [they] have unlawful final orders of removal," and effectuating those orders would violate the Due Process Clause). Section 1252(a)(2)(A) governs that claim—it "aris[es] from or relat[es] to the *implementation or operation* of an order of removal," 8 U.S.C. § 1252(a)(2)(A)(i) (emphasis added), because it "ask[s] to nullify the continuing effects of that order." *Avendano-Ramirez v. Ashcroft*, 365 F.3d 813, 818 (9th Cir. 2004); *D.A.M.*, 2020 WL 5525056, at *8 ("in challenging the government's plan to deport them pursuant to their final orders of removal with allegedly inadequate process, petitioners necessarily challenge 'the implementation or operation' of those orders" under section 1252(a)(2)(A)); *Patel v. Barr*, --- F. Supp. 3d ---, 2020 WL 4282051, at *4 (E.D. Pa. July 27, 2020) (similar). That is what section 1252(a)(2)(A) bars. *See Thuraissigiam*, 140 S. Ct. at 1966 (section 1252(a)(2)(A)(i) bars review of expedited removal orders beyond what is provided by section 1252(e)(2)). Indeed, "Section 1252(a)(2)(A)(i) precludes review" of claims alleging failure to provide "the meaningful credible fear procedure to which [aliens assert they are] entitled" or claims alleging "the erroneous application or interpretation of relevant law" concerning removal orders. *Thuraissigiam v. U.S. Dep't of Homeland Sec.*, 917 F.3d 1097, 1116, 1118-19 (9th Cir.), *rev'd on other grounds*, 140 S. Ct. 1959; *accord Castro v. DHS*, 835 F.3d 422, 428 n.8, 430-34 (3d Cir. 2016) (collecting cases and holding that section 1252(a)(2)(A) encompasses claims alleging removal orders are invalid because of procedural errors or application of incorrect legal standards); *Garcia de Rincon v. DHS*,

---

[section 1225(b)], or any regulation issued to implement such section, is constitutional; or (ii) whether such a regulation," or a "written" "policy directive," "policy guideline," or "procedure issued by or under the authority of the Attorney General [or Secretary] to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law," if such suits are filed within "60 days" of when the challenged action "is first implemented." Intervenors do not raise such a challenge here to the Rule or *CAIR*. And such a challenge would be time-barred under section 1252(e)(3)(B) and in the wrong venue anyway, *see, e.g.*, *Patel*, 2020 WL 4282051, at *5, and also barred given the failure to identify a "written" policy concerning *CAIR*. *Id.*, § 1252(e)(3)(A); *see M.M.V*, 456 F. Supp. 3d at 216 (collecting cases).

539 F.3d 1133, 1138-39 (9th Cir. 2008) (similar). That is exactly what intervenors seek.

Because section 1252(a)(2)(A) governs, this Court lacks jurisdiction unless intervenors can invoke section 1252(e)(2). But section 1252(e)(2) permits review in *habeas* only, and intervenors are all detained either in Pennsylvania or Texas, meaning this Court lacks jurisdiction. *See, e.g.*, *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1186 (N.D. Cal. 2017) (court lacks habeas "jurisdiction" unless proper respondent, *i.e.*, the federal official "most immediately responsible" for facility in which alien is detained, "falls within this Court's territorial jurisdiction"); *accord* Dkt. 56, *D.A.M.*, 20-cv-1321 at (intervenors' merits brief contending "proper respondent is the federal official most directly responsible for overseeing the contract facility"). Regardless, intervenors are aliens, they *were issued* removal orders, and they are not "alien[s] lawfully admitted for permanent residence … as a refugee ... or [] granted asylum[.]" 8 U.S.C. § 1252(e)(2)(A)-(C). That dooms their motion because federal courts lack jurisdiction to consider any collateral challenge to an expedited removal order—including whether aliens are "entitled to any relief from removal," 8 U.S.C. § 1252(e)(5)—beyond these three permissible bases. *See de Rincon*, 539 F.3d at 1140 (petitioner's challenge "does not contest her expedited removal order on any of the enumerated permissible grounds in § 1252(e)—this court therefore has no jurisdiction to hear it."); *accord Thuraissigiam*, 917 F.3d at 1118 (section 1252(e)(2) bars review of claims alleging "the erroneous application or interpretation of relevant law"); *Castro*, 835 F.3d at 431-32 (collecting cases).

The fact that this Court exercised jurisdiction previously does not alter this conclusion. As the Court observed, the Ninth Circuit's decision *East Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219 (9th Cir. 2018), required concluding that section 1252 did not bar the *organizational* plaintiffs' APA claims. *See* 385 F. Supp. 3d at 937 & n.6. But this Court did not address whether section 1252(a)(2)(A) and (e)(2) barred *individual* claims. Indeed, citing section 1252(a)(2)(A)(iv), the Court "agree[d] with Defendants that it lacks the authority to enjoin 'procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1) of [Title 8].'" 354 F. Supp. 3d at 1118. Had intervenors been party to this litigation at the time, the Court would also have lacked authority to enjoin "except as provided in subsection (e), any individual determination or to entertain any other cause or claim arising from or relating to the

DEFENDANTS' OPPOSITION TO MOTIONS TO INTERVENE AND FOR TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION
*East Bay Sanctuary v. Trump*, Case No. 4:19-cv-04073-JST
18

implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title," 8 U.S.C. § 1252(a)(2)(A)(i); *see Thuraissigiam*, 917 F.3d at 1119; *accord Nianga v. Wolfe*, 435 F. Supp. 3d 739, 744 (N.D. Tex. 2020) (concluding that alien's challenge to the Rule and their expedited removal order is barred by section 1252(a)(2)(A)(i) and (iii) and (e)(2) because it seeks "judicial review of the determination made under section 1225(b)(1)"); *Patel*, 2020 WL 4282051, at *3 (similar); *Rodrigues v. McAleenan*, 435 F. Supp. 3d 731, 735-36 (N.D. Tex. 2020) (similar).[9] Moreover, because intervenors' removal orders were all issued *after* this Court's injunction was stayed, intervenors cannot argue their orders were not lawfully issued, so the Court also lacks inherent authority to enforce its injunctions as to intervenors. *See Nken*, 556 U.S. at 428 ("stay" "operates upon the judicial proceeding" by "temporarily divesting an order of enforceability").

As in *D.A.M.*, intervenors may contend that section 1252(a)(2)(A) cannot apply because the vacatur of the Rule in *CAIR* means their orders of removal no longer exist, such that effectuating them would be unlawful. But arguing that an order once issued no longer exists seeks to "nullify the continuing effects of that order," and so plainly "relat[es] to the implementation or operation of" that order. *Avendano-Ramirez*, 365 F.3d at 818. Intervenors may also suggest, as they did in *D.A.M.*, that cases construing section 1252(b)(9), like *Jennings v. Rodriguez*, 138 S.Ct. 830, 840 (2018), mean that the phrase "relating to" in section 1252(a)(2)(A)(i) is narrow. But section 1252(b)(9) applies to removal orders issued under section 1229a, not orders under section 1225(b)(9). And, it is far narrower than section 1252(a)(2)(A), as it only channels review of "questions of law and fact" "arising from" a removal proceeding under section 1229a into the courts of appeal. 8 U.S.C. § 1252(b)(9). *See D.A.M.*, 2020 WL 5525056, at *9. It does not include the far broader limitation on review of claims "*relating to* section 1225(b)(1)" generally, or "*relating to* the *implementation or operation* of an order of [expedited] removal." 8 U.S.C.

---

[9] Furthermore, "when it is the United States that is seeking to keep intervenors out ... the doctrine of sovereign immunity 'recognizes no distinction ... between ancillary suits and original suits, but extends to suits of every class.'" *Holloway v. United States*, 2014 WL 1747467, at *2 (E.D. Cal. Apr. 29, 2014), *aff'd*, 636 F. App'x 965 (9th Cir. 2016) (citing *Ill. Cent. R. Co. v. Pub. Utilities Comm'n of Ill.*, 245 U.S. 493, 505 (1918)). The APA's waiver of sovereign immunity, however, is conditioned on other "statutes [not] preclude[ing] judicial review." 5 U.S.C. § 701(a)(1); *see E.J. Friedman Co. v. United States*, 6 F.3d 1355, 1359 (9th Cir. 1993). So unlike the original plaintiffs in this case, intervenors claims are also barred by sovereign immunity.

§ 1252(a)(2)(A)(i) (emphasis added); *see Aguilar v. ICE*, 510 F.3d 1, 10 (1st Cir. 2007) (distinguishing section 1252(b)(9) from statutes using the broader "relating to" language, which "sweep[s] within its scope claims with [even] only a remote or attenuated connection to the [underlying] removal of an alien"). That broad statutory language "makes abundantly clear that" courts have no jurisdiction to review any challenge "relating to section 1225(b)(1)" "except as provided in § 1252(e)." *Castro*, 835 F.3d at 426-27; *Make the Rd.*, 962 F.3d at 626 (similar).

Intervenors might also contend, as they did in *D.A.M.*, that section 1252(e)(2)(B)—which permits review of "whether the petitioner was ordered removed under such section"—supplies jurisdiction. In *D.A.M.* they relied on *Dugdale v. U.S. Customs & Border Protection*, 88 F. Supp. 3d 1, 6 (D.D.C. 2015), which suggested that "a determination of whether a removal order 'in fact was issued' fairly encompasses a claim that the order *was not lawfully issued* due to some procedural defect." But as the *D.A.M.* court (the same judge who issued *Dugdale*) explained, even if *Dugdale* is persuasive, *see Castro*, 835 F.3d at 433 (suggesting otherwise), "petitioners must raise a claim that their removal orders were, as a matter of law, *not* issued." 2020 WL 5525056, at *11 (emphasis in original). Indeed, section 1252(e)(5) makes clear that review under section 1252(e)(2) is limited to whether the "order in fact *was issued*," 8 U.S.C. § 1252(e)(5) (emphasis added), not whether some *subsequent event* might have later impacted the order. *See also id.* §§ 1252(e)(2)(C), (e)(4) (phrasing permitted review in the *past tense*). Had Congress meant to include events occurring after an "order in fact was issued" in section 1252(e)(2)'s coverage, it would have used present tense words like "is" rather than "the past tense." *See Gundy v. United States*, 139 S. Ct. 2116, 2127 (2019). Review is thus limited to "whether an immigration officer issued [a] piece of paper" called an expedited removal "and whether the Petitioner is the same person referred to in that order." *Castro*, 835 F.3d at 431 (collecting cases); *accord M.M.V. v. Barr*, No. 19-2773, 2020 WL 6129343, at *2 (D.D.C. Aug. 19, 2020) ("the invalidity of the [Rule does not] somehow revive[] the claims the Court had no power to hear in the first place").

Regardless, even if section 1252(a)(2)(A) contemplated review of whether an order issued in the past is presently lawful, *CAIR* did not on its own terms, or by operation of law, invalidate all orders issued under the Rule when it was operative. *D.A.M.*, 2020 WL 5525056, at *8 ("order

vacating the [Rule] ... does not mean that petitioners' removal orders (along with thousands of others) were automatically extinguished by operation of [the] judgment"); Dkt. 27 at 14, *Cortez-Leon v. Doeren*, 20-cv-1058 (E.D. Va.) (similar); *accord Patel*, 2020 WL 4282051, at *4 (finding such claim barred). Judge Kelly did not address the issue at all. *Compare* 2020 WL 3542481 at *21-23, *with L.M.-M v. Cuccinelli*, 442 F. Supp. 3d 1, 34 (D.D.C. 2020) (explicitly addressing whether vacatur of expedited removal policies requires vacatur of all outstanding removal orders issued while the policy was operative, and expressly declining to vacate orders of non-parties); *Waterkeeper Alliance, Inc. v. Wheeler*, No. 18-cv-2230, 2020 WL 1873564, at *6-*7 (D.D.C. Apr. 15, 2020) (similar, non-immigration case); *Western Watersheds Project v. Zinke*, 441 F. Supp. 3d 1042, 1085-89 (D. Idaho 2020) (similar).[10] Indeed, Judge Kelly addressed only the merits of the *organizational* Plaintiffs' challenge to the Rule, concluding that vacatur of the Rule was an appropriate remedy and that vacatur would not be limited "to the [parties]" in the case. *Id.*, *22 (citing *Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998)). That is all vacatur does: proscribe prospective application of the vacated rule to regulated parties. *See Nat'l Min.*, 145 F.3d at 1409. But Judge Kelly expressly declined to "consider whether the INA's complex jurisdiction stripping and channeling provisions ... divest the Court of jurisdiction" over individual claims. *Id.* at *6. And had Judge Kelly in fact addressed the propriety of universal vacatur of all removal orders issued under the Rule, including for thousands of non-parties, he would have had to address section 1252(e)(1)(B), which prohibits class action-type relief "in any action for which judicial review is authorized" under section 1252(e), and bars relief as to non-parties that reaches "aliens anywhere in the world." *Am. Immigration Lawyers Ass'n v. Reno*, 199 F.3d 1352, 1359 (D.C. Cir. 2000); *Grace v. Whitaker*, 344 F. Supp. 3d 96, 144 n.31 (D.D.C. 2018) (rejecting retroactive relief invalidating non-parties' removal orders given section 1252(e)(1)(B)).

---

[10] The Court previously suggested that *W.C. v. Bowen*, 807 F.2d 1502 (9th Cir. 1987) "lends support to [intervenors'] interest in intervening in this case." TRO Order 6. Even if correct, *W.C.* does not hold that the vacatur of a rule *retroactively* vacates every action taken under the rule while the rule was valid. *W.C.* held only that parties asserting that they received adverse agency decisions pursuant to an unlawful rule could receive vacatur of their adverse decisions if premised on that rule as a *remedy*. 807 F.2d at 1505-06. And that is precisely what happens in individual cases under section 1252(e). *See L.M.-M.*, 442 F. Supp. 3d at 34; *Grace*, 344 F. Supp. 3d at 144 & n.31.

Absent an express holding in *CAIR* that it intended to invalidate all orders issued while the Rule was operative, the normal rule is that "[n]ew legal principles, even when applied retroactively, do not apply to cases already closed." *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758 (1995). Thus, even if "a decision is retroactive," that "does not mean that final judicial or administrative decisions are to be reopened." *Heartland*, 568 F.3d at 1366–67; *see Avila-Sanchez v. Mukasey*, 509 F.3d 1037, 1040 (9th Cir. 2007) ("at the time of his deportation, the BIA's action was in accord with the rules that then existed and those were not overturned until over two years later"). Petitioners cite no contrary case. Instead, they rely exclusively on cases addressing remand without vacatur. Mot. 3-4. But the fact that Judge Kelly declined to remand the Rule without vacatur, *see CAIR*, 2020 WL 3542481, at *21, says nothing about whether he affirmatively vacated all prior orders of removal, including the thousands of orders issued to non-parties, which, as explained he did not and could not do. And, the Circuit Court *CAIR* arose in *unanimously* found that argument unlikely to succeed. *See D.A.M.*, 20-5281 (Order, 10/16/20).

Intervenors may nevertheless contend, as they did in *D.A.M.*, that if sections 1252(a)(2)(A) and (e)(2) bar their claims, then they violate the Suspension Clause. But that claim is foreclosed by the Supreme Court's recent decision in *Thuraissigiam*, which held that aliens subject to expedited removal may not challenge the limited judicial review available to them under section 1252(a) and (e) under the Suspension Clause. 140 S. Ct. at 1964. Aliens seeking to challenge their final removal orders on constitutional grounds have no entitlement to judicial review at all. *Id.* And the Suspension Clause does not require such judicial review, because the writ of habeas corpus protected by the Suspension Clause "simply provide[s] a means of contesting the lawfulness of restraint and securing release," *id.* at 1969, and does not encompass challenges to the Executive Branch's decision to remove or exclude an alien. *Id*. Moreover, *Thuraissigiam* categorically holds that the Suspension Clause provides no basis to challenge removal orders beyond the review available under section 1252(e) because "the writ has never encompassed" claims by aliens seeking "to remain lawfully in the United States," to "obtain additional [] review of [their] asylum claim[s,]" or to prevent their removal, *id.* at 1963, 1969 n.12, 1971, 1973-79.

Finally, even assuming jurisdiction, intervenors cannot demonstrate a likelihood of success

on the merits of their underlying claim. They contend that "the consequence of *CAIR*'s vacatur of the Rule is that the Proposed Intervenors are restored to the status quo ante prior to the Rule." Mot. 4. However, as explained, *CAIR* did not retroactively vacate all outstanding removal orders premised on the Rule. Intervenors nevertheless contend that they "have the right to seek asylum through a lawful process created by Congress, which the Rule unlawfully took from them," presumably meaning they have a due process right to the procedures provided for under section 1225(b)(1), and that removing them without access to that "process" violates their rights. *Id.* But aliens like intervenors "seeking initial admission to the United States request[] a privilege and ha[ve] no constitutional rights regarding [their] application." *Thuraissigiam*, 140 S. Ct. at 1982. Moreover, intervenors—all of whom were "detained shortly after unlawful entry," 140 S. Ct. at 1983, and in close proximity to the border, Decl. of Jay Visconti, ¶¶ 4-5—"ha[ve] only those rights regarding admission that Congress has provided by statute." 140 S. Ct. at 1983. "Congress provided the right to a 'determination'" whether" intervenors "had 'a significant possibility' of 'establishing eligibility for asylum,' and [intervenors were] given that right." *Id.* "Because the Due Process Clause provides nothing more, it does not require review of that determination or how it was made," and so the fact that the section 1252(a)(2)(A) and (e) bar such review does not implicate the Due Process Clause, and provides no basis for an injunction.

## II.    Considerations of Irreparable Harm and the Equities Favor the Government.

A stay of removal would irreparably harm the government. The government always suffers irreparable harm when it is prevented from enforcing Acts of Congress. *See Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers). Intervenors all were found ineligible for asylum or other protections and so by statute "shall" be "removed from the United States." 8 U.S.C. § 1225(b)(1)(B)(iii)(I). A stay would thwart that Congressional directive, and "[t]here is always a public interest in prompt execution of removal orders. The continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and permits and prolongs a continuing violation of United States law." *Nken*, 556 U.S. at 436. Against this, intervenors speculate that they may suffer harm if returned to their home countries. Mot. 17-18. That speculation cannot outweigh a clear congressional command, and even if credited, the

D.C. Circuit en banc court has already rejected a stay on those grounds, and should be accorded comity on that finding. *See Church of Scientology of California v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979) ("comity" requires "defer[ring] to the litigation in progress in the D.C. Circuit") Intervenors further speculate that they may not be able to return to the United States if they ultimately win any of their ongoing litigation. Mot. 18. But such harm is not cognizable, because "[a]liens who are removed may continue to pursue their [litigation], and those who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal." *Nken*, 556 U.S. at 435. And, in any event, that is a question of remedy should intervenors prevail on appeal in *D.A.M.*, not a question of irreparable harm warranting this Court's second-guessing the decisions of multiple other courts denying a stay of removal based in part on these individuals failure to demonstrate irreparable harm.

**III. The INA Prohibits a Stay of Removal.**

Even if intervenors satisfy the TRO factors, the Court lacks jurisdiction to enter a stay of removal "[e]xcept as provided in this section." 8 U.S.C. § 1252(g). Section 1252(e)(1)(A), titled "Limitations on relief," then provides that "[w]ithout regard to the nature of the action or claim and without regard to the identity of the party or parties bringing the action, no court may—(A) enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) of this title except as specifically authorized in a subsequent paragraph of this subsection." Section 1252(e)(1) applies to actions under section 1252(e)(2), because the sole prescribed "relief available in such cases" is provided for in section 1252(e)(4). *Grace v. Barr*, 965 F.3d 883, 908 (D.C. Cir. 2020). No other equitable relief—including a stay, *Aspex Eyewear, Inc. v. Revolution Eyewear, Inc.*, 2008 WL 11409571, at *6 (C.D. Cal. Mar. 7, 2008) ("stay is a form of equitable relief")—is authorized. *See also* 8 U.S.C. § 1252(a)(2)(A), (g) (prohibiting relief under the All Writs Act, 28 U.S.C. § 1651, and "any other provision of law" unless authorized by section 1252(e)); *M.M.V.*, 459 F. Supp. 3d at 7.

**CONCLUSION**

The Court should deny the motions. If the Court issues injunctive relief, it should stay any injunction it enters to permit the government to seek emergency relief from the Ninth Circuit.

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director

By: /s/ *Erez Reuveni*
EREZ REUVENI
Assistant Director
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 307-4293
Email: Erez.R.Reuveni@usdoj.gov

Dated: October 23, 2020

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2020, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of for the Northern District of California by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: */s/ Erez Reuveni*
EREZ REUVENI
Assistant Director
United States Department of Justice
Civil Division