Adam Siegler (SBN 116233)
**GREENBERG TRAURIG LLP**
1840 Century Park East
Suite 1900
Los Angeles, CA 90067
Telephone: (310) 586-7700
Facsimile: (310) 586-7800
Email:sieglera@gtlaw.com

Jonathan K. Ogata (SBN 325914)
**GREENBERG TRAURIG, LLP**
1201 K Street, Suite 1100
Sacramento, CA
Telephone: (916) 442-1111
Email:ogataj@gtlaw.com

Steven G. Barringer (appearance *pro hac vice*)
**GREENBERG TRAURIG, LLP**
2101 L Street, NW, Suite 1000
Washington, DC 20037
Telephone: (202) 331-3108
Facsimile: (202) 261-0114
Email: barringers@gtlaw.com

Caroline J. Heller (appearance *pro hac vice*)
**GREENBERG TRAURIG LLP**
200 Park Ave
New York, NY 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: hellerc@gtlaw.com

Gregory P. Copeland (appearance *pro hac vice*)
Sarah T. Gillman (appearance *pro hac vice*)
**RAPID DEFENSE NETWORK**
11 Broadway, Suite 615
New York, NY 10004-1490
Telephone: (212) 843-0910
Facsimile: (212) 257-7033
Email: gregory@defensenetwork.org
Email: sarah@defensenetwork.org

*Attorneys for Proposed Plaintiff-Intervenors*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EAST BAY SANCTUARY COVENANT, et al., | Case No. 4:19-cv-04073-JST |
| | [Judge:  Hon. Jon S. Tigar] |
| Plaintiffs, | **PROPOSED INTERVENORS' REPLY MEMORANDUM AND POINTS OF LAW IN FURTHER SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION** |
| vs. | |
| WILLIAM BARR, et al., | Date Action Filed: July 16, 2019 |
| Defendants. | |

# TABLE OF CONTENTS

I.    Introduction ................................................................................................................. 1

II.   History of M.M.V. and D.A.M. ................................................................................... 2

III.  The Court Should Grant Intervenors' Motion for a Preliminary Injunction .................... 4

       A.    Intervenors Are Likely To Succeed on the Merits of Their Motion to Intervene
           as a Matter of Right .............................................................................................. 4

             1.   Intervenors' Motion to Intervene is Timely ................................................ 4

             2.   Intervenors' Have a Protectable Interest in the Subject of This Action
                 and Disposition of the Action May Impair that Interest ............................... 6

             3.   Plaintiffs Cannot Adequately Represent Intervenors' Interests ..................... 9

             4.   The Motion to Intervene Likely Will Not Be Barred Based Upon Claim-
                 Splitting, "First to File Rule, or Claim Preclusion ..................................... 10

       B.    Intervenors Are Likely To Succeed on the Merits of Their Motion to
           Permissively Intervene. ...................................................................................... 12

       C.    Intervenors Will be Irreparably Harmed and the Equities Favor Intervenors ............... 13

       D.    The Court Has the Authority to Issue a Preliminary Injunction Staying Removal ........ 14

IV.   Conclusion ................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abdul Mehamed Sied v. Duke,*
No. 17-CV-06785-LB, 2017 WL 6316821 (N.D. Cal. Dec. 11, 2017) ........................... 14

*Adobe Sys. Inc. v. Wowza Media Sys., LLC,*
72 F. Supp. 3d 989 (N.D. Cal. 2014) ....................................................................... 10

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n,*
988 F.2d 146 (D.C. Cir. 1993) ..................................................................................... 4

*Am. Great Lakes Ports Ass'n v. Schultz,*
962 F.3d 510 (D.C. Cir. 2020) .................................................................................... 4

*Bounds v. Smith,*
430 U.S. 817 (1977) ................................................................................................... 14

*Buschmann v. Schweiker,*
676 F.2d 352 (9th Cir. 1982) ....................................................................................... 7

*CAIR v. Barr,*
2019 WL 8376064 (D.D.C.) .......................................................................................... 5

*California v. Health & Human Services,*
330 F.R.D. 248 (N.D. Cal. 2019) .............................................................................. 13

*California v. Trump,*
267 F. Supp. 3d 1119 (N.D. Cal. Oct. 25, 2017) ................................................. 11, 12

*Capital Area Immigrants' Rights Coalition v. Trump,*
Civil Action Nos. 19-2117, 19-2530 (TJK), 2020 WL 3542481 (D.D.C. June 30,
2020) ............................................................................................................................. 1

*Castro v. Dep't of Homeland Sec.,*
835 F.3d 422 (3d Cir. 2016) ...................................................................................... 14

*Cent. Delta Water Agency v. United States,*
306 F.3d 938 (9th Cir.2002) ...................................................................................... 10

*Chambers v. NASCO, Inc.,*
501 U.S. 32 (1991) ..................................................................................................... 14

*Chaudhry v. Barr,*
No. 19-CV-00682-TLN-DMC, 2019 WL 2009307 (E.D. Cal. May 7, 2019) ............... 14

*Church of Scientology of California v. U.S. Dep't of Army,*
611 F.2d 738 (9th Cir. 1979), overruled on other grounds, *Animal Legal Defense
Fund v. U.S. Food & Drug Admin.,* 836 F.3d 987 (9th Cir. 2016) (en banc) .................. 11

*Clements v. Airport Authority of Washoe Cnty.,*
69 F.3d 321 (9th Cir. 1995) .................................................................................. 10, 11

ii

*D.A.M. v. Barr,*
    20-CV-1321 (CRC), 2020 WL 4218003 (D.D.C. July 23, 2020)........................................3

*D.A.M. v. Barr,*
    20-CV-1321 (CRC), 2020 WL 5525056 (D.D.C. Sept. 15, 2020) ..........................2, 3, 5, 9, 13

*Dep't of Homeland Sec. v. Regents of the Univ. of California,*
    140 S. Ct. 1891, 207 L. Ed. 2d 353 (2020) ........................................................5

*E&B Natural Res. Mgmt. Corp. v. County of Almeda,*
    18-CV-05857-YGR, 2019 WL 5697912 (N.D. Cal. Nov. 4, 2019), appeal dismissed
    sub nom. *E&B Nat. Res. Mgmt. Corp. v. County of Alameda,* 19-17451, 2020 WL
    2945032 (9th Cir. Mar. 16, 2020) ................................................................12

*Freedom from Religion Found., Inc. v. Geithner,*
    644 F.3d 836 (9th Cir. 2011) ....................................................................12

*Grace v. Whitaker,*
    344 F. Supp. 3d 96 (D.D.C. 2018), aff'd in part, rev'd in part and remanded sub
    nom. *Grace v. Barr,* 965 F.3d 883 (D.C. Cir. 2020)...............................................8

*Heartland Reg'l Med. Ctr. v. Sebelius,*
    566 F.3d 193 (D.C. Cir. 2009) ....................................................................4

*Herron v. Heckler,*
    576 F. Supp. 218 (N.D. Cal. 1983) ...............................................................7

*I.N.S. v. Cardoza-Fonseca,*
    480 U.S. 421 (1987) ............................................................................14

*Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.,*
    544 F.Supp.2d 949 (N.D. Cal. 2008) .............................................................12

*Jimenez v. Napolitano,*
    No. C-12-03558 RMW, 2012 WL 3144026 (N.D. Cal. Aug. 1, 2012) ...............................14

*L.M.-M. v. Cuccinelli,*
    442 F. Supp. 3d 1 (D.D.C. 2020) ...............................................................7, 8

*L.M.-M. v. Cuccinelli,*
    442 F. Supp. 3d 1 (D.D.C. 2020), judgment entered, CV 19-2676 (RDM), 2020 WL
    1905063 (D.D.C. Apr. 16, 2020), appeal dismissed, 20-5141, 2020 WL 5358686
    (D.C. Cir. Aug. 25, 2020) ........................................................................8

*Levin Richmond Terminal Corp. v. City of Richmond,*
    20-CV-01609-YGR, 2020 WL 5074263 (N.D. Cal. Aug. 27, 2020) ...............................12

*Lujan v. National Wildlife Fed'n,*
    497 U.S. 871 (1990) (Blackmun, J. dissenting)...................................................6

*M.M.V. v. Barr,*
    19-CV-2773 (TJK), 2019 WL 10888831 (D.D.C. Sept. 25, 2019) .................................3

*M.M.V. v. Barr,*
    456 F. Supp. 3d 193 (D.D.C. 2020)........................................................1, 2, 3

PROPOSED INTERVENORS' REPLY MEMORANDUM POINTS AND AUTHORITIES IN FURTHER SUPPORT OF
MOTION FOR A PRELIMINARY INJUNCTION

*Make the Rd. N.Y. v. Wolf*,
   405 F. Supp. 3d 1 (D.D.C. 2019), rev'd and remanded sub nom. on other grounds,
   962 F.3d 612 (D.C. Cir. 2020) .................................................................................................. 9

*Milk Train, Inc. v. Veneman*,
   310 F.3d 747 (D.C. Cir. 2002) .................................................................................................. 4

*Nat'l Fuel Gas Supply Corp. v. Fed. Energy Regulatory Comm'n*,
   59 F.3d 1281 (D.C. Cir. 1995) .................................................................................................. 4

*Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*,
   145 F.3d 1399 (D.C. Cir. 1998) ............................................................................................ 6, 11

*Nken v. Holder*,
   556 U.S. 418 (2009) ................................................................................................................ 13

*O.A. v. Trump*,
   404 F. Supp. 3d 109 (D.D.C. Aug. 2, 2019) .............................................................................. 5

*Padilla v. Willner*,
   15-CV-04866-JST, 2016 WL 860948 (N.D. Cal. Mar. 7, 2016) .......................................... 11, 12

*S.A. v. Trump*,
   18-CV-03539-LB, 2019 WL 990680 (N.D. Cal. Mar. 1, 2019) ................................................ 7

*Stark v. Starr*,
   94 U.S. 477 (1876) .................................................................................................................. 10

*Sugar Cane Growers Coop. of Fla. v. Veneman*,
   289 F.3d 89 (D.C. Cir. 2002) .................................................................................................... 4

*United States v. Alisal Water Corp.*,
   370 F.3d 915 (9th Cir. 2004) .................................................................................................... 4

*United States v. City of Los Angeles*,
   288 F.3d 391 (9th Cir. 2002) .................................................................................................. 12

*United States v. Haytian Republic*,
   154 U.S. 118 (1894) ................................................................................................................ 10

*United States v. Valverde*,
   628 F.3d 1159 (9th Cir. 2010) .................................................................................................. 6

*W.C. v. Bowen*,
   807 F.2d 1502 (9th Cir. 1987) .................................................................................................. 6

W*ashington Alliance of Technology Workers v. United States Dep't of Homeland Sec.*,
   156 F. Supp. 3d 123 (D.D.C. 2015), judgment vacated, appeal dismissed sub nom.
   on other grounds, 650 Fed. Appx. 13 (D.C. Cir. 2016) ............................................................ 5

**Statutes**

5 U.S.C. § 706(2)(A) ...................................................................................................................... 8

8 U.S.C. § 1225(b)(1) ................................................................................................................. 9, 11

8 U.S.C. § 1252 ........................................................................................................................ 13, 14

PROPOSED INTERVENORS' REPLY MEMORANDUM POINTS AND AUTHORITIES IN FURTHER SUPPORT OF
MOTION FOR A PRELIMINARY INJUNCTION

8 U.S.C. § 1252(a)(2)(A) ........................................................................................... 3, 13

8 U.S.C. § 1252(A)(2)(a)(i) ............................................................................................ 9

8 U.S.C. § 1252(a)(2)(A)(i)-(iii) ................................................................................... 13

8 U.S.C. § 1252(a)(2)(A)(iv) ........................................................................................ 13

8 U.S.C. § 1252(f) ......................................................................................................... 14

28 U.S.C. § 1331 .................................................................................................... 12, 13

**Other Authorities**

7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice &
     Procedure § 1917 (3d ed. 2010) .......................................................................... 12

D.D.C. LCvR 40.5(a)(3) ................................................................................................ 3

Fed.R.Civ.P. 82 ............................................................................................................ 12

https://www.justsecurity.org/wp-content/uploads/2018/05/SG_Letter-nken-v-holder.pdf
     (last visited Oct. 26, 2020) ................................................................................... 13

Restatement (Second) Judgments, § 26 comment a ..................................................... 11

PROPOSED INTERVENORS' REPLY MEMORANDUM POINTS AND AUTHORITIES IN FURTHER SUPPORT OF
MOTION FOR A PRELIMINARY INJUNCTION

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.   <u>Introduction</u>

Proposed Plaintiff-Intervenors ("Intervenors") are families; there are 57 mothers, 3 fathers, and 70 children ranging in age from two to eighteen.  They came to the United States to seek asylum under the lawful process established by Congress.  *M.M.V. v. Barr*, 456 F. Supp. 3d 193, 200 (D.D.C. 2020) (Intervenors are families "who have travelled great distances, under extraordinarily difficult circumstances, to request legal admission to this country of immigrants through the long-standing process of applying for asylum[.]").  But Defendants denied Intervenors this process.  Instead, when Intervenors arrived, Defendants applied the unlawful, and now vacated,[1] Rule that denied them access to the statutorily authorized process to seek asylum from persecution and threats to their lives.  Removal of Intervenors on the basis of an unlawful process is itself unlawful, and will certainly result in irreparable harm.

After the District Court for the District of Columbia held that the Rule was unlawful and vacated it without qualification, rendering it void *ab initio*, Defendants refused to provide the Intervenors access to the asylum process that they would have had the right to access absent the vacated Rule.  Defendants' position that unqualified vacatur of the Rule is not retroactive as to non-parties is one Intervenors could not have anticipated because it is contrary to basic administrative law principles, the government's representations to the court in *CAIR*, and the government's position in at least one other immigration case.  *See* Heller Exh. 5 at 23, Exh. 6 at 1.  Intervenors did not contrive the confluence of circumstances that serve as the basis for their motion for a preliminary injunction and to intervene to litigate their rights to seek asylum; Defendants have simply elected to deny Intervenors the lawful process of seeking asylum mandated by Congress.

On October 17, 2020, this Court granted Intervenors' motion for a temporary restraining order and enjoined Defendants from removing Intervenors from the United States until October 31, 2020 or further order of the Court ("TRO").  ECF 98.  Evaluating whether Intervenors were likely to succeed on the merits of their motion to intervene as a matter of right under Rule 24(a)(2), the Court found that

---

[1] *Capital Area Immigrants' Rights Coalition v. Trump*, Civil Action Nos. 19-2117, 19-2530 (TJK), 2020 WL 3542481 (D.D.C. June 30, 2020) ("*CAIR*").

1  it would likely find: the motion to intervene timely; Intervenors' interests are unlikely to be adequately

2  represented by the current Plaintiffs; Intervenors are likely to suffer irreparable harm, and; the balance

3  of equities and public interest favored granting the TRO.  *Id.*, at 5-8.  The Court also found that there

4  were serious questions going to the merits of the motion to intervene and for a stay of removal

5  warranting the TRO.  *Id.*, at 6.

6  In its Order, this Court questioned whether intervention in this action would provide

7  Intervenors with the relief they seek.  ECF No. 98, at 6.  The answer is yes.  Under Ninth Circuit case

8  law, when a rule violates the Administrative Procedures Act ("APA"), the court may vacate adverse

9  agency actions or decisions taken pursuant to the unlawful rule.  *See* Section III.A.2, *infra*.  District

10  Courts have ruled similarly in the immigration context, setting aside removal orders procured under

11  rules deemed to violate the APA.

12  For more than one year, as they have litigated their claims, Intervenors have accepted detention

13  with children in congregate settings, with inadequate medical care, during a global pandemic as the

14  better option—because seeking asylum in this country is a life-or-death matter to them.  If this Court

15  does not grant the preliminary injunction pending resolution of their motion to intervene, Defendants

16  will deport Intervenors.  Deportation will render any later victory in this case meaningless because,

17  even if they survive in their home countries, Intervenors will be unable to return to the United States

18  any time soon.  *See D.A.M. v. Barr*, 20-CV-1321 (CRC), 2020 WL 5525056, at *13 (D.D.C. Sept. 15,

19  2020).  For the reasons set forth in the TRO and herein, the Court should grant Intervenors' motion for

20  a preliminary injunction staying their removal from the United States until further order of the Court.

21  **II.      History of *M.M.V.* and *D.A.M.***

22  As a preliminary matter, Defendants mischaracterize the claims in *M.M.V. v. Barr* and *D.A.M.*

23  *v. Barr*.  First, the plaintiffs in *M.M.V.* did not challenge the Rule or plaintiffs' removal orders but

24  challenged written and unwritten directives implemented after the Rule took effect that tainted the

25  Intervenors' credible fear interviews.[2]  *M.M.V. v. Barr*, 456 F. Supp. 3d 193, 203, 205-06 (D.D.C.

26

27  _____

[2] While the unlawful and vacated Rule retained the term "credible fear," it heightened the standard

28  used to the far higher "reasonable fear," thus it is misleading for Defendants to claim that the
Intervenors have actually had "credible fear" interviews.

2020).  Defendants filed notices of related cases, attempting to relate *M.M.V.* to *CAIR* and *I.A. v. Barr*

(a case consolidated with *CAIR*).  *M.M.V. v. Barr*, 19-CV-2773 (TJK), 2019 WL 10888831, at *1

(D.D.C. Sept. 25, 2019).  However, because *M.M.V.* did not challenge the Rule, and the claims in the

case did not involve common issues of fact, the Judge in *CAIR* ruled that *M.M.V.* was not related to

*CAIR*.  *Id.*, at *1 (quoting D.D.C. LCvR 40.5(a)(3)).  Notably, Defendants similarly represented to the

District of Columbia Circuit in *M.M.V.* that "Plaintiffs do not challenge the Rule in this case, or any

implementation of the Rule."  Heller Exh 6 at p. 1.

Second, *D.A.M.* did not challenge the Rule or plaintiffs' removal orders.[3]  The Amended

Petition, filed after *CAIR*, alleged that vacatur of the Rule rendered it void *ab initio*, placing petitioners

in the *status quo ante* prior to the issuance of the Rule and entitling them to access the asylum process

prescribed by statute.  Heller Exh. 1, ¶¶ 299-305.  Petitioners claimed that the governments' failure to

provide them access to that process violated their due process rights.  *Id*.  In denying the motion for a

temporary restraining order, the court held that it lacked jurisdiction over petitioners' claims due to 8

U.S.C. § 1252(a)(2)(A) and that *CAIR* did not apply retroactively to nonparties, thus petitioners were

therefore unlikely to succeed on the merits of their claim.  *D.A.M.*, 2020 WL 5525056, at *8-*14.

Finally, while the number and nature of the stays of removal in *M.M.V.* and *D.A.M.* are not

relevant to any of the elements of the motion for a preliminary injunction or the motion to intervene,

Defendants also mischaracterize the history of Intervenors' stays.  Intervenors have obtained

administrative stays of varying duration while district courts ruled on the different motions and the

District of Columbia Circuit evaluated emergency motions to stay.  Notably, the courts in *M.M.V.* and

*D.A.M.* ruled against Intervenors largely on jurisdictional grounds.[4]  The en banc District of Columbia

Circuit did not issue a written order describing the basis for denying the emergency stay and it is thus

inaccurate to say that the District of Columbia Circuit unanimously concluded that Intervenors'

---

[3] The original Petition for Writ of Habeas Corpus alleged that the manner in which the government sought to deport petitioners in the midst of a global pandemic violated, among other things, their due process rights.  *D.A.M. v. Barr*, 20-CV-1321 (CRC), 2020 WL 4218003 (D.D.C. July 23, 2020).
[4] *See M.M.V.*, 456 F. Supp. 3d at 217 ("the facts amassed by the plaintiffs are deeply troubling, and… Congress has been too parsimonious with judicial review in an area where individual lives and liberty are at stake.  But like the other district courts that have considered the issue, this Court is constrained to find that it does not have jurisdiction to review the [written and unwritten directives].").

challenges lacked merit and denied the emergency motion for a stay en banc. The per curiam order, issued without explanation, merely stated that the motion for en banc reconsideration be denied and the emergency motion for stay be dismissed as moot. Defendants' APP2. Thereafter, the Clerk entered an order dissolving the administrative stay. Defendants' APP1.

## III.    The Court Should Grant Intervenors' Motion for a Preliminary Injunction

### A.    Intervenors Are Likely To Succeed on the Merits of Their Motion to Intervene as a Matter of Right.

#### 1.    Intervenors' Motion to Intervene is Timely

Intervenors' motion to intervene is timely. A change in circumstances—Defendants' refusal to apply *CAIR* retroactively to Intervenors—is the sole reason for the motion to intervene. *See United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (where a change of circumstances occurs, and that change is the "major reason" for the motion to intervene, the stage of proceedings factor should be analyzed by reference to the change in circumstances, and not the commencement of the litigation). Intervenors could not have anticipated Defendants' refusal to apply *CAIR* to Intervenors for several reasons. First, the law in the District of Columbia Circuit, where *CAIR* was litigated, is that vacatur, unless limited or qualified, is retroactive as to nonparties.[5] Second, in its briefing in *CAIR*, the government asserted that the court should not issue an injunction because vacatur of an improperly adopted rule would have the effect of injunctive relief, affecting even non-parties, and stated "Plaintiffs present no evidence that the government would not comply with an order of vacatur."

---

[5] *See Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 519 (D.C. Cir. 2020) ("vacatur would mean that 'every payment that was made in the 2016 [commercial shipping] season was erroneous,' and may involve the Coast Guard and the Shippers attempting to recoup and redistribute funds that changed hands years ago…."); *Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 198 (D.C. Cir. 2009) (holding vacatur of a rule that hospitals were not eligible for reimbursement would have required the government to make repayments to those hospitals); *Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 97 (D.C. Cir. 2002) (declining to vacate a rule where "there is no apparent way to restore the status quo ante" and requiring retroactive allocation damages was "an invitation to chaos."); *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 756 (D.C. Cir. 2002) (declining vacatur because there was no way to restore the "status quo ante"); *Nat'l Fuel Gas Supply Corp. v. Fed. Energy Regulatory Comm'n*, 59 F.3d 1281, 1289 (D.C. Cir. 1995) ("The agency must give retroactive effect to the ruling of a federal court because of the nature of that court."); *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 151 (D.C. Cir. 1993) (holding remand without vacatur of a rule imposing fees was appropriate because "the Commission would need to refund all… fees collected… [and] would be unable to recover those fees under a later-enacted rule.").

1   *CAIR v. Barr*, 2019 WL 8376064, n.1 (D.D.C.), Defendants' Supplemental Brief, Oct. 16, 2019 (citing

2   *O.A. v. Trump*, 404 F. Supp. 3d 109, 153-54 (D.D.C. Aug. 2, 2019) (concluding, even in a class action

3   case not involving some of the jurisdictional provisions at issue in this case, that vacatur was sufficient,

4   and no basis for injunctive relief existed)).

5        Similarly, in an action where an organization challenged the government's interim final rule

6   extending the duration of optional practical training for eligible STEM foreign students, which allowed

7   nonimmigrant foreign nationals on an F–1 student visa to engage in employment during and after

8   school, the government acknowledged the "retroactivity" of vacatur with regard to non-parties.

9   W*ashington Alliance of Technology Workers v. United States Dep't of Homeland Sec.*, 156 F. Supp. 3d

10  123, 128-29 (D.D.C. 2015), judgment vacated, appeal dismissed sub nom. on other grounds, 650 Fed.

11  Appx. 13 (D.C. Cir. 2016).  The government argued that the court should hold any vacatur of the rule

12  in abeyance because vacatur would result in "workers and their family members scrambl[ing] to depart

13  the United States in an effort to avoid any possible immigration consequences…."  Heller Exh 5 at

14  p.23.  The District Court agreed, stating there was no "way of immediately restoring the pre–2008

15  status quo without causing substantial hardship for foreign students…."  *Washington All. of

16  Technology Workers*, 156 F. Supp. 3d at 128-29.[6]

17       In stark and incompatible contrast, in the opposition to the Intervenors' request for a temporary

18  restraining order in *D.A.M.*, and on appeal from the denial of that order, the government now argues

19  that *CAIR* does not apply retroactively to non-party Intervenors, a position endorsed by the *D.A.M.*

20  court.  *D.A.M.*, 2020 WL 5525056, at *7.  Thus, based upon this change in circumstance, Intervenors

21  moved to intervene in this case where, as parties challenging their removal alongside the Rule that

22  deprived them of the proper removal procedures, they are entitled to relief.  *See infra* section III.A.2.

23       Defendants argue that they publicly took the position a year ago that vacatur should only apply

24  to parties (Defendants' Opposition to Preliminary Injunction ("Opp.") at 13, n.7, (ECF 110), but

25  Defendants' argument in that brief was merely about whether the APA permitted the issuance of an

---

[6] This is consistent with the government's position in other immigration cases, such as *Department of Homeland Security v. Regents of the University of California*, where the government did not assert that every DACA recipient had to join as a party to be entitled to any relief the parties sought.  *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 207 L. Ed. 2d 353 (2020).

injunction at the pre-merits phase.  Defendants also suggest that Intervenors waived their rights to challenge their removal alongside the Rule.  To the contrary, Intervenors have not waived any rights because, at the time, other parties had challenged the Rule in *CAIR* and in this case.  In an APA suit, "'a single plaintiff, so long as he is injured by the rule, may obtain "programmatic" relief that affects the rights of parties not before the court.'"  *Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (quoting *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 908 (1990) (Blackmun, J. dissenting)).  Thus, Intervenors should not have had to be parties to *CAIR*, or challenge the Rule, to benefit from vacatur and have not waived any rights.

Defendants do not argue in more than a conclusory fashion that Intervenors' motion to intervene is untimely based upon the stage of the litigation and that they are prejudiced.  Opp. at 12-13.  As this Court stated in its TRO, the action has been stayed for most of the time since Plaintiffs filed in July of 2019, *See* ECF 93, 98 at 5, thus intervention at this time would not prejudice Defendants.

Intervenors did not wait to move to intervene as some part of a broad litigation strategy.  Recent developments, including the government's position—contrary to case law, its representations to the *CAIR* court, and its position in *Washington Alliance*—that vacatur of the Rule does not apply to Intervenors because they are not a party, and the *D.A.M.* court's decision that *CAIR* does not apply to non-parties, render Intervenors' motion to intervene timely.  *See also* ECF 98, at 5.

### 2. Intervenors' Have a Protectable Interest in the Subject of This Action and Disposition of the Action May Impair that Interest

Intervenors are subject to removal orders as a result of the Rule, and therefore they have an interest directly relating to the subject of the litigation.  If allowed to intervene, and if this Court vacates the Rule, this Court may order Defendants to set aside Intervenors' removal orders and provide them access to the asylum process to which they would have been entitled absent the Rule.  Under Ninth Circuit case law, when a rule violates the APA, the court may vacate adverse agency actions or decisions taken pursuant to the unlawful rule.  *See W.C. v. Bowen*, 807 F.2d 1502, 1505 (9th Cir. 1987) (holding that adverse social security decisions issued under a rule that violated the APA should be vacated because "[a]gency action taken under a void rule has no legal effect."); *United States v. Valverde*, 628 F.3d 1159, 1163 (9th Cir. 2010) (affirming dismissal of indictment of convicted sex

offender for failing to register as a sex offender on the ground that an interim regulation that made registration requirements retroactive violated the APA and did not become effective until 5 months after the defendant's indictment); *Buschmann v. Schweiker*, 676 F.2d 352, 356-58 (9th Cir. 1982) (holding that the government's interpretation of the social security unearned income regulation violated the APA's notice and comment requirement, thus could not apply prior to the date of its final publication, and remanding to the agency for recalculation of the plaintiffs supplemental income benefits during the time it was allegedly effective and the date of the final rule); *Herron v. Heckler*, 576 F. Supp. 218, 233 (N.D. Cal. 1983) (holding certain "staff instructions" contained in the claims manual of the Social Security Administration limiting the type of property that may be disregarded in determining an applicant's eligibility for Supplemental Security Income benefits violated the APA and ordering the defendants to reinstate plaintiff to the program and restore to her all benefits that accrued since the date of her unlawful termination from the program).

Courts have held similarly in the immigration context.  In *S.A. v. Trump*, 18-CV-03539-LB, 2019 WL 990680 (N.D. Cal. Mar. 1, 2019), on a motion for preliminary injunction, the court held that plaintiffs were likely to succeed on their claim that DHS violated the APA when it rescinded en masse prior decisions conditionally approving the parole into the U.S. of certain children and other qualifying family members of persons lawfully present in the U.S. under the Central American Minors Program. *Id.*, at *2.  The court enjoined DHS's mass rescission of conditional approvals of parole, vacated the mass rescission, and ordered DHS "to continue processing—under the DHS policies and procedures in place for processing beneficiaries before January 2017—the 2,714 beneficiaries conditionally approved for parole."  *Id.*  The court noted that the *status quo ante litem* for injunctive purposes was "the point … when DHS was still processing conditionally approved beneficiaries," citing authority that "'[t]he status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy.'"  *Id.* at *13.

Similarly, in *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1 (D.D.C. 2020), the plaintiffs, five individual native Honduran asylum seekers and a nonprofit organization that provides legal services to refugees, challenged the lawfulness of policies concerning credible fear interviews in expedited removal proceedings ("Asylum Directives") on multiple grounds, including that defendant Kenneth

Cuccinelli was not lawfully appointed to serve as the acting Director of USCIS and that, as a result, the Asylum Directives must be set aside under, among other things, the APA. *Id.*, at 36–37 (D.D.C. 2020), judgment entered, CV 19-2676 (RDM), 2020 WL 1905063 (D.D.C. Apr. 16, 2020), appeal dismissed, 20-5141, 2020 WL 5358686 (D.C. Cir. Aug. 25, 2020). On cross-motions for partial summary judgment, the court concluded that defendant Cuccinelli was designated to serve as the acting Director of USCIS in violation of the Federal Vacancies Reform Act ("FVRA"), *id.* at 29, and because he was exercising the authority of the USCIS Director in violation of the FVRA, "the directives were not issued 'in accordance with law,' and must, accordingly, be set aside under the APA." *Id.* at 34 (quoting 5 U.S.C. § 706(2)(A)). The court held that plaintiffs' removal orders were deficient and set aside their negative credible fear determinations and expedited removal orders and remanded to USCIS for further proceedings consistent with the decision. *Id.* at 37.

In *Grace v. Whitaker*, 344 F. Supp. 3d 96 (D.D.C. 2018), aff'd in part, rev'd in part and remanded sub nom. *Grace v. Barr*, 965 F.3d 883 (D.C. Cir. 2020), twelve asylum seekers brought an action alleging that their negative credible fear findings were rendered under an immigration decision that unlawfully and arbitrarily imposed a heightened standard to their credible fear determinations. *Id.*, 344 F. Supp. 3d at 104–05. The district court agreed, holding that an immigration decision precluding credible fear determinations in expedited removal proceedings based on claims of domestic violence and gang-related violence was arbitrary and capricious in violation of the APA and vacated the policies. *Id.* 344 F. Supp. 3d at 122-39. Among other relief, the district court ordered that the government provide new credible fear interviews to the twelve asylum seekers who brought this case, a remedy that the government did not challenge on appeal, having provided those new interviews to the plaintiffs. *See Grace*, 965 F.3d at 906.

This is consistent with the "core purposes of the APA's procedural mandates… under the APA, the plaintiff's claim is that the agency has breached the plaintiff's (and the public's) entitlement to non-arbitrary decision making and/or their right to participate in the rulemaking process when the agency undertook to promulgate the rule. Consequently, to provide the relief that any APA plaintiff is entitled to receive for establishing that an agency's rule is procedurally invalid, the rule must be invalidated, so as to give interested parties (the plaintiff, the agency, and the public) a meaningful opportunity to try

again." *Make the Rd. N.Y. v. Wolf*, 405 F. Supp. 3d 1, 66-67 (D.D.C. 2019) (emphasis added), rev'd and remanded sub nom. on other grounds, 962 F.3d 612 (D.C. Cir. 2020).  Indeed, were this not the case, the executive branch could issue rules, no matter how egregious or contrary to law, with carte blanche to ignore remedying the situation after vacatur.  There must be consequences when the executive branch fails to follow the law.

If this Court vacates the Rule, it may set aside Intervenors' removal orders procured under the unlawful and void Rule and order that Intervenors receive access to the asylum process under section 1225(b)(1).[7]  This is not in conflict with *D.A.M.*, which supports, in *dicta*, Intervenors' contention that they have a protectable interest that will be impaired if the court denies the motion to intervene.  The *D.A.M.* court held that 8 U.S.C. § 1252(A)(2)(a)(i) likely stripped it of jurisdiction to review Intervenors' constitutional claims because the court viewed the claims as a challenge to the underlying removal orders and because the court did not agree that *CAIR* applied retroactively to non-parties. *D.A.M.*, 2020 WL 5525056, at *8.  Distinguishing *W.C.*, the court stated that "*W.C.* is better understood to stand for the uncontroversial proposition that, when a court with jurisdiction finds that the plaintiffs before it were harmed by an agency decision issued under an illegal rule, the court should vacate that wrongful decision as a remedy." *Id.*  That uncontroversial proposition would apply to Intervenors as parties to this case, entitling them to the relief they seek.

Defendants' response is that Intervenors have been litigating their interests elsewhere.  But, as set forth in section II *supra*, they have not litigated a challenge to their removal alongside a challenge to the Rule, a fact acknowledged by the *D.A.M.* court in holding that *CAIR* did not extend to Intervenors, who were not parties to that action.  Intervenors' protectable interest arises from Defendants' own conduct in their refusal to apply *CAIR* to Intervenors.

3.   Plaintiffs Cannot Adequately Represent Intervenors' Interests

This Court found that, "because Plaintiffs do not represent Proposed Intervenors' interest in addressing the legitimacy of their removal orders, their interests are not adequately represented absent intervention."  (ECF 98 at 7.)  Defendants fail to address this finding in the TRO, and state in

---

[7] For these reason, disposition of the action, if they are not permitted to intervene would impair their interests because Defendants will take the position that vacatur does not apply retroactively to non-parties.

conclusory terms only that Plaintiffs could argue that vacatur of the Rule should apply retroactively. Opp. at 15.  But Defendants have already established that they will not honor vacatur of the Rule unless a noncitizen is a party to the litigation vacating the Rule.  Further, Plaintiffs are not positioned to advocate for a stay of removal of Intervenors, which, as set forth herein, is necessary for Intervenors to avail themselves of relief if this litigation is decided in Plaintiffs' favor.  In short, Defendants, through their own conduct, have rendered Plaintiffs inadequate to represent Intervenors' interests.

Thus, Intervenors have satisfied the elements of intervention as of right and are likely to succeed on the merits of their motion.

### 4. The Motion to Intervene Likely Will Not Be Barred Based Upon Claim-Splitting, "First to File Rule, or Claim Preclusion

Defendants argue three additional points on the merits, none of which are persuasive.

First, the claim-splitting doctrine does not apply here.  "[C]laim splitting… is a sub-species of the doctrine of claim preclusion... [which] bars a second action where '(1) the same parties, or their privies, were involved in the prior litigation, (2) the prior litigation involved the same claim or cause of action as the later suit, and (3) the prior litigation was terminated by a final judgment on the merits.'" *Adobe Sys. Inc. v. Wowza Media Sys., LLC*, 72 F. Supp. 3d 989, 993–94 (N.D. Cal. 2014) (quoting *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 952 (9th Cir.2002)).  "The rule preventing claim splitting is designed to 'protect the defendant from being harassed by repetitive actions based on the same claim.'" *Id.* (quoting *Clements v. Airport Authority of Washoe Cnty.*, 69 F.3d 321 (9th Cir. 1995) (internal quotations and citation omitted)); *see also United States v. Haytian Republic*, 154 U.S. 118, 125 (1894) (quoting *Stark v. Starr*, 94 U.S. 477, 482 (1876)) ("The doctrine of claim-splitting is the notion that a party is 'not at liberty to split up his demand, and prosecute it by piecemeal, or present only a portion of the grounds upon which special relief is sought and leave the rest to be presented in a second suit, if the first fail.  There would be no end to litigation if such a practice were permissible.'"). This test is not met.

The second element of claim-splitting is not met here.  As set forth in section II *supra*, neither *M.M.V.* nor *D.A.M.* challenged either the Rule or Intervenors' removal orders.  Defendants assert that claim-splitting still applies because Intervenors should have challenged the Rule in their other litigations.  To the contrary, as set forth in section III.A.1 *supra*, at the time that Intervenors filed

1    *M.M.V.* and then *D.A.M.*, there were already two APA actions challenging the Rule, which meant that

2    if either *CAIR* or this court vacated the rule, Defendants should have set aside Intervenors' removal

3    orders and allowed them to access the asylum process under 8 U.S.C. §1225(b)(1).  The entire purpose

4    of an APA action is to obtain programmatic relief that affects the rights of parties not before the court,

5    and Intervenors should not have been expected to initiate a third litigation in order to benefit from the

6    outcome of either of the other two.  *See Nat'l Min. Ass'n*, 145 F.3d at 1409.

7            Neither the doctrine of claim-splitting nor of claim preclusion applies here because Intervenors

8    did not litigate their rights piecemeal for a strategic benefit.  Intervenors move to intervene in this

9    action based upon Defendants' conduct in refusing to honor the *CAIR* order.  If Defendants complied

10   with principles of administrative law and the *CAIR* order, Intervenors would not need to be here.

11   Notably, a significant portion of the opposition is devoted to arguing that Intervenors cannot establish

12   an independent basis for jurisdiction over a challenge to the Rule, thus, in Defendants' view,

13   Intervenors could not have litigated this claim in either *M.M.V.* or *D.A.M.*  The relief Intervenors seek

14   in this case is different than in *D.A.M.* and *M.M.V.*, and this Court can grant that relief.

15           Further, "[a] main purpose behind the rule preventing claim splitting is 'to protect the

16   defendant from being harassed by repetitive actions based on the same claim.'"  *Clements,* 69 F.3d at

17   328 (quoting Restatement (Second) Judgments, § 26 comment a).  Intervenors seek to join an ongoing

18   action challenging the Rule and are not subjecting Defendants to any additional action.  For all these

19   reasons neither claim-splitting nor claim preclusion apply

20           For the same reasons, the "first to file" rule does not apply.  As this Court recognized, "'[t]he

21   doctrine is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the

22   embarrassment of conflicting judgments.'"  *Padilla v. Willner*, 15-CV-04866-JST, 2016 WL 860948,

23   at *5 (N.D. Cal. Mar. 7, 2016) (quoting *Church of Scientology of California v. U.S. Dep't of Army*, 611

24   F.2d 738, 750 (9th Cir. 1979), overruled on other grounds, *Animal Legal Defense Fund v. U.S. Food &*

25   *Drug Admin.*, 836 F.3d 987 (9th Cir. 2016) (en banc)).  Because Intervenors did not challenge the Rule

26   in either *M.M.V.* or *D.A.M*, there is no risk of conflicting judgments.

27           Further, as noted in a case cited by Defendants, "[t]his is not a situation where a plaintiff sued

28   in one court, didn't like how it was going, and then tried to sue in another court.'"  *California v.*

*Trump,* 267 F. Supp. 3d 1119, 1127 (N.D. Cal. Oct. 25, 2017) (citing *Padilla v. Willner*, No. 15-cv-04866-JST, 2016 WL 860948, at *5 (N.D. Cal. Mar. 7, 2016)).  "Nor is it a situation where a plaintiff sued in one court only to see the defendant respond by suing in a different forum that the defendant found more attractive." *Id.* (citing *Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F.Supp.2d 949, 955–64 (N.D. Cal. 2008)).  This is a case where Defendants refuse to honor unqualified vacatur of the Rule in *CAIR*, and seek to execute removal orders that should be set aside as unlawful, compelling Intervenors to move to intervene in a case where they can obtain the relief they seek.  Indeed, given Intervenors' "need for emergency relief, it was not merely justifiable to seek that relief in a different forum; it was prudent." *Id.*, 267 F. Supp. 3d at 1127.

**B.  Intervenors Are Likely To Succeed on the Merits of Their Motion to Permissively Intervene.**

Intervenors have met all the elements for intervention as of right, thus are likely to succeed on their motion to intervene on that basis.  However, if the Court disagrees, Intervenors are likely to succeed on the merits of their motion to intervene pursuant to Rule 24(b) as they satisfy all three elements.  *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002).

First, Intervenors do not need to establish jurisdiction for permissive intervention.  The Ninth Circuit has held that the requirement stems from the "concern that intervention might be used to enlarge inappropriately the jurisdiction of the district courts." *See Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011) (citing Fed.R.Civ.P. 82).  "But in federal-question cases, the identity of the parties is irrelevant, and the district court's jurisdiction is grounded in the federal question(s) raised by the plaintiff." *Id.* at 844 (citing 28 U.S.C. § 1331).  "Where the proposed intervenor in a federal-question case brings no new claims, the jurisdictional concern drops away." *Id.* (citing 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1917 (3d ed. 2010) ("In federal-question cases there should be no problem of jurisdiction with regard to an intervening defendant nor is there any problem when one seeking to intervene as a plaintiff relies on the same federal statute as does the original plaintiff.")).  Thus, the "independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims." *Id.*; *see Levin Richmond Terminal Corp. v. City of Richmond*, 20-CV-01609-YGR, 2020 WL 5074263, at *15 (N.D. Cal. Aug. 27, 2020) (same); *E&B*

*Natural Res. Mgmt. Corp. v. County of Almeda*, 18-CV-05857-YGR, 2019 WL 5697912, at *7 (N.D. Cal. Nov. 4, 2019) (same), appeal dismissed sub nom. *E&B Nat. Res. Mgmt. Corp. v. County of Alameda*, 19-17451, 2020 WL 2945032 (9th Cir. Mar. 16, 2020); *California v. Health & Human Services*, 330 F.R.D. 248, 254 (N.D. Cal. 2019) (same).

Even if this Court determines that Intervenors must establish jurisdiction, the Court is not stripped of jurisdiction under 8 U.S.C. § 1252. The underlying claims in the case are that Defendants' actions violate the APA, which is a classic federal question over which this Court has jurisdiction under 28 U.S.C. § 1331. Section 1252(a)(2)(A) was created to insulate four specific, discretionary types of decisions from judicial review: as applied challenges to removal orders, *see* 8 USC. § 1252(a)(2)(A)(i)-(iii) and "procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1)," *see* 8 U.S.C. § 1252(a)(2)(A)(iv). In intervening in this case, Intervenors are not making as applied challenges to their removal orders.

Second, the motion to intervene is timely. Third, Intervenors' claim is their motion to intervene is the same claim Plaintiffs make in this action. Thus, Intervenors have satisfied the elements of permissive intervention and are likely to succeed on the merits of their motion.

## C.  Intervenors Will be Irreparably Harmed and the Equities Favor Intervenors

Defendants contend that harm to Intervenors is speculative, citing *Nken v. Holder*, 556 U.S. 418, 435 (2009), which is distinguishable. In *Nken*, the court held that the petitioner could pursue his petition for review of a Board of Immigration Appeals in his home country because the government represented that if he prevailed, his return could be facilitated. *Id.*, 556 U.S. at 435.[8] Here, the government has no obligation to facilitate Intervenors' return and have never offered to do so.

Further, if Intervenors are deported but ultimately succeed on the claims here, it is far from certain they will be able to return to the United States on their own to apply for asylum. *See D.A.M.*, 2020 WL 5525056, at *13. "Deportation is always a harsh measure... all the more replete with danger

---

[8] In reality, there was no consistently effective return policy that adequately assured the facilitation of all petitioners' returns after winning their appeal, and the Solicitor General eventually apologized to the Supreme Court for misrepresentations made in the *Nken* case and revealed that no return policy existed. https://www.justsecurity.org/wp-content/uploads/2018/05/SG_Letter-nken-v-holder.pdf (last visited Oct. 26, 2020).

13

when the alien makes a claim that he or she will be subject to death or persecution if forced to return to his or her home country." *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 449–50 (1987).  Intervenors are families, some with small children, from nearly one dozen countries, who endured harrowing journeys to get to the United States the first time.  Indeed, they are the lucky ones who survived these perilous journeys.  They cannot be expected to succeed again.  Further, recent pandemic-related administrative action appears to have effectively closed the southern border indefinitely to noncitizens seeking asylum.  Because Intervenors likely will not be able to benefit from any remedy this Court may grant at the end of this litigation if the injunction is not granted is unquestionably irreparable harm.

Defendants allege that they have an interest in seeing the government's laws applied.  Yes, they do, and the government's laws require that noncitizens presenting themselves at the border asserting fear—like Intervenors but for the Rule—are entitled to avail themselves of process under Section 1225. Thus, in granting the preliminary injunction here, the Court is not thwarting the laws established by Congress.  It is defending them.

### D.  The Court Has the Authority to Issue a Preliminary Injunction Staying Removal

Defendants argue that "[e]ven if intervenors satisfy the TRO factors, the Court lacks jurisdiction to enter a stay of removal…."  Opp. at 24.  This Court issued the TRO, which it has the authority to do.  *See Chambers v. NASCO, Inc*., 501 U.S. 32, 43 (1991) (federal courts have inherent power to issue orders necessary to their jurisdiction over a pending case.); *Bounds v. Smith*, 430 U.S. 817, 824 (1977) (same); *Castro v. Dep't of Homeland Sec.*, 835 F.3d 422, 429 n.9 (3d Cir. 2016) (staying removal in expedited removal pending resolution of the case); *Chaudhry v. Barr*, No. 19-CV-00682-TLN-DMC, 2019 WL 2009307, *5 (E.D. Cal. May 7, 2019); *Abdul Mehamed Sied v. Duke*, No. 17-CV-06785-LB, 2017 WL 6316821 (N.D. Cal. Dec. 11, 2017); *Jimenez v. Napolitano*, No. C-12-03558 RMW, 2012 WL 3144026, at *1 (N.D. Cal. Aug. 1, 2012).

Further, 8 U.S.C. § 1252 does not apply here as it concerns judicial review of removal orders. As Intervenors seek to join this action and challenge their removal alongside the Rule, they are not making as applied challenges to their individual removal orders.  Moreover, pursuant to 8 U.S.C. § 1252(f), this Court may grant a stay of removal pending disposition of the motion to intervene, and if

that is granted, throughout the duration of the case, if it finds that Intervenors have satisfied the factors for granting an injunction.

Finally, if the Court grants the injunction it should not stay the injunction pending Defendants' appeal as Defendants request, because Defendants will simply remove Intervenors, irreparably damaging them and rendering their motion to intervene meaningless.

**IV.   <u>Conclusion</u>**

For all the foregoing reasons, Intervenors respectfully request that this Court grant their motion for a preliminary injunction enjoining Defendants from taking any action to remove Intervenors until further order of the Court; and that the Court grant such other and further relief as it may deem just and proper.

Dated:  October 26, 2020                Respectfully submitted,

**GREENBERG TRAURIG LLP**
Adam Siegler
Jonathan K. Ogata
Caroline Heller (Appearance *Pro Hac Vice*)
Steven G. Berringer (Appearance *Pro Hac Vice*)

***RAPID DEFENSE NETWORK***
*Gregory P. Copeland* (Appearance *Pro Hac Vice*)
*Sarah T. Gillman* (Appearance *Pro Hac Vice*)


By_____*/s/ Jonathan K. Ogata*_____
            Adam Siegler
            Jonathan K. Ogata
            Attorneys for Plaintiff-Intervenors